## LEASE OF COMMERCIAL PREMISES

**THIS LEASE** is made the 1st day of August Two Thousand and Eighteen BETWEEN the PARTY described in Item 1 of the First Schedule hereto, (hereinafter called "the Landlord", which expression shall where the context so admits mean and include the person or persons, corporation or company for the time being entitled to a reversion immediately expectant on the determination of the term hereby created and/or its duly appointed agent), of the **FIRST PART AND** the PARTY described in Items 2 of the First Schedule, (hereinafter called "the Tenant", which expression shall where the context so admits mean and include the Tenant's permitted assigns and transferees), of the **SECOND PART.**

**WHEREAS:**-

(A)        The Landlord is the registered proprietor of all those premises set out in Item 3 of the First Schedule, (hereinafter referred to as "the Leased Premises");

(B)        The Landlord has agreed to grant and the Tenant has agreed to take a lease of the Leased Premises subject to the covenants and conditions herein contained;

(C)        The Tenant has agreed to use the Leased Premises only for commercial purposes, for the operation of the business facility described in Item 9 of the First Schedule (hereinafter called "the Permitted Use").

**NOW THIS LEASE WITNESSETH** as follows: -

1. **Demise**

        IN CONSIDERATION of the Rent, covenants and agreements hereinafter reserved and contained the Landlord **HEREBY LEASES** unto the Tenant **THE LEASED PREMISES TOGETHER WITH** the full right and liberty set out hereto for the Tenant its servants and licensees and invitees (in common with the Landlord and other persons having the like right) at all times and for all purposes connected with the Leased Premises to pass and repass to and from the Leased Premises over and along the Common Areas of the Buildings and the ways, passages and stairways leading to the Leased Premises for the Term and any extension or

renewal thereof from the Commencement Date but subject to extension as is hereinafter provided to hold the same for the term specified in Item 4(a) of the First Schedule ("the Term") commencing the date specified in Item 5 of the First Schedule hereto ("the Effective Date") YIELDING AND PAYING therefor during the Term the rent specified in Item 6 of the First Schedule ("the Rent") payable in the manner therein stated SUBJECT to the covenants and powers implied under the Conveyancing Act or the Registration of Titles Act, as the case may be, save as are hereby negatived or modified AND ALSO to the covenants herein contained **AND PAYING** to  other entity as shall be appointed by Proprietors Strata Plan No. 2729 as  property manager, (the "Property Manager"), such appointment to be notified in writing to the Tenant by the Landlord, for the maintenance of the common area from the Commencement Date, the monthly maintenance charge specified from time to time by the Property Manager commencing with the initial monthly maintenance charge set out in Item 8 of the First Schedule for the maintenance services provided as specified in  the Second Schedule ("Maintenance Charge").

2.  **TENANT'S COVENANTS**

The Tenant hereby covenants with the Landlord in respect of each and every covenant in the manner set out below: -

(1)     **To pay Rent: -**

To punctually and regularly pay to the Landlord or agent the Rent hereby reserved and the Maintenance Charge on the first day of each and every month during the Term  and to punctually pay on the date for payment as herein provided any other monies payable by the Tenant to the Landlord or agent in accordance with this Lease, if any, without any deduction whatsoever;

(2)     **Insurance: -**

i)      To insure and keep insured at all times during the Term the Tenant's   Improvements installed by Tenant or its vendors within the Leased Premises against damage or destruction by fire lightning explosion aircraft or other aerial device or articles dropped from them riot civil commotion earthquake fire hurricane fire storm tempest flood bursting or overflowing water pipes and any other risks that the Landlord may direct

in writing for their full replacement value in the names of the Landlord and the Tenant with the Landlord noted as additional loss payee and placed with insurance carriers registered with the Jamaica Financial Services Commission or rated A-,B++ or better by A.M. Best. (www.ambest.com) and to pay all premiums necessary for these purposes promptly on the due dates and to produce for the Landlord a certificate of insurance evidencing coverage;

(ii)    To procure and keep in effect during the Term or extension thereof, Public Liability Insurance covering the Tenant with respect to the user of the Leased Premises.

(3)    **Nuisances and Annoyances: -**

Not at any time during the Term or any extension thereof to use, exercise or carry on or permit or suffer to be used, exercised or carried on, in or upon the Leased Premises or any part thereof, any matter or thing whatsoever which shall or may grow to the annoyance, nuisance, grievance, damage or disturbance of the occupier(s) of adjoining premises and to use the Leased Premises solely, wholly and exclusively for the permitted use and no other;

(4)    **Indemnity for Nuisance: -**

Except and to the extent such claims, actions, damages, liability, demands, costs and expenses arise as a result of the negligence, act and/or omission of the Landlord, its servants, agents or employees, to keep the Landlord fully and effectually indemnified from and against all third party actions, suits, proceedings, and, provided that Landlord tenders the defence of any such claims to Tenant, the actual damages, costs, expenses, claims and demands arising out of or in consequence of any breach or non-observance by Tenant of the foregoing covenant against nuisance and user;

(5)    **Obstruction and Refuse Disposal: -**

Not to obstruct any walkway, access to or egress from the Buildings or the complex or any part or parts thereof or put any refuse outside of the Leased Premises but to store all the refuse in proper bins or containers within the Leased Premises and place the same within such receptacles and areas in the Common Areas as the Landlord or the Property Manager may from time to time designate;

