# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

UNITED STATES OF AMERICA

v.

KINGSLEY R. CHIN,
ADITYA HUMAD, and
SPINEFRONTIER, INC.,

               Defendants.

Criminal No. 1:21-cr-10256-RWZ

---

## GOVERNMENT'S OPPOSITION TO
## DEFENDANTS' MOTION TO COMPEL

The government has already provided extensive, well-organized, and user-friendly discovery to the defendants vastly exceeding what the Federal Rules of Civil Procedure and Local Rules require. Among other things, the government has produced early grand jury transcripts with corresponding exhibits, dozens of interview reports, and millions of pages of documents. The government also provided a detailed, searchable index of those materials and provided those materials in a searchable and database-ready format to assist the defendants' review. The government provided the vast majority of these materials in its first discovery production almost two years ago on October 29, 2021—a production that consisted of approximately 420 gigabytes of data. Since that time, the government has made supplemental productions on its own initiative and in response to certain defense requests in recent months.

The defendants now seek further discovery to which they are not entitled, aimed at two categories: (1) privileged communications between a potential government witness and his attorneys, and (2) privileged communications and work product from the government attorneys litigating this case and the related civil matter. These extraordinary requests to rummage through

other attorneys' communications are without legal basis and rest on factually inaccurate accounts of the parties' dealings throughout the investigation of the SpineFrontier kickback scheme—an investigation that has involved the entry and exit of four different sets of attorneys for the SpineFrontier defendants. Though couched as a request for *Brady* material, *see* ECF No. 107 at 1, the defendants' Motion is nothing but a speculative effort to "learn about communications," *id.* at 2, that the government is not obligated to produce. *Brady* and its progeny do not create a general right to criminal discovery. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one."). Rather, *Brady* obligates the government "to disclose evidence **in its possession** that is favorable to the accused and material to guilt or punishment." *United States v. Prochilo*, 629 F.3d 264, 268 (1st Cir. 2011) (emphasis added). Moreover, *Brady* requests "cannot consist of mere speculation"; a defendant "should be able to articulate with some specificity what evidence he hopes to find in the requested materials, why he thinks the materials contain this evidence, and finally, why this evidence would be both favorable to him and material." *Id.* "[A] defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the government's files." *United States v. Caro-Muniz*, 406 F.3d 22, 29 (1st Cir. 2005) (quoting *Penn. v. Ritchie*, 480 U.S. 39, 59 (1987)). The defendants' Motion should be denied.

I.    **The Government Does Not Have Authority To Access Dr. Montone's Privileged Communications As The Defendants Demand**

The defendants' first demand is that the government search "the entirety of the contents of Jason Montone's seized phone" and produce any exculpatory information the government finds there. Mot. at 1, 3. Dr. Jason Montone is a surgeon who pled guilty to violating the Anti-Kickback Statute, 42 U.S.C. § 1320a-7(b), by accepting kickbacks from the defendants. The government did not seize his phone; Dr. Montone, through counsel, provided it to the

2

government by way of consent, and that consent was limited.  The defendants' request asks the government to exceed Dr. Montone's consent and to access materials to which the government has no lawful right, in order to learn about, and share with the defendants, Dr. Montone's communications with his criminal defense lawyers.

### A.    Because Dr. Montone Limited His Consent By Carving Out Communications With His Attorneys, The Government Does Not Have "Possession, Custody, and Control" Of Those Communications And May Not Produce Them

The government has provided the defendants with everything from Dr. Montone's phone, with the exception of his communications with his criminal defense attorneys.  With respect to those attorney-client communications, Dr. Montone did not consent to provide those communications to the government.  Instead, he explicitly carved out those communications from his consent by identifying the names, phone numbers, and email addresses of his two defense attorneys expressly "[f]or purposes of protecting any attorney-client privileged text messages or emails on his cell phone."  Ex. 1 (Feb. 1, 2019 BassBerry Email to HHS).  Consistent with that limited consent, the prosecution team did not access those attorney-client communications.  Instead, the government segregated those communications out of the collection of materials the prosecution team obtained from Dr. Montone's phone and produced the remainder of that material—*i.e.*, everything but Dr. Montone's communications with his attorneys—to the defendants in discovery.

