# EXHIBIT 2

June 27, 2017 – KIC Ventures HIPAA Subpoena

# UNITED STATES OF AMERICA
## DEPARTMENT OF JUSTICE

## SUBPOENA DUCES TECUM

**TO:** KIC Ventures, LLC

*YOU ARE HEREBY COMMANDED TO APPEAR BEFORE Miranda Hooker and Abraham R. George, officials of the United States Department of Justice, and you are hereby required to bring with you and produce the following:*

*See attached Schedule A*

*which are necessary in the performance of the responsibility of the United States Department of Justice to investigate Federal health care offenses, defined in 18 U.S.C. § 24(a) to mean violations of, or conspiracies to violate:   18 U.S.C. §§ 669, 1035, 1347, or 1518; and 18 U.S.C. §§ 287, 371, 664, 666, 1001, 1027, 1341, 1343, or 1954 if the violation or conspiracy relates to a health care benefit program (defined in 18 U.S.C. § 24(b)).*

**PLACE AND TIME FOR APPEARANCE:**
United States Attorney's Office, One Courthouse Way, Suite 9200, Boston, MA 02210, on July 25, 2017, at 10 o'clock A.M, or, at your option, the documents may be mailed to the Assistant United States Attorney listed at:

> Patrick Callahan
> United States Attorney's Office
> 408 Atlantic Avenue, Room 530
> Boston, MA 02210

if received prior to the date and time for appearance.

Failure to comply with the requirements of this subpoena will render you liable to proceedings in the District Court of the United States to enforce obedience to the requirements of this subpoena, and to punish default or disobedience.

Issued under authority of Sec. 248 of the Health Insurance
Portability & Accountability Act of 1996, Public Law No. 104-91
(18 U.S.C. § 3486)



*IN TESTIMONY WHEREOF*

*K. Nathaniel Yeager, Health Care Fraud Chief, the undersigned official of the UNITED STATES DEPARTMENT OF JUSTICE, has hereunto set his hand this  27  day of June, 2017.*

_____
(SIGNATURE)

FORM CRM-180
MAR.. 97

**UNITED STATES OF AMERICA
DEPARTMENT OF JUSTICE**

**SUBPOENA DUCES TECUM**

*Upon contumacy or refusal to obey, this subpoena shall be enforceable by order of the appropriate United States District Court.*

**RETURN OF SERVICE**

I, being a person over 18 years of age, hereby certify that a copy of this subpoena was duly served on the person named herein by means of --

1. personal delivery to an individual, to wit:

_____
(Name)

_____
(Title)

_____
(Address)

2. personal delivery to an address, to wit:

_____

_____
(Description of premises)

_____
(Address)

3. registered or certified mailing to:

_____
(Name)

_____
(Address)

( ) a.m. at ____  ( ) p.m. on ____

_____
(Signature)

_____
(Title)

**Schedule A**

**I.    DEFINITIONS**

A.    "Document(s)" means, without limitation, any written, printed, typed, photographed, recorded, transcribed, taped, filmed, or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created which have any non-conforming notes or other markings, including any additions, deletions, alterations, or notations, as well as the backsides of any communication or representation which contains any of the above. "Document" also includes all attachments, enclosures, or other matter affixed to or incorporated by reference within documents responsive to this Schedule, including, but not limited to, any pages that show who reviewed, approved or rejected a particular document.

