UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Criminal No. 1:21-cr-10256-IT |
| KINGSLEY R. CHIN, ADITYA HUMAD, and SPINEFRONTIER, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' SUPPLEMENTAL RESPONSE TO NEW ARGUMENTS BY INTERVENOR JASON MONTONE CONCERNING DEFENDANTS' MOTION TO COMPEL DISCOVERY FROM GOVERNMENT**

Defendants Kingsley R. Chin, Aditya Humad, and SpineFrontier, Inc. respectfully submit this supplemental response to the new argument made by the Intervenor at the hearing on September 13, 2023. During the hearing, Intervenor argued for a heightened showing before this Court would conduct an *in camera* inspection. This argument contradicts both Supreme Court and First Circuit precedent.

Despite the Intervenor's invocation of *United States v. Zolin*, 491 U.S. 554 (1989), at the hearing, that decision does not support his argument. Indeed, *Zolin* has led to a line of cases that encourages an *in camera* review. *Zolin* held that "[t]he threshold we set, in other words, need not be a stringent one" to trigger an *in camera* review. *Id.* at 572.

Since *Zolin*, the First Circuit has "encouraged, not discouraged" *in camera* reviews:

> [M]ost important, the very purpose of conducting an *in camera* review is to determine which, if any, of a group of documents are privileged. Given this prudential purpose, **in camera reviews should be encouraged, not discouraged**. In that spirit, federal courts commonly – and appropriately – conduct such reviews to determine whether particular documents are or are not privileged. *See [Zolin, 491 U.S. 554,]* 569, 109 S. Ct. 2619 (noting that the Court "has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for in camera inspection, and this practice is well

established in the federal courts" (internal citations omitted)); *cf. In re Grand Jury Subpoenas*, 123 F.3d 695, 699–700 (1st Cir.1997) (**remanding for failure to conduct an *in camera* review**).

> When, as in this case, the assertion of privilege is subject to legitimate dispute, the desirability of in camera review is heightened. *See United States v. Smith*, 123 F.3d 140, 151 (3d Cir.1997). Even if the parties do not explicitly request such a step, a district court may be well advised to conduct an in camera review. The court below acted wisely and within the scope of its discretion in doing so.

*In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 70 (1st Cir. 2011) (emphases added; editing omitted).

This Court has similarly recognized the value of *in camera* inspections, applying the First Circuit's "'very relaxed test' and, because only the judge is afforded such access, properly so":

> To justify a *Zolin* review, the government must set forth a factual basis
>
> > to support a good-faith belief by a reasonable person [that] in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.
>
> *Zolin*, 491 U.S. at 572, 109 S. Ct. 2619 (emphasis added); *see also In re Grand Jury Proceedings*, 417 F.3d 18, 22 (1st Cir. 2005) (observing that use of the term "may" counsels **a "very relaxed test" and, because only the judge is afforded such access, properly so**)

*United States v. Joyce*, 311 F. Supp. 3d 398, 407 (D. Mass. 2018) (emphasis added). For that reason, *in camera* review of materials subject to privilege claims does not, as Intervenor erroneously asserted, infringe on the privilege in any way. *See Zolin*, 491 U.S. at 568-69.

At the hearing, the Intervenor also misplaced reliance on a portion of *United States v. Gibson*, No. 1:15-CR-10323-IT, 2016 WL 3566198 (D. Mass. June 24, 2016), in his efforts to escape the First Circuit's encouragement of *in camera* inspections.[1] As discussed at the hearing,

---

[1] The Intervenor inaccurately characterized the circumstances underlying *Gibson* in several ways. For example, in *Gibson*, Judge Talwani described the detailed agreement between the government and the law firm as providing much narrower rights of access by the government

*Gibson* conclusively establishes that the government's literal possession and control over the imaged copy of the Intervenor's phone triggers the obligation for a review of the underlying materials. In *Gibson*, however, because of the scope of materials on which the defendants were focused, the defendants did not push for an *in camera* inspection before the production of a privilege log. As the government noted at the recent hearing in the present matter, the defendants in *Gibson* were not focused on exculpatory communications with or through the witness's counsel, as the defendants are here. Also unlike in *Gibson*, the defendants here are pressing for a more expeditious resolution of *Brady* issues. Nothing in Judge Talwani's decision in *Gibson* runs contrary to the *Zolin* line of cases that favor prompt *in camera* inspections based on low-threshold showings in support of the request.

Finally, the Intervenor failed to justify its failure to provide a privilege log or clear description of the documents at issue in support of his belated objection, despite at least an indisputable month to do so. *See In re Grand Jury Subpoena*, 274 F.3d 563, 568 (1st Cir. 2001) ("Despite this knowledge" of the disclosure of privileged materials at stake, "the intervenors made no effort to prepare a privilege log. That omission is fatal."). Unlike the law firm server at issue in *Gibson*, here the Intervenor has possessed his original phone and could have supplied the

---

than the Intervenor described at the hearing, but still found the government in "possession" of the materials that triggered *Brady* obligations:

> The protocol permitted the government to access the Retained Copy "in a subsequent criminal proceeding," but the government, Behman and BH agree that the purpose of this provision of their protocol was limited to enabling the government to establish the authenticity of any records from the server if such authenticity was challenged.

*Gibson*, 2016 WL 3566198, at *1. The Intervenor has also failed to demonstrate any cognizable form of prejudice that could arise from an *in camera* review here. The Intervenor appears simply to be helping the government as a cooperating witness whose sentencing remains open.

3

Court with any privilege log or the like to support his request for any limits on an *in camera* review as to whether items are privilege or not, and whether any privilege must yield to *Brady* obligations.

## Conclusion

Based on the foregoing, this Court should conduct a prompt *in camera* inspection of the limited communications at issue to determine which, if any, are privileged, and whether any privilege must yield in whole or part based on the defendants' *Brady* and Confrontation Clause rights. The defendants remain prepared to provide a supplemental description of potential *Brady* categories *ex parte* upon a request by the Court.

Respectfully submitted,

/s/ Joshua L. Solomon
Barry S. Pollack (BBO #642064)
Joshua L. Solomon (BBO #657761)
POLLACK SOLOMON DUFFY LLP
31 St. James Avenue, Suite 940
Boston, MA 02116
(617) 439-9800
bpollack@psdfirm.com
jsolomon@psdfirm.com

/s/ Daniel N. Marx
Daniel N. Marx (BBO #674523)
William W. Fick (BBO #650562)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA  02110
(857) 321-8360
dmarx@fickmarx.com
wfick@fickmarx.com

## Certificate of Service

The undersigned certifies that this document, filed through the ECF system, will be electronically served on counsel who are registered users of ECF on September 14, 2023.

                                              /s/ Joshua L. Solomon