### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KINGSLEY R. CHIN,<br>ADITYA HUMAD, and<br>SPINEFRONTIER, INC.,<br><br>Defendants. | Criminal No. 1:21-10256-IT |

### GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A FINDING OF WAIVER OF THE ATTORNEY–CLIENT PRIVILEGE OR, IN THE ALTERNATIVE, TO SET A DEADLINE FOR DEFENDANTS TO ADVISE THE COURT WHETHER THEY WILL RELY ON ADVICE-OF-COUNSEL OR INVOLVEMENT-OF-COUNSEL

The government hereby submits this memorandum of law in support of its request that the Court enter a finding that the defendant, SpineFrontier, Inc., and its affiliated entity Impartial Medical Experts ("IME"), waived privilege over the subject-matter of opinion letters. SpineFrontier and IME obtained these letters from an outside law firm, Strong & Hanni. These letters contain legal advice and guidance obtained by SpineFrontier and IME from their counsel regarding the legality of consulting agreements between, on the one hand, SpineFrontier and/or IME, and, on the other, surgeon-consultants that SpineFrontier and IME enrolled, or sought to enroll, in the unlawful kickback scheme. SpineFrontier and IME then disseminated these letters to prospective doctor-consultants as a means to provide a veneer of legitimacy to their illegal kickback scheme.

By doing so, SpineFrontier and IME made representations to these doctors and to the world at large that—relying on the advice of counsel—their course of conduct was legal. As a result, SpineFrontier and IME waived privilege as to the subject matter of those opinion letters

because, as courts have explained, parties "cannot claim [they] relied in good faith on the advice of counsel while using the privilege to prevent inquiry into the nature of [their] interactions with that counsel." *United States v. Gorski*, 36 F. Supp. 3d 256, 268 (D. Mass. 2014).

In the alternative, the government requests that the Court set a deadline of sixty days before trial for the defendants to advise the Court and the government whether they will seek to introduce evidence of advice-of-counsel or involvement-of-counsel at trial.[1]  This amount of time will ensure that, if the defendants determine that they will advance either argument, there is sufficient time for the government to review all available materials the defendants produce.

This request is consistent with weight of the law and well-established practice in federal courts; it would be fundamentally unfair, and contrary to law, to permit the defendants to ambush the government at trial with claims of advice-of-counsel or involvement-of-counsel, without leaving the government sufficient time to review, analyze, and incorporate materials over which the privilege would then be waived.  *See In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 23-24 (1st Cir. 2003) (implied waivers of attorney client privilege "are almost invariably premised on fairness concerns") (citing *von Bulow v. von Bulow*, 828 F.2d 94, 101-03 (2d Cir. 1987)); *see also Gorski*, 36 F. Supp. 3d at 268 (defendant cannot use privilege as sword and shield, and cannot selectively waive privilege) (citation omitted). Moreover, an election to rely on advice-of-counsel or involvement-of-counsel made at or close to the start of trial could result in delays during trial.

---

[1] Courts have referred to advice-of-counsel and involvement-of-counsel as "defenses," even though "evidence concerning the presence, involvement and even advice of lawyers in relevant events is viewed best as evidence probative of the defendant's intent . . . or lack thereof."  *United States v. Bankman-Fried*, 2023 WL 6392718, at *1 (S.D.N.Y. Oct. 1, 2023).

**BACKGROUND**

On August 30, 2021, a grand jury in this District indicted defendants SpineFrontier, Inc., Kinglsey Chin (SpineFrontier's founder, principal owner, President, and CEO), and Aditya Humad (SpineFrontier's CFO and Vice President of Business Development) with one count of Conspiracy to Violate the Anti-Kickback Statute ("AKS"), 18 U.S.C. § 371, six counts of Violations of the AKS, 42 U.S.C. § 1320a-7b(b)(2), and one count of Conspiracy to Commit Money Laundering, 18 U.S.C. § 1956(h).

The eight-count Indictment alleges, in short, that the defendants "paid and directed the payment of millions of dollars in bribes to surgeons, including Surgeons 1-7, pursuant to a sham consulting program that paid those surgeons between approximately $250 and $1,000 for each hour the surgeon supposedly spent performing consulting services."  Dkt. No. 1, ¶ 29.  The defendants did so in order to enrich themselves by seeking to induce and reward surgeons' use of SpineFrontier's products in spine surgeries.  Dkt. No. 1, ¶¶ 27, 28.  The Indictment further alleges that the defendants held out a company that Chin owned and controlled and that Humad operated (along with others), IME, as a separate and independent entity from SpineFrontier, through which surgeons could report and submit their purported consulting hours.  Dkt. No. 1, ¶¶ 4, 37.

