**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA

v.

KINGSLEY R. CHIN,
ADITYA HUMAD, and
SPINEFRONTIER, INC.,

　　　　　　Defendants.

Criminal No. 1:21-10256-IT

**EXHIBIT 12**

**GOVERNMENT'S OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS COUNTS 1-7**



**U.S. Department of Justice**

*Joshua S. Levy*
*Acting United States Attorney*
*District of Massachusetts*

_____

*Main Reception: (617) 748-3100*          *John Joseph Moakley United States Courthouse*
                                          *1 Courthouse Way*
                                          *Suite 9200*
                                          *Boston, Massachusetts 02210*

                                          January 12, 2024

Barry Pollack
Joshua Solomon
Pollack Solomon Duffy LLP
31 St James Ave., Suite 940
Boston, MA 02116

**By Email**

**Re:    *United States v. Chin, et al.*, No. 21-cr-10256-IT**

Dear Attorney Pollack:

1.      Your letter does not accurately reflect the positions the government stated on our
        December 20, 2023, meet and confer call.  Rather than disputing point-by-point each
        statement you claim we made or to which we purportedly agreed, we will instead relay
        our position here.  The First Circuit has set forth the relevant standard for willfulness
        under the Anti-Kickback Statute: The "First Circuit defines 'willfully' as 'to do
        something purposely, with the intent to violate the law, to do something purposely that
        the law forbids.'"  *United States v. Teva Pharms. USA, Inc.*, No. 20-cv-11548, 2023 WL
        4565105 at *3 (D. Mass. July 14, 2023) (citing *United States v. Bay State Ambulance &
        Hosp. Rental Serv., Inc.*, 874 F.2d 20, 33 (1st Cir. 1989)).  The First Circuit's holding in
        *Bay State Ambulance* is binding precedent and applies to the charged offenses here.

        The government will identify witnesses on August 5, 2024 as required by the Court's
        pretrial order.  *See* Dkt. 144.  The government does not agree to setting a deadline to
        disclose whether it will call specific witnesses (and commit to calling them) before that
        deadline.  We are not aware of any law requiring the government to identify which
        witnesses it may call in advance of a defendant deciding whether he or she will advance
        an advice of counsel defense.  If you aware of any such authority, please identify it.

        We understand from our conversation on December 20, and from your December 22,
        2023 letter, that you will not agree to setting a date by which time you will disclose

whether you will assert an advice of counsel defense. We anticipate raising this issue with the Court via motion practice.

2.    As we have said, the government understands its *Brady* obligations. As the government continues to prepare for trial, it will produce any additional *Brady* information of which it becomes aware. As it prepares its case, the government will continue to review communications between, on the one hand, government lawyers and agents, and, on the other, co-conspirators, witnesses, and their counsel for *Brady* information. If the government identifies *Brady* information that has not yet been produced, we will produce it.

We disagree with your description of the evidence and facts in this case as recounted in your letter. We also disagree with your characterization that the government "educated" any witness. Finally, as we told you in our November 9, 2023 letter, we do not agree that all communications—including the fact of communications—between the government and co-conspirators, witnesses, and their counsel, constitute *Brady* material. In that November 9, 2023 letter, we stated "If you are aware of authority supporting your view that Rule 16 and the Local Rules require the government to produce any 'contact that the government had with alleged co-conspirators or their counsel during the charged conspiracy period,' or 'interactions with any alleged co-conspirators or their counsel about actual or potential resolution of claims,' please identify it." You have not done so.

Your letter also asked us to "confirm" that we are complying with Judge Kelley's order. We have already done so, and we refer you to our email to you dated December 7, 2023.

During our call, you said you do not trust the government to comply with its *Brady* obligations or with any commitments it makes. If you believe that there exists specific exculpatory information that has not been disclosed—including specific communications between the government and any particular witness or counsel for a witness—please identify that information and we will address that. To this point, you submitted an affidavit from Seth Orkand dated July 24, 2023, in which he asserts that "[i]n July 2019, counsel for one witness reported to me that the government provided assurances to the witness's counsel that the witness would not be criminally prosecuted if he agreed to a civil settlement (which he ultimately did, and was not thereafter charged). The witness's counsel mentioned the names of the government attorneys involved in these discussions, who include attorneys who have appeared in this criminal action." Please identify the witness's counsel and the name of the government attorney, so that we can investigate whether any *Brady* information exists concerning this alleged exchange. As you know, in our November 9, 2023 letter, we requested that you inform us whether you have any reciprocal discovery, and if you did, we asked whether you would produce it. To date, we have yet to receive a response from you on these questions.

In your December 22 letter you raised, for the first time, your belief that HHS or CMS may have exculpatory information or communications related to SpineFrontier's Sunshine Act disclosures. Thank you for detailing that concern to us. Consistent with the law and Department policy, we do not believe that CMS, which handles Sunshine Act disclosure issues, is a member of the prosecution team. *United States v. Bender*, 304 F.3d 161, 164 (1st Cir. 2002) (prosecution team includes "other members of the prosecuting team, including police investigators working for the prosecution"). If, however, you have any authority for the proposition that CMS is a member of the prosecution team, please share it with us, and we will consider this issue further. Again, if you are aware of specific communications or events that you believe may constitute *Brady* material, please provide that information.

You write that "[o]bviously these materials may be informative for upcoming motions, requiring receipt by mid-January." We do not see how these possibly could be informative of any Rule 12(b) motions. If you have a reason why they would be, please explain it to us.

3.    With respect to your contentions concerning the "Consent to Search Electronic Evidence" form for Dr. Montone, you misunderstand the underlying facts. The government and Dr. Montone have both already made it clear that Dr. Montone's consent was limited, and the government faithfully treated it as such. *See* Dkt. No. 110 at 2-3, 5-6; Dkt. No. 117 at 1; Dkt. No. 126 at 3. Nothing about the government's production of the Consent Form changes the operative facts. Also, as you know, in response to your "Emergency Motion for Clarification," Dkt. No. 127, the Magistrate Judge reviewed the 14 text messages that Dr. Montone and his counsel withheld, and stated that "the [C]ourt has considered whether they could be material to the defense at all and finds that they are not." Dkt. No. 128. Accordingly, we decline your invitation to produce, or arrange with Dr. Montone's counsel for the production of, the 14 withheld text messages.

We will inform the Court of the date of the production of the February 8, 2019 consent form.

Very truly yours

JOSHUA S. LEVY
Acting United States Attorney

By:    */s/ Abraham R. George*
Abraham R. George
Patrick M. Callahan
Christopher R. Looney

Cc:    William Fick, Esq. (wfick@fickmarx.com)
          Daniel Marx, Esq. (dmarx@fickmarx.com)