UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KINGSLEY R. CHIN,<br>ADITYA HUMAD, and<br>SPINEFRONTIER, INC.,<br><br>Defendants. | Criminal No. 1:21-10256-IT |

# OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNT EIGHT (DKT. NO. 147)

Defendants make an extraordinary and unwarranted request: that the Court grant pre-trial dismissal of concealment money laundering charges under the merger doctrine. So far as the Government is aware, no court has ever granted such a request—and for good reason.

First, Defendants' argument that the underlying criminal conduct generating unlawful proceeds is insufficiently distinct from the money laundering transactions ignores the facts that Defendants' illegal conduct spanned close to seven years, generating a steady stream of illicit revenue (*i.e.* criminal "proceeds"), and, for purposes of concealment money laundering, it is sufficient that these illicit proceeds are generated by "a completed phase of an ongoing offense." *United States v. Richards*, 234 F.3d 763, 770 (1st Cir. 2000) (citations omitted). That is precisely the case here, as Defendants engaged in subsequent concealment money laundering transactions involving funds generated by prior "completed phase[s]" of the Defendants' bribery scheme.

Second, because concealment money laundering requires proof of an element—*concealment*—that is distinct from any element required by the Anti-Kickback Statute, separate charges under the two statutes pose no Constitutional Double Jeopardy problem and *United States v. Santos*, 553 U.S. 507 (2008)—addressing the merger of "promotional" money laundering under 18 U.S.C. §1956(a)(1)(A)(i) with substantive gambling offenses—is simply inapplicable.

Finally, just as their legal arguments fall flat, Defendants' factual attack on the Indictment—claiming that "there was never any concealment of SpineFrontier's involvement"—fails as well, both because "[a]n indictment returned by a legally constituted and unbiased grand jury … is enough to call for trial of the charges on the merits," *Costello v. United States*, 350 U.S. 359, 363 (1956), and because there is ample evidentiary support for the Indictment's allegations.

Defendants' Motion to Dismiss Count Eight of the Indictment should be denied.

## THE COUNTS OF THE INDICTMENT

On August 30, 2021, a Grand Jury returned an indictment against Kingsley Chin, Aditya Humad, and SpineFrontier, Inc. charging each of them with one count of conspiracy to violate the Anti-Kickback Statute in violation of 18 U.S.C. § 371 (the "AKS Conspiracy"), six substantive counts of violating the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)(2), and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (the "Money Laundering Conspiracy").

More specifically, as to the conspiracy counts, Count One charges that the defendants:

> conspired with each other and with others known and unknown to the Grand Jury to commit an offense against the United States, to wit, violation of the Anti-Kickback Statute, 42 U.S.C. §§ 1320a-7b(b)(2), that is, to knowingly and willfully offer and pay remuneration, directly and indirectly, overtly and covertly, in cash or in kind, that is, bribes, to induce the purchase of, lease of, order of, arranging for use of, or recommendation of goods, services, and items, namely, SPINEFRONTIER spinal implants and products, for which payment may be made in whole or in part by a Federal health care program.
>
> All in violation of Title 18, United States Code, Section 371.

Dkt. No. 1 (Indictment) ¶ 40.

Count Eight charges that the defendants:

> conspired with each other and with others known and unknown to the Grand Jury to conduct and attempt to conduct financial transactions, to wit, transferring and causing to be transferred, funds to a corporation, Impartial Medical Expert, LLC, to pay, directly and indirectly, illegal bribes to surgeon physicians, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity, and which in fact involved the proceeds of specified unlawful activity, that is, payment of remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, bribes, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B), and knowing that the transactions were designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).
>
> All in violation of Title 18, United States Code, Section 1956(h).

# ARGUMENT

I. **The Supposed-Circularity Problem Raised by the Defendants Is, in Fact, Illusory**

Defendants conjure up an illusory problem with the Indictment by arguing that "the Indictment expressly alleges that the transfers to IME were for the purpose of providing IME with the funds necessary to make kickback payments, which allegedly made the scheme illegal in the first place. Thus, the payments to IME were not 'proceeds' from a *completed* alleged illegal scheme, and were thus not transfers for the purpose of concealing that they were such proceeds." Dkt. No. 148 at 2 (emphasis added).

But the law does not require that a criminal scheme be "completed" before proceeds from that scheme are realized and can be laundered. To the contrary, the law is clear that proceeds may be "derived from an already completed offense, or ***a completed phase of an ongoing offense***." *United States v. Richards*, 234 F.3d 763, 770 (1st Cir. 2000) (citations omitted; emphasis added).

