# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA,

v.

KINGSLEY R. CHIN,
ADITYA HUMAD, and
SPINEFRONTIER, INC.,

Defendants.

Criminal No. 1:21-cr-10256-IT

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS 1-7**

The government's opposition papers reflect dramatic shifts in position since it presented this matter to multiple grand juries. First, the government has changed its theory from Defendants using IME for false public payment disclosures, to Defendants using IME to dupe physicians-consultants. Second, and relatedly, the government has shifted from treating physician-consultants as co-conspirators to treating them as victims. In the course of doing so, the government overstates [REDACTED] and fails to mention the fact that it relied on multiple grand juries, making it even easier for the government to mislead the final grand jury that returned the flawed Indictment.

In its opposition, the government goes to great lengths to argue, despite contrary allegations in the Indictment, that the grand jury somehow understood [REDACTED]. But in fact, the government has shown no such thing. At most, [REDACTED]. The government

has provided nothing in the record suggesting that the grand jury somehow became aware that SpineFrontier made disclosures in its own name from the outset, a fact contrary to the express allegations in the Indictment that the grand jury eventually returned, that SpineFrontier always disclosed payments in its own name, and that SpineFrontier ***never*** used IME's name as the payor in public disclosures of payments to physician-consultants.

The government's misplaced reliance on [REDACTED] raises another critical issue. By rule and practice, the length of the investigation here required the use of two if not three grand juries. While simultaneously telling the Court (albeit misleadingly) that [REDACTED], the government has refused to inform Defendants whether or which of the exhibits to the government's opposition made it to the actual grand jury that returned the Indictment. A copy of an email string between defense counsel and the government about this subject is attached hereto as Exhibit 1. *See United States v. Leeper*, No. 06-CR-58A, 2006 WL 1455485, at *3 (W.D.N.Y. May 22, 2006) (dismissing indictment where government used multiple grand juries and prosecutor advised the later "grand jurors that they were going to hear summaries of testimony that the original grand jury had heard, and that the transcripts of that testimony would be available to them for review"); *United States v. Samango*, 607 F.2d 877, 881-82 (9th Cir. 1979) (affirming dismissal of indictment in a case involving multiple grand juries, "the lengthy transcripts were merely deposited with the grand jury, and … [t]he prosecutor should have attempted to present live testimony" before the grand jury that returned the pertinent Indictment); *United States v. Gallo*, 394 F. Supp. 310, 315 (D. Conn. 1975) (dismissing indictment where "for some unexplained reason, the prosecutor failed to supply the second grand jury with the full and complete record of the proceedings before the first grand jury" and "the second grand jury was composed of individuals different from those who had first indicted the defendants"); *In re Grand*

*Jury Investigation of Banana Indus*., 214 F. Supp. 856, 859 (D. Md. 1963) (dismissing indictment because "[t]he Court should foreclose any possibility that even an inadvertently unfair summary of the testimony taken before the Grand Jury in Maryland might be presented to the Grand Jury in California," finding it improper to "seek an indictment not upon testimony which the grand jury has heard, but upon selected portions of the testimony of one or more witnesses given before another grand jury").

In its opposition, the government suggests that its theory from the outset was *not* that public disclosures by SpineFrontier used the wrong name of the payor, but that [REDACTED]. In the Indictment, the government treated these physician-consultants expressly as unindicted co-conspirators and, in a separate case, even charged one with obstruction of justice *See United States v. Montone*, No. 20-cr-10159 (D. Mass. Aug. 17, 2020). But in the opposition, faced with the fact that SpineFrontier made full disclosure of the payments, in its own name, the government's theory treats physician-consultants as victims [REDACTED]. In reality, as reflected in the text of the Indictment itself, the government misused [REDACTED]. Any new theory of physician-consultants as victims is not what is alleged in the Indictment or seen in the record on this motion.

