**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA,

v.

KINGSLEY R. CHIN,
ADITYA HUMAD, and
SPINEFRONTIER, INC.,

Defendants.

Criminal No. 1:21-cr-10256-IT

**Leave to file granted on March 7, 2024**

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS 1-7**

The government's opposition papers reflect dramatic shifts in position since it presented this matter to multiple grand juries. First, the government has changed its theory from Defendants using IME for false public payment disclosures, to Defendants using IME to dupe physicians-consultants. Second, and relatedly, the government has shifted from treating physician-consultants as co-conspirators to treating them as victims. In the course of doing so, the government overstates [REDACTED] and fails to mention the fact that it relied on multiple grand juries, making it even easier for the government to mislead the final grand jury that returned the flawed Indictment.

In its opposition, the government goes to great lengths to argue, despite contrary allegations in the Indictment, that the grand jury somehow understood [REDACTED] But in fact, the government has shown no such thing. At most, [REDACTED]. The government

has provided nothing in the record suggesting that the grand jury somehow became aware that SpineFrontier made disclosures in its own name from the outset, a fact contrary to the express allegations in the Indictment that the grand jury eventually returned, that SpineFrontier always disclosed payments in its own name, and that SpineFrontier ***never*** used IME's name as the payor in public disclosures of payments to physician-consultants.

The government's misplaced reliance on [REDACTED] raises another critical issue. By rule and practice, the length of the investigation here required the use of two if not three grand juries. While simultaneously telling the Court (albeit misleadingly) that [REDACTED] [REDACTED], the government has refused to inform Defendants whether or which of the exhibits to the government's opposition made it to the actual grand jury that returned the Indictment. A copy of an email string between defense counsel and the government about this subject is attached hereto as Exhibit 1. *See United States v. Leeper*, No. 06-CR-58A, 2006 WL 1455485, at *3 (W.D.N.Y. May 22, 2006) (dismissing indictment where government used multiple grand juries and prosecutor advised the later "grand jurors that they were going to hear summaries of testimony that the original grand jury had heard, and that the transcripts of that testimony would be available to them for review"); *United States v. Samango*, 607 F.2d 877, 881-82 (9th Cir. 1979) (affirming dismissal of indictment in a case involving multiple grand juries, "the lengthy transcripts were merely deposited with the grand jury, and … [t]he prosecutor should have attempted to present live testimony" before the grand jury that returned the pertinent Indictment); *United States v. Gallo*, 394 F. Supp. 310, 315 (D. Conn. 1975) (dismissing indictment where "for some unexplained reason, the prosecutor failed to supply the second grand jury with the full and complete record of the proceedings before the first grand jury" and "the second grand jury was composed of individuals different from those who had first indicted the defendants"); *In re Grand*

*Jury Investigation of Banana Indus*., 214 F. Supp. 856, 859 (D. Md. 1963) (dismissing indictment because "[t]he Court should foreclose any possibility that even an inadvertently unfair summary of the testimony taken before the Grand Jury in Maryland might be presented to the Grand Jury in California," finding it improper to "seek an indictment not upon testimony which the grand jury has heard, but upon selected portions of the testimony of one or more witnesses given before another grand jury").



In its opposition, the government suggests that its theory from the outset was *not* that public disclosures by SpineFrontier used the wrong name of the payor, but that [REDACTED]. In the Indictment, the government treated these physician-consultants expressly as unindicted co-conspirators and, in a separate case, even charged one with obstruction of justice *See United States v. Montone*, No. 20-cr-10159 (D. Mass. Aug. 17, 2020). But in the opposition, faced with the fact that SpineFrontier made full disclosure of the payments, in its own name, the government's theory treats physician-consultants as victims [REDACTED]. In reality, as reflected in the text of the Indictment itself, the government misused [REDACTED]. Any new theory of physician-consultants as victims is not what is alleged in the Indictment or seen in the record on this motion.

The inherent problems with the government shifting positions concerning the treatment of physician-consultants, away from what it emphasized before the grand jury, is compounded by the government's influence on the statements and testimony the physician-consultants themselves gave. At least some of the physician-consultants initially supported the legitimacy of

SpineFrontier's consulting program. After meetings with the government, stories unsurprisingly morphed by physician-consultants to blame SpineFrontier for deficiencies in their work hours. For example, according to an FBI 302, Dr. Joseph Shehadi told investigators that he performed actual consulting services "that he believes were *completely 'legitimate,'*" that he "was *never* asked to do anything illegal by anyone associated with SF [i.e. SpineFrontier]," and that he "runs all of these types of arrangements by his attorney." (Exhibit 2 hereto (emphases added)). Dr. Shehadi went on to explain that he "evaluated the products and provided feedback to SF," "gave his feedback on products online, via email, over the phone, or by talking to the sales representatives or engineers," and referred to a "paper trail" of such work (which documents he produced bear out). *Id.* The 302 ends with "Shehadi insisted that everything that he did with SF was completely legal." *Id.* The government has not charged Dr. Shehadi with making false statements under 18 U.S.C. § 1001 or otherwise. Yet as he met with investigators and prosecutors, Dr. Shehadi's story began to shift. By the time of his grand jury testimony, and after multiple meetings with the government, including at least one referenced in his grand jury testimony for which the government has provided no notes or memo, Dr. Shehadi was telling a very different story that implicated defendants.

Defendants disagree with many other aspects of the government's opposition, but Defendants limit their reply consistent with the Court's directives and otherwise rest on their initial papers.

**CONCLUSION**

Based on the foregoing, Defendants request that the Court grant their motions to dismiss in their entirety. In the alternative, Defendants request an evidentiary hearing in support of their dispositive motions.

Respectfully submitted,

/s/ Joshua L. Solomon
Barry S. Pollack (BBO #642064)
Joshua L. Solomon (BBO #657761)
POLLACK SOLOMON DUFFY LLP
31 St. James Avenue, Suite 940
Boston, MA 02116
(617) 439-9800
bpollack@psdfirm.com
jsolomon@psdfirm.com

/s/ William W. Fick
Daniel N. Marx (BBO #674523)
William W. Fick (BBO #650562)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
dmarx@fickmarx.com
wfick@fickmarx.com

**Certificate of Service**

The undersigned certifies that this document, filed through the ECF system, will be electronically served on counsel who are registered users of ECF on March 7, 2024.

/s/ Joshua L. Solomon