UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal Action No. 1:21-cr-10256-IT |
| | * | |
| KINGSLEY CHIN, ADITYA HUMAD, and | * | |
| SPINEFRONTIER, INC., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

July 3, 2024

TALWANI, D.J.

Defendants Kingsley Chin, Aditya Humad, and SpineFrontier, Inc. ("SpineFrontier") are

charged in an Indictment with Conspiracy to Violate the Anti-Kickback Statute in violation of 18

U.S.C. § 371 (Count One); Violations of the Anti-Kickback Statute in violation of 42 U.S.C.

§ 1320a-7b(b)(2) (Counts Two through Seven); and Conspiracy to Commit Money Laundering

in violation of 18 U.S.C. § 1956(h) (Count Eight). Pending before the court are Defendants'

Motion to Dismiss Counts One through Seven of the Indictment and/or Request for an

Evidentiary Hearing and In Camera Inspection of Grand Jury Transcripts [Doc. No. 149] and

Motion to Dismiss Count Eight [Doc. No. 147]. The government opposes both Motions. For the

reasons set forth herein, Defendants' Motion to Dismiss Counts One through Seven and/or

Request for an Evidentiary Hearing and In Camera Inspection of Grand Jury Transcripts is

DENIED, and Defendants' Motion to Dismiss Count Eight is GRANTED.

## I.    Background

### A.  Facts as Alleged in the Indictment

Dr. Kingsley Chin was SpineFrontier's owner, President, and CEO. Indictment ¶ 1 [Doc.

No. 1]. Mr. Aditya Humad was SpineFrontier's CFO and Vice President of Business

Development. Id. ¶ 2. SpineFrontier designed, marketed, and sold spinal medical products, which were used by spine surgeons in surgeries that were paid for, at least in part, by federal health care programs. Id. ¶ 3. Dr. Chin and Mr. Humad also owned and operated a second business, Impartial Medical Expert, LLC ("IME"). Id. ¶¶ 4, 37(c). IME was a corporation that "purported to manage the process pursuant to which SpineFrontier's surgeons submitted hours and received payments from or on behalf of SpineFrontier for purported consulting." Id. ¶ 4. However, in arranging for consulting engagements, Dr. Chin and Mr. Humad did not disclose that they were owners and operators of both companies. Id. ¶ 37(c).

At least seven surgeons who participated in Defendants' consulting programs accepted payments for work they did not actually perform; instead, Defendants paid these surgeons in exchange for the surgeons using SpineFrontier products. Id. ¶¶ 30–31. From 2012 to 2019, Dr. Chin, Mr. Humad, and SpineFrontier paid and directed the payment of millions of dollars in bribes to surgeons pursuant to agreements that paid those surgeons between $250 and $1000 per hour for supposed consulting services. Id. ¶ 29. Defendants represented to surgeons that their "consulting" fees would increase if the surgeons used more or more expensive SpineFrontier products. Id. ¶ 38(a), (d)–(f). In reality, the surgeons were not performing the consulting services specified in the contracts, and instead were being paid for their continued selection and use of SpineFrontier products in surgeries. Id. ¶¶ 30, 32.

Surgeon-consultants would submit requests for payment from SpineFrontier "directly and through IME, for consulting hours purportedly worked," and in exchange, SpineFrontier "directly and through IME, paid or caused to be paid bribes to the surgeons." Id. ¶ 38(r).

2

B. *Proceedings Before the Grand Jury*

In presenting its case to the grand jury, the government relied on ████████
███████████████████████████████████████████████████████████████
███████████████████████. The government also presented to the grand jury
███████████████████████████████████████████████, Gov't Oppn.,
Exs. 2–3 [Doc. Nos. 157-2; 157-3], ███████████████, <u>id.</u>, Ex. 10 [Doc. No. 157-10 at
8-17], and ███████████████████████████████████████
███████, <u>e.g.</u>, <u>id.</u>, Exs. 7, 9–10 [Doc. Nos. 157-7, 157-9, 157-10 at 1–7].
███████████████ described an ████████████████████
█████████████. Pollack Decl., Ex. E [Doc. No. 151-5] ███████████████.
███████ also testified regarding ██████████████████████████
███. Gov't Oppn., Ex. 8 [Doc. No. 157-8]. A ███████████████ was asked by the
prosecution whether, █████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████. Pollack Decl., Ex. F
[Doc. No. 151-6] ███████████. ███████████████████. <u>Id.</u>

## II. Standard of Review

When reviewing a defendant's motion to dismiss for a defect in an indictment, courts
"take the facts as alleged in the indictment as true, mindful that 'the question is not whether the
government has presented enough evidence to support the charge, but solely whether the
allegations in the indictment are sufficient to apprise the defendant of the charged offense.'"
<u>United States v. Ngige</u>, 780 F.3d 497, 502 (1st Cir. 2015) (quoting <u>United States v. Savarese</u>,
686 F.3d 1, 7 (1st Cir. 2012)). "[A]n indictment is sufficient if it, first, contains the elements of

the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974) (citations omitted). "At the indictment stage, the government need not 'show,' but merely must allege, the required elements." United States v. Stewart, 744 F.3d 17, 21 (1st Cir. 2014).

