UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Criminal No. 1:21-cr-10256-IT |
| KINGSLEY R. CHIN, ADITYA HUMAD, and SPINEFRONTIER, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MOTION BY DEFENDANTS TO UNSEAL THE COURT'S MEMORANDUM AND ORDER DATED JULY 3, 2024 AND UNDERLYING MOTION PAPERS AND EXHIBITS, AND INCORPORATED MEMORANDUM OF LAW**

Defendants respectfully move to unseal the Court's Memorandum and Order dated July 3, 2024 (Doc. No. 181). The government has invoked inapplicable standards leading to this Court sealing or redacting a decision on a dispositive motion and the related motion papers and exhibits. In so doing, the government has confused the significant differences between *post*-indictment and *pre*-indictment stages in the same criminal case.

Courts require "compelling reasons" for sealing relevant papers and rulings on an item-by-item basis when the common law right of access is involved. *United States v. Kravetz*, 706 F.3d 47, 59 (1st Cir. 2013) ("only the most compelling reasons can justify non-disclosure of judicial records' that come within the scope of the common-law right of access"). This heightened standard contrasts with the "good cause" standard that applies to a discovery or procedural type of motion. Also, this heightened standard treats judicial records that include grand jury materials different in **pre-indictment** stages from their treatment **after charges are filed**. For dispositive motions and a trial, a party must also show compelling reasons to seal items. *See Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 679 (9th Cir. 2010). In discovery or

non-dispositive pretrial proceedings, a party must show good cause. *Id.* at 678-79. "A different standard governs grand jury transcripts and warrant materials ***in a pre-indictment investigation***, but that category is not at issue here." *Diamond v. United States*, No. CV 13-8042-GHK AGR, 2014 WL 7883613, at *9 n. 6 (C.D. Cal. Nov. 14, 2014), *report and recommendation adopted*, No. CV 13-8042-GHK AGR, 2015 WL 64805 (C.D. Cal. Jan. 5, 2015), *aff'd*, 688 F. App'x 429 (9th Cir. 2017) (emphasis added).

These heightened standards of particularized "compelling reasons" applicable here arise from the importance of public access to judicial records, particularly concerning dispositive rulings. As one court has explained, the judiciary has an important obligation to make both its decisions and the reasons for its decisions available to public access, especially where dispositive motions are concerned. *See Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). While the government persists in arguing for a blanket rule that grand jury materials are "traditionally kept secret," courts have equated grand jury materials to warrant materials and limited that tradition to "the pre-indictment phase of an investigation." *Id.* at 1185 (citing *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989)); *see also United States v. Emter*, No. CR 14-89-BLG-SPW, 2015 WL 13877057, at *4 (D. Mont. Nov. 19, 2015) ("While grand jury transcripts are 'traditionally kept secret,' that tradition is limited to 'the pre-indictment phase of an investigation.'"). At present, because of the various sealing orders, Defendants face obstacles to showing witnesses and their counsel the Court's Memorandum and Decision, or aspects of the government's briefing on dispositive motions. The sealing orders further limit Defendants' ability to ask questions concerning the witnesses' interaction with the government as it relates to the content of these filings. Furthermore, the sealing orders also prevent other

litigants or counsel from learning about the issues and coming forward with helpful information, which offers yet another historic reason for the presumption of public access to judicial records.

Here, the government is taking positions concerning grand jury secrecy directly contrary to its own traditional *post*-indictment practices. For example, in a case litigated by and a brief signed by a now-former United States Attorney (prior to that appointment) and a United States Magistrate Judge (prior to his judicial appointment), while they were prosecutors, they stated in *post*-indictment motion papers filed in the public record: "*Testifying in the grand jury* in 2010, however, *Kimberly said* that they met with Latorella and Fields after her FBI interview, and that there was no coaching." *United States v. Fields*, Crim. No. 1:10-cr-10388-DPW (D. Mass. 10/22/2012), Doc. No. 284, at 1 (emphasis added). Indeed, as is the usual *post*-indictment practice, in that same case, the government and the Court also allowed to stand in the public record the following lengthy description of grand jury testimony:

