UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>(1) KINGSLEY R. CHIN,<br>(2) ADITYA HUMAD, and<br>(3) SPINEFRONTIER, INC.,<br><br>    Defendants | CRIMINAL No. 1:21-cr-10256-IT |

**GOVERNMENT'S FED. R. CRIM. P. 15**
**MOTION FOR A PRE-TRIAL DEPOSITION**

The government moves under Rule 15(a)(1) of the Federal Rules of Criminal Procedure for an order authorizing a pretrial video-recorded deposition of Chantal Goldson to preserve her testimony for trial in this matter, in which jury selection is set for September 30, 2024, and opening statements on October 7, 2024. The requested deposition is necessary given that the witness lives in Dallas, Texas, and will be unable to travel to Boston to testify because she is pregnant and is due to deliver on October 16, 2024. The Government proposes to take the deposition in Dallas, where Goldson resides, on August 20 or 21, 2024, and with the Defendants present, so they will have an opportunity to cross-examine the witness. Because (i) Goldson will not be available at trial, (ii) her testimony is material, and (iii) allowing this pre-trial deposition is in the interests of justice, the Government respectfully requests the Court grant the motion and order the deposition to occur on August 20 or 21, or at a time otherwise agreed to among the parties and Goldson.

## BACKGROUND

Chantal Goldson worked at SpineFrontier from approximately 2014 through 2017. While at SpineFrontier, Goldson reported to Defendant Aditya Humad, among others. At Humad's direction, Goldson prepared reports that detailed the consulting hours submitted by surgeon, the "expected" hours of consulting for each surgeon, the number of cases completed by surgeon with SpineFrontier's products, and the amount in product sales SpineFrontier received as a result of the physician-consultant's usage of the Company's products. As part of her position at SpineFrontier, Goldson had administrative rights to the Impartial Medical Expert ("IME") website, which she accessed to catalogue the amount of purported consulting hours physician-consultants submitted to SpineFrontier.

Goldson regularly met in-person with Humad and was present while Humad reviewed the reports she had compiled at his direction. She observed Humad as he decided how many hours of purported consulting to approve for each physician-consultant. In addition to offering testimony concerning the foregoing, the government anticipates that she will testify as to her understanding of Humad's basis for approving consulting hours.

Goldson resides in Dallas, TX. She is pregnant and is due to deliver on October 16, 2024. As this matter is set for trial commencing October 7, 2024, Goldson will not be able to attend the trial in-person. Goldson's physician confirms that she is pregnant and cannot testify live in Boston at the time of the trial. *See* Ex. 1. Goldson has informed the Government that she is available for a pre-trial deposition in Dallas on August 20 or 21.[1]

---

[1] Goldson also is available August 22, but government counsel cannot accommodate that date. The government can obtain additional availability from Goldson if necessary.

**ARGUMENT**

Where a witness is physically unable to travel to testify at trial, and specifically where such restriction arises from a pregnant witness's impending delivery, federal courts across the country have granted parties' requests for pre-trial depositions under Fed. R. Crim. P. 15(a)(1), on the grounds of "exceptional circumstances and in the interest of justice." Chantal Goldson will be in the last weeks of her pregnancy when trial commences in early October 2024. Accordingly, the Government respectfully requests the Court allow the Government to depose Goldson pre-trial.

