UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>KINGLEY R. CHIN,<br>ADITYA HUMAD, and<br>SPINEFRONTIER, INC.,<br>*Defendants*. | No. 1:21-cr-10256-IT<br><br>[REDACTED] |

**DEFENDANTS' OPPOSITION TO PROSECUTION'S MOTION
FOR PRE-TRIAL DEPOSITION OF MATERIAL WITNESS [D.E. 184]
AND CROSS-MOTION TO CONTINUE TRIAL**

"The use of deposition testimony in criminal trials is disfavored." *United States v. McKeeve*, 131 F.3d 1, 9 (1st Cir. 1997) (citing *United States v. Drogoul*, 1 F.3d 1456 (11th Cir. 1993), and *United States v. Mann*, 590 F.2d 361 (1st Cir. 1978)); *see United States v. Ferrera*, 746 F.2d 908, 912 (1st Cir. 1984) (noting "policy favoring live testimony in criminal prosecutions"); *United States v. Wilson*, 601 F.2d 95, 97-98 (3d Cir. 1979) (noting, despite "advent of modern audio-visual technology," strong preference for "having the witness personally present [at a criminal trial] persists"); *see generally Hornof v. United States*, __ F.4th __, 2024 U.S. App. LEXIS 17242, at *25 (1st Cir. July 15, 2024) ("Live testimony of material witnesses is preferred to Rule 15 depositions."). For that reason, Fed. R. Crim. P. 15(a)(1) authorizes the taking and use of pretrial depositions only "when doing so is necessary to achieve justice and may be done consistent with the defendant's constitutional rights." *Drogoul*, 1 F.3d at 1551.

When seeking to take and use a pretrial deposition in a criminal case, the prosecution bears the heavy burden to demonstrate "exceptional circumstances" that warrant any departure from the traditional practice of live testimony. *United States v. Poulin*, 592 F. Supp. 2d 137, 145 (D. Mass.

1

2008). Even then, a trial court's discretion to permit a pretrial deposition is "not broad and should be exercised carefully." *Mann*, 590 F.2d at 365 (holding trial court abused its discretion by granting prosecution's motion for pretrial deposition); *see, e.g.*, *United States v. Bunnell*, 201 F. Supp. 2d 169, 170 (D. Me. 2002) (denying motion for pretrial deposition).

Here, this Court should deny the prosecution's motion to take and use a pretrial deposition of Chantal Goldson, whom the prosecution has described as one of its key witnesses, because (1) using a videotaped deposition in lieu of live testimony would infringe on the constitutional rights of Defendants Kingsley Chin, Aditya Humad, and SpineFrontier, Inc.; (2) the prosecution has failed to satisfy its burden to show that a pretrial deposition is necessary; and (3) a reasonable alternative exists to obtain live testimony from Goldson, whose "unavailability" was foreseeable to the prosecution and will be temporary. Instead, to accommodate Goldson's pregnancy and, at the same time, to safeguard Defendants' constitutional rights to a fair trial, this Court should continue the trial to a date to be determined when Goldson (and all other material witnesses) will be available to testify live, in court, before the jury. *See United States v. Carter*, 907 F.3d 1199 (9th Cir. 2018) (vacating convictions based on remote testimony by material witness and holding that trial continuance is "most obvious" solution to unavailability problem in criminal case).

I.  **The prosecution's proposal to use a videotaped deposition in lieu of live testimony, if allowed, would infringe on Defendants' constitutional rights.**

The use of pre-trial depositions in criminal cases inevitably raises several serious constitutional concerns regarding confrontation rights, compulsory process, and due process.[1]

---

[1] Of course, the prosecution is correct that taking a deposition before trial is different from admitting such testimony at trial. But make no mistake, as the prosecution concedes, it intends to offer the videotaped testimony of Goldson. A pretrial deposition is not needed for evidence preservation. Thus, delaying a decision on the prosecution's proposed use of Goldson's deposition testimony at trial will serve no purpose and risks further disruption for this Court, the parties, and other witnesses.