(6)  **Not to assign, underlet, etc: -**

Not to transfer, assign, sublet, underlet or part with the possession or control of the Leased Premises or any part thereof or share occupation with any other person(s) or corporations whether by way of license, trust or otherwise without the written consent of the Landlord first had and obtained which consent shall not be unreasonably withheld or delayed by 10 or more business days.  In this context a change of ownership and or control of the Tenant's corporation or business entity to an affiliate, subsidiary, sister company or parent shall not be deemed a transfer, assignment or parting with possession of the Leased Premises;

(7)  **The permitted use: -**

Not to use the Leased Premises or  any part thereof or permit the same to be used otherwise than for the purpose set out in Item 9 of the First Schedule and for no other purpose without the previous consent in writing of the Landlord which shall not  be unreasonably withheld nor at any time to use or permit the Leased Premises or any part thereof to be used for any noisy, noxious, offensive dangerous or illegal trade or business or enterprise nor for any public meeting nor suffer any sale by auction nor do or suffer to be done any act matter or thing whatsoever which may be or tend to be or become an annoyance or nuisance or which may damage disturb inconvenience or prejudice the occupiers of any adjoining premises.   Tenant will operate its business on the days and during the times it deems best for carrying out the said business.

(8)  **Not to make alterations, etc: -**

 Subject to Tenant's right to make Tenant Improvements, not to cut, injure or damage any wall, floors, beams, ceilings, fixtures or fittings of or in the Leased Premises, nor without the prior written consent of the Landlord, which consent shall not be unreasonably withheld, delayed or conditioned, make any alterations in or to the Leased Premises or change the location or style of any partitions or permanent fixtures or install any plumbing, piping, wiring, electrical or gas stoves or other apparatus or install any appliances which will or may overload the existing wires or equipment in the Leased Premises. Consent or denial shall be provided in writing by Landlord to Tenant within three (3) business days of having received a request from Tenant.  Any permitted works shall be carried out at the Tenant's sole expense and any damage done to the Leased Premises by Tenant in carrying out such or any other work as may be permitted shall be made good by the Tenant at the Tenant's sole expense;

(9)    **Not to impose excess weight: -**

Not to suspend or permit to be suspended any heavy loads from the main structure of the Leased Premises or any part thereof nor to load nor permit to be loaded or used the floor or structure of the Leased Premises in any manner which will impose a weight or strain in excess of that which the Leased Premises is constructed to bear with proper margin for safety or which will in any way strain or interfere with the main supports thereof;

(10)    **To secure against combustible substances: -**

To secure the Leased Premises from possible damage caused by the use of combustible,  Inflammable or dangerous substance and/or nature including kerosene and gas cylinders and stoves electrical stoves on the Leased Premises and not to do or permit or suffer to be done anything by reason whereof the policy of insurance on the Building of which the Leased Premises forms a part or on the Leased Premises themselves may be rendered void or avoidable or whereby the rate of premium thereon may be increased and to repay to the Landlord upon demand sums paid by Landlord by way of increased premium to the extent occasioned by any breach of the provisions of this clause by Tenant;

(11)    **Not to erect signs: -**

Not without the prior consent of the Landlord, which consent shall not be unreasonably withheld, delayed or conditioned,  to affix to or have exposed on the exterior of the Leased Premises any sign, sign board, advertisement, or indication of the occupation of the Tenant or in any part of the Leased Premises;

(12)    **Not to remove fixtures or build out improvements: -**

During the Term or any renewal or extension thereof not to remove from the Leased Premises, (i) any fittings, goods or chattels belonging to the Landlord; nor (ii) any fixtures, HVAC, drywall, electrical, plumbing or carpeting attached to the Leased Premises whether or not installed by the Tenant in accordance with Clause 4.(7) without the prior consent of the Landlord, which consent shall not be unreasonably withheld, delayed or conditioned, provided however, Tenant may at its sole election elect to remove and keep its IT equipment, cubicles, furniture and personal items;

(13)    **To indemnify the Landlord against injury: -**

To indemnify and hold the Landlord harmless from and against all third party claims, demands, actions

and/or proceedings, (including legal costs on a full indemnity basis), made or brought by any person or corporation or company against the Landlord and, provided that the defence of any such claim has been tendered to Tenant, any actual loss arising therefrom in respect of any damage or injury suffered by any person in or upon the Leased Premises to the extent caused by the Tenant or its/his/her agent(s) or invitee(s) , save and except where such claims, actions, damages, liability and expenses arise as a result of the negligence of the Landlord, its servants, agents or employees;

(14)     **To indemnify the Landlord against breach: -**

To fully indemnify and keep indemnified the Landlord and save the Landlord harmless from and against any and all third party claims, actions, and, provided that the defence of any such claim has been tendered to Tenant any actual damages, liability and expenses whatsoever (including Attorneys-at-Law fees on a full indemnity basis) arising  out of the use and/or occupancy of the Leased Premises by the Tenant or any person authorized by him and/or in consequence of any breach or non-observance by Tenant or its/his/her servants, agent(s), invitee(s), licensee(s), sub-Tenants or concessionaires of any of the covenants in this Lease, save and except where such claims, actions, damages, liability and expenses arise as a result of the negligence, act and/or omission of the Landlord, its servants, agents or employees;