The defendants' Motion urges this Court to ignore Dr. Montone's explicit and limited consent, pierce any privilege that attaches to Dr. Montone's attorney-client communications, and order the government to produce those communications in discovery based on the speculative belief that "Montone's counsel *may* have reported facts … [that] *may* not be privileged."  ECF No. 107 at 8 (emphasis added).  The Court should deny the defendants' request because, given

Dr. Montone's express and limited consent, the prosecution team does not have possession, custody, or control over his communications with his attorneys. *See United States v. Parnas*, No. 19-cr-725, 2021 WL 2981567, at *8–9 (S.D.N.Y. July 7, 2021) (ruling that records in the possession of a filter team and special master were not in the "possession, custody, and control" of the government such that they were subject to discovery).[1]

In other contexts, courts have refused to require the government to produce the attorney-client communications of a co-defendant, where that co-defendant did not consent to the access or review of those communications. The defendant in *United States v. Walker*, 2:10-cr-186, 2011 WL 3349365 (M.D. Ala. July 14, 2011), for example, sought a subpoena for jail calls between his co-defendant (who had pled guilty) and his co-defendant's attorney. *Id.* at *1. Like the defendants here, Walker argued that his co-defendant had waived any privilege that might attach to the jail calls because the co-defendant knew the jail was recording those calls. The court rejected the defendant's argument, pointing to the recording played at the outset of each jail call, which stated: "This is a … call from an inmate at [the jail] … [and] … is subject to recording and monitoring ***except*** for privileged communications between an attorney and client." *Id.* (emphasis added). The court ruled that the co-defendant had not waived the privilege as to those calls with his attorney and denied the defendant access to those calls, finding that "it was

---

[1] This issue was not squarely litigated before the district court in *United States v. Gibson*, 15-CR-10323-IT, 2016 WL 3566198 (D. Mass. June 24, 2016), because the government there chose instead to propose that the defendant address the issue by serving a Rule 17 subpoena on the third-party law firm for specific and admissible evidence. *See id.*, ECF No. 46 at 1–2 (government's brief observing that its right to access the files on the third-party law firm server was limited by the law firm's consent, but offering that the proper mechanism for the defendant to obtain additional materials from the law firm server was a Rule 17 subpoena). To the extent *Gibson* suggests that privileged communications expressly exempted from a consent are nevertheless within the government's possession, custody, or control, that *dicta* does not control here.

reasonable under the[] facts and circumstances that [the co-defendant] and his counsel intended the calls to be confidential and expected that the calls would be confidential." *Id.* at *1.

This Court should reach the same result as obtained in *Parnas* and *Walker*. Dr. Montone explicitly carved out his attorney-client communications when he consented to turn over data from his phone.[2] That carve-out could not have been clearer. Consistent with that carve-out, the prosecution team did not possess or control those communications and is therefore not required (or even permitted) to access those communications as part of its prosecution of this case or the fulfillment of its discovery obligations. *Parnas*, 2021 WL 2981567, at *8–9.

**B.    Even If Dr. Montone's Attorney-Client Communications Were Construed As Within The Government's Possession, *United States v. Gibson* Does Not Require Their Production**

Even if the Court were to conclude that Dr. Montone's attorney-client communications are deemed to be within the government's possession (and it should not), that conclusion still would not require the production of those communications. Dr. Montone explicitly limited his

---

[2] Based on the defendants' argument, the only way for Dr. Montone to have properly effected his limited consent and excluded his attorney-client communications would have been to remove those communications himself ***before*** turning his phone over to the government—a process that defendants surely would have been quick to criticize. Obtaining a limited consent from Dr. Montone rather than having him remove the attorney-client communications himself ensured the integrity the rest of the evidence on his phone. Here, the presence of the attorney-client communications on his phone made segregating those materials more complicated from a technical perspective.