By way of example, "document(s)" includes, but is not limited to: writings; correspondence; memoranda; notes; drafts; records; files; letters; envelopes; messages; electronic mail; electronic messages; text messages; instant messages; analyses; agreements; accounts; working papers; reports and summaries of investigations; trade letters; press releases; comparisons; books; ledgers; journals; bills; vouchers; checks; statements; worksheets; summaries; notices; drawings; diagrams; graphic presentations; instructions; manuals; calendars; diaries; telephone message records or logs; routing slips; activity reports; articles; magazines; newspapers; brochures; guidelines; notes or minutes of meetings or of other communications of any type, including inter- and intra-office or Company communications; reports; plans; questionnaires; forecasts; briefing materials; surveys; charts; graphs; diagrams; compilations; computations; photographs; films or videos; tapes; discs; data cells; databases; spreadsheets;

software; bulletins; voice mails; information stored or maintained by electronic data processing or word processing equipment; electronic claims filings; invoices; computer and network activity logs; all other data compilations from which information can be obtained including electromagnetically sensitive stored media such as floppy disks, hard disks, hard drives and magnetic tapes; Web pages; any preliminary versions, drafts or revisions of any of the foregoing; and all attachments to any of the items set forth in this paragraph.

    B.    "You" or "KIC Ventures" or "the Company" means any and all of the following:

        1.    the entity on which this subpoena was served, irrespective of the name under which it has operated;

        2.    KIC Ventures, LLC, and any of its predecessors, parents, subsidiaries, affiliates, segments, departments, branches, groups, operations, units, plants, and divisions, both presently existing and those which previously existed, as well as any joint ventures of which any of them is a part; and

        3.    each of their present or former officers (including Kingsley Chin and Aditya Humad), directors, representatives, partners, employees, attorneys, consultants, contractors, or agents acting or purporting to act or appearing to act on behalf of the Company, whether or not their actions were authorized by the Company or were within the proper scope of their authority.

    C.    "Employee" means any person, including but not limited to any independent contractor or agent, all past and present directors, officers, agents, representatives, attorneys, accountants, advisors, and consultants who acted or purported to act on behalf of the Company

or who have performed any service for the Company or under its name (whether on a full-time, part-time, piece-work, commission, or other basis, and whether paid or unpaid).

D.  "Person" includes within its meaning natural persons and corporations, companies, partnerships, unincorporated business associations and any other entity composed of natural persons.

E.  "Concerning" means referring to, evidencing, describing, or constituting.

F.  "Communication" means any transmission or exchange of information between two or more persons orally or in writing and includes, without limitation, any conversation or discussion, whether face-to-face or by means of telephone or other media, whether by chance or by design.

G.  "SpineFrontier" means SpineFrontier, Inc. and any of its predecessors, parents, subsidiaries, affiliates, segments, departments, branches, groups, operations, units, plants, and divisions, both presently existing and those which previously existed, as well as any joint ventures of which any of them is a part; and each of their present or former officers (including Kingsley Chin and Aditya Humad), directors, representatives, partners, employees, attorneys, consultants, contractors, or agents acting or purporting to act or appearing to act on behalf of SpineFrontier, whether or not their actions were authorized by SpineFrontier or were within the proper scope of their authority.

H.  "IME" means Impartial Medical Experts, LLC and any of its predecessors, parents, subsidiaries, affiliates, segments, departments, branches, groups, operations, units, plants, and divisions, both presently existing and those which previously existed, as well as any joint ventures of which any of them is a part; and each of their present or former officers (including Vanessa Dudley), directors, representatives, partners, employees, attorneys,

3

consultants, contractors, or agents acting or purporting to act or appearing to act on behalf of IME, whether or not their actions were authorized by IME or were within the proper scope of their authority.

## II. INSTRUCTIONS

A. If a claim of privilege is asserted in response to any document requested by this subpoena, and such document, or any part thereof, is not produced on the basis of such claim, for each such document or part thereof that is not produced, you are directed to provide a privilege log wherein you identify the type of document being withheld (*e.g.*, letter, memorandum, handwritten notes, marginalia, etc.), all actual and intended recipients of the document, its date, and the specific privilege being asserted, all with sufficient particularity so as to allow the Department of Justice, and potentially the Court, to assess the validity of the claim of privilege. **In addition, where a document is pulled for privilege, please insert a colored piece of paper containing the same bates-number as the document pulled so that it is clear from whose files the privileged documents were pulled.**

B. The words "and" and "or" in this subpoena shall be read in both the conjunctive and the disjunctive (*i.e.*, "and/or"), so as to give the document request its broadest meaning.