To promote the scheme, SpineFrontier and IME obtained letters from their outside counsel, Strong & Hanni, opining on the legality of the proposed consulting agreements between SpineFrontier and IME, on the one hand, and the surgeon/consultants on the other.  These letters, which defendants referred to as "legal opinion letter[s]" and "our lawyer's Opinion Letter[s]", represented that Strong & Hanni had reviewed the proposed consulting agreement between IME and the doctor-consultants, and had reached the opinion that:

> Based upon such examination of law as we deemed necessary and subject
> to the assumptions and qualifications set forth below, we are of the view
> that the Agreement, as drafted (a) complies with 42 U.S.C. 1395nn(a)(1)
> (i.e. the Stark Law), 42 U.S.C. 1320a-7b(b) (i.e. the Anti-Kickback
> Statute, and 42 C.F.R. Parts 402 and 403 (i.e. the Physician Payments
> Sunshine Act); and (b) meets the requirements set forth under 42 C.F.R.
> Part 1001.952(d) and 42 U.S.C. 1395nn(e)(3).

Ex. A at 1, 2 (8/25/17 Humad email to clinical advisors attaching "our lawyer's Opinion Letter on the IME Consulting Agreement"); Ex. B at 1, 3 (10/8/13 email copying Chin and Humad and enclosing "IME legal opinion letter"); *see also* Ex. C at 3 (7/15/15 email copying Humad and Chin and attaching Strong & Hanni opinion letter at request of SpineFrontier). After obtaining these opinion letters from outside counsel, SpineFrontier, IME, and their employees distributed these Strong & Hanni opinion letters to surgeon-consultants as part of their efforts to enroll the doctors in their sham consulting program. Internally at SpineFrontier, the sales team and defendants Chin and Humad discussed the consulting program as a "sales tool" to be used by the sales team: "[Defendant Chin:] In our sales model[,] the investment opportunity and consultant fees are two effective tools. The rise of the LES Society and product development and research opportunities are a close second long before we get to discussing specific products." Ex. D (2/21/13 Chin email to "SalesTeam@spinefrontier").

## ARGUMENT

**I.      The Court Should Find That Defendants Waived the Attorney-Client Privilege By Disclosing the Strong & Hanni Opinion Letters to Third-Party Surgeons and Require Production of All Communications Between Defendants and Their Attorneys Relating to the Subject Matter Addressed in Those Letters**

As defendants themselves have explained, it "is axiomatic that, '[g]enerally, disclosing attorney-client communications to a third party undermines the privilege.'" *See* Dkt. 107, Defs'

Mot. to Compel at 9 (quoting *United States v. Cavallaro*, 284 F.3d 236, 246-47 (1st Cir. 2002)).[2] By selectively obtaining letters from their attorneys at Strong & Hanni containing legal opinions regarding the legality of putative consulting agreements between IME and surgeon-consultants and then disclosing those opinions to surgeon-consultants, the defendants waived the privilege over those opinions.

Moreover, by engaging in such selective disclosures, the defendants also have effected a broad subject matter waiver over all communications between SpineFrontier/IME and Strong & Hanni relating to the subject matter of those letters, including communications concerning whether the consulting program complied with the AKS because—absent a finding of broad waiver—selective disclosure of the legal opinion letters would impermissibly allow SpineFrontier and IME to use the privilege as both a sword (rebutting allegations of illegal conduct) and a shield (protecting the substance of underlying communications).  SpineFrontier and IME selectively obtained from their counsel opinion letters which cloaked their sham consulting program in the veneer of legitimacy.  At the same time, the defendants maintain that

---

[2] *See also, e.g., In re Grand Jury Proc. Oct. 12, 1995,* 78 F.3d 251, 254 (6th Cir. 1996) (concluding that the owner-president of laboratory waived the attorney-client privilege when he disclosed to government investigators his attorney's advice concerning the legality of portions of a marketing program relating to free supplies; "By voluntarily disclosing her attorney's advice to a third party, for example, a client is held to have waived the privilege because the disclosure runs counter to the notion of confidentiality."); *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 306 (6th Cir. 2002) ("As a general rule, the 'attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties.'" *quoting In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996)); *United States v. Massachusetts Institute of Technology*, 129 F.3d 681, 683, 685 (1st Cir.1997) (affirming district court ruling that MIT's disclosure of privileged materials to third party forfeited the attorney client privilege;  "[W]here the client chooses to share communications outside this magic circle, the courts have usually refused to extend the privilege. … Fairness is also a concern where a client is permitted to choose to disclose materials to one outsider while withholding them from another.")

all communications related to that ultimate opinion letter remain shrouded by the attorney-client privilege.