*United States v. Cloud*, 680 F.3d 396 (4th Cir. 2012), which Defendants themselves rely on, illustrates these principles. In that case, the Fourth Circuit concluded that *substantive* money laundering offenses merged into the underlying fraud offenses, because "the specific money laundering transactions were the payment of the 'essential expenses' of [the defendant's] underlying fraud." *Id.* at 407. In contrast, when addressing the money laundering *conspiracy* counts, the Court explained "the conspiracy charge was not tied to any specific payment to a recruiter, buyer, or coconspirator" and "there was evidence that [the defendant] used the profits from his *previous* flips to finance *additional* purchases." *id.* at 408 (emphasis added).

That's precisely the case here. The Indictment does not allege only a single AKS Count generating "proceeds" only after completion of the offense—that is, after a bribe was paid, a surgery performed, and payment made to SpineFrontier for its products. Instead, the scheme

3

charged in the Indictment spans nearly seven years and embraces Defendants' payments of millions of dollars in bribes in the form of sham consulting fees to surgeons. Dkt. No. 1, ¶¶ 29, 31. Over this seven-year span, Defendants' co-conspirators performed surgeries using SpineFrontier's products, Dkt. No. 1, ¶¶ 38(s)-(y), continuously generating revenue—payments for its products—for SpineFrontier and Defendants throughout this period.

The Money Laundering Conspiracy, in turn, reflects that Defendants, having conspired to acquire these "proceeds of specified unlawful activity, that is, payment of remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, bribes, in violation of Title 42, United States Code, Section 1320a- 7b(b)(2)(B)," conspired also to "conduct financial transactions" with those funds, "to wit, transferring and causing to be transferred, funds to a corporation, Impartial Medical Expert, LLC, to pay, directly and indirectly, illegal bribes to surgeon physicians," while "knowing that the transactions were designed . . . to conceal and disguise the nature, location, source, ownership, and control of the proceeds." *Id.* ¶ 44.

That is, the Indictment permissibly alleges a money laundering conspiracy "using gross receipts of *past, completed criminal conduct* for the purpose of financing *new criminal conduct*." *United States v. Gross*, 661 F. App'x 1007, 1023 (11th Cir. 2016) (emphasis added). In that circumstance, "it is sufficient that a portion or phase of the scheme had been completed and had produced the proceeds used in the subsequent transaction." *Id.* (citing *Richards*, 234 F.3d 763, 770 (1st Cir. 2000)). *See also United States v. Seward*, 272 F.3d 831, 837 (7th Cir. 2001) (defendant laundered the proceeds of the earlier, already completed phases of a fraudulent scheme; there is no requirement that the entire fraudulent scheme be complete); *United States v. Conley*, 37 F. 3d 970, 980 (3d Cir. 1994) (funds are criminally derived if they are from an already completed offense or a completed phase of an ongoing offense).

4

There is nothing impermissibly circular about alleging concealment money laundering based upon transactions intended to conceal the "nature, location, source, ownership, and control of the proceeds" of completed phases of an ongoing offense; rather the opposite is true. Concealment money laundering may appropriately be predicated on transactions involving proceeds of past phases of criminal misconduct—precisely the case here. To be sure, the Government will have to prove that Defendants conspired to transfer to IME funds that were, in fact, proceeds of criminal conduct, knowing that the transactions were designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity—as alleged. But that is a matter of proof at trial—not of the validity of the Indictment. *See, e.g., United States v. LaCost,* 2010 WL 3522334, *2 (C.D. Ill. Sept. 2, 2010) (where indictment alleges defendant conducted transactions involving gambling proceeds, his challenge to government's ability to prove the proceeds element in light of *Santos* "is precisely the type of fact-based inquiry that cannot be resolved by a motion to dismiss"); *United States v. Catapano*, 2008 WL 4107177, *2 (E.D.N.Y. Aug. 12, 2008) (denying motion to dismiss based on *Santos* where government represented that it will prove "the defendants conspired to use the profits of discrete prior [] bribery and [] fraud crimes to promote subsequent discrete [] bribery and [] fraud crimes"); *United States v. Thompson*, 2008 WL 2514090, *2 (E.D. Tenn. June 19, 2008) (denying *Santos*-based challenge where "the government has not had an opportunity to meet its burden of proof"); *United States v. Martin*, 2009 WL 330867, *11 (W.D. Mo. Feb. 9, 2009) (similar).[1]

---

[1] Notably, Defendants cite *no case* in which money laundering charges were dismissed pre-trial under the merger doctrine, underscoring that the essential issue—whether funds were, in fact, "proceeds" of criminal conduct at the time of the concealing transaction—is a factual inquiry to be resolved at trial.