The inherent problems with the government shifting positions concerning the treatment of physician-consultants, away from what it emphasized before the grand jury, is compounded by the government's influence on the statements and testimony the physician-consultants themselves gave. At least some of the physician-consultants initially supported the legitimacy of

SpineFrontier's consulting program. After meetings with the government, stories unsurprisingly morphed by physician-consultants to blame SpineFrontier for deficiencies in their work hours. For example, according to an FBI 302, Dr. Joseph Shehadi told investigators that he performed actual consulting services "that he believes were *completely 'legitimate,'*" that he "was *never* asked to do anything illegal by anyone associated with SF [i.e. SpineFrontier]," and that he "runs all of these types of arrangements by his attorney." (Exhibit 2 hereto (emphases added)). Dr. Shehadi went on to explain that he "evaluated the products and provided feedback to SF," "gave his feedback on products online, via email, over the phone, or by talking to the sales representatives or engineers," and referred to a "paper trail" of such work (which documents he produced bear out). *Id.* The 302 ends with "Shehadi insisted that everything that he did with SF was completely legal." *Id.* The government has not charged Dr. Shehadi with making false statements under 18 U.S.C. § 1001 or otherwise. Yet as he met with investigators and prosecutors, Dr. Shehadi's story began to shift. By the time of his grand jury testimony, and after multiple meetings with the government, including at least one referenced in his grand jury testimony for which the government has provided no notes or memo, Dr. Shehadi was telling a very different story that implicated defendants.

Defendants disagree with many other aspects of the government's opposition, but Defendants limit their reply consistent with the Court's directives and otherwise rest on their initial papers.

**CONCLUSION**

Based on the foregoing, Defendants request that the Court grant their motions to dismiss in their entirety. In the alternative, Defendants request an evidentiary hearing in support of their dispositive motions.

Respectfully submitted,

__________________________

Barry S. Pollack (BBO #642064)
Joshua L. Solomon (BBO #657761)
POLLACK SOLOMON DUFFY LLP
31 St. James Avenue, Suite 940
Boston, MA 02116
(617) 439-9800
bpollack@psdfirm.com
jsolomon@psdfirm.com

__________________________

Daniel N. Marx (BBO #674523)
William W. Fick (BBO #650562)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
dmarx@fickmarx.com
wfick@fickmarx.com

EXHIBIT 1

**From:** Barry Pollack
**Sent:** Thursday, February 29, 2024 10:59 AM
**To:** Looney, Christopher (USAMA); Joshua Solomon; William Fick; Daniel Marx
**Cc:** Callahan, Patrick (USAMA); George, Abraham (USAMA); Husted, Susanne (USAMA); Apfel, Alexandra (USAMA)
**Subject:** RE: US v SpineFrontier

Chris,
Based on your email, we will refer to our motion for leave to file a reply as "unopposed."
I'm not sure whether you are making some sort of accusation about why we will not provide you with the name of counsel referred to in the Orkand Affidavit, but your office earlier asked us to do so if we wanted your office to investigate the assertion. For obvious reasons, we do not see a benefit in having your office investigate internal witnesses concerning this matter. To the extent your office is aware of internal witnesses to pressure or threats by the investigative or prosecution team (including what your office perceives as suggestions of leniency followed by a witness changing a story), as a constitutional matter, that information should be provided to us. We have requested similar information repeatedly, including records of when and how your office spoke with counsel for the alleged unindicted co-conspirators and cooperating witnesses. Your office has not been clear about what exactly it has searched in that regard and what it is withholding, other than to suggest your office believes it knows what constitutes *Brady* and is still performing searches. Please let us know when those searches have been fully conducted and all *Brady* material has been collected and produced.
Thank you.
Barry

---

**From:** Looney, Christopher (USAMA) <Christopher.Looney@usdoj.gov>
**Sent:** Thursday, February 29, 2024 10:05 AM
**To:** Barry Pollack <bpollack@psdfirm.com>; Joshua Solomon <jsolomon@psdfirm.com>; William Fick <wfick@fickmarx.com>; Daniel Marx <dmarx@fickmarx.com>
**Cc:** Callahan, Patrick (USAMA) <Patrick.Callahan@usdoj.gov>; George, Abraham (USAMA) <Abraham.George@usdoj.gov>; Husted, Susanne (USAMA) <Susanne.Husted@usdoj.gov>; Apfel, Alexandra (USAMA) <Alexandra.Apfel@usdoj.gov>
**Subject:** RE: US v SpineFrontier

Barry,

Thanks for your email. As to your first question, our office takes no position on your motion for leave to file a reply in support of your motion to dismiss counts 1 – 7. As to the second, we will not provide additional information regarding matters occurring before a grand jury.