Defendants who seek dismissal of an indictment on the basis of prosecutorial misconduct face an even heavier burden. "The basic rule is that, because of the constitutionally mandated independence of the grand jury and the prosecutor, courts should be reluctant to dismiss an indictment. A dismissal, therefore, will be ordered only for serious and blatant prosecutorial misconduct that distorts the integrity of the judicial process." United States v. Rivera-Santiago, 872 F.2d 1073, 1088 (1st Cir. 1989) (internal quotation marks and citation omitted).

It is similarly difficult to succeed on a motion to unseal grand jury proceedings. The Federal Rules of Criminal Procedure mandate that proceedings before a grand jury be kept secret except in very limited circumstances. As relevant here, disclosure may be warranted where a defendant "shows that a ground may exist to dismiss the indictment because of matter that occurred before a grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). To trigger this exception, a defendant must establish that "particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of an indictment." United States v. Rodriguez-Torres, 570 F. Supp. 2d 237, 242 (D.P.R. 2008). A defendant must similarly establish a "'particularized need' to justify a court's in camera review of such proceedings." See United States v. Bravo-Fernández, 239 F. Supp. 3d 411, 415 (D.P.R. 2017).

### III.    Discussion

*A.  Motion to Dismiss Count Eight*

An individual or entity is guilty of concealment money laundering if, (1) "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity," he or it (2) "conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity," while (3) "knowing that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity[.]" 18 U.S.C. § 1956(a)(1)(B)(i).

"[T]he [concealment] money laundering statute does not criminalize the mere spending or investing of illegally obtained assets. Instead, at least one purpose for the expenditure must be to conceal or disguise the assets." U.S. v. Hall, 434 F.3d 42, 50 (1st Cir. 2006) (internal citation omitted); accord U.S. v. Cedeño-Pérez, 579 F.3d 54, 60–61 (1st Cir. 2009) ("[T]o obtain a conviction for concealment money laundering, the evidence must show that the purpose of the financial transaction is to conceal the nature, location, source, ownership, or control of the transacted proceeds," "not simply that the funds had been concealed during [the laundering].").

Defendants argue that the concealment money laundering charge improperly merges with the fraud charge and must be dismissed on that basis. A merger problem exists where "the money laundering crime is based upon the same or continuing conduct of the underlying predicate crime." United States v. Kennedy, 707 F.3d 559, 565 (5th Cir. 2013); see United States v. Richard, 234 F.3d 763, 769 (1st Cir. 2000) ("[T]he laundering of funds cannot occur in the same transaction through which those funds first became tainted by crime.") (internal citation omitted).

That is the case here. The Indictment alleges that Defendants "h[eld] out IME as a separate and independent entity from SpineFrontier, despite the fact that IME was not independent and was in fact owned and controlled by Chin and operated by Humad," Indictment ¶ 37(c) [Doc. No. 1], "funnel[ed]" money from SpineFrontier to IME to pay bribes, id. ¶ 37(d), and used IME "to conceal the true nature of the relationship between SpineFrontier and those surgeons" who were accepting bribes, id. These allegations, used by the government to support the money laundering charge, all describe conduct that is part of the "underlying predicate crime" of fraud.

The "concealment" at issue in the Indictment is the "relationship between SpineFrontier and th[e] surgeons"—which is a distinct and unrelated inquiry from whether the funds were the product of illegal bribes (e.g., the "nature" of the proceeds), or even whether SpineFrontier itself was the recipient of those ill-gotten gains (e.g., the "owner" of the proceeds). In other words, SpineFrontier would have concealed that relationship even if every penny of the funds SpineFrontier transferred to IME was legally obtained. As the Supreme Court reasoned when considering the transportation money laundering statute, "[t]here is a difference between concealing something to transport it, and transporting something to conceal it; that is, how one moves the money is distinct from why one moves the money. Evidence of the former, standing alone, is not sufficient to prove the latter." Regalado Cuellar v. United States, 553 U.S. 550, 566 (2008); see Cedeño-Pérez, 579 F.3d at 60 (applying Cuellar's reasoning to the concealment money laundering statute in light of identical text). Here, the government has not alleged that the "why" undergirding Defendants' transfers of funds to IME fits within the concealment money laundering statute. That failure necessitates dismissal of the money laundering charge.