> On May 19, 2010, Kim O testified under oath before the grand jury, and she rejected the way Agent Consoli had phrased certain of her comments at the April 23, 2007 interview. While she somewhat less egregiously attempted to protect Dan O and Latorella in her grand jury testimony than she did in her statements to Agent Consoli, she acknowledged repeatedly that all of her accusations about the role of Fields were based on what Dan O had told her, not based on direct contact with Fields. She also confirmed that, before her March 14, 2007 lies about her father establishing the trust at issue, she spoke only to Dan O, not to Fields. She also acknowledged that, between that first interview and the April 23, 2012 interview, when she spoke to Fields, she did so at a meeting that Latorella and Dan O attended. When asked, "Now, just so the record is clear this meeting was after your first interview with the FBI not before your first interview with the FBI?", Kim O stated "It was after the first interview." She also explained that she knew the sequence because it was Dan O who called Fields and Latorella asking for the meeting after she became nervous about her lies about her father to the FBI. Kim O has thus clearly confirmed under oath that Fields had nothing whatsoever to do with her initial set of lies to Agent Consoli about her father's role in creating the trust. All she remembers Fields talking about regarding the trust was who would be "responsible for paying the taxes" on proceeds from the trust and "vaguely remember[ing] him saying something about the original paperwork for the trust being shipped off somewhere." The context reflects that Kim O was not trying to protect Fields during her testimony, in which she

3

>repeatedly stated her "understanding" and "guesses" about the role of Fields from what Dan O had told her. Contrary to his wife's under oath testimony before the grand jury, when seeking a plea deal in this matter, Dan O stated at a proffer session that it was Fields who "told [Kim O] to tell the FBI words to the effect, 'tell them it was your father's family trust.'"

*Id.*, Doc. No. 280, at 2-3.

Contrary to its own past practices, here the government takes a novel position that gives rise to improper limitations on Defendants' ability to speak openly and present their defenses, by limiting their ability to make clear and comprehensive arguments and presentations in open court. The government ignores that Rule 6(e)(2)(A) makes clear that "no obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B)." Because Rule 6(e)(2)(B) does not apply to defendants in a criminal case, Rule 6(e)(2)(A) prohibits **any** imposition of secrecy on criminal defendants concerning grand jury materials. Despite that clear law, the government already attempted, during the March 28, 2024 hearing in this matter, to gag Defendants, incorrectly arguing that Defendants were prohibited from mentioning witness names in open court. To the extent materials remain improperly sealed, the government can be expected to invoke sealing to silence Defendants and thus achieve through this Court's sealing orders what the government is expressly and directly prohibited from achieving through Rule 6(e).

Defendants have made repeated requests of the prosecutors in this case to identify any precedent for their attempt to change their office's longstanding practices by now elevating ***post-*** indictment disclosures of grand jury materials to the Pantheon of secrecy reserved for ***pre-*** indictment grand jury activities. In response, the government has either refused or been unable to identify any such precedent.

In their recent submission seeking a novel sealing of portions of the Court's decision on a dispositive motion, the government has ignored the presumption of access to judicial decisions

4

and the records on which courts rely, which apply with particular force to dispositive motions. For example, the government has even sought to redact portions of a judicial decision on a dispositive motion, which is the epitome of judicial records subject to broad First Amendment rights of access. The First Circuit has held:

> When considering whether the common law right of access applies, the cases turn on whether the documents that are sought constitute "judicial records." Such records are those "materials on which a court relies in determining the litigants' substantive rights." *In re Providence Journal*, 293 F.3d at 9–10 (quoting *Anderson*, 805 F.2d at 13). Such materials are distinguished from those that "relate[ ] merely to the judge's role in management of the trial" and therefore "'play no role in the adjudication process.'" *In re Boston Herald, Inc*., 321 F.3d 174, 189 (1st Cir.2003) (quoting *F.T.C. v. Standard Fin. Mgmt. Corp*., 830 F.2d 404, 408 (1st Cir.1987)).

*Kravetz*, 706 F.3d at 54 (1st Cir. 2013).