Rule 15 was designed to facilitate preserving testimony that may be needed to guarantee a fair trial. *United States v. Drogoul*, 1 F.3d 1546, 1557 (11th Cir. 1993); *United States v. Bunnell*, 201 F.Supp.2d 169, 170 (D. Me. 2002). A court may order the deposition of a witness to preserve testimony for trial under exceptional circumstances and in the interest of justice. Fed. R. Crim. P. 15(a). "The decision whether to grant or deny a motion to take the deposition of a proposed witness for use at a criminal trial is committed to the discretion of the district court." *United States v. Keithan*, 751 F.2d 9, 12 (1st Cir. 1984); *see also United States v. Vo*, 53 F.Supp.3d 77, 80 (D.D.C. 2014) (citing *United States v. Johnpoll*, 739 F.2d 702, 708 (2d Cir. 1984)). The key factors in determining whether exceptional circumstances exist are whether the witness is likely to be unavailable at trial, and whether the witness will provide testimony that is material to a central issue in the case. *Drogoul*, 1 F.3d at 1554. Finally, courts consider whether the pre-trial deposition is in the interests of justice and whether there are any countervailing considerations. *See Drogoul*, 1 F.3d at 1556 ("The ultimate inquiry is whether exceptional circumstances exist and whether it is in the interest of justice to allow the depositions to be

taken."). Analysis of those three factors here favors granting the Government's request for a Rule 15 pre-trial deposition.

### A.   Unavailability

A witness is unavailable if a "substantial likelihood exists that [he or she] will not testify at trial." *Drogoul*, 1 F.3d at 1553. The First Circuit in *Keithan* emphasized that a witness's physical infirmities limiting their ability to travel qualified as an exceptional circumstance. 751 F.2d at 12 (allowing for a pretrial deposition for an eighty-seven-year-old witness that kept him from walking and who lived sixty miles away from the courthouse). Significant health-related issues impeding a witness's ability to travel, such as a woman being in her final month of pregnancy, similarly constitutes an exceptional circumstance justifying a Rule 15 deposition. *See, e.g., United States v. McGuire*, 307 F.3d 1192, 1205 (9th Cir. 2002).

For example, in *McGuire*, the Ninth Circuit rejected defendant's challenge to the district court's admission of a pregnant witness's former testimony, holding that the "district judge's decision to adhere to the trial date to accommodate so many [other participants'] competing schedules was not improper." *Id.* The court of appeals noted that a "pregnancy in its seventh month poses special risks for a mother and her unborn child that may be exacerbated by the stress of trial." *Id.* So too here, where the witness will be in her *final weeks* of her pregnancy at the time of trial.

Similarly, in *United States v. Donaldson*, (7th Cir. 1992), the Seventh Circuit upheld the district court's decision to grant a Rule 15 deposition of a witness who "had delivered a child shortly before trial and was seriously ill at the time of trial." *Id.* at 392-93. The defendant was charged with five counts of bank robbery in violation of 18 U.S.C. § 2113(a), and the witness was one of the bank tellers identifying the defendant. *Id.* at 384. The district court granted the

government's motion to take the teller's pre-trial deposition even though she was locally based. *Id.* Although she was due approximately two weeks after the trial's opening, she gave birth early and was hospitalized in the aftermath of the birth. In denying the defendant's appeal, the court of appeals held that although the Sixth Amendment "reflects[s] the framers' marked preference for face-to-face confrontation of witness and accused in the criminal trial," the government may overcome that default preference. *Id.* at 392 (internal quotation and citation omitted).

Finally, in *United States v. Coker* the court permitted a pretrial deposition for a pregnant woman in her final month of pregnancy because of complications that rendered her unable to air travel for trial. 1992 WL 59156 at *1, No. 91–00321–05 (E.D. Pa. Mar. 18, 1992), *aff'd*, 5 F.3d 1491 (3rd Cir. 1993). The pregnant witness in *Coker* was scheduled for a cesarean section three weeks after the trial's start and had a doctor's note stating she could not travel during that period. *Id.*; *see also United States v. Dermen*, 2019 WL 3536615 at *1, No. 2:18-cr-00365-JNP-BCW, (D. Utah. Aug. 2, 2019) (finding that a witness was unavailable for trial due to pregnancy-related travel restrictions).