### A. The Right to Confront Witnesses

The Sixth Amendment guarantees a defendant's right to "confront" his accusers, and depositions inevitably "diminish" those rights. *McKeeve*, 131 F.3d at 8. In *Mattox v. United States*, 156 U.S. 237 (1985), one of the first Confrontation Clause cases, the Supreme Court recognized that meaningful confrontation requires a witness "to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Id.* at 242-43. Since then, the Supreme Court has consistently affirmed the importance of confrontation, noting the "core" of the constitutional right is the "opportunity to challenge [an] accuser in a face-to-face encounter *in front of the trier of fact*." *Cal. v. Green*, 399 U.S. 149, 156-57 (1970) (emphasis added). That aspect of the confrontation process is critical to the truth-seeking function of trial, because compelling a witness to testify *before the jury* enhances the assessment of credibility and the accuracy of fact-finding. *Carter*, 907 F.3d at 1206-07.

Given the constitutional stakes, it is no answer, as the prosecution blithely suggests, that the jury can watch a video to assess the witness. D.E. 184 at (disregarding "prejudice" to Defendants as "flimsy at best"). "While some may argue that videotaping is just like the real thing, 'just like' is not, in most situations" good enough" for a criminal trial. *United States v. Nippon Paper Indus. Co.*, 17 F. Supp. 2d 35, 41-42 (D. Mass. 1998) (ruling "[w]hatever the need," a trial court does "not have the option to substitute videotaped depositions for live testimony on a regular basis," because "[t]he Sixth Amendment stands firmly in the way"). Here, if the prosecution is permitted to use videotaped testimony from a pretrial deposition, Defendants will be denied their constitutional rights to confront Goldson live, in court, and before the jury who will need to assess her credibility. As a result, the accuracy of fact-finding process will suffer.

Putting aside the strong preference for live testimony in every criminal case, a pre-trial deposition in this case would neither protect Goldson's welfare nor protect Defendants' rights. The prosecution sheds crocodile tears for Goldson, insisting that she cannot travel to Boston to appear at trial. D.E. 184 at 4. But a videotaped deposition in a criminal case would be, wherever taken, an extremely stressful event, and one that Goldson's doctors would almost certainly prefer she avoid. Ironically, in asking to take Goldson's deposition during the seventh month of her pregnancy, the prosecution relies on *United States v. McGuire*, 307 F.3d 1192 (9th Cir. 2002), in which the court recognized that a "pregnancy in its seventh month poses special risks for a mother and her unborn child that may be exacerbated by the stress of trial." *Id.* at 1205. That observation turned on the stress of testifying as a witness, not traveling to the courthouse.

It would also be patently unfair to Defendants to require them to cross-examine Goldson under these unusual circumstances. Defense counsel may be inhibited from aggressive questioning for fear of causing undue stress to Goldson or her unborn child. *See* Fowden, A., "Stress during pregnancy and its life-long consequences for the infant," 595 (15) J. Physiol. 5055, 5056 (2017). Goldson may have difficulty accurately recalling important facts or clearly testifying about them. *See* Barda, G., et al., "The effect of pregnancy on material cognition," 11 Nature Sci. Rep. 12187 (2021) (detailing, among other cognitive effects, "impairment in memory" and "language skills, particularly naming"). And if shown a video from the deposition, the jury may be unduly sympathetic to Goldson and, thus, more likely to accept her testimony, because she would appear pregnant on screen (or the jury may be more hostile to counsel who cross-examined her).

**B.     The Right to Compulsory Process**

The Sixth Amendment also guarantees a defendant's right to compel testimony from a material witness who may provide favorable testimony. *See Untied States v. Crater*, 93 F.4th 581, 588 (1st Cir. 2024) (citing *Washington v. Texas*, 388 U.S. 14, 19 (1967)). Should Defendants

4

decide, *after hearing the prosecution's case*, to present additional testimony from Goldson in their defense case, they would be unable to exercise their constitutional rights to compel her exculpatory testimony, because at that point, according to the prosecution, she would be unavailable to travel to Boston (or even to testify remotely from Dallas). The prosecution has already taken the position that Goldson's testimony would be "material," and it is easy to imagine scenarios in which it might be "favorable" to the defense. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

      ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████

      ████████████████████████████████████████████████████████████"

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████

      ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████

    ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████[2]

    ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████

    ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[2] To the extent that Goldson's trial testimony may relate to information that corporate counsel requested from her about consulting payments or that she provided to "the legal department," such testimony could implicate the attorney-client privilege.