(15)     **To maintain and repair:**

(i)      To keep in repair and maintain the Tenant Improvements within the Leased Premises as further described in Clause 15(ii) below.  Tenant shall not be responsible to maintain the main structure and exterior of the building of which the Leased Premises forms a part, nor  the Common Areas nor to keep all  wind and water tight  nor to maintain all structural parts thereof including, the roof, exterior walls and windows, the floors, walkways and other paved areas, drains, gutters, pits, external pipes, in good condition and proper state of repair, nor to keep the entrances, pathways, boundary walls, parking areas and other facilities in good and proper repair and well and sufficiently cleaned and lighted.   Further, it shall not be the Tenant's responsibility to repair destruction or damage caused by lightening, windstorm, fire, earthquake, flood or other Act of God or the country's enemies or riot or civil commotion which shall render the Leased Premises wholly or substantially unfit for the occupation of the Tenant;

(ii)     To repair, keep up and maintain all doors, windows, locks and fasteners in the interior of the Leased Premises including all Tenant Improvements, all internal equipment such as Ventilation and Air Conditioning, lights, Tenant's Uninterruptable Power System, water tanks, floor coverings, false ceilings and the plaster or other surface material applied to interior faces of all load bearing walls and all additions thereto and the sanitary water and electrical apparatus and the Landlord's fixtures, (if any) and also to make good stoppage of or damage to the drains caused by the negligence of the Tenant save where the damage is occasioned by a risk against which the Landlord has insured and except where the insurance money is irrecoverable as a result of the negligence of the Tenant or its/his/her agent(s) or invitee(s). The Tenant shall at its sole cost and expense during the Term replace all lighting fixtures within the Leased Premises, including the replacement of any blown lamps, starters and ballasts existing at the commencement of the Lease and those installed thereafter by the Landlord. Notwithstanding anything contained in this Lease or any Schedules to the contrary, the Property Manager and/or Landlord shall be responsible for any and all capital repairs to the Leased Premises and the Building, not arising from the acts or omissions of the Tenant, and any replacements to the Building and to any Building systems serving the Leased Premises;

(iii)     At the determination of the said Term or any extension thereof to yield up the Leased Premises in such repair as provided herein;


(16)     **Remedying breaches of covenant of maintenance or repair: -**

(i)     Within thirty days or such other time period as the parties may agree from the date of notice to repair and make good to the reasonable non-delayed and unconditioned satisfaction of the Landlord all material breaches of covenant and defects and wants of reparation for which the Tenant has an obligation under the Lease and of which notice shall have been given by the Landlord to the Tenant in writing;

(ii)     If the Tenant shall at any time default in the performance of any covenants contained herein relating to the maintenance and repair required to be performed by the Tenant herein provided that notice has been given as aforesaid and if the Tenant shall fail within 14 business days after the service of such notice to proceed diligently with the execution of such repairs then it shall be lawful for the Landlord and its agents and workmen to enter the Leased Premises and at the expense of the Tenant to carry out such works in a workmanlike and professional manner as may be reasonably necessary in accordance with the covenants contained herein and the reasonable, actual and documented costs and expenses of such works heretofore agreed shall be paid by the Tenant to the

Landlord on demand or failing such payment shall be recoverable by action.

(17)    **Institution of fire precautions: -**

To observe all statutory provisions and all provisions contained in any standard and customary policy of insurance relating to the building with regard to the storage and use on the Leased  Premises of explosive or inflammable materials or substances save and except those products usually or naturally offered by the Tenant as a part of its inventory to its customers and duly packaged and approved for sale to the public by the relevant Governmental or quasi-governmental Agencies and not to bring or store same on any part of the Leased Premises or the adjoining Common Area or in particular in or upon the Leased Premises nor to do anything whereby any insurance policy effected over the Leased Premises may be vitiated or the premium in respect thereof may be increased and to repay to the Landlord all reasonable and actual sums paid by the Landlord which shall have been directly or indirectly occasioned by any breach of the provisions of this clause by Tenant or by the permitted user by the Tenant of  any gas or electrical plant or machinery or other appliances in the Tenant's business. The Landlord shall install and maintain fire prevention equipment as required by the governmental authority with jurisdiction provided.

(18)    **Notice of damage and reimbursement of policy of insurance   invalidated: -**

In the event that the Leased Premises or any part thereof is damaged or destroyed by any risk against which insurance is effected thereover by the Landlord,  the Tenant shall endeavor to give three business days' notice to the Landlord and in the event of the insurance money under any Landlord's insurance policy is wholly or partially irrecoverable by reason of any act or default by the Tenant, then the Tenant will forthwith (in addition to the said Rent) pay to the Landlord the whole or as the case may require a fair portion of the reasonable and actual cost of completely rebuilding and reinstating the same to the reasonable satisfaction of and under the supervision of the Landlord's Architect.