If Dr. Montone was turning over a filing cabinet, he easily could have removed the folder titled "Dr. Montone's attorney-client communications" and produced the rest of the filing cabinet to the government. The defendants place undeserved significance on the distinction between (1) Dr. Montone physically pulling out a folder titled "Dr. Montone's attorney-client communications" and then producing the filing cabinet to the government and (2) Dr. Montone turning over the entire file cabinet with a written consent stating that he was limiting his consent to all documents in the filing cabinet ***except*** those in the "Dr. Montone's attorney-client communications" folder. But that is a distinction without a difference. Dr. Montone's production of materials to the government is the same in either instance: he provided everything to the government ***except*** his attorney-client communications.

consent **before** providing his phone to the government by identifying his attorneys' phone numbers and email addresses for the explicit purpose of "protecting any attorney-client privileged text messages or emails on his cell phone." Ex. 1. Therefore, contrary to the defense's argument, ECF No. 107 at 9, Dr. Montone never waived the privilege. Indeed, Dr. Montone did the exact opposite: he took steps to make it unmistakably clear that he was **not** giving the government access to his communications with his attorneys. *Cf. Kaiser v. Kirchick*, No. 21-10590-MBB, 2022 WL 182375, at *5 (D. Mass. Jan. 20, 2022) (noting that, in inadvertent disclosure context, courts weigh whether "privilege holder took reasonable steps to prevent disclosure").

The defendants' argument that the government must turn over Dr. Montone's attorney-client communications runs counter to the decision in *United States v. Gibson* on which they so heavily rely. *See* ECF No. 107 at 7. The Motion repeatedly cites to the Magistrate's order in *Gibson* that the government would be required to "turn over all information in its possession, custody and control." *United States v. Gibson*, 15-cr-10323, 2016 WL 3248206, at *2 (D. Mass. June 10, 2016). But the district court materially amended that order on appeal when—a week later—it held that Magistrate's ruling did "not adequately protect" the non-party's "potential privilege concerns." *United States v. Gibson*, 15-cr-10323, 2016 WL 3566198, at *3 (D. Mass. June 24, 2016) (amending Magistrate's order on June 24, 2016). To address those privilege concerns, the district court ordered that the non-party—*i.e.*, the party in the same position as Dr. Montone here—produce a log both to the defense and the government identifying each document the non-party believed was protected by the attorney client privilege or work product doctrine. *Id.* at *3. The court took the further step of ordering that the defendants be prohibited from accessing **any** files that the non-party designated as privileged unless the court first ruled

that the material should be produced by the government. *Id.* at *3 (allowing the motion to compel in part and modifying Magistrate's order allowing for initial review of potentially privileged documents).

Accordingly, even if this Court were to conclude that the government has possession and lawful access to Dr. Montone's attorney-client communications, that finding would require only that Dr. Montone produce a privilege log to the defendants and the government. There is nothing in *Gibson* or any other case that requires the government to produce the attorney-client communications of a third-party that has explicitly carved out those communications out from its consent. Moreover, doing so would threaten third parties' rights to engage in privileged communications with their attorneys—an issue the defendants entirely fail to address.

## II.    The Defendants' Demand For Information Concerning The Government's Civil Investigative Team Misconstrues The Facts And Identifies No Cognizable Basis For Additional Discovery

The defendants' second demand is for "information concerning interactions between [the government's] prosecution team in this action and the team that investigated and pursued the related civil case," purportedly to allow the defendants to probe the possibility of "impermissible intermingling of civil and criminal matters." ECF No. 107 at 3. Their Motion presents less than half the factual picture—picking up years after the government began investigating—in an incomplete narrative that leaves the misimpression that the government improperly sprung a criminal case to force the defendants to settle civilly. *See* ECF No. 107 at 4. As detailed below, that is not what transpired.

Courts have long recognized that there is "nothing improper about the government undertaking simultaneous criminal and civil investigations." *United States v. Stringer*, 535 F.3d 929, 933 (9th Cir. 2008). And, as numerous contemporaneous documents show, the defendants

fully understood from the outset that the government's investigation had both civil and criminal

aspects.  In fact, it was the defendants who **repeatedly** asked the government to entertain a civil

resolution even when the government advised that the criminal matter remained ongoing.  More

than that, SpineFrontier and defendant Kingsley Chin affirmatively asked in 2022 that the

government engage in "global" civil-criminal resolution negotiations in an effort to—at their