C. The term "any" shall be construed to include the word "all" and the term "all" shall be construed to include the word "any."

D. Scope of search required: This subpoena calls for all documents in your possession, custody or control, including, but not limited to, your officers, directors, employees, agents, consultants and contractors. You are required to search all files, including electronic sources, reasonably likely to contain responsive documents, including files left behind by former officers, directors, agents and employees.

4

E. Manner of production: All documents produced in response to this subpoena shall comply with the following instructions:

1. You shall conduct a search for responsive documents in a manner sufficient to identify the source and location where each responsive document is found.

2. All documents produced in response to this subpoena shall be segregated and labeled to show the document request to which the documents are responsive and the source and location where the document was found.

3. To the extent that documents are found in file folders, computer disks, hard drives and/or other storage media which have labels or other identifying information, the documents shall be produced with such file folder and label information intact.

4. To the extent that documents are found attached to other documents, by means of paper clips, staples or other means of attachment, such documents shall be produced together in their condition when found.

F. In the event there are no documents responsive to a particular request, please specify that you have no responsive documents.

G. If you know of documents you once possessed or controlled, but no longer possess or control, which would have been responsive to this subpoena, state what disposition was made of such documents, including identification of the persons who are or are believed to be in possession or control of such documents currently.

H. To facilitate the handling and return of the submitted documents, please mark each page with an identifying logo or the first three letters of your Company's name and number

each page sequentially beginning with "000001." The marks should be placed in the lower right hand corner of each page but should not obscure any information on the document. All documents should be produced in enclosures bearing the name of your Company, the date of the subpoena and the paragraphs of the subpoena to which the documents respond.

### III. TIME PERIOD

Unless otherwise specified, the relevant time period for each document request in this subpoena shall be January 1, 2011, through the present, and shall include all documents created or prepared during that period, or referring or relating to that period, regardless of when the document was created or prepared.

### IV. DOCUMENTS TO BE PRODUCED

1. Management and organizational charts, including documents sufficient to identify and describe the Company's (a) management structure and management personnel, and (b) corporate structure, including relationships to parents, subsidiaries, and affiliates, and the legal status of each such entity.

2. All financial statements, audited and unaudited.

3. Articles of Incorporation.

4. All Board of Directors' meeting minutes and notes.

5. All documents concerning compensation paid to KIC Ventures' sales representatives, the determination of that compensation, and the calculation of that compensation, including but not limited to all documents concerning sales representatives' sales incentives and/or bonuses.

6. Documents sufficient to identify all banks accounts used by SpineFrontier, KIC Ventures, and IME.

7. All agreements, contracts, and memorandums of understanding (whether memorialized in a formal contract or in emails or any other form) between or among any of the following: SpineFrontier, KIC Ventures, and IME.

8. All communications between or among any of the following: SpineFrontier, KIC Ventures, and IME..

9. All documents concerning payments from SpineFrontier or KIC Ventures to IME.

10. All contracts, agreements, and arrangements between SpineFrontier, IME or KIC Ventures and physicians, physician practices, employees of physician practices, or any other health care providers.

11. All documents concerning remuneration, such as payments, travel, entertainment or gifts, provided to health care providers (including their practices and employees of their practices) by SpineFrontier, IME or KIC Ventures, including but not limited to (a) all records of such remuneration, (b) all communications relating to such remuneration, and (c) all analyses, reports, guidance, or studies concerning such remuneration.