This sword-and-shield approach is precisely what the law prohibits. *XYZ Corp.*, 348 F.3d at 23-24. A party may not "use the attorney/client privilege as both a shield and a sword by disclosing . . . the documents that are favorable to its position and by withholding other documents, under the protection afforded by the attorney/client privilege, that are unfavorable to its position." *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 2006 WL 1675110, at *4-5 (E.D. Ky. 2006); *see also Abbott Labs. v. Baxter Travenol Labs., Inc.*, 676 F. Supp. 831, 832 (N.D. Ill. 1987) (concluding that by producing three opinion letters in patent litigation, defendant had waived privilege as to any other such opinions on the same subject matter; "A party claiming good faith reliance upon legal advice could produce three opinions of counsel approving conduct at issue in a law suit and withhold a dozen more expressing grave reservations over its legality. Preservation of privilege in such a case is simply not worth the damage done to truth."); *In re United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir. 1982) (holding that even where attorney-client privilege existed with respect to tax opinions obtained by clients to use in coal lease promotion brochures, the privilege was waived where those clients publicized portions of the legal opinions in brochures and other printed material. "Any voluntary disclosure … to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter."); *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982) ("[S]ince the purpose of the attorney-client privilege is to protect the confidentiality of attorney-client communications in order to foster candor within the attorney-

client relationship, voluntary breach of confidence or selective disclosure for tactical purposes waives the privilege).[3]

Relying on these principles, courts regularly find broad subject matter waiver when a party selectively discloses opinion letters or other privileged materials to advance their commercial or litigation interests. For example, in *Electro Scientific Industries, Inc v. General. Scanning, Inc.*, 175 F.R.D. 539 (N.D. Cal. 1997), a patent-infringement dispute, the defendant-alleged infringer had obtained a legal opinion letter addressing the invalidity of the asserted patent claims and issued a news release stating that it had previously "carefully studied" the plaintiff-patent-owner's patent claims and had been advised by its counsel that the patents were invalid based on prior art patents and publications. *Id.* at 542-43. The court found waiver because the news release voluntarily disclosed "an important, substantive component of a communication" from the attorney: "What the 'News Release' disclosed from that [attorney

---

[3] *See also Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981) (holding corporation waived attorney client privilege as to documents authored by its outside counsel by disclosing them to a third party; "The client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit."); *United States v. Paulus*, 2021 WL 4494607, at *4-5 (E.D. Ky. Sept. 30, 2021) (concluding that a subpoenaed party's disclosure of a portion of a privileged internal review to the government required disclosure of the entirety of that internal review; "[F]airness principles dictate that the disclosed and undisclosed information be considered together in this case"); *United States v. S. Chicago Bank*, 1998 WL 774001, at *3 (N.D. Ill. 1998) ("By voluntarily disclosing the minutes from the meetings of the boards of directors and special fraud committees to the year-end auditors in full and to their insurance company in part, the banks have relinquished the right to assert the privilege now against the government.") (quoting *Dellwood Farms, Inc. v. Cargill, Inc.,* 128 F.3d 1122, 1126 (7th Cir. 1997) ("[t]he cases generally reject a right of 'selective waiver'")); *Trustees of Bos. Univ. v. Everlight Elecs. Co.*, 2015 WL 3407555, at *3 (D. Mass. May 27, 2015) ("Even when a party discloses just part of an attorney-client communication or merely gives the conclusion, it is typically enough to waive the privilege for the communication disclosed;" noting subject matter waiver could be found where "the party asserting the privilege placed protected information in issue for personal benefit," but finding no waiver on the specific facts of the case).

client] communication was the most important part of it: the bottom line of the lawyer's opinion, his conclusion, the ultimate outcome of his legal reasoning." *Id.* at 543. As the Court explained:

> [A] sophisticated party who intentionally discloses the most significant part of an otherwise privileged communication, in an act calculated to advance that party's commercial interests, cannot establish, as the law would require, that the party reasonably believed that it would be able to preserve the confidentiality of the other parts of that communication. For these reasons, I hold that the "News Release" effected a waiver of attorney-client privilege.