5

**II.    Concealment Money Laundering Does Not Pose a Constitutional Double Jeopardy or Merger Problem Because It Requires an Additional Element—Concealment— that is Not Required for An AKS Violation**

The Double Jeopardy provision of the Fifth Amendment protects against, *inter alia*, "multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989). The merger doctrine vindicates this right by protecting defendants from being charged with, or convicted of, multiple crimes for what is, in fact, only a single offense. The Supreme Court has set forth a well-established test to determine whether an indictment impermissibly levels multiple counts against a defendant that, in fact, constitute only a single offense:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not … A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.

*Blockburger v. United States*, 284 U.S. 299, 304 (1932) (citations omitted). Importantly, when considering whether an indictment charges a single or multiple offenses, the *Blockburger* analysis focuses on the statutory elements, rather than the proof to be adduced at trial; "if each *statute* requires proof of an additional fact which the other does not … the offenses are not the same under the *Blockburger* test." *Illinois v. Vitale*, 447 U.S. 410, 416 (1980) (cleaned up; Supreme Court's emphasis). *See also United States v. Morris*, 99 F.3d 476, 479 (1st Cir. 1996) ("If the crimes charged are discrete offenses within the contemplation of *Blockburger*, the defendant may be prosecuted consecutively for them, even if the crimes arise out of the same conduct or nucleus of operative facts … [T]he *Blockburger* rule depends on statutory analysis, not on evidentiary comparisons.").

Applying *Blockburger's* test to the AKS Conspiracy and the Money Laundering Conspiracy counts makes pellucidly clear that the two counts represent two separate and distinct

6

offenses that do not merge. To prove the conspiracy to commit concealment money laundering, the Government must prove defendants conspired to (i) knowingly conduct a financial transaction; (ii) involving funds that defendants knew to be the proceeds of some form of unlawful activity; (iii) that were in fact the proceeds of a "specified unlawful activity," and (vi) that defendant knew the transactions to be designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of such unlawful activity. *United States v. Misla-Aldarondo*, 478 F.3d 52, 68 (1st Cir. 2007). This last element—that "the transactions to be designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds"—has no corresponding element in a conspiracy to violate the AKS—which requires the Government to prove that the defendants conspired to (i) knowingly and willfully; (ii) offer or pay any remuneration, kickback, or bribe, directly or indirectly, overtly or covertly, to any person; (iii) to induce that person to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering; (iv) any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program. *See* 42 U.S.C. § 1320a-7b(b)(2)(B). Put differently, the Government can fully prove the conspiracy to violate the AKS without satisfying the elements required for the concealment money laundering charges—and so under *Blockburger* the charges do not, and cannot, merge.

Courts addressing similar fact-patterns reach precisely this conclusion. In *United States v. Pretty*, a jury convicted defendants of both "engaging in a bribery or kickback scheme, in violation of 18 U.S.C. § 666" and "money laundering, in violation of 18 U.S.C. §§ 1956, 1957." 98 F.3d 1213, 1216-17 (10th Cir. 1996). On appeal, a convicted defendant argued—precisely as Defendants do here—that the bribery payments "cannot be the basis of § 1956(a)(1)(B)(i) [concealment money laundering] liability because they were part and parcel of the kickback scheme." *Id.* at 1220. But the Tenth Circuit rejected this argument because "[a] direct payment

7

[from the payor to the recipient of the bribes] would have violated § 666 without constituting money laundering. The effort to disguise the source of the money was an additional act that is separately punishable under § 1956(a)(1)(B)(i), notwithstanding the simultaneity of the two crimes." *Id.* at 1220-21. Similarly, in *United States v. Wilkes*, the Ninth Circuit upheld convictions for bribery and concealment money laundering by reasoning that "[u]nlike bribery, which requires proving the intent to influence or induce a public official beyond a reasonable doubt, concealment money laundering merely requires that the financial transaction be designed to 'conceal . . . the source . . . or control . . . of the proceeds of the specified unlawful activity.'" 662 F.3d 524, 527 (9th Cir. 2011) (citation omitted).