In addition, please let us know the unnamed doctor and unnamed counsel referred to in the Orkand Affidavit. We have asked for this information and haven't received it or an explanation for why you have not provided it.

Chris

**Chris Looney (he/him/his) | Assistant United States Attorney | District of Massachusetts**
Phone: 617.748.3287 | Email: Christopher.looney@usdoj.gov

---

**From:** Barry Pollack <bpollack@psdfirm.com>
**Sent:** Tuesday, February 27, 2024 11:09 AM
**To:** Looney, Christopher (USAMA) <CLooney@usa.doj.gov>; George, Abraham (USAMA) <AGeorge2@usa.doj.gov>; Joshua Solomon <jsolomon@psdfirm.com>; William Fick <wfick@fickmarx.com>; Daniel Marx <dmarx@fickmarx.com>

**Cc:** Callahan, Patrick (USAMA) <PCallahan@usa.doj.gov>; Husted, Susanne (USAMA) <SHusted@usa.doj.gov>; Apfel, Alexandra (USAMA) <AApfel@usa.doj.gov>
**Subject:** [EXTERNAL] US v SpineFrontier

Chris,
We write in response to your last email and to seek the government's assent to defendants filing a reply in support of their motion to dismiss counts 1 to 7.
When counsel spoke previously about the use of replies in support of motions, your office indicated that it would likely not oppose a motion for leave to file a reply, so long as that approach applied mutually. We are fine with that, so long as any reply (or, if applicable, surreply) stays within the rules limiting them to direct responses to matters raised in the opposition (or reply).
With respect to your office's position below about the number of grand juries used in this matter and when, if ever, the government presented prior grand jury testimony and exhibits to the grand jury that returned the Indictment, we do not see how Rule 6(e) forms an obstacle. The length of the grand jury investigation makes clear that multiple grand juries existed. The government has produced actual grand jury testimony in compliance with Rule 6(e), and could do the same with the limited additional information that we seek. Are you refusing to confirm what the suffix "T" means on exhibits? Are you refusing to disclose documents reflecting whether and when testimony and exhibits provided to the earlier grand juries were re-introduced to the grand jury that returned the Indictment? At issue is, among other things, whether the government may have misled the grand jury that returned the Indictment. In its opposition to pending motions, the government [redacted]
Some courts have focused on how the use of multiple grand juries could mislead the one that returns an Indictment.
We are giving your office the opportunity now to provide documentary evidence to show that each of those materials made their way to the grand jury that returned the Indictment.
Please confirm your office's position on these matters by tomorrow (Wednesday) morning. Does your office oppose a motion for leave to file a reply? Will your office supplement its productions with the information that we have requested concerning the use of multiple grand juries and the identification of any re-introduction of prior testimony and exhibits?
Thank you.
Barry

---

**From:** Looney, Christopher (USAMA) <Christopher.Looney@usdoj.gov>
**Sent:** Thursday, February 22, 2024 1:45 PM
**To:** Barry Pollack <bpollack@psdfirm.com>; George, Abraham (USAMA) <Abraham.George@usdoj.gov>; Joshua Solomon <jsolomon@psdfirm.com>; William Fick <wfick@fickmarx.com>; Daniel Marx <dmarx@fickmarx.com>
**Cc:** Callahan, Patrick (USAMA) <Patrick.Callahan@usdoj.gov>; Husted, Susanne (USAMA) <Susanne.Husted@usdoj.gov>; Apfel, Alexandra (USAMA) <Alexandra.Apfel@usdoj.gov>
**Subject:** RE: Mot. to Seal

Barry,

Thanks for your email. All of that information is subject to Rule 6(e). We produced grand jury transcripts and exhibits well in advance of what is required by the Local Rules. None of the other information you requested appears discoverable under the local rules, our *Brady* obligations, or any other authority. If you believe otherwise, please provide that authority and the basis for your requests.