*B.  Motion to Dismiss Counts One through Seven*

Defendants seek to dismiss Counts One through Seven of the Indictment for prosecutorial

misconduct before the grand jury and post-indictment.

    1.      Conduct Before the Grand Jury

        a.      Materially False Statements

Defendants primarily contend that the grand jury was misled into concluding that they

used IME as a means of evading Sunshine Act reporting obligations. Defendants fault the

government for not disclosing to the grand jury that, regardless of whether SpineFrontier or IME

actually made payments to the surgeons, SpineFrontier made relevant disclosures in its own

name of these payments to the Centers for Medicare & Medicaid Services (CMS) and that no

such disclosures were made in IME's name. Tr. 7:15–23 (Mar. 28, 2024). There are numerous

problems with Defendants' argument.

Importantly, Defendants are not charged with violations of the Sunshine Act. They are

charged with conspiracy to violate the Anti-Kickback Statute, and six substantive violations of

the same. See Indictment [Doc. No. 1]. Whether SpineFrontier's disclosures of its payments to

surgeon-consultants complied with one federal law does not mean those payments themselves

were not bribes that violated a different law. Relatedly, that Defendants made payment

disclosures under the Sunshine Act does not negate any intent they may have had to make those

payments in exchange for the purchase or use of SpineFrontier products in the first place, see

infra (discussion on legal standard for willfulness). Defendants' contrary argument stretches the

potential implications of SpineFrontier's public disclosures too far.[1]

---

[1] This is particularly so where, again, the government has not charged Defendants with violations
of the Sunshine Act, and evidence of SpineFrontier's disclosures has at most limited relevance to
its intent, or lack thereof, in committing fraud. See United States v. Latorre, 922 F.2d 1, 7 (1st

Regardless, the government *did* present █████████████████████████████
████████████. This evidence included: ████████████████████████████
████████████████████████████████████████████████, Gov't Oppn., Ex.
1 [Doc. No. 157-1] (███████████); ████████████████████████████
████████████████████████████, id., Exs. 2, 3 [Doc. Nos. 157-2, 157-3] (████
████████████); and testimony from a ██████████████████████
████████████████████████████. The government also
presented evidence that ████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████. Id., Exs. 8–11 [Doc. Nos.
157-8–11]. [2]

Defendants are effectively asking the court to opine on the weight and the sufficiency of
the evidence of their intent to violate the AKS on a motion to dismiss. But it is well established
that questions of evidence sufficiency are inappropriate vehicles for dismissing an indictment
before trial. See United States v. Casas, 425 F.3d 23, 38 (1st Cir. 2005) ("A grand jury
proceeding is not a trial; only after conviction following a trial is sufficiency of the evidence an
appropriate issue.").

---

Cir. 1990) (prosecution "is not normally under a duty to disclose exculpatory evidence" to a
grand jury).

[2] Defendants argue in their Reply [Doc. No. 165-3 *SEALED*] that the government's proffered
evidence does not absolve the government of misconduct because there is the possibility that,
given the involvement of multiple grand juries in returning the indictment, not every grand jury
was presented with the same evidence. Defendants' speculation does not support dismissal. See
United States v. Chanen, 549 F.2d 1306 (9th Cir. 1977) (affirming indictment involving three
separate grand juries and two indictments where the transcripts of testimony before previous
grand juries were read aloud to the third grand jury and the prosecutor advised the third grand
jury about any inconsistent statements).

b.    Unreliable Hearsay

Defendants also argue that the government presented unreliable hearsay evidence from

███████████████. There is "no prohibition on either the presentation of hearsay evidence

to a grand jury or the grand jury's use of that hearsay evidence in determining whether to indict,"

United States v. Ortiz de Jesus, 230 F.3d 1, 4 (1st Cir. 2000), and Defendants' concerns

regarding ████████████████ testimony are unwarranted.

The ████████████████████████████████████

████████████████████████████████████████████

████████████████. Pollack Decl., Ex. E [Doc. No. 151-5]. Even accepting Defendants'

characterization of ████████████████ as incomplete, the government has amply demonstrated

that it presented ████████████████████████████

████████████████████ such that ████████████████████████

would not prejudice the grand jury into returning an indictment.