The caselaw on which the government has relied is inapposite. The government takes dicta out of context from *Illinois v. Abbott & Assoc., Inc*., 460 U.S. 557 (1983), concerning Rule 6 prohibitions that continue against the government after investigations end. The Court in *Abbott & Assoc.* grappled with a specific issue and reached a narrow holding concerning limits on the right of the Attorney General to make disclosures to state prosecutors: "The statute as enacted by Congress simply does not authorize the Attorney General to turn over the entire investigative record of a federal antitrust grand jury to a State attorney general who has not complied with the judicially-developed standards implementing Rule 6(e)." *Id.* at 573. In the other case on which the government has relied, *Douglas Oil Co. of California v. Petrol Stops Nw*., 441 U.S. 211 (1979), the Court addressed how civil parties can obtain grand jury materials from completed investigations, criticized a lower court for releasing them directly to civil plaintiffs without an analysis of the need for the materials, and held: "the better practice would have been for the District Court, after making a written evaluation of the need for continued grand jury secrecy and

5

a determination that the limited evidence before it showed that disclosure might be appropriate, to send the requested materials to the courts where the civil cases were pending." *Id.* at 230. The government has offered absolutely no precedent, however, for their ongoing requests to seal grand jury materials in the same criminal case in which the materials led to the Indictment, let alone to seal or redact a judicial decision on a dispositive motion and the underlying papers on which the Court has relied. Indeed, the government has failed to identify and address the adverse precedent described above that is much more on point. Likewise, the government has not addressed the longstanding contrary practices by its office in the District of Massachusetts, as described above. Hence, the items at issue should be unsealed.

These sealing issues might not relate directly to the merits, but their treatment is as important and fundamental to our system of justice. Courts have deemed sealing or unsealing orders sufficiently important to allow immediate appeals under the collateral order doctrine. *See, e.g., Romero v. Drummond Co.*, 480 F.3d 1234, 1242 (11th Cir. 2007); *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016); *Ameziane v. Obama*, 620 F.3d 1, 5 (D.C. Cir. 2010). The First Circuit has expressly found unsealing orders immediately appealable and has joined the Seventh Circuit in allowing the immediate appeal of the denial of the unsealing of jurors' names. On this latter issue, the First Circuit explained: "Thus, as an intervenor, WBUR may appeal the District Court's order denying its request for the disclosure of juror names and addresses, which WBUR filed before sentencing and thus before the matter had concluded -- assuming, that is, the appeal is not moot." *United States v. Chin*, 913 F.3d 251, 255 (1st Cir. 2019) (citing *United States v. Blagojevich*, 612 F.3d 558, 560 (7th Cir. 2010) (applying the collateral order doctrine in finding jurisdiction over an appeal by an intervenor in a similar case)); *see also Chin*, 913 F.3d at 255 n.3 ("Nor do we think that the fact that the motion to

unseal the juror names and addresses was denied 'without prejudice' is of jurisdictional significance, under the collateral order doctrine, given that the request was for the release of the jurors' identifying information 'as soon as possible' post-verdict."). As these various appellate courts have ruled, sealing and unsealing orders pose important issues that require careful pre-judgment assessment.

The government has deviated from its ordinary practices, convincing this Court to apply to substantive judicial records that include grand jury materials a form of secrecy reserved for *pre*-indictment stages.

## CONCLUSION

Based on the foregoing, defendants respectfully request that the Court unseal the Memorandum and Decision, and the underlying dispositive motion papers and exhibits.

Respectfully submitted,

/s/ Barry S. Pollack
Barry S. Pollack (BBO #642064)
Joshua L. Solomon (BBO #657761)
Mary L. Nguyen (BBO #690395)
POLLACK SOLOMON DUFFY LLP
31 St. James Avenue, Suite 940
Boston, MA 02116
(617) 439-9800
bpollack@psdfirm.com
jsolomon@psdfirm.com

/s/ William W. Fick
Daniel N. Marx (BBO #674523)
William W. Fick (BBO #650562)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA  02110
(857) 321-8360
dmarx@fickmarx.com
wfick@fickmarx.com

**Certificate of Service**

The undersigned certifies that this document, filed through the ECF system, will be electronically served on counsel who are registered users of ECF on July 17, 2024.

/s/ Barry S. Pollack

**Local Rule 7.1 Certification**

The undersigned certifies that counsel for the defendants conferred in good faith with counsel for the government concerning this motion, and that counsel for the government requested that defendants note the government's objection to this motion.

/s/ Barry S. Pollack