Goldson will be unavailable for trial, as she will be in the final weeks of her pregnancy during the trial dates and resides in Dallas, TX, which is an approximate three-to-four-hour flight from Boston. Due to the increased risk of preterm labor and other complications associated with the final weeks of pregnancy, such as high blood pressure, it is generally not advisable for pregnant women to travel by air from the thirty-sixth week of pregnancy until birth; air travel after the thirty-sixth week usually requires a physician's authorization. Johns Hopkins Medicine, *Traveling While Pregnant or Breastfeeding*, https://www.hopkinsmedicine.org/health/conditions-and-diseases/traveling-while-pregnant-or-breastfeeding (last visited July 17, 2024). In this case,

Goldson's physician has stated that it is not advisable for her to travel such a distance at the time of the trial. Ex. 1.

### B. Materiality

In determining materiality for Rule 15 purposes, "courts have used the standards developed for applying and interpreting *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963)." *Vo*, 53 F.Supp.3d at 81. Evidence is material if it there is a "reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different . . . and the evidence must . . . not [be] corroborative or cumulative of other evidence." *Id.* at 81-2 (cleaned up).

Goldson's testimony plainly is material to the charged conduct. The government anticipates that Goldson will testify to Defendant Humad's process for determining consulting hours during the regular meetings Humad held with Goldson. The government also expects that Goldson will testify that Defendant Humad directed her to compile reports containing information of (i) submitted consulting hours per surgeon, (ii) expected consulting hours per surgeon, (iii) number of cases per surgeon, and (iv) sales per surgeon, and that she did so and shared them with Humad at their regular meetings, all at his direction. No other government witness will testify to this information. The jury should be able to consider this testimony in determining whether Defendants were paying for actual consulting work or whether they were paying illegal kickbacks for surgeons' use of SpineFrontier's products.

### C. Interests of Justice

Lastly, in deciding whether to grant a Rule 15 deposition, courts consider whether the request is in the interests of justice. *See* Fed. R. Crim. P. 15(a)(1) ("The court may grant the motion because of exceptional circumstances and in the interest of justice.").

6

Taking Goldson's deposition is in the interest of justice, not only because her testimony is directly and materially relevant to the allegations in the Indictment, but also because it will not prejudice Defendants, who will have a full opportunity to confront and cross-examine the witness. *See Drogoul*, 1 F.3d at 1553. Moreover, given the timeline of Goldson's delivery date, she will not be available to testify at trial in Boston. Finally, the Court may defer ruling on the admissibility of the witness's testimony until trial, after it has had the chance to review the testimony and consider any defense objections. *See id*.

Defendants likely will contend that the deposition is not in the interests of justice. During the meet-and-confer process with the Government, Defendants took the position that a pre-trial deposition would deny them their constitutional right to confront Goldson live, in court, and in front of the jury. Further, they contend that they may need additional testimony from Goldson once they hear the Government's direct examination. They contend that having to make strategic decisions about how to cross examine Goldson prior to trial violates their due process rights. Finally, they suggest that the Court continue the case until Goldson is able to travel for testimony.

Contrary to Defendants' position concerning their constitutional rights, however, the Confrontation Clause does not guarantee them an absolute right to cross-examine a witness "live, in court, and before the jury." Ex. 2, Def.'s July 16, 2024 Email at 1. The First Circuit has made as much clear in the context of an appeal upholding the district court's admission of testimony pursuant to a Rule 15 deposition. *See United States v. McKeeve*, 131 F.3d 1, 8 (1st Cir. 1997) ("In other words, the right of confrontation is not absolute."). The Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v.*

7

*Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original).  Moreover, the test for whether a defendant's Sixth Amendment right has been satisfied "is not whether the defendant has been provided with an ideal cross-examination opportunity, one in which his or her attorney has complete knowledge of the evidence and clairvoyant understanding of how the trial will play out."  *United States v. Caramadre*, 882 F.Supp.2d 295, 301 (D.R.I. 2012) (citing *United States v. Koon*, 34 F.3d 1416, 1427 (9th Cir. 1994) *rev'd on other grounds* 518 U.S. 81 (1996)).  Instead, the Supreme Court's ruling in *Crawford v. Washington*, 541 U.S. 36, 61 (2004), "simply requires an opportunity to cross-examine witnesses testifying against the accused."  Nor does a Defendant's mere "failure . . . to discover potentially useful evidence at the time of the former proceeding [] constitute a lack of opportunity to cross-examine." *Koon*, 34 F.3d at 1427.