██████████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████ Goldson's anticipated trial testimony will be highly relevant to the alleged offenses – and it may be powerfully exculpatory. In objections to direct examination (as well as through cross-examination), defense counsel will need to vigilantly police any improper effort by the prosecution to have Goldson engage in speculation or offer her assumptions about why Mr. Humad took certain actions. The jury will have to carefully scrutinize her testimony, including her credibility in terms of whether she may have any reason to be biased against Mr. Humad (or other Defendants) or curry favor with the prosecution. That critical assessment should be made on her live testimony in court. And depending on the evidence that Goldson and other witnesses may offer in the prosecution's case, Defendants may need to exercise their constitutional rights to re-call her in their defense case to establish exculpatory facts, including that Goldson does not know why SpineFrontier paid doctors, that Mr. Humad never described those payments as bribes, and that she never heard anyone at the company describe the consulting program as a bribery scheme.

C. **The Right to Due Process**

With jury selection set to start on September 30, 2024, and opening statements on October 7, 2024, Defendants are presently under no obligation to disclose their potential defense strategies in advance, as they relate to Goldson or more generally. To the contrary, due process guarantees "the accused," with the assistance of his counsel, the right to make critical decisions about his defense only after having "an opportunity to evaluate the actual worth of[] evidence." *Brooks v. Tennessee*, 406 U.S. 605, 612-13 (1972). Those decisions include whether and how to cross-examination a witness for the prosecution, or whether to call that witness during the defense case. *See generally United States v. Lacour*, No. 6:08-cr-118-Orl-22DAB, 2008 U.S. Dist. LEXIS

8

146001, at *5 n.1 (M.D. Fla. Dec. 10, 2008) ("Defendants are not obligated to put on any defense, and, except for certain defenses which must be disclosed prior to trial, Defendants are free to make that decision at trial[.]").

Moreover, for the sake of mere convenience, Defendants cannot be forced to make critical strategic decisions about their cross-examination of Goldson, before the government has presented any evidence or argument to the jury. The prosecution's glib assertion that the opportunity to depose Goldson in a conference room months before trial is adequate to protect Defendants' due process rights to a fair trial, ignores the familiar reality that "any trial takes on a life of its own":

> Even the best prepared lawyer must adjust tactics to respond to the opponent's presentation, to respond to unexpected testimony, to court rulings (favorable or not), jury composition, and even to such subtle matters as the tone of the trial, the lawyer's perception of juror receptivity, the apparent emotional impact of prior testimony, the hour in the day when the witness testifies, and a host of other tactical decisions that cannot be accurately assessed in advance. *A videotaped deposition freezes testimony based on the lawyer's best but cloudy judgment and it is virtually inevitable that a videotaped deposition will be stale by the time it is shown to a jury.* There will be questions asked at deposition that would not have been asked at trial and questions not asked that would be; questioning will be too long or too short; questions will explore areas that will be repetitive in light of already introduced trial testimony; questions will skip over areas that seemed insignificant at the time of the deposition but that have become vital at the time of trial; trial testimony will differ from what was anticipated pretrial.

*United States v. French*, No. 1:12-cr-00160-JAW, 2014 U.S. Dist. LEXIS 978, at *29-30 (D. Me. Jan. 6, 2014) (emphasis added) (denying prosecution motion to introduce pretrial deposition of material witness during criminal trial).

Preventing Defendants from responding to the trial *as it unfolds* is tantamount to barring them from defending themselves altogether and depriving them of the effective assistance of counsel. As the First Circuit has consistently recognized, "choices in emphasis during cross-examination are prototypical example of unchallengeable strategy" that defense counsel must

9

deploy while the trial is underway, *Phoenix v. Matesanz*, 233 F.3d 77, 83 (1st Cir. 2000), and in response to the strength (or weakness) of the prosecution's case, *see United States v. Lema*, 987 F.2d 48, 53 (1st Cir. 1993) ("Where the prosecution's case is less than compelling . . . the risk of 'rocking the boat' may warrant a decision by trial counsel to forego the presentation of further defense testimony, even favorable testimony."). It would be unfair and improper, therefore, to compel Defendants and their counsel to decide on—and to disclose to the prosecution—their trial strategies now in connection with a pre-trial deposition of Goldson.