(19)    **Permit Landlord to inspect: -**

To permit the Landlord and/or any mutually agreed upon agent  at reasonable times after written notice of no less than three business day  to enter into and upon and view and examine the state and condition of the Leased Premises and thereupon the Landlord may serve upon the Tenant a notice in writing specifying any repairs, maintenance or replacements required to be executed or done by the Tenant in accordance with the terms of this Lease and require forthwith to execute or do the same

and if the Tenant shall not within fourteen (14) business days after the service of such notice proceed diligently and carefully with the execution of such repairs or maintenance or doing of such replacements then the Landlord shall carry out same and thereafter the Landlord shall have the right to recover  the actual and reasonable costs and expenses of carrying out same from the Tenant as if the same were additional rent.  All repairs and/or maintenance performed by the Landlord and/or its agent or vendor shall be performed in a professional and workmanlike manner in accordance with the terms of the Lease but the Landlord shall not in any circumstances be liable to the Tenant or any other person for any loss, injury or damage occasioned by or as a result of the Landlord exercising its right hereunder to carry out or have carried out any such repairs, maintenance or replacements as a result of the Tenant's breach of its obligations hereunder save and except where such loss, injury or damage arises as a result of the negligence, act and/or omission of the Landlord, its servants, agents or employees.  Notwithstanding anything to the contrary, any entry is subject to and shall follow Tenant's security protocol and process and shall be conducted in a manner so as not to disrupt Tenant's business in the Leased Premises;

(20)    **Notice for Sale or re-letting: -**

Provided no renewal of lease or exercise of option occurs in accordance with the terms hereof, to permit the Landlord by its servants or agents during the last three (3) months of this Lease to enter upon the Leased Premises with its servants and/or agents at all reasonable times aforesaid after written notice of not less than three business day for such entrances on weekdays Monday through Friday, for the purpose of introducing and exhibiting the same to prospective purchasers or tenants. Notwithstanding anything to the contrary, any entry is subject to and shall follow the Tenant's security protocol and process and shall be conducted in a manner so as not to disrupt Tenant's business in the Leased Premises;

(21)    **To permit Landlord's entry: -**

To permit the Landlord to enter the Leased Premises  after reasonable written notice of not less than three (3) business days, except in any emergency, for the purpose of doing such works and things as may be lawfully required to be done by the Landlord in respect of any repairs, alterations or improvements of the Leased Premises Notwithstanding anything to the contrary, any entry is subject to and shall follow Tenant's security protocol and process and shall be conducted in a manner so as

not to disrupt Tenant's business in the Leased Premises;

(22)    **To keep clean: -**

To keep the Leased Premises at all times clean and tidy;

(23)    **Tenant at Will: -**

If the Tenant remains in possession of the Leased Premises with the Landlord's written consent but without a new Lease in writing then the Tenant shall be deemed to be occupying the Leased Premises as a Tenant at will from month to month subject to all the terms, covenants and conditions of this Lease where the same are applicable to a monthly tenancy terminable by either party giving to the other one (1) month's prior written notice of termination;

(24)    **To pay Property Taxes and utility bills: -**

To pay to the Landlord or agent the actual allocated proportionate portion of property taxes in respect of the Leased Premises, with the provision of a copy of the actual tax bill and the Landlord's written calculation of the proportionate allocation and to pay and discharge the cost of all utility services required for the efficient operation and enjoyment of the Leased Premises inclusive of water, electricity, wireless networking technology (wifi), cable and telephone charges and the cost to connect or install such services to the Leased Premises. No amount due for any period prior to the Commencement Date shall be passed on to Tenant. Under no circumstances will Tenant be required to pay for any amounts due and/or accrued prior to Tenant's occupancy of the Leased Premises.  For clarity, any amounts due by Tenant shall be prorated to commence on the date of occupancy of the Leased Premises by Tenant.

(25)    **To pay Maintenance Charge: -**

To punctually and regularly pay to the Property Manager, the monthly Maintenance Charge as calculated from time to time in writing by the Property Manager commencing with the initial monthly Maintenance Charge specified in Item 8 of the First Schedule.  If the said Maintenance Charge is not paid on the due dates such arrears if any shall be a debt due to the Landlord and the Tenant shall pay the Landlord interest thereon at the rate stated in Clause 4(3) hereof.  The Landlord's rights herein

shall be in addition to and shall not affect or prejudice in any way any other rights of the Landlord in this Lease.

(26)     **Compliance with statutory provisions: -**

At all times during the Term to observe and comply in all respects with all provisions and requirements of the by-laws of Proprietors Strata Plan No. 2729 and any statutory enactment by-law order or regulation whether present or future so far as they are for Tenant's use of the Leased Premises. The Tenant shall indemnify the Landlord at all times against all third party liabilities that may arise as a result of the Tenant's breach of the terms of this clause, and, provided that the defence of any such claim has been tendered to Tenant, any actual claims, costs, charges and expenses for the execution or maintenance or provision of any works service or arrangement so directed or required  pursuant to such enactment by-law order regulation or other applicable legal requirement on the user of the Leased Premises by the Tenant  and within seven (7) business days of the receipt by Tenant of any notice, if any,  in respect thereof, to advise the Landlord of the receipt of such notice and to deliver to the Landlord a copy thereof unless prohibited; **PROVIDED HOWEVER** that the Tenant shall not be liable for nor obliged to indemnify the Landlord against any loss, damage or claim which may arise from the act, omission, neglect or default of the Landlord or their employees, vendors, licensees, invitees, servants or agents.