request—resolve both matters simultaneously.  Ex. 10.  The Motion's suggestion that the

government somehow pressured the defendants to settle civilly by a "suspicious[ly]" timed

indictment (ECF No. 107 at 12) is false and irreconcilable with the course of the parties'

dealings.  Nor is it true that the defendants must settle civilly to avoid defending two actions at

once.  *See* ECF No. 107 at 13.  The defendants have never sought a stay of the civil matter—an

option which remains available to them even today.  In short, the government has not

impermissibly "intermingled" the civil and criminal matters.  In any event, the defendants'

request for further discovery on account of purported civil and criminal team "intermingling" is

both baseless and pointless: the government has already searched for *Brady* and Rule 16

information[3] among the files of civil (and cross-designated) attorneys, agents, and other

government personnel involved in the SpineFrontier kickback matters.  The defendants are

entitled to nothing further.

> **A.     The Government Has Been Forthright About The Civil And Criminal Aspects Of The SpineFrontier Kickback Investigation From The Outset**

A review of the parties' dealings in this matter shows that the government has been

transparent that the SpineFrontier kickback investigation had, from its inception, both criminal

and civil aspects.  Completely absent from this factual record is any evidence that the

---

[3] As used herein, the government intends "*Brady* and Rule 16 information" to include
information the government is obliged to produce under Local Rules 116.1 and 116.2.

government misled the defendants about their criminal exposure, hid the involvement of criminal prosecutors, or unfairly attempted to use criminal proceedings to extract a civil settlement.

The U.S. Attorney's Office began investigating the defendants and their affiliates in 2015, including in connection with two civil *qui tam* actions filed before this Court.  *See United States ex rel. Birchall v. KIC Ventures et al.*, Nos. 15-cv-12877-RWZ and 15-cv-12908-RWZ (D. Mass. 2015).  Consistent with settled law about parallel proceedings and with Department of Justice policy mandating such coordination, both civil and criminal AUSAs investigated the matter from the outset.  The civil and criminal prosecutors identified themselves as such in dealing with the defendants (as well as with every witness and every lawyer with whom they interacted).  In June 2017—three-and-a-half years before the events outlined in the defendants' motion—the government issued a subpoena to defendant SpineFrontier (via its parent, KIC Ventures, LLC) pursuant to the Health Insurance Portability & Accountability Act (HIPAA).[4] The HIPAA subpoena expressly stated the government was investigating possible violations of federal health care offenses as defined in the criminal code at 18 U.S.C. § 24(b).  HIPAA subpoenas to defendants Kingsley Chin and Aditya Humad followed in April 2019, and likewise cited the government's investigation of possible violations of criminal law.  *See* Exs. 2, 3, and 4.

The government and defense counsel communicated over the course of several years, during which time the government repeatedly emphasized that the matter had both a civil and criminal aspect.  For example, each defendant signed a tolling agreement with the U.S. Attorney's Office in April 2019—twenty months before the events outlined in the defendants' Motion.  Each tolling agreement explicitly stated the government was investigating possible

---

[4] In situations in which the government is investigating a matter both criminally and civilly, the U.S. Attorney's Office frequently issues HIPAA, rather than grand jury, subpoenas.

violations of criminal statutes (*e.g.*, the Anti-Kickback Statute) and civil statutes (*e.g.*, the False Claims Act). Each tolling agreement further noted the defendants' desire that the government consider additional information "prior to a prosecution decision concerning potential charges, or civil claims, resulting from [the government's] investigation."[5]  Exs. 5, 6, and 7. Each defendant signed a tolling agreement extension in July 2019, when the government again expressly noted that the U.S. Attorney's Office was investigating *both* criminal and civil violations.

In October 2019—fourteen months before the events outlined in the defendants' motion—the government met with counsel to SpineFrontier and its CEO, Kingsley Chin. Following that meeting, on October 17, 2019, defense counsel sent a letter to government attorneys in the criminal *and* civil divisions of the U.S. Attorney's Office, as well as a civil trial attorney at the Department of Justice. Ex. 8. The letter stated:

> When we met, **I raised the companies', and Dr. Chin's, interest in exploring a civil settlement**. **You did not commit fully to the concept** of a civil settlement with SpineFrontier and its affiliates. **I ask that you do so**[,] so that we can pursue the possible terms of such a resolution. This confirmation is particularly important given, as you know, the potential representation/conflict issues that could arise **in light of your statement that Dr. Chin will not, at this time, be part of any civil resolution**.