12. All documents concerning the physicians listed immediately below (the "Physicians"), including but not limited to all communications with or concerning the Physicians.

| Physician Name |
|---|
| Dr. Agha Khan |
| Dr. Alexios Apazidis |
| Dr. Amar Rajadhyaksha |
| Dr. Amir Malik |
| Dr. B. Reece |
| Dr. Bonaventure Ngu |
| Dr. Carl Bruce |
| Dr. Chris Karas |
| Dr. Craig Meyer |
| Dr. Darren Lebl |
| Dr. Dhruv Pateder |
| Dr. Dwight Tyndall |
| Dr. Fritz Pennings |
| Dr. Gary Ghiselli |
| Dr. Gbolahan Okubadejo |
| Dr. Henry Small |
| Dr. Jacob Rosenstein |
| Dr. Jason Montone |
| Dr. Jason Tinley |
| Dr. Jeffery Moore |
| Dr. Jeffrey Bash |

| |
|---|
| Dr. Jeffrey Carlson |
| Dr. Jeremy Wang |
| Dr. John Atwater |
| Dr. John Shiau |
| Dr. Joseph Aferzon |
| Dr. Joseph Shehadi |
| Dr. Josue Gabriel |
| Dr. Mario Ammirati |
| Dr. Mark McFarland |
| Dr. Matthew Wasserman |
| Dr. Michael Lowry |
| Dr. Mike Murray |
| Dr. Neil Badlani |
| Dr. Paul DeGenova |
| Dr. Paul Vaughn |
| Dr. Ravi Ponnapan |
| Dr. Richard Francis |
| Dr. Roger Sung |
| Dr. Saqib Siddiqui |
| Dr. Sheeraz Qureshi |
| Dr. Steve Anagnost |
| Dr. Steven Valentino |
| Dr. Thomas Reilly |
| Dr. Tony Alastra |
| Dr. Vivek Kushwaha |
| Dr. Wale Sulaiman |
| Dr. Warren Yu |

13. All documents concerning or referencing any work performed by the Physicians for SpineFrontier, IME or KIC Ventures.

14. All documents concerning sales of SpineFrontier devices to the Physicians.

15. All internal policies, procedures, instructions, or guidance regarding remuneration to health care providers.

16. All documents concerning SpineFrontier's, KIC Ventures', or IME's compliance program, including any compliance trainings.

17. All documents, including internal communications, instructions, directives, training materials, analyses, policies, or procedures, concerning SpineFrontier's, KIC Ventures' or IME's compliance with the Stark Law (42 U.S.C. § 1395nn), the Anti-Kickback statute (42 U.S.C. § 1320a-7b(b)), and the Physician Payments Sunshine Act.

18. All documents and communications, including any complaints, concerns, inquiries, audits, investigations or reviews, concerning alleged or potential violations by SpineFrontier, KIC Ventures, or IME of any federal statute or regulation, including, but not limited to, the Stark Law (42 U.S.C. § 1395nn), the Anti-Kickback statute (42 U.S.C. § 1320a-7b(b)), and the Physician Payments Sunshine Act.

19. All documents concerning any opinions, guidance, or advisories received from any source, including HHS, CMS or its contractors, relating to SpineFrontier's, KIC Ventures, or IME's compliance or noncompliance with the Stark Law (42 U.S.C. § 1395nn), the Anti-Kickback statute (42 U.S.C. § 1320a-7b(b)) or the Physician Payments Sunshine Act.

20. Documents sufficient to identify SpineFrontier's, KIC Ventures' or IME's document retention policy, as well as any documents concerning destruction, mutilation or alteration of documents falling within the description of any paragraph of this subpoena, including but not limited to the identity of the person or persons conducting, directing or otherwise authorizing such destruction, mutilation or alteration; the identity of the person or persons participating in the decision to effect such destruction, mutilation or alteration; the date of each such decision; the date of each such destruction, mutilation or alteration; the identity of the person carrying out such destruction, mutilation or alteration; the means used to accomplish such destruction, mutilation or alteration; and any other circumstances concerning the destruction, mutilation or alteration.

21. All documents concerning any investigation of KIC Ventures or employees of KIC Ventures by the FBI, HHS-OIG, or the U.S. Attorney's Office.