*Id.* at 543.

Courts have reached a similar conclusion where one party obtained privileged legal advice from an attorney and passed on the substance or conclusion of that advice to a third-party customer in an effort to allay the customer's compliance or legal concerns—the precise circumstance here. *See Procter & Gamble Co. v. Team Techs., Inc.*, 2013 WL 3778740, at *3 (S.D. Ohio July 18, 2013) ("Defendants disclosed the abridged [patent] opinions to assuage their customers' concerns, and, in so doing, waived the privilege as to all related communications. … Having made these disclosures, Defendants waived any privilege relating to the full [patent] opinions and all related documents and communications."); *V. Mane Fils, S.A. v. Int'l Flavors & Fragrances Inc.*, 2009 WL 1968925, at *1 (D.N.J. 2009) (explaining its earlier ruling that defendant-alleged infringer had waived the privilege regarding documents and communications relating to "[plaintiff-patent-owner's] patents and [defendant-alleged infringer's] pre-suit opinions … based on [defendant's] voluntary disclosure of its counsel's opinion letters to potential customers"); *Static Control Components, Inc.* 2006 WL 1675110, at *4-5 (where plaintiff obtained a letter from outside counsel regarding the legality of defendant's Prebate program and disseminated that letter to its customers, plaintiff had waived the attorney-client privilege for "all documents concerning [the defendant's] Prebate program."); *Azotic Coating*

*Tech., Inc. v. ValueVision Media Inc.*, 2007 WL 9735042, at *6-9, *11 (D. Minn. Mar. 2, 2007)

(by providing a "summary" of its attorney's opinion letter to potential customers, defendant-

alleged infringer waived the privilege "as all communications between [the defendants-alleged

infringers] and their Opinion Counsel" regarding the subject matter of the opinion); *Elan*

*Microelectronics Corp. v. Apple, Inc.*, 2011 WL 3443923, at *3–4 (N.D. Cal. Aug. 8, 2011)

(holding that alleged infringer waived the privilege as to attorney-directed summaries of patents

asserted against it when it shared those summaries with third party customers); *In re Target*

*Tech. Co., LLC*, 208 Fed. Appx. 825, 825–27 (Fed. Cir. 2006) (affirming the district court's

finding a waiver of privilege where a sales letter stated that "I also asked my patent attorney to

conduct a search in the U.S. patent literature, and no potential infringement was found"); *Tracy*

*v. NVR, Inc.*, 791 F. Supp. 2d 340, 342–43 (W.D.N.Y. 2011) (concluding that defendant in Fair

Labor Standards Act suit waived privilege by distributing to third parties a letter stating:  "[W]e

stand by our policies and pay practices, which we believe, ***and our counsel advises***, conform to

long standing Department of Labor Guidelines" (emphasis added)); *but see Aspex Eyewear, Inc.*

*v. E'Lite Optik, Inc.*, 2002 WL 1592606, at *3 (N.D. Tex. July 17, 2002) (finding no waiver

where alleged infringer sent letter asserting no infringement to alleged infringer's customers).

Here, the Court should follow the weight of authority and find that defendants waived the

privilege as to any advice they received from Strong & Hanni relating to whether the

SpineFrontier consulting program complied with the AKS (or not).  The Indictment alleges that

the defendants orchestrated a scheme to violate the AKS by enrolling surgeons as consultants

and then paying them for sham consulting so that they could funnel kickbacks to the surgeons for

using SpineFrontier's products, thereby generating revenue for SpineFrontier.  To enlist these

consultants and assuage their concerns about the legality of the conduct, defendants selectively

obtained "legal opinion letters" from their outside counsel, Strong & Hanni.  Using those consulting agreements as sales tools, SpineFrontier's sales representatives then attached the Strong & Hanni opinion letter to the consulting agreements and distributed them to the surgeon-consultants.[4]  *See* Ex. E  (2/26/14 Letter from IME to surgeon stating that IME "underst[ood] the compliance issues facing its clients and consultants, and has positioned itself to enable its consultants to provide services at fair market hourly rates in a statutorily compliant manner with respect to the Physician Payment Sunshine Act, Anti-Kickback Statute, and the Stark Law ***as outlined in the enclosed legal opinion letter from our attorney***.").