Finally, the fact that the Government has charged a concealment money laundering *conspiracy*, rather than substantive money laundering does not change the *Blockburger* analysis: "A single act may constitute two different offenses for double jeopardy purposes so long as two different statutes were violated and each requires an element that the other does not. *This is true of conspiracy* … as well as other crimes. *United States v. Claudio*, 44 F.3d 10, 13 (1st Cir. 1995) (emphasis added) (citing *Albernaz v. United States*, 450 U.S. 333 (1981)). *See also Morris*, 99 F.3d at 479 (holding that the *Blockburger* test is the "black-letter rule" for determining when Double Jeopardy principles prohibit prosecution under two distinct statutory provisions).

In *United States v. Braverman*, 317 U.S. 49 (1942), the Supreme Court set out a legal taxonomy distinguishing those conspiracies that violate the Double Jeopardy prohibition from those that do not. There, the Supreme Court found that multiple counts predicated on *a single agreement* and charged under *a single statute*—though embracing multiple criminal objectives—violated the prohibition on Double Jeopardy. *See Braverman*, 317 U.S. at 54 (where a "single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute … only the single penalty prescribed by the statute can be imposed). At the same time,

8

the Supreme Court distinguished that prohibited circumstance from the precise circumstance here—that of "*a single act* which violates *two statutes*"—and found that the latter posed no Double Jeopardy problem." *Id.* at 54 (emphasis added).

Subsequently, the Supreme Court repeatedly has reaffirmed this same distinction. In *American Tobacco Co. v. United States*, 328 U. S. 781 (1946), for example, the Supreme Court affirmed the defendant's separate convictions under Sections 1 and 2 of the Sherman Antitrust Act explaining that "[i]n contrast to the single conspiracy described in [*Braverman*] in separate counts, all charged under the general conspiracy statute, . . . we have here separate statutory offenses, one a conspiracy in restraint of trade that may stop short of monopoly, and the other a conspiracy to monopolize that may not be content with restraint short of monopoly. One is made criminal by § 1 and the other by § 2 of the Sherman Act." *American Tobacco*, 328 U.S. at 788. *See also Albernaz* 450 U.S. 333 at 336 (upholding separate convictions under 21 U.S.C. § 963 (conspiring to import marijuana) and 21 U.S.C. § 846 (conspiring to distribute marijuana) and explaining that "a conspiratorial agreement which envisages both the importation and distribution of marihuana violates both statutory provisions, each of which authorizes a separate punishment."); *United States v. Gomez-Pabon*, 911 F.2d 847, 861 (1st Cir. 1990) (vacating convictions in separate counts charged under same statutory provision but upholding counts charged under different statutory provisions; explaining as to the latter that "the statutory provisions invoked in each count differ from one another in what they specify as the proscribed object of the conspiracy …. Because of this distinction between the two sets of statutory provisions, we conclude that consecutive sentences properly could be imposed on Counts One and Three"); *Morris*, 99 F.3d at 479 (holding that there was no Double Jeopardy problem where "the primary objects of the two conspiracies are different, and each of the charged crimes includes an element that the other does not").

The Indictment in this case follows the permissible structure of *American Tobacco*, *Albernaz*, *Gomez-Pabon*, and *Morris*. Count One alleges a conspiracy under 18 U.S.C. § 371 to violate the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)(2). Dkt. No. 1, ¶ 40. Count Eight alleges, in contrast, a conspiracy under 18 U.S.C. § 1956(h) to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Dkt. No. 1, ¶ 44. And again, like the distinct counts approved in *American Tobacco*, *Albernaz*, *Gomez-Pabon*, and *Morris*, the conspiracy statutes here "clearly satisfy the rule announced in *Blockburger*" because the two statutory provisions "specify different ends as the proscribed object of the conspiracy"—here, bribery as opposed to concealment—and "'each provision requires proof of a fact which the other does not.'" 450 U.S. at 339 (quoting *Blockburger*, 317 U.S. at 53). This Court should follow the "black-letter" principles of *Braverman*, *American Tobacco*, *Albernaz*, *Gomez-Pabon*, and *Morris*, and reject Defendants' Double Jeopardy based merger argument.

### III.    *United States v. Santos*, 553 U.S. 507 (2008)—Which Addresses the Merger of "Promotional" Money Laundering with Substantive Underlying Offenses—Is Inapplicable.

Defendants' heavy reliance upon *United States v. Santos*, 553 U.S. 507 (2008) is misplaced because the merger problem addressed by *Santos* arose under the "promotion" rather than "concealment" prong of 18 U.S.C. § 1956.