Respectfully,
Chris

**Chris Looney (he/him/his) | Assistant United States Attorney | District of Massachusetts**
Phone: 617.748.3287 | Email: Christopher.looney@usdoj.gov

---

**From:** Barry Pollack <bpollack@psdfirm.com>
**Sent:** Sunday, February 18, 2024 6:19 PM
**To:** George, Abraham (USAMA) <AGeorge2@usa.doj.gov>; Joshua Solomon <jsolomon@psdfirm.com>; William Fick <wfick@fickmarx.com>; Daniel Marx <dmarx@fickmarx.com>
**Cc:** Callahan, Patrick (USAMA) <PCallahan@usa.doj.gov>; Looney, Christopher (USAMA) <CLooney@usa.doj.gov>; Husted, Susanne (USAMA) <SHusted@usa.doj.gov>; Apfel, Alexandra (USAMA) <AApfel@usa.doj.gov>
**Subject:** [EXTERNAL] RE: Mot. to Seal

Abe,
We see at least 8 transcripts from 2020 and prior with exhibit stickers on them using the suffix "T" and dated in June and July 2021. We also see Agent Lambert testified before the grand jury in 2021 when he was questioned about testifying before prior grand juries.
Can you please let us know when in 2020 or 2021 the final grand jury started hearing this matter? Was that the second or third (or fourth?) grand jury to hear this matter? Also, do you have other transcripts that were provided to the final grand jury other than those that you produced with the suffix "T"? And do you have records of what transcripts were read at what time to the final grand jury?
During our meet and confer, you had not suggested that disclosures were made to the grand jury about SpineFrontier's open payment submissions, but you have still not told us which grand jury in the series of them. Please provide that information promptly.
Barry

# EXHIBIT 2

FD-302 (Rev. 5-8-10)

OFFICIAL RECORD

FEDERAL BUREAU OF INVESTIGATION

Date of entry 05/09/2017

**Dr. JOSEPH SHEHADI**, date of birth [redacted] SSN [redacted] office address of 393 East Town Street, Suite 110, Columbus, OH 43215, telephone number [redacted], was interviewed telephonically by SA Roberto Coviello, HHS OIG and SA Alethea Harris. After being advised of the identities of the interviewing Agents and the nature of the interview, Shehadi voluntarily provided the following information in substance and in part:

Shehadi performed some simple consulting services for SpineFrontier (SF) that he believes were completely "legitimate." Shehadi was never asked to do anything illegal by anyone associated with SF. Shehadi runs all of these types of arrangements by his attorney.

Shehadi's consulting for SF faded to nothing because SF's products were no longer approved for use in the Ohio Health Hospital System. No reason was given for why SF's products were no longer available. Shehadi thinks the hospital stopped stocking SF products about two years ago. Shehadi is not a consultant for SF anymore and may have discontinued being a consultant before the hospital stopped stocking SF products. Once the products were no longer available, he did not consult anymore. SF sales representatives do not come to his area anymore since the hospital does not stock the products.

Shehadi was not sure who first approached him about working with SF. Shehadi does not remember how he first became a consultant for SF. As a consultant, Shehadi evaluated the products and provided feedback to SF. Shehadi would do consulting on an as-needed basis. When he performed consulting work, he would submit his hours after the work day. Shehadi gave his feedback on products online, via email, over the phone, or by talking to the sales representatives or engineers. Shehadi stated that he has a "paper trail" that shows that he did consulting work for SF. Shehadi keeps emails and logs that pertain to his consulting work. Shehadi has always insisted that documents pertaining to his consulting work be retained.

The last time that Shehadi spoke with anyone from SF was one to two years ago. Shehadi's sales representative from SF was Greg Last Name

Investigation on 05/03/2017 at Boston, Massachusetts, United States (Phone)

File # 209A-BS-6566377 Date drafted 05/05/2017

by Alethea Harris

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 05-08-10) Case 1:21-cr-10256-IT Document 163-1 Filed 03/06/24 Page 13 of 13

209A-BS-6566377

Continuation of FD-302 of (U) Joseph Shehadi , On 05/03/2017 , Page 2 of 2

Unknown (LNU). Shehadi insisted that everything that he did with SF was completely legal.

INT-RPT00000389