The ████████████████████████████████████████

████. Pollack Decl., Ex. F [Doc. No. 151-6]. While this opinion testimony is more concerning,

that concern is still insufficient to warrant dismissal of the indictment. Contrary to Defendants'

implications, the testimony of ████████████████████████████ is not

equivalent to a prosecutor or a judge testifying to the same. Cf. Def.'s Mem. ISO Motion 15

[Doc. No. 150] (citing cases). Moreover, there is no evidence that the government "deceive[d]

the jurors as to the quality of the testimony" it elicited from either government agent, see United

States v. Hogan, 712 F.2d 757, 761 (2d Cir. 1983).

      c.      Serious Misstatement of Applicable Law

Defendants also argue that the prosecution failed to properly instruct the grand jury on the meaning of willfulness in the AKS context, an oversight that they contend warrants dismissal of the indictment on those charges.[3] But "[a] prosecutor is not obligated to provide legal instruction to the grand jury." United States v. Lopez-Lopez, 282 F.3d 1, 9 (1st Cir. 2002). Furthermore, Defendants' conjecture that the government provided an improper instruction to the grand jury arises only from discussions with the government and an inference that the language of the indictment suggests that a lower standard of proof was used to obtain it. Mere speculation regarding any discretionary instruction on intent the government may have given the grand jury is not a basis to dismiss the substantive charges in the indictment. See United States v. Maceo, 873 F.2d 1, 3 (1st Cir. 1989). Nor does such speculation justify the disclosure of the transcripts or in camera review, both of which require a showing of "particularized need" that Defendants have not made. See United States v. McElroy, 392 F. Supp. 2d 115, 117 (D. Mass. 2005) ("Since no basis for a dismissal of the indictment has been demonstrated, disclosure is not permitted."). As a result, Defendants' request for an in camera evidentiary hearing regarding is also denied.

      2.      Brady Violations

Defendants also bring a claim that the government violated its Brady obligations. Brady obligations "extend to information in [the government's] possession, custody, or control." Hall, 434 F.3d at 55. Defendants contend that the government has failed to provide two types of Brady

---

[3] Defendants' argument on this point is intertwined with their argument that the government misled the jury with respect to SpineFrontier's Sunshine Act disclosures. Def.'s Mem. ISO Motion 18 [Doc. No. 150]. The court rejects that contention, see supra, and addresses the legal standard on its own.

material: data from CMS regarding SpineFrontier's payment disclosures, and certain communications between the government and cooperating witnesses.

>                a.    CMS Data

Defendants concede in a footnote that the government has now agreed to request the data from CMS data but have raised a <u>Brady</u> issue effectively in anticipation of that data being incomplete. Def.'s Mem. ISO Motion 11 n.4 [Doc. No. 150]. The court declines to address a potential dispute and in any event finds no basis for a finding of prosecutorial misconduct on the record thus far.

>                b.    Witness Communications

Defendants also take issue with the government's conduct regarding Jason Montone, a former surgeon-consultant, who has been separately indicted on criminal charges related to this case. The government initially represented to Defendants and to the magistrate judge that Montone had expressly carved out any communications between himself and his counsel from his consent to the government's search of his cell phone text messages. Defendants sought access to Montone's text messages and the magistrate judge granted Defendants access to only 41 of the 55 withheld messages. However, the consent form Montone signed contained no such carveout. <u>See</u> Pollack Decl., Ex. H (consent form) [Doc. No. 151-8]. The government has since written a letter of explanation to the magistrate judge, acknowledging its oversight and reporting that all discoverable messages from Montone's phone have been provided to Defendants. Pollack Decl, Ex. I [Doc. No. 151-9].

Defendants have not pointed to any information specifically revealed by the now-disclosed messages or acquired elsewhere that corroborates their suspicions regarding the government's purported threats or inducements to cooperating witnesses. Defendants have also

not contested the government's assertion that it has provided Defendants with the plea deals,

settlement agreements, and other formal arrangements between any cooperating witnesses and

the government. The court finds no basis on this record for dismissal of the Indictment for

prosecutorial misconduct.

## IV.    Conclusion

For the foregoing reasons, Defendants' <u>Motion to Dismiss Counts One through Seven of

the Indictment and/or Request for an Evidentiary Hearing and In Camera Inspection of Grand

Jury Transcripts</u> [Doc. No. 149] is DENIED, and Defendants' <u>Motion to Dismiss Count Eight of

the Indictment</u> [Doc. No. 147] is GRANTED.

IT IS SO ORDERED

July 3, 2024                                     /s/       Indira Talwani
                                                United States District Judge