Given the circumstances at issue here, the Government's proposed course of action—a Rule 15 deposition—protects Defendants' Sixth Amendment rights, without unnecessarily delaying the entire trial due to a single witness's unavailability, especially where such unavailability likely will last for many months.  Further, the Government's current request is only to *take* Goldson's deposition—that is, the Government does not now move to *admit* the testimony.  Defendants' cross-examination concerns are, therefore, premature.  *See Drogoul*, 1 F.3d at 1554 ("We fail to see, however, how the mere *taking* of depositions threatens [the right to confront witnesses at trial].") (emphasis in original); *see also United States v. Mann*, 590 F.2d 361, 366-67 (1st Cir. 1978) ("if the witness proves unavailable, the court may have before it a more complete information base").[2]

---

[2] To be sure, the Government anticipates moving *in limine* to admit Goldson's testimony if the Court grants this motion and Goldson indeed testifies pursuant to Rule 15.  But the time to make the decision as to whether admission of the testimony should be permitted is in the run-up to trial when the Court has the benefit of the transcript, not more than two months in advance.

The continuance option that Defendants offer would only further delay an already delayed trial by a lengthy period. In evaluating a request for a continuance in the context of a district court's denial of the same, the First Circuit has identified several relevant factors. They include: "the reasons contemporaneously presented in support of the request, the amount of time needed for effective preparation, the complexity of the case, the extent of inconvenience to others if a continuance is granted, and the likelihood of injustice or unfair prejudice attributable to the denial of a continuance." *United States v. Rodríguez-Durán*, 507 F.3d 749, 763 (1st Cir. 2007). Here, a continuance is not warranted. The Government currently is aware of only one witness, out of numerous out-of-town witnesses, who will be unavailable for trial. *See McGuire*, 307 F.3d at 1205 (noting the "trial in this case involved scores of witnesses [] many of whom were required to travel long distances" and finding the district court's decision not to grant a continuance "was not improper"). The Government proposes to take Goldson's Rule 15 deposition more than a month in advance of trial. Any claim of prejudice Defendants will suffer is flimsy at best. Defendants will be able to cross-examine Goldson in full at the pre-trial deposition; in fact, they can explore whatever area of inquiry they may reasonably consider to be relevant to the charged conduct during the deposition subject to the Government's objections, which the Court can adjudicate at the appropriate time. Conversely, if the Court were to grant a continuance to wait for Goldson to be able to travel to Boston, it will be many months before she could physically do so. And once she is ready to do so, the Court and the parties will then have their own busy schedules and those of the many other witnesses to take into account, some of which may have changed in the intervening period.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court authorize the government to take a pretrial deposition of Chantal Goldson on August 20 or 21, or as otherwise agreed to among the parties and Goldson.

Dated: July 23, 2024

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By: */s/ Abraham R. George*
ABRAHAM R. GEORGE
MACKENZIE QUEENIN
PATRICK M. CALLAHAN
CHRISTOPHER LOONEY
Assistant U.S. Attorneys

### Certificate of Service

The undersigned hereby certifies that I caused this document to be filed through the ECF system on July 23, 2024.

*/s/ Abraham R. George*
ABRAHAM R. GEORGE

### Certification Pursuant to L.R. 7.1

The undersigned hereby certifies that counsel for the government conferred in good faith with counsel for the defendants, but the parties were unable to resolve the issues presented in this Motion.

*/s/ Abraham R. George*
ABRAHAM R. GEORGE