## II. Goldson's pregnancy is not an "exceptional circumstance" such that taking her pre-trial deposition would be in the interest of justice.

Because Goldson's pregnancy was foreseeable to the government and makes her unavailable as a witness only on a temporary basis, it is not an "exceptional circumstance" that warrants using her videotaped testimony from a pretrial trial deposition, which would undeniably diminish Defendants' constitutional rights.

The two appellate cases on which the prosecution relies do not hold otherwise. *United States v. McGuire*, 307 F.3d 1192, 1205 (9th Cir. 2002), did not involve a deposition at all. Rather, on appeal, the Ninth Circuit held only that it was not an abuse of discretion to permit, during a retrial and pursuant to Fed. R. Evid. 804(a)(4), the prosecution to present an unavailable witness's "former testimony" from the first trial. Further, both *McGuire* and *United States v. Donaldson*, 978 F.2d 381 (7th Cir. 1992), were post-trial decisions, in which the courts declined to vacate convictions after long trials had been completed and juries had returned guilty verdicts; neither case addressed whether to permit the prosecution to take a pretrial deposition before a trial had started. In denying post-trial relief, *Donaldson* noted that the witness's deposition testimony had been cumulative of two or three other witnesses (calling them "carbon copies"). 978 F.2d at 393. As explained above, the same cannot be said about Goldson, whom the prosecution has identified

as a key witness and who has personal knowledge of important evidence (especially about Mr. Humad) that no one else can provide.

Meanwhile, the two district court cases that the prosecution cites, *United States v. Coker*, No. 91-00321-05, 1992 U.S. Dist. LEXIS 3575 (E.D. Pa. Mar. 18, 1992), and *United States v. Dermen*, No. 2:18-cr-00365-JNP-BCW, 2019 U.S. Dist. LEXIS 129892 (D. Utah Aug. 2, 2019), are both unpublished, out-of-circuit decisions that offer little analysis and do not meaningfully address the constitutional concerns. *Derman* dismissed any confrontation problem in a two-sentence footnote, noting only that "[t]he Defendant will be present at the deposition." *Id.* at *5 n.1, and *Coker* ignored the problem altogether. Neither case discussed the Fifth Amendment guarantee of due process or the Sixth Amendment right to compulsory process.

In effect, the prosecution erroneously contends that, whenever a material witness is pregnant, Fed. R. Crim. P. 15(a)(1) automatically permits playing a videotaped deposition rather than calling the live witness. The same would be true, presumably, if the witness had an especially complicated surgery or a long pre-planned vacation. But that is not the law, in this District or elsewhere, and not surprisingly, the prosecution cites no case that says so. "Whatever the need," a trial court does "not have the option to substitute videotaped depositions for live testimony on a regular basis," because "[t]he Sixth Amendment stands firmly in the way." *Nippon Paper Indus. Co.*, 17 F. Supp. 2d at 41-42.

**III.   A reasonable alternative – that is, a continuance – is available to accommodate Goldson's pregnancy and protect Defendants' rights.**

When confronted with the request for a pretrial deposition under Fed. R. Crim. P. 15(a)(1), "the district court must determine, on a case-specific basis, whether reasonable alternative measures can preserve adequately the values that underpin the defendant's confrontation rights." *McKeeve*, 131 F.3d at 8. Although Defendants previously proposed a continuance to address

Goldson's situation, D.E. 184 at Ex. 2 (email from D. Marx to A. George), the prosecution has, for no compelling reason, rejected that available option. In its motion, the prosecution offers nothing more than speculation that Goldson may not be able to travel to Boston for "many months" after she delivers and that the availability of the parties and other witnesses "may have changed" by that time. D.E. 184 at 9.