(27)     **To deliver up: -**

Upon expiration of the Lease hereby created or any extension or sooner determination thereof, to peaceably and quietly yield up and deliver vacant possession of the Leased Premises to the Landlord or to whom it may appoint in good and substantial order, preservation and condition and in strict compliance with the terms, covenants, and conditions and agreements herein contained, reasonable wear and tear excepted.  In the event that the Tenant shall fail to yield up the Leased Premises, the Landlord shall in addition to all other remedies available to it hereunder have the right to receive and recover from the Tenant such amounts as is fixed by Law for the time the Tenant shall withhold possession of the Leased Premises or any part thereof;

(28)     **To pay costs: -**

To pay on the execution of this Lease one half of the Stamp Duty payable on the Lease.  Each party shall pay their respective legal fees.

3.**LANDLORD'S COVENANTS**

The Landlord hereby covenants with the Tenant as follows: -

(1)        **Quiet Enjoyment: -**

That **SUBJECT TO** the terms and conditions hereof and the Tenant paying the Rents hereby reserved and the sums payable hereunder and observing and performing the several covenants, conditions and stipulations herein on his part contained the Tenant shall peaceably hold and enjoy the Leased Premises during the said Term and any extensions/renewals, if any, without any interruption by the Landlord or any person rightfully claiming through under or in trust for it;

(2)        **Upkeep/Maintenance/Repair**

To ensure that all necessary capital repairs and replacements are made to the Leased Premises and the Building.  In the event the Property Manager fails to maintain its obligations set forth in Section 2.(15) or elsewhere in this Lease and/or as set forth in the By-Laws of Proprietors Strata Plan No. 2729, the Landlord shall be secondarily responsible.  The Landlord shall be primarily responsible for all other obligations of the Landlord as set forth in Section 3(3) below and as set forth elsewhere in this Lease. To ensure that the external parts and structural members of the Leased Premises, Building and entrances and other parts of the Building the forecourts, pathways and boundary walls thereto and the parking areas and other facilities in or upon the Building or the land on which same is erected the use of which the Lessee is entitled in common with other users of the Building are kept in good and proper repair and well and sufficiently cleansed and lighted **PROVIDED THAT** the Landlord shall not be obliged to effect such repairs in circumstances where the Building or any floor of the Building suffer such substantial damage the cost of repair of which will in Landlord's opinion exceed any insurance moneys recoverable by the Landlord **PROVIDED THAT** there shall be no diminution or abatement of the rents or damages or other compensation accruing to the Tenant for the failure by the Landlord to perform any service or obligation or for interruption or curtailment of service, when such failure, interruption or curtailment of service shall be due to accident or to alterations or repairs desirable or necessary to be made, or to unforeseeable inability or difficulty in securing supplies or labour, or to some other cause not amounting to negligence on the part of the Landlord.

(3)        **Warranty of the Landlord**

Subject to Clause 4(14) hereof, the Landlord warrants that it has the right to enter into this Lease with the Tenant and to be primarily responsible to perform all of its obligations and grants herein.

**Property Taxes**

(4)    To ensure that all existing and future property taxes, rates, duties, charges, assessments, impositions or other outgoings and assessments imposed or charged in respect of the Leased Premises Buildings and the Plaza Lands are paid and discharged by the Landlord save and except those charges payable by the Tenant in accordance with the terms of this Lease.

**Amendments to By-Laws**

(5)    To notify the Tenant in writing of any amendments or proposed amendments to the by-laws of Proprietors Strata Plan No. 2729 that affect, or would potentially affect, the Tenant's use and occupation of the Leased Premises, within five (5) business days of the Landlord being advised of such amendment or proposed amendment. If an amendment to the by-laws of Proprietors Strata Plan 2729 does affect the Tenant's and use and occupation of the Leased Premises then the Tenant shall have the right to terminate this Lease without fault subject to the notice requirements for termination hereunder.

4.**PROVIDED ALWAYS AND IT IS HEREBY MUTUALLY AGREED AND DECLARED** as follows: -

(1)    <u>**No liability: -**</u>

If the Tenant shall be unable to enter the Leased Premises or any part thereof at any time as a result of any cause or reason beyond the direct control of the Landlord (e.g. government work, labor strikes, lock outs), the Landlord shall not be liable in damages therefor nor shall this Lease be automatically terminated; Notwithstanding the foregoing, if Tenant shall be unable to access the Leased Premises for a period of thirty days then Tenant shall have the right to terminate this Lease subject to the notice requirements for termination hereunder.

(2)    <u>**No waiver: -**</u>

That no forbearance or omission on the part of the Landlord or Tenant to take advantage of or enforce any right or forfeiture arising out of any breach or non-observance by the  breaching party of any term, covenant, condition or stipulation herein contained or implied shall operate as or be deemed to

be a general waiver of such term, covenant, condition or stipulation or the right to take advantage thereof or enforce any right or forfeiture arising out of the breach or nonobservance or non-performance thereof original or recurring;

(3)    **Interest: -**

If and whenever the Tenant shall not pay the Rent hereby reserved or the Maintenance Charge or any other sum payable by the Tenant herein within fourteen (14) business days after the day on which the same shall become due the Tenant shall pay to the Landlord interest upon such arrears of Rent and/or the Maintenance Charge or other payment at the three (3) month US Dollar LIBOR rate plus two percent (2%) on the amount of such arrears and calculated from the due date until the date of payment The Landlord's rights herein shall be in addition to and shall not affect or prejudice in any way, any other rights of the Landlord hereunder;