*Id.* at 2 (emphasis added). Following this October 17, 2019 letter, the U.S. Attorney's Office corresponded with defense counsel by email to clarify her request. Among other things, that email correspondence noted: "While we are willing to discuss a potential resolution with the company, **we are not taking the possibility of criminal charges against the company off the table**. The criminal investigation remains ongoing." Ex. 9 (October 23, 2019 email from

---

[5] Notably, counsel for Aditya Humad who signed Humad's April 16, 2019 tolling agreement is the same counsel who provided a declaration in support of the defendants' instant motion to compel. ECF No. 109. Thus, long before the 2021 settlement discussions described in that declaration, Humad and his counsel were aware of the government's criminal investigation.

government to defense) (emphasis added). Defense counsel responded two days later, stating: "I request that you reconsider the concept of a full resolution for SpineFrontier on a civil basis, as we proposed on October 10." *Id.*

As the defendants were fully aware, two prosecutors in the U.S. Attorney's Office were assigned both criminally ***and*** civilly to SpineFrontier-related matters in the pre-suit, pre-indictment investigative phase. It was only when the government determined that it would file a civil lawsuit against the defendants that, in an abundance of caution, each prosecutor removed himself from the civil case in order to dispel any possible appearance that criminal prosecutors were improperly using the criminal investigation to advance the civil case. Such removal was not legally required,[6] but the government took this action precisely in an attempt to remove even the appearance of anything inappropriate. This separation was in place no later than March 4, 2020, *i.e.*, approximately a year-and-a-half before the defendants' indictment, and more than a year before the June 15, 2021 civil settlement breakdown the defendants' motion references. After the government filed its civil suit, no member of the government's criminal team directed or participated in any civil settlement discussion with the defendants—and the defendants do not contend otherwise.

On April 21, 2022, counsel to SpineFrontier and Kingsley Chin signed a global resolution letter directed to both the civil and criminal government teams. That letter expressly affirmed the following:

> 1. SpineFrontier and Dr. Chin **acknowledge and understand that there are two separate aspects of these matters: criminal and civil**. Any discussions we have with regard to resolving any aspect of these matters are **voluntary** on your clients' part, and either or both of your clients may limit the discussions to only one or the other aspect of these matters, at their option.

---

[6] Tellingly, the defendants' Motion offers no authority to the contrary.

2. **SpineFrontier and Dr. Chin request that the government engage in settlement discussions on a global basis**, including either of the matters described above. To the extent that the settlement discussions relate to the civil cases identified above, SpineFrontier and Dr. Chin request that the government engage with all of the corporate defendants identified in the civil False Claims Act cases (Nos. 15-cv-12887 and -12908).

3. **Either the United States or your clients may terminate these discussions at any time, with regard to either aspect of the discussions**.

4. Nothing contained in this letter shall preclude the United States, or any of its agencies, from taking such actions as it deems necessary to protect the public interest.

Ex. 10 (emphasis added).

While investigating the SpineFrontier kickback scheme, the U.S. Attorney's Office has entered into plea or civil settlement agreements with several third-party surgeons. The civil settlements are public.[7] In each agreement, the settling surgeon made factual admissions—just as the government's civil litigating team evidently requested in negotiating with the defendants. *See* ECF No. 107 at 13 (describing civil litigating team's initial "insistence on factual admissions"). The U.S. Attorney's Office routinely seeks factual admissions of this kind.[8] At

---

[7] The government's press releases described and attached these settlements. *See* https://www.justice.gov/usao-ma/pr/us-attorney-sues-spinal-device-company-and-its-executives-allegations-they-paid-kickbacks *and* https://www.justice.gov/usao-ma/pr/surgeon-agrees-pay-175-million-resolve-allegations-he-accepted-kickbacks-spinefrontier.