By broadly disseminating legal opinions obtained from their counsel for commercial benefit, SpineFrontier and IME waived privilege over, not only those opinion letters, but all communications between SpineFrontier and IME, on the one hand, and Strong & Hanni, on the other, concerning the subject of those opinion letters.  "[A] sophisticated party who intentionally discloses the most significant part of an otherwise privileged communication, in an act calculated to advance that party's commercial interests" waives the privilege.  *Electro Scientific Indus.*, 175 F.R.D. at 543; *see also Static Control Components*, 2006 WL 1675110, at *4-5; *Azotic Coating Tech.*, 2007 WL 9735042, at *6-9, *11; *Procter & Gamble Co.*, 2013 WL 3778740, at *3.

## II.    In The Alternative, the Court Should Order the Defendants to Disclose Whether They Plan to Invoke Advice-of-Counsel or Involvement-of-Counsel No Later Than Sixty Days Before Trial

The defendants have intimated, but not confirmed, that they may defend their conduct by claiming that they lacked the *mens rea* necessary to violate the AKS either based upon a formal

---

[4] The consulting arrangements were explicitly discussed internally at SpineFrontier as a sales tool—not solely as a way to further research and development. *See* Ex. D at 2 (2/20/13 Prinos email to SalesTeam@spinefrontier, Kingsley Chin: "Within this slide was a list of tools I am focusing on with my sales team … VIP visits, … consulting with product development …").

advice-of-counsel defense or based upon involvement-of-counsel in the relevant transactions.[5]

Whether under (i) the rubric of a formal advice-of-counsel defense; or (ii) an "lack-of-*mens-rea*

defense" based on involvement of counsel, the defendants' "decision to raise the advice or

involvement of counsel may serve as a waiver of the attorney-client privilege." *Gorski*, 36 F.

Supp. 3d at 268 (citing *XYZ Corp.*, 348 F.3d at 24).  Accordingly, in order to prevent the

defendants from ambushing the government with evidence of their attorneys' advice *or*

*involvement* in the conduct at issue, the Court should require the defendants to make their

decision, or at least produce all the documents at issue, prior to trial.  *See United States v.*

*Liberty*, 19-cr-00030-GZS, 2020 WL 6386388, at *3 (D. Me. Oct. 30, 2020) (setting March 1,

2021, deadline for defendant's production of "involvement-of-counsel" documents for April

2021 trial).

      Where a party asserting the attorney-client privilege puts otherwise protected information

at issue "for some personal benefit through some affirmative act," courts have found that

protecting against disclosure of that information would be fundamentally unfair to the opposing

party. *XYZ Corp.*, 348 F.3d at 24.  The "paradigmatic example of this phenomenon is a case

involving the advice of counsel defense." *Id*.  In cases involving a defendant's reliance on

advice-of-counsel, "[i]mplying a subject matter waiver . . . ensures fairness because it disables

litigants from using the attorney-client privilege as both a sword and a shield." *Id*.  Were "the

law otherwise, the client could selectively disclose fragments helpful to its cause, entomb other

---

[5] To make out the formal advice-of-counsel defense, a defendant must establish that "(1) before
taking action, (2) he in good faith sought the advice of an attorney whom he considered
competent, (3) for the purpose of securing advice on the lawfulness of his possible future
conduct, (4) and made a full and accurate report to his attorney of all material facts which the
defendant knew, (5) and acted strictly in accordance with the advice of his attorney who had
been given a full report." *Gorski*, 36 F. Supp. 3d at 267 (citing *Liss v. United States*, 915 F.2d
287, 291 (7th Cir. 1990)).

(unhelpful) fragments, and in that way kidnap the truth-seeking process." *Id.  See also In re Kellogg Brown & Root, Inc.*, 796 F.3d 137, 145 ("[T]he attorney-client privilege cannot at once be used as a shield and a sword.") (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)).