The promotion prong of the money laundering statute (Section 1956(a)(1)(A)(i)) makes it unlawful for a person:

> [K]nowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, [to] conduct[] or attempt[] such a financial transaction which in fact involves *the proceeds* of specified unlawful activity—with the intent *to promote* the carrying on of specified unlawful activity.

18 U.S.C. § 1956(a)(1)(A)(i) (emphasis added).

In *Santos*, the Supreme Court addressed the meaning of the word "proceeds" in the statute and recognized that the Government's suggested interpretation—that "proceeds" means

10

the receipts paid into the gambling scheme by customers—created an impermissible merger problem. "If 'proceeds' meant 'receipts,' nearly every violation of the illegal-lottery statute would also be a violation of the money-laundering statute, because paying a winning bettor is a transaction involving receipts that the defendant intends *to promote* the carrying on of the lottery." 553 U.S. at 515 (emphasis added); *see also id.* ("Allowing the Government to treat the mere payment of the expense of operating an illegal gambling business as a separate offense is in practical effect tantamount to double jeopardy, which is particularly unfair in this case because the penalties for money laundering are substantially more severe than those for the underlying offense of operating a gambling business.").

To avoid this result, Justice Scalia, writing for a four-justice plurality, would have resolved this problem under the rule of lenity by interpreting the term "proceeds" in Section 1956 as limited only to net profits of illegal activity. *See id.* at 511-514. Justice Stevens, concurring and writing only for himself, authored a narrower controlling opinion, limited to the gambling context, holding that "[t]he revenue generated by a gambling business that is used to pay the essential expenses of operating that business is not 'proceeds' within the meaning of the money laundering statute." *Id.* at 528.[2]

Arguing their flawed merger point, Defendants cite cases following *Santos* for the proposition that "when 'addressing merger in the money laundering context, courts ask whether the money laundering crime is based upon ***the same or continuing conduct*** of the underlying predicate crime, or whether the crimes are ***separate and based upon the separate conduct***.'" Dkt. No. 148. at 8-9 (cleaned up; emphasis added by Defendants; citing *United States v. Kennedy*, 707 F.3d 558, 564 n.14 (5th Cir. 2013)). This exercise—determining whether there is

---

[2] Subsequent to the decision in *Santos*, Congress clarified that "the term 'proceeds' means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956(c)(9).

11

a factual distinction between the underlying predicate offense and the money laundering conduct—is necessary in the context of promotional money laundering to avoid the problem highlighted in *Santos*. Absent factual separation, the transactions given rise to the predicate substantive offense would also establish the crime of promotional money laundering and so a defendant charged with both crimes would be subject to Double Jeopardy for what is only a single criminal offense.

But this merger problem at the core of *Santos*—that anyone who obtains funds through a criminal scheme and then uses those funds to carry on (*i.e.*, "promote") the criminal scheme would violate the money laundering statute, therefore posing a double jeopardy/merger problem—simply does not arise in the context of concealment money laundering. Unlike promotional money laundering, the *concealment* money laundering statute does not "automatically … cover financial transactions that constitute an essential part of a different underlying crime" *Santos*, 553 U.S. at 529 (Alito, J., dissenting)—whether illegal gambling (the *Santos* case) or an illegal kickbacks scheme (this case)—because proving those underlying substantive crimes would not necessarily prove also that defendants conspired to engage in "transactions … designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds" of the underlying offense. As the Eleventh Circuit has explained:

> [T]here is a distinction between a promotional money-laundering conviction under § 1956(a)(1)(A)(i) (i.e., using funds from a criminal business to "promote the carrying on of [the] specified unlawful activity"), like the one at issue in *Santos*, and a concealment money-laundering conviction under 18 U.S.C. § 1956(a)(1)(B)(i) …. **This difference eliminates entirely for this case any double-punishment concern, like the one that motivated a majority of the Justices in *Santos*.**
> …
> No [] problem of overlap arises where, as here, a money-laundering conviction under the concealment prong involves conduct that was entirely unnecessary to the completion of the underlying specified unlawful activity. Funneling money through shell corporations was not necessary for Mr. Rodriguez to bribe a foreign

12

>official. It just made it less likely that conduct would be uncovered by
>"conceal[ing] the nature[ and] source ... of the proceeds" he and his
>coconspirators used to pay the bribes, precisely the distinct type of conduct 18
>U.S.C. § 1956(a)(1)(B)(i) criminalizes.