Notably, however, the prosecution ignores *United States v. Carter*, 907 F.3d 1199 (9th Cir. 2018), which undersigned counsel cited during the meet-and-confer process. D.E. 184 at Ex. 2. There, in a decision issued long after *McGuire*, the Ninth Circuit recognized that, because pregnancy is only a "temporary disability," a trial continuance is the "most obvious" solution. *Id.* at 1208. In fact, the appeals court vacated the defendants' convictions that were based on remote video testimony from a pregnant witness who was unable to travel. "Because alternatives were available for obtaining [the witness]'s testimony that would have preserved Carter's right to physical confrontation, the use of a remote video procedure was not necessary in this case." *Id.* at 1202. Although this case involves the request for a pretrial videotaped deposition, rather than remote video testimony, the principle is the same. As in *Carter*, it is "not necessary" to depart from the traditional practice of live testimony in criminal trials.

In short, a fair solution to the prosecution's problem that its material witness is temporarily unavailable due to her pregnancy cannot come at the expense of Defendants' constitutional rights, especially when a trial continuance is a reasonable alternative measure.

**IV.     In any event, with or without a pretrial deposition, the trial should be continued to a time when Goldson will be available to provide live testimony as a material witness.**

Unlike the narrow discretion to permit a pretrial deposition in a criminal case, this Court has "broad discretion" to grant a continuance. *United States v. Orlando-Figueroa*, 229 F.3d 33, 39 (1st Cir. 2000) (citing *United States v. Brand*, 80 F.3d 560, 564 (1st Cir. 1996)). A key factor in the

exercise of that considerable discretion is the protection of "the defendant's constitutional rights," including the right to present (and if necessary, to compel) "the testimony of defense witnesses." *Id.* (citing *United States v. Soldevila-Lopez*, 17 F.3d 480, 487 (1st Cir. 1994)).

Here, as explained above, Goldson is not only a witness for the prosecution that it has described as material, but she may also be a critical witness for the defense. Given the strong preference for in-person testimony before the jury, Defendants' constitutional rights to confront her inculpatory testimony and to compel her exculpatory testimony, and the temporary nature of her "unavailability," the prosecution's request to take and use a pretrial deposition in lieu of live testimony and its objection to any continuance smacks of "an unreasoning and arbitrary insistence on expeditiousness in the face of justifiable request for a delay," an indefensible position that, if adopted by this Court, would constitute an abuse of discretion and raise appellate questions about the validity of any subsequent convictions. *United States v. Maldanado*, 708 F.3d 38, 42 (1st Cir. 2013) (quoting *Morris v. Slappy*, 462 U.S. 1, 11-12 (1983)).

## CONCLUSION

For the foregoing reasons, Defendants Kingsley Chin, Aditya Humad, and SpineFrontier, Inc. respectfully request that this Court deny the prosecution's motion for a pre-deposition of Chantal Goldson and continue the trial until a date when Goldson (and all other material witnesses) can appear in court and present live testimony before the jury.[3]

---

[3] If the prosecution is permitted to take a deposition, it should be ordered to pay the costs for Defendants and their counsel to travel to Texas, to attend the deposition, and to obtain the transcript. *See* Fed. R. Crim. P. 15(c), (d); *see Drogoul*, 1 F.3d at 1555.

Respectfully submitted,

**ADITYA HUMAD**

By his attorneys,

/s/ *William W. Fick*
Daniel N. Marx (BBO #674523)
William W. Fick (BBO #650562)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
dmarx@fickmarx.com
wfick@fickmarx.com

**KINGSLEY CHIN and SPINEFRONTIER, INC.**

By their attorneys,

/s/ *Barry S. Pollack*
Barry S. Pollack (BBO #642064)
Joshua L. Solomon (BBO #657761)
POLLACK SOLOMON DUFFY LLP
31 St. James Avenue, Suite 940
Boston, MA 02116
(617) 439-9800
bpollack@psdfirm.com
jsolomon@psdfirm.com

Dated: July 26, 2024

**LOCAL RULE 7.1 CERTIFICATION**

Undersigned counsel hereby certifies that counsel for Defendants conferred in good faith with counsel for the government as to the Cross-Motion for Continuance, but the parties were otherwise unable to narrow or resolve the issues presented in that Motion.

*/s/ William W. Fick*

**CERTIFICATE OF SERVICE**

I, William W. Fick, certify that a redacted version of this document, filed on July 26, 2024, through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants. In addition, an unredacted version of this document will be sent to counsel for the government by e-mail PDF.

*/s/ William W. Fick*