(4)    **Proviso for re-entry: -**

(i)   If the Rent hereby reserved or any part thereof or any other sum payable hereunder shall at any time be unpaid for thirty (30) **DAYS** after becoming due and payable, (whether legally and formally demanded or not), or

(ii)  if there shall be any breach or non-observance or non-performance of any of the terms, covenants, conditions, agreements or stipulations herein contained on the part of the Tenant and if such breach, non-observance or non-performance shall continue for the space of thirty (30) days after written notice of such breach, non-observance or non-performance by the Landlord to the Tenant; or

(iii) if the Tenant shall have an order in Bankruptcy made against him or being a Company if an order be made or an effective resolution be passed for the winding up of the Tenant; or

(iv) if the Tenant makes any assignment for the benefit of creditors or for liquidation of debts by composition; or

(vi) if the Tenant shall cease to operate the business for which the Leased Premises have been let or abandon the Leased Premises or permit this Lease to be taken under any writ of execution or shall suffer any distress or execution to be levied on his goods, then, and in any one or more of the said cases,  (provided that in relation to sub-clauses (i) and (ii) above, only after the completion of any dispute resolution process initiated under Section (13)), it shall be lawful for the Landlord

or any person or persons by it duly authorised in that behalf, (and notwithstanding the waiver by the Landlord or a previous breach, non-observance non-performance or default and/or forfeiture(s)), at any time thereafter to re-enter into and upon and re-take possession of the Leased Premises or any part thereof in the name of the whole and thereupon this Lease shall immediately cease and absolutely terminate but without prejudice to any right of action or remedy by the Landlord in respect of any antecedent breach or non-observance or non-performance of the Tenant's covenants and conditions herein contained.

(5)     **Damage or destruction: -**

(i)     In the event that the Leased Premises are rendered wholly unfit for commercial occupation due to the destruction or damage by fire, lightning, earthquake, windstorm, flood or other Acts of God or the Queen's enemies or riot or civil commotion or such cause otherwise than by the act or omission of the Tenant, his servants, agents or licensees, the tenancy shall terminate from the date of such destruction or damage and the Rent shall cease as of that date.  If the Leased Premises are damaged by such causes as aforesaid but not to an extent to render them wholly or substantially unfit for occupation for commercial purposes, then the Rent shall abate proportionately  from the date of such damage according to the nature and extent of the damage sustained to the Leased Premises taking into account the Tenant's assessment of its ability to use the undamaged portion for its intended purpose until the damaged portion of the Leased Premises shall have been repaired by the Landlord, which repairs shall commence no later than  90 days of the date of such destruction or damage, save for circumstances beyond the reasonable control of the Landlord and on condition that all necessary materials and labour are readily available and the Landlord shall work promptly and diligently to complete the repair.

(ii)     If the Landlord shall not have commenced to repair, replace, rebuild, reinstate or restore the Leased Premises within 90 days of any destruction or damage which renders the same unfit for use and occupation or having so commenced shall not proceed diligently therewith, or if the Leased Premises shall not in such circumstances have been rebuilt or reinstated within nine (9) calendar months after such destruction or damage the Landlord or the Tenant may at any time thereafter determine this Lease by one month's notice in writing to the other but such determination shall be without prejudice to any claim by either party in respect of any antecedent breach or default or non-observance or non-performance or any of the terms, covenants, conditions, stipulations and agreements herein contained or implied;

(iii)    PROVIDED THAT the policies of insurance referred to in Clause 2(2) hereof are in effect and not rendered void or invalid for any fault or act on the part of the Tenant AND the Landlord is in receipt of insurance  proceeds as are sufficient to restore the Leased Premises, the Landlord shall apply such insurance proceeds actually received in and towards repairing and/or restoring the Leased Premises on a timely basis, so to render the Leased Premises fit for occupation and use by the Tenant as herein contemplated AND FURTHER PROVIDED THAT the Landlord shall be under no obligation to repair the damage or restore the Leased Premises or to procure the same as aforementioned unless and until:

(i)    it is in receipt of proceeds of insurance adequate or sufficient to do so; and

(ii)    arrangements satisfactory to the Landlord have been entered into with the Tenant, for the Tenant to execute or procure that there be executed development and/or restorative work to restore the Leased Premises to a condition where the same shall be fit for use and occupation by the Tenant for the purposes set forth in this Lease.

(6)    **Option to renew: -**

     (i) Provided the Tenant has observed and carried out all the stipulations, obligations and covenants on its part to be observed and carried out by it under this Lease, it shall be entitled to give notice to the Landlord no later than Three (3) months prior to the expiration of the Term hereby created of its desire to renew this Lease for the period set out in Item 4(b) of the First Schedule ("first renewed term") on the same terms and conditions hereof **SAVE AND EXCEPT** the provision concerning the quantum of rental charges.

     (ii) Provided the Tenant has observed and carried out all the stipulations, obligations and covenants on its part to be observed and carried out under this Lease, it shall be entitled to give notice to the Landlord no later than Three (3) months prior to the expiration of the first renewed term of its desire to renew this Lease for the period set out in Item 4(c) of the First Schedule ("second renewed term") on the same terms and conditions hereof **SAVE AND EXCEPT** the provision concerning the quantum of Rent charges and this covenant for renewal.