[8] *See, e.g.*, Jonathan York and Scott Memmott, "It's Not You, It's Me: Breaking Up With Mass. FCA Prosecutors," Law360 (August 1, 2023), *available at* https://www.law360.com/articles/1703840/it-s-not-you-it-s-me-breaking-up-with-mass-fca-prosecutors. As the article states, "[s]uch **factual admissions have become a staple in FCA [False Claims Act] cases in the District of Massachusetts** . . . . [which] require[s] defendants to admit to and accept responsibility for a core set of facts that give rise to the allegations in order to resolve FCA matters short of litigation." *Id.* (emphasis added).

no time did the government promise any settling surgeon that entering into a civil settlement would prevent the government from pursuing criminal prosecution. Indeed, the surgeon settlement agreements affirmed the exact opposite.[9]

**B.    The Government Has Already Produced Discovery Relating To The Civil Aspects Of The SpineFrontier Kickback Investigation**

The defendants' motion asserts that the "government's obligations to search for and provide *Brady* material are far broader than what they have undertaken," ECF No. 107 at 15, seemingly because they believe that the government has not searched for *Brady* and Rule 16 information in files relating to the civil aspect of the SpineFrontier kickback investigation. *See* ECF No. 107 at 16. This is incorrect. The government has never taken the position, and does not now take the position, that civil aspects of the government's investigation lie beyond the reach of its *Brady* and Rule 16 obligations. The government has already searched those files for *Brady* and Rule 16 information, and the government confirmed as much in its April 18, 2023 discovery letter to the defendants. *See* ECF No. 107-4, ¶ 1 ("The government confirms that, in the course of fulfilling its *Brady* obligations, it has searched all files of all pertinent agencies regardless of whether the investigators worked on this case, the related civil case, or both.").

The defendants rely on *United States v. Bases*, 549 F. Supp. 3d 822 (N.D. Ill. 2021), to claim entitlement to further discovery. ECF No. 107 at 16. In fact, *Bases* shows the government already has complied with its obligations. In *Bases*, the court assessed whether the government had conducted a joint investigation with the Commodity Futures Trading Commission (CFTC) such that the government needed to search CFTC's files for *Brady* material. *Id.* at 825–26. Noting extensive coordination between DOJ and CFTC during fact-finding (which the court

---

[9] In addition to being public, the government produced these surgeon settlement agreements to the defendants in discovery.

tellingly did *not* deem improper), the court found that DOJ and the CFTC carried out a joint investigation and that DOJ therefore had "an affirmative obligation to review materials in the CFTC's possession, custody, or control that were part of the agencies' joint fact-gathering activities and to produce any *Brady* and Rule 16 material not protected by the attorney-client, work-product, or deliberative process privilege." *Id.* at 829. Here, the government has already done the exact equivalent by searching files related to the civil matter.[10] To the extent the defendants' Motion seeks such information, the Court should deny it as moot.

### C.   The Defendants' Attempt To Obtain Communications Among Government Attorneys Is Factually And Legally Unsupportable

The defendants' motion appears aimed at information well beyond *Brady* and Rule 16 information, going so far as to seek copies of "**all communications**" between the government's criminal and civil attorneys "about the subject of this action." ECF No. 107 at 10 (emphasis added). There is no legal basis for prying open privileged communications and work product from the government's attorneys litigating this case and the civil matter. Nor is there any factual support for the defendants' alleged need "to build a record of possible prosecutorial misconduct" (ECF No. 107 at 17) on account of so-called "intermingling" of the civil and criminal matters.

To begin, there is "nothing improper about the government undertaking simultaneous criminal and civil investigations." *United States v. Stringer*, 535 F.3d 929, 933 (9th Cir. 2008).

---

[10] The same response applies to *United States v. Martoma*, 990 F. Supp. 2d 458, 462 (S.D.N.Y. 2014), which the defendants' Motion also cites. The question in *Martoma* was whether the prosecuting U.S. Attorney's Office (USAO) was obliged to search for discoverable material in communications between the SEC and cooperating witnesses' counsel that were "in the sole possession of the SEC." 990 F. Supp. 2d at 459. The USAO resisted, but the court found that the USAO and the SEC had engaged in a joint investigation. *Id.* at 460. For that reason, the court required the USAO to search SEC files for discoverable information. The government here has already done the equivalent by searching for *Brady* and Rule 16 information among files relating to the civil aspect of the SpineFrontier kickback investigation.