As Judge Saylor described the issue in *Gorski*, the rule that raising advice-of-counsel or involvement-of-counsel may result in a waiver, "is premised on notions of basic fairness and common sense.  Put simply, a defendant cannot have it both ways; he cannot claim he relied on good faith on the advice of counsel while using the privilege to prevent inquiry into the nature of his interactions with that counsel." *Gorski*, 36 F. Supp. 3d at 268.  Moreover, defendants cannot "engage in selective disclosure, revealing some communications and claiming the privilege as to others." *Id*. (citing *XYZ Corp.*, 348 F.3d at 24).  While not "every passing reference to counsel will . . . trigger a waiver of the privilege," and whether "such a waiver is triggered necessarily depends on the facts and circumstances of the case," the "touchstone is fairness." *Id*. (citations omitted).  In short, "a defendant cannot put his attorney's advice or involvement at issue in a case and then claim a privilege as to the details of that advice or involvement." *Id*.

To address these fairness concerns, the Court has inherent authority "to impose disclosure and notice requirements outside the Federal Rules of Criminal Procedure," including with respect to advice-of-counsel and involvement-of-counsel.  *United States v. Mubayyid*, 2007 WL 1826067, at *2 (D. Mass. June 22, 2007) (citing *United States v. Beckford*, 926 F. Supp. 748, 755-58 (E.D. Va. 1997)); *see also United States v. Crowder*, 325 F. Supp. 3d 131, 138 (D.D.C. 2018) ("Courts have broad discretion to impose disclosure and notice requirements outside the [Federal Rules of Criminal Procedure].") *But see, e.g., United States v. Ray*, 2021 WL 5493839, at *4 (S.D.N.Y. Nov. 22, 2021) (declining to impose notice requirement and collecting cases

regarding same).  In addition to Judge Saylor's ruling in *Gorski*, at least one other court in this circuit, the District of Maine, has required defendants to produce all matters relevant to advice-of-counsel or involvement-of-counsel prior to trial.  *Liberty*, 2020 WL 6386388, at *3 (holding, "if either Defendant intends to pursue an involvement-of-counsel argument, the Court will require that the Defendant waive attorney-client privilege as to the attorneys and matters involved and produce all materials relevant to that argument," and setting a pretrial deadline for such production).

      In *Gorski*, in the context of determining whether an attorney for the defendant would be disqualified based on the possible assertion of either advice-of-counsel or involvement-of-counsel, the court held that the defendant's conflict-of-interest waiver for his defense counsel before the magistrate judge of the formal advice-of-counsel defense was adequate "as far as it went," but it "was not as broad as it should have been under the circumstances."  *Gorski*, 36 F. Supp. at 270-71.  Specifically, the defendant's conflict waiver did not address his forthcoming argument at trial "that the jury can infer he was acting in good faith because he retained Mintz Levin," *i.e.*, his waiver did not address his involvement-of-counsel evidence or argument.  *Id*. at 270.  In addition, even his waiver of the formal advice-of-counsel defense "did not necessarily extend to or address all of the potential sources of conflict."  *Id*. at 270-71.  Implicit in *Gorski*'s holding is that invoking advice-of-counsel or involvement-of-counsel will result in the defendant's production of otherwise privileged communications.  A defendant cannot have it both ways—he, she, or it cannot seek to introduce evidence of advice-of-counsel or involvement-of-counsel to defend charges that they acted with intent without producing the underlying otherwise-privileged information.

Similarly, in *Liberty*, defendants charged with wire fraud, securities fraud, and conspiracy to commit wire fraud and money laundering argued that they could advance an involvement-of-counsel argument "without disclosing any confidential communications and thereby avoid an implied waiver." 2020 WL 6386388, at *3. The court rejected that argument, stating: "In the Court's view, Defendants propose to use the mere involvement of specialized securities counsel as a[n] inferential sword with respect to intent. To counter such an inference, the Government is entitled to probe the communications between these attorneys and Defendants. It would be fundamentally unfair to allow Defendants to invoke the shield of attorney-client privilege under these circumstances." *Id*. The court then set a March 1, 2021 deadline (for an April 2021 trial), for the defendants to notify the court of their decision regarding whether they would rely on advice-of-counsel or involvement-of-counsel. *Id*. at *3, n 3.[6] *See also Memory Bowl v. North Pointe Ins. Co.*, 280 F.R.D. 181, 186 (D.N.J. 2012) (setting deadline for defendant to advise whether it would rely on advice-of-counsel during the fact discovery period and well before trial).