*United States v. Esquenazi*, 752 F.3d 912, 935 (11th Cir. 2014) (emphasis added). *See also United States v. Hosseini*, 679 F.3d 544, 5532 (7th Cir. 2012) (observing in context of plain-error review that "the merger problem [identified in *Santos*] dissipates when the government alleges that the defendant specifically entered into a transaction to conceal the source or nature of ill-gotten gains.").

For much this reason, Defendants have not cited *a single case* in which a court has found that concealment money laundering merges with the underlying predicate offense.[3] To the contrary, all but two of the cases cited by the defendants in their brief involve only promotional money laundering. *See* Dkt. No. 148. The two exceptions are *Aronshtein v. United States*, 2023 WL 2770145, at *2 (2d Cir., Apr. 4, 2023) (dealing with conspiracy to commit money laundering under 18 U.S.C. § 1956(h)) and *United States v. Kelerchian*, 2017 WL 1532324, at *2 (N.D. Ind. Apr. 28, 2017), *aff'd*, 937 F.3d 985 (7th Cir. 2019) (involving both promotional and concealment money laundering). And in those two exceptions, the court squarely rejected post-trial merger-based challenges to the defendants' convictions.

The problem addressed by *Santos*—that conduct constituting an underlying criminal offense might also trigger a greater penalty under the money laundering statute—simply does not arise in the context of *concealment* money laundering, because concealment money laundering requires the existence of an element, concealment, that is distinct from and separate from any

---

[3] For its part, the Government has not identified a single case in which a court has found that a concealment money laundering charge under 18 U.S.C. § 1956(a)(1)(B)(i) merges into the substantive underlying offense.

13

element of the underlying offense—satisfying the *Blockburger* test and alleviating the Double Jeopardy and merger concerns raised by *Santos*.

### IV. SpineFrontier's Public Disclosure of Payments to Surgeons Does Not Preclude the Concealment Charge

Finally, lacking merit on their legal issues, Defendants mount a factual challenge to the Indictment—arguing that "the public disclosure of SpineFrontier payments precludes any charge of concealment money laundering." Dkt. No. 148 at 14. *See also id.* at 15 ("[T]his charge fails for the additional reason that there was never any concealment of SpineFrontier's involvement.").

As a first—and dispositive—point, this is nothing more than an attack on the evidentiary basis for the Indictment. But "[t]he sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *United States v. Alfonso*, 143 F.3d 772, 776-77 (2d Cir. 1998). *See also Costello*, 350 U.S. at 363 ("An indictment returned by a legally constituted and unbiased grand jury … , if valid on its face, is enough to call for trial of the charges on the merits. The Fifth Amendment requires nothing more."); *United States v. Calandra*, 414 U.S. 338, 344–345 (1974) (facially valid indictment not subject to a challenge as to the reliability or competence of the evidence presented to the grand jury); *United States v. Guerrier*, 669 F.3d 1, 3-4 (1st Cir. 2011) ("[A] motion to dismiss that targets the strength of the government's evidence misfires.") (collecting cases).

Second, as described in the Government's Opposition to Dismiss Counts One Through Seven (Dkt. No. 157; filed contemporaneously herewith), pp. 5-7, there is ample evidence that Defendants and their co-conspirators *conspired* to "us[e] IME as a vehicle to funnel bribe payments to surgeons" and "to conceal the true nature of the relationship between [SpineFrontier] and those surgeons"—*i.e.*, to conceal that SpineFrontier was the source of the bribe payments. Dkt. No. 1, ¶ 37(d).

14

The Indictment is facially valid and immune from attack. Moreover, its allegations are amply supported by evidence. For both of these reasons, Defendants' request for dismissal on evidentiary grounds fails.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Count Eight (Dkt. No. 147), should be denied.

Dated:  February 16, 2024                                  Respectfully submitted,

                                                           UNITED STATES OF AMERICA,

                                                           By its attorney,

                                                           JOSHUA S. LEVY
                                                           Acting United States Attorney

                                                           */s/ Christopher R. Looney*
                                                           CHRISTOPHER R. LOONEY
                                                           PATRICK M. CALLAHAN
                                                           ABRAHAM R. GEORGE
                                                           Assistant U.S. Attorneys
                                                           1 Courthouse Way
                                                           John Joseph Moakley U.S. Courthouse
                                                           Boston, MA 02210
                                                           (617) 748-3100

## CERTIFICATE OF SERVICE

    Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Christopher Looney*
Christopher R. Looney
Assistant United States Attorney

Dated: February 16, 2024