(iii)    For each renewal term exercised, the Rent shall be increased by 2% for Rent per annum over the then existing Rent charge.

(iv)    Should the Tenant fail to give such notice on each occasion within the time specified in sub-clause (i) hereof, this Lease shall automatically terminate at the end of the term or renewed term, whichever is applicable.  Should the Tenant remain on the Leased Premises after the termination of

the Lease in accordance herewith and without a new written Lease Agreement then it shall do so on a month to month tenancy at a charge of a minimum of fifteen (15%) percent above the rental charge in effect at the termination thereof and if the holdover tenancy is objected to in writing by Landlord, the Tenant shall in addition pay all actual damages sustained by the Landlord by reason of any such holding over;

(7)     **Improvements to the leased premises by tenant: -**

(i) The Landlord hereby permits the Tenant to carry out such works and modifications to the Leased Premises from the Commencement Date of this Lease in accordance with such plans and specifications as shown to the Landlord by the Tenant in order to facilitate occupation of the Leased Premises by the Tenant for the use permitted hereunder("Tenant Improvements").

(ii)     The said plans and specifications shall not be materially amended by either party except with the prior approval in writing of the Landlord and Tenant such approval not to be unreasonably withheld, delayed or conditioned.

(iii)     The Tenant shall engage competent and reputable contractors to perform the build out improvements intended to be carried out on the Leased Premises and shall give due consideration to recommendations made by the Landlord in respect of the contractors proposed to be engage by it.

(iv)     The Tenant agrees to carry out or cause to be carried out such works or modifications on or to the Leased Premises with due diligence and in accordance with sound construction practices and at the Tenant's sole cost.

(v)     The Tenant shall permit the Landlord and its servants employees, contractors and/or agents after reasonable written notice of not less than three (3) business days, except in any emergency to inspect, at Landlord's own cost and expense, as frequently as it may reasonably require, the carrying out of such works or modifications **PROVIDED** that the Landlord's servants or agents shall not create or cause any obstruction or disturbance in carrying out such inspection and the Tenant shall be obliged to carry out or cause to be carried out at its own expense such corrective steps in relation to any and all work carried out by it or its servants, employees, contractors on the Leased Premises to ensure that the build out improvements are substantially carried out in accordance with the plans and specifications.

(vi)     In the event that any dispute shall arise concerning the matters the subject of Clause 4(7) then the dispute shall be determined by such independent Architect and/or Quantity

Surveyor as the circumstances may require and as the parties may agree in writing or failing such agreement within fourteen (14) days of the date the dispute arises then  by such independent Architect and/or Quantity Surveyor selected by the President of the Master Builders Association of Jamaica and the decision of the Architect and/or Quantity Surveyor aforesaid concerning the matter(s) in dispute shall be final and binding on the parties save for manifest error.

(8)      **Security deposit: -**

On the signing of this Lease by both parties, the Tenant shall pay to the Landlord or agent a Security Deposit in the amount set out in Item 7 of the First Schedule hereto such Security Deposit to be retained by the Landlord until the determination of the Lease or any other extension or renewal hereof and to be applied by the Landlord firstly in and towards effecting any repairs to the Leased Premises caused by the Tenant and reinstating or replacing such of the Landlord's fixtures (if any) as may require reinstatement or replacement if in accordance with the Tenant's covenants herein contained such repairs reinstatement or replacement should have been effected or carried out by the Tenant; secondly in or towards any Rent or other undisputed moneys that shall be owing by the Tenant upon the determination of the Lease; and thirdly the balance (if any) shall be refunded by the Landlord to the Tenant without interest.  The deposit or balance of deposit shall be returned to Tenant within thirty (30) days of the termination or expiration of the Lease.

(9)        **Notices: -**

Any notice under this Lease shall be in writing and shall be sufficiently and duly given and received if correctly addressed and posted by registered mail from any Post Office in Jamaica or delivered to the Tenant or the Landlord as the case may be at their respective addresses hereinbefore stated or to such other address, as may from time be notified in writing by either party to the other for the purpose. Any such notice sent by registered post as aforesaid shall be deemed to have been served on the fourth day following the day of its posting and the tenth day where the addressee is outside of Jamaica;

(10)    **Interpretation: -**

In the construction of this instrument the "Landlord" shall include its successors and transferees and other person for the time being entitled to the reversion immediately expectant on the termination of the term, the expression the "Tenant" shall include its successors and transferees and the words "he",

"him", or "his", indicating the masculine gender and the singular number shall, where the context so admits be deemed to refer to and include the feminine and neuter genders and the plural number.

(11)      **General Consumption Tax (GCT)**

Unless and until the Tenant produces to the Landlord a valid GCT Exemption Certificate, all payments in respect of Rent shall attract GCT at the rate imposed by the relevant authority and the Tenant shall pay the Rent plus the GCT payable thereon and Security Deposit.  In the event that GCT shall be charged on the Maintenance Charge items, the Tenant shall pay the same.