"It would stultify enforcement of federal law to require a government agency . . . invariably to choose either to forego recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the outcome of a criminal trial." *United States v. Kordel*, 397 U.S. 1, 10 (1970). *See also SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1374 (D.C. Cir. 1980) (en banc) ("In the absence of substantial prejudice to the rights of the parties involved, such parallel proceedings are unobjectionable under our jurisprudence."). As the Supreme Court explained in *Kordel*:

> We do not deal here with a case where the Government has brought a civil action solely to obtain evidence for its criminal prosecution or has failed to advise the defendant in its civil proceeding that it contemplates his criminal prosecution; nor with a case where the defendant is without counsel or reasonably fears prejudice from adverse pretrial publicity or other unfair injury; nor with any other special circumstances that might suggest the unconstitutionality or even the impropriety of this criminal prosecution.

397 U.S. at 11–12 (footnotes omitted). Each of these precepts squarely applies here.

The government is, of course, prohibited from utilizing civil proceedings in bad faith or tricking a party into believing a matter has no criminal component. "[C]ourts only find bad faith 'where the government made <u>affirmative misrepresentations</u> or conducted a civil investigation <u>solely</u> for the purpose of advancing a criminal case,' or where the Government has otherwise engaged in some form of fraud, trickery, or deceit." *United States v. Ogbazion*, No. 3:15-cr-104, 2016 WL 6070365, at *3 (S.D. Ohio Oct. 17, 2016) (collecting authorities, emphasis in original). Where the government is candid about the existence of a criminal inquiry—as it was here—defendants can act accordingly. That is, "[w]hen a defendant knows that he has been charged with a crime, or that a criminal investigation has targeted him, he can take actions to prevent the providing of information in an administrative or civil proceeding that could later be used against him in the criminal case. When a defendant does not know about the criminal investigation, the

danger of prejudice increases." *United States v. Scrushy*, 366 F. Supp. 2d 1134, 1138–39 (N.D. Ala. 2005) (finding improper comingling where defendant was not informed of criminal investigation before civil deposition whose location SEC moved to support venue for an undisclosed criminal matter).

Consistent with this settled law, Department of Justice policy directs criminal and civil prosecutors to engage in early, effective, and regular communication between criminal, civil, and agency attorneys. This coordination should begin "[f]rom the moment of case intake" and continue through the investigation and resolution phase. Justice Manual 1-12.000, *available at* https://www.justice.gov/archives/usam/archives/usam-1-12000-coordination-parallel-criminal-civil-regulatory-and-administrative-proceedings. Doing so "permits consideration of the fullest range of the government's potential remedies and promotes the most thorough and appropriate resolution in each case." *Id.* Accordingly, the U.S. Attorney's Office for the District of Massachusetts assigns Assistant U.S. Attorneys in the Office's Affirmative Civil Enforcement Unit to investigate healthcare fraud matters (including those, like this one, that arise from a *qui tam* complaint) criminally **and** civilly.

As described above, the government has not hidden the existence of both a criminal and civil aspect of the investigation into the SpineFrontier kickback scheme. The government's attorneys, including those who initially were cross-designated, never misled the defendants about the capacity in which they were communicating with any party. This much is obvious from the repeated communications among counsel prior to the government's civil complaint and indictment. *See, e.g.*, Exs. 8, 9 (correspondence regarding defendants' request for civil settlement despite government reluctance and government emphasis that criminal investigation was ongoing); Exs. 5, 6, and 7 (defendants' tolling agreements defining the matter with reference

to both civil and criminal statutes); Exs. 2, 3, and 4 (HIPAA subpoenas citing investigation of possible criminal offenses). Far from "fraud, trickery, or deceit," *Ogbazion*, 2016 WL 6070365, at *3, the government went out of its way to notify defense counsel of the prospect for both civil and criminal enforcement actions from the outset.

Nor has the government ever sought to use the possibility of criminal charges to coerce any party into a civil settlement.[11] As described above, it has been the defendants who insistently asked the government to entertain a civil settlement—even as the government expressed its reservations and noted the ongoing criminal inquiry. Exs. 8, 9. And, as recently as April 2022, SpineFrontier and Chin expressly (1) requested that the government negotiate a global civil-criminal resolution; (2) agreed that the matters are separate; and (3) confirmed their understanding that they could terminate those negotiations, in whole or part, at any time. Ex. 10. Moreover, if the defendants in the civil matter did not freely and voluntarily wish to settle, they could avoid the prospect of litigating both cases at once by seeking a stay of the civil matter. They have never done so.[12] Instead, the defendants by all appearances continue to pursue the (still non-final) civil settlement, rather than seeking a stay or a civil trial. Simply put, there is no credibility to the defendants' suggestion that they were improperly "pressured" by the criminal

---

[11] The notion that this was the government's motivation for seeking an indictment is belied by the fact that grand jury testimony—as the defendants know from the government's extensive early discovery—predates the government's civil complaint by two years.

[12] Counsel to the defendants represented to this Court at a joint civil-criminal status conference on August 11, 2022 that it was ***the defendants'*** preference that the civil case proceed before the criminal trial whereas the government's preference was the opposite.

indictment to settle civilly.[13]

The government has likewise never "tied the avoidance of criminal charges to a favorable civil resolution" with any potential witness or third party.  ECF No. 107 at 14.  The defendants' Motion does not identify which individual's counsel purportedly said otherwise.  *See id.* at 14–15.  That did not occur, and the civil settlement agreements that the government reached with certain surgeons who took kickbacks from the defendants expressly disclaim that those settlements absolve any person's criminal liability.  *See* note 7, *supra*.  Regardless, to the extent the defendants believe something else occurred, they already have all the discovery that is owed because—to reiterate—the government did not exclude from its search for *Brady* and Rule 16 material any information arising from the work of civil (or cross-designated) attorneys, staff, or agents involved in the SpineFrontier kickback matters.

***

The defendants' Motion presents an astonishingly incomplete rendition of the facts in order to insinuate that government misconduct could have occurred at some time and in some way—and on that basis to bootstrap a vast discovery request to rummage through opposing

---

[13] The defendants' Motion occasionally argues the inverse point: that civil negotiations are unfairly prejudicing the defendants' rights in this criminal case.  These scattershot arguments are equally unpersuasive.  While the defendants point to the civil litigating team's (now withdrawn) efforts to secure factual admissions in a settlement agreement, *see* ECF No. 107 at 13, that strategic approach was consistent with a larger policy shift of the U.S. Attorney's Office's civil division—which is a matter of public record.  *See* note 8, *supra*.  The defendants also point to a clause of the draft civil settlement agreement concerning the Fifth and Eighth Amendments.  These provisions—which are boilerplate in federal False Claims Act civil settlements across the country—merely provide that a settling civil defendant cannot argue that the government's criminal prosecution of them is barred by the fact that the government resolved with them civilly.  To the extent these or any other provisions in the draft civil settlement agreement are unacceptable to the defendants, they remain free not to settle the civil action.

counsel's privileged communications and work product.  There is no basis for doing so.  *See, e.g.*, *Caro-Muniz*, 406 F.3d at 29 ("[A] defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the government's files.").  Nor is there any substance to the defendants' insinuation that the government has somehow improperly "intermingled" civil and criminal matters.  Simultaneous pursuit of civil and criminal remedies is permissible under well-settled law and mandated under Department of Justice policy, provided the government does not attempt to trick a party about the existence of (or potential for) the parallel proceeding.  Here, the government plainly has not misled the defendants: the government has at all times been forthright about the dual nature of the investigation.  Most importantly for purposes of defendants' motion, the government ***already*** has searched files relating to the civil aspects of the investigation.  The defendants are entitled to nothing further.

## CONCLUSION

For the foregoing reasons, the Court should deny the defendants' motion to compel in its entirety.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:    */s/ David J. Derusha*
       PATRICK CALLAHAN
       DAVID J. DERUSHA
       ABRAHAM R. GEORGE
       CHRISTOPHER LOONEY
       Assistant U.S. Attorneys

Dated: August 21, 2023

19