In *Crowder*, the defendants were charged with a scheme to defraud the District of Columbia Public Schools. The government moved to require the defendants to advise, pretrial, whether they would rely on advice-of-counsel. *Crowder*, 325 F. Supp. 3d at 131. The district court cited Judge Saylor's holding in *Mubayyid* for the proposition that district courts have

---

[6] The *Liberty* court further ordered that a defendant "who does not complete a production by that date shall request the opportunity to make a proffer outside the hearing of the jury before presenting any involvement-of-counsel argument or related evidence at trial. At that time, counsel will be required to explain what previously unavailable evidence resulted in their change of position. If the Government contends that the evidence was available to the Defendants prior to March 1, 2021, the Court will consider limiting each Defendant's ability to pursue an involvement-of-counsel argument at trial." *Liberty*, 2020 WL 6386388, at *3.

inherent authority and broad discretion to "impose disclosure and notice requirements outside the [Federal Rules of Criminal Procedure.]" *Id*. at 138 (citing *Mubayyid*, 2007 WL 1826067, at *2). The court went on to state that because the defendants' "'decision on [whether to assert advice-of-counsel] may impact the scope of discovery otherwise permitted' or ordered, and thus risk[] unnecessary interruption and delay if asserted at trial" it would grant the government's motion for "pretrial notice and discovery of advice-of-counsel defense." *Id*.

As is apparent from a review of the First Circuit's holding in *XZY Corp.*, and the holdings in *Gorski, Liberty, Mubayyid*, *Crowder*, and others, it is well-established law that defendants cannot use the attorney-client privilege as both sword and shield.  *See also United States v. Teva Pharms. USA, Inc., et al.*, No. 20-cv-11548-NMG, ECF No. 50 (D. Mass. Dec. 16, 2021) (in AKS-predicated False Claims Act ("FCA") case, the court required defendants to decide whether they "will assert an advice of counsel or good faith reliance on counsel defense," on or before May 19, 2022, more than one year before the scheduled September 18, 2023 trial date).  If the defendants here raise arguments based on reliance on advice-of-counsel or involvement-of-counsel, they will waive any privilege and the government would be entitled to the full scope of the communications on the subject.  As the *Crowder* court put it:  "[t]he only question, then, is whether defendants may raise the defense for the first time at trial or whether they must instead notify the government at some point before trial to allow for a period of discovery and preparation." *Crowder*, 325 F. Supp. 3d at 139.  While there are dissenting views among the federal courts, the weight of the case law supports requiring the defendants to make an election prior to trial.  *See, e.g., Liberty*, 2020 WL 6386388, at *3; *Crowder*, 325 F. Supp. 3d at 139; *United States v. Cooper*, 283 F. Supp. 2d 1215, 1225 (D. Kan. 2003); *United States v. Hatfield*, 2010 WL 183522, at * 13 (E.D.N.Y. Jan. 8, 2010); *United States v. Scali*, 2018 WL 461441, at

*8 (S.D.N.Y. Jan 18, 2018).  Doing so will minimize the risk of "unnecessary disruption and delay" that will follow if the defendants assert advice-of-counsel or involvement-of-counsel at trial.  *Crowder*, 325 F. Supp. 3d at 138.  It would also "be fundamentally unfair to allow [d]efendants to invoke the shield of attorney-client privilege" without allowing the government "to probe the communications between [] attorneys and [d]efendants," given the defendants' proposal to use the "mere involvement" of counsel as an "inferential sword with respect to intent."  *Liberty*, 2020 WL 6386388, at *3.

## CONCLUSION

The Court should enter a finding that by disclosing the legal opinions they obtained from their counsel, SpineFrontier and IME waived their privilege over the opinion letters and effected a broad subject matter waiver over communications concerning the subjects of those letters.  The Court should, therefore, order SpineFrontier to produce any documents or communications concerning those opinions.

In the alternative the government requests that the Court set a pretrial deadline for the defendants to advise the Court and the government concerning whether they will rely on advice-of-counsel or involvement-of-counsel.

Dated: January 26, 2024

Respectfully submitted,

UNITED STATES OF AMERICA,

By its attorney,

JOSHUA S. LEVY
Acting United States Attorney

*/s/ Abraham R. George*
ABRAHAM R. GEORGE
PATRICK CALLAHAN
CHRISTOPHER LOONEY
Assistant U.S. Attorneys
1 Courthouse Way
John Joseph Moakley U.S. Courthouse
Boston, MA 02210
(617) 748-3100