(12)      **Applicable Law**

This Lease shall be construed, interpreted and applied in accordance with and shall be governed by the laws of Jamaica;

(13)      **Dispute Resolution**

Any dispute or difference of any nature arising out of this Lease Agreement shall be referred to the Dispute Resolution Foundation by either party for mediation by a single mediator to be chosen by the parties from the Approved Roster of the Supreme Court Mediators or, failing agreement as to the choice of mediators within fifteen (15) days of the date of the referral to mediation, by the Chief Executive Officer of the dispute Resolution Foundation.  If the matter has not been resolved at mediation within ninety (90) days after referral, either party shall be at liberty to pursue such action and remedies as it shall at its sole discretion so decide.

(14)      **Termination**

This Lease is terminable by either party after the expiration of twelve (12) months from the Commencement Date by either party giving no less than three (3 ) months' notice in accordance with Clause 4(9) hereof to the other of its intention to terminate.

## FIRST SCHEDULE

| | | |
|---|---|---|
| 1 | **THE LANDLORD** | **MF&G TRUST & FINANCE LIMITED** a company duly incorporated under the laws of Jamaica with registered offices at Park Place, 21 East Street in the parish of Kingston Jamaica ***holding as corporate trustee and custodian for the JMMB Optimum Capital (Real Estate) Fund.*** TRN:   000-689-289 |
| 2. | **THE TENANT:** | The LESS Institute a company a company doing business in Jamaica with its registered offices                                                  at _____. TRN: |
| 3. | **DESCRIPTION OF THE LEASED PREMISES**: | 954 square foot of retail office space known as Unit 17 on the first and second floor comprising the following: |

**ALL THAT** parcel of land part of **LOTS 9, 11 & PART OF LOT 13**  part of **ARDENNE** known as **NOS. 7 & 9 ARDENNE ROAD** now called **ARDENNE EMIRATES** in the Parish of **SAINT ANDREW** being the Strata Lot numbered **TWENTY SEVEN** on the Strata Plan Numbered Two Thousand Seven Hundred and Twenty Nine and One undivided $2/92^{th}$ share in the common property therein and being the land comprised in Certificate of Title registered in Volume 1512 Folio 823 of the Register Book of Titles;

| | | |
|---|---|---|
| 4(a). | **THE INITIAL TERM**        : | Three (3) years |
| 4(b). | **THE FIRST RENEWED TERM:** | Three (3) years |
| 4(c). | **THE SECOND RENEWED TERM** | Three (3) years |
| 5. | **THE LEASE COMMENCEMENT DATE** : | The 1st of August of, 2018 |
| 6. | **RENT COMMENCEMENT:** | **The 1st of September, 2018** |

6. **THE RENT:**                          The Rent for the **Initial year** of the Term hereby created shall be **US$18,000.00**, payable in equal monthly installments of **US$1,500.00,** to be paid on the first day of each month in advance. After the first year, the Rent shall be automatically increased each year on the anniversary of the Commencement Date at a rate of 2% percent above the then existing Rent.  The Rental shall be paid in United States Currency.

7. **SECURITY DEPOSIT:**                  In addition to the first month's Rent, the Purchaser shall pay a sum of **US$4,500.00** on execution hereof (receipt of which is hereby acknowledged) being a security deposit

8. **INITIAL MONTHLY MAINTENANCE
   CHARGE:**                              Tenant shall pay to the Proprietors Strata Plan No. 2729 such monthly Maintenance Charge as may be determined from time to time subject to the bylaws of the Proprietors Strata Plan No. 2729 or such other entity as shall be appointed by Proprietors Strata Plan No. 2729 for the maintenance of the common area, as set forth in the Second Schedule.

9. **PERMITTED USE:**                     Medical and clinical office Space

## SECOND SCHEDULE

The maintenance charge shall cover the proportionate share of the actual costs and expenses associated with the general maintenance repairs and upkeep of the Common Areas in connection with the use and occupation thereof including but not limited to the proportionate share of the actual costs and expenses incurred by **PROPRIETORS STRATA PLAN NO. 2729** or the Property Manager as shall be appointed by Proprietors Strata Plan No. 2729, in the provision of the following services ("Maintenance Charge"):

    i.        security services including a twenty-four hour security post at the gate to the Common area adjoining the Leased Premises;

    ii.       janitorial services in respect of the Common Areas;

    iii.      garbage disposal services in respect of the Common Areas;

    iv.      electricity supply in respect of the Common Areas;

    v.       water supply in respect of the Common Areas;

    vi.      insurance on the building of which the Leased Premises forms a part;

    vii.     Any other maintenance responsibility that is not a Tenant responsibility under the Lease.

2 3

24

**(signatures appear on the following page)**

**EXECUTED** under the **COMMON SEAL** )

**MF&G TRUST AND FINANCE LIMITED** )   _____
*On behalf of the JMMB Optimum Capital*
*(Real Estate) Fund*
by        Director   )
and            )    _____
Director/Secretary     )
in the presence of:-     )


_____
ATTORNEY-AT-LAW

**EXECUTED** under the **COMMON SEAL** )
of **THE LESS INSTITUTE** )
)
by                              Director )
and                                     )
Director/Secretary )
in the presence of: )

Aditya Humad

ATTORNEY-AT-LAW/ JARED TANZ, ESQ
JUSTICE OF THE PEACE
For the Parish of: