UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>(1) KINGSLEY R. CHIN,<br>(2) ADITYA HUMAD, and<br>(3) SPINEFRONTIER, INC.,<br><br>Defendants | No. 1:21-cr-10256-IT |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL CMS RECORDS**

As has happened far too often throughout the course of this matter, the Defendants have lodged false *ad hominem* accusations against the prosecution team. Remarkably, the Defendants contend that the government made misrepresentations to the Court and that the government's position somehow "collapsed." Dkt. No. 188 at 3. Yet again, however, Defendants' claims do not stand up.[1] The government did *exactly* what it said it would do with respect to producing documents from CMS; that is, the government has produced all responsive documents it received from CMS concerning Defendants' requests.

Defendants' Motion *itself* concedes the point. *See* Dkt. No. 188 at 2-3 (citing government's July 17, 2024 email describing the government's actions). Moreover, the government gathered the information from CMS despite being under no legal obligation to do so.[2] And the government did so even though Defendants have ready access to the requested

---

[1] *See* Dkt. No. 181 at 8 (Court's Memorandum and Opinion on Defendants' Motion to Dismiss, explaining that the government had not concealed SpineFrontier's Sunshine Act disclosures).

[2] The information also ultimately is irrelevant to the case—the Indictment charges Defendants with violating the Anti-Kickback Statute, not the Physician Payments Sunshine Act.

information—after all, the information they requested consists of their own submissions to CMS's Open Payments Program. The Court should deny the Motion.

## BACKGROUND

On December 20, 2023, counsel for the government and for Defendants held a telephonic meet-and-confer, in which Defendants requested that the government produce materials from CMS. *See* Ex. 1 at 1, 3 (Jan. 12, 2024 Gov't Ltr. to Def.'s). On December 22, 2023, counsel for Defendants memorialized their request regarding CMS information to the government. Ex. 2 at 2-3 (Dec. 22, 2023 Def.'s Ltr. to Gov't). On January 12, 2024, the government responded to Defendants and informed Defendants of the government's position that "CMS, which handles Sunshine Act disclosure issues, is [not] a member of the prosecution team." Ex. 1 at 3 (citing *United States v. Bender*, 304 F.3d 161, 164 (1st Cir. 2002) (prosecution team includes "other members of the prosecuting team, including police investigators working for the prosecution"). Over the course of the next two weeks, the parties continued discussing the CMS issue, and on January 25, 2024, while maintaining its position that (i) CMS is not part of the prosecution team, and that (ii) "SpineFrontier itself is in possession of the information it submitted to the CMS-Open Payments Program," the government agreed to request from CMS the information Defendants requested in their December 22, 2023 letter. Ex. 3 (Jan. 25, 2024 email from Gov't to Def.'s (citing *Ruiz v. United States*, 221 F. Supp. 2d 66 (D. Mass. 2002) and *United States v. Avellino*, 136 F.3d 249 (2d Cir. 1998)). On January 26, 2024, the government reiterated its position that "CMS is not a member of the prosecution team," Ex. 4 at 2 (Jan. 26, 2024 Gov't

Ltr. to Def.'s), but nevertheless provided Defendants information concerning SpineFrontier's Sunshine Act submissions to the CMS-Open Payments Program.

At the March 28, 2024 hearing on Defendants' motions to dismiss, the Court asked counsel for the government whether there was any live dispute concerning the requested CMS materials. Notwithstanding the government's legal position (i.e., that CMS is not part of the prosecution team, and that SpineFrontier has the requested information itself), undersigned counsel for the government responded that it would request the information Defendants asked for from CMS. Dkt. No. 188 at 2 (citing March 28, 2024 Hrn'g Tr.). Afterwards, the government requested all available materials from CMS related to the categories of documents Defendants requested. And on July 9, 2024, the government produced those materials to Defendants. Ex. 5 at 1-2 (July 9, 2024 Gov't Ltr. to Def.'s) ("[W]e are making a further production of materials responsive to your request bearing Bates Nos. USAO_0004260 – USAO_0004699."). The government's July 9, 2024 letter stated plainly, "At this point, we have requested information responsive to your request from CMS and produced to you the responsive information we received from CMS. We are aware of no further responsive information in the possession, custody, or control of CMS or HHS. Therefore, we do not anticipate making any further productions to you based on this request." Ex. 5 at 2. Notwithstanding the government's July 9, 2024, letter, Defendants filed the underlying motion.

## ARGUMENT

### A. The Government Was Under No Legal Obligation to Produce Any Information From CMS

The government is under no obligation to collect and produce information that is not in its custody, possession, or control. *See* Dkt. No. 157 at 15-18 (citing multiple cases). The government responded to Defendants' arguments about the government's obligations and the

scope of the prosecution team in its Opposition to the Motion to Dismiss. Dkt. No. 157. Rather than rehash those arguments again, the government incorporates its Opposition by reference here, and responds only to new arguments Defendants now raise.

Defendants raise two new potential arguments. *First*, Defendants argue that "[r]ecently produced documents show that CMS played a key role in connection with audits of SpineFrontier underlying and relating to the potential charges." Dkt. No. 188 at 4. This is incorrect. The documents the government produced do not in any way suggest that the prosecution team directed CMS to conduct any audit of SpineFrontier. And that makes sense, of course, because that never happened. No one from the prosecution team asked CMS to conduct an audit of SpineFrontier or any other Defendant.

The government produced a document entitled "Open Payments Research Brief: SpineFrontier" as part of its July 9, 2024 production (the "Research Brief"). Ex. 6. The Research Brief states that, "Acumen supports the Data Sharing Partnership Group (DSPG), Center for Program Integrity (CPI), Centers for Medicare and Medicaid Services (CMS) in the evaluation of the Open Payments Program. . . . Recently, DSPG requested Acumen's assistance in the identification of physician owned distributorships, colloquially know as PODs. . . . Acumen assesses whether the lead [SpineFrontier] may be a likely candidate for functioning as a POD. This document presents Acumen's finding on SpineFrontier, Inc."[3] Ex. 6 at 1. The Research Brief then goes on to present its findings.

There is a section of the Research Brief titled, "Compliance-Related Concerns," which references *Katz v. SpineFrontier*, No. 15-cv-11730, in which a former SpineFrontier employee,

---

[3] To state the obvious, the Indictment does not charge Defendants with violating the AKS by acting as a physician-owned distributorship.

4

Katz, sued SpineFrontier for retaliation, and the Research Brief details the concerns she had that she alleges caused SpineFrontier to terminate her employment. Ex. 6 at 10-11. Critically, the Research Brief make *no mention* of the two qui tams giving rise to this case, even though the Research Brief has a "Last Updated" date of "01/09/2017," which is about eighteen months after relators filed the two qui tams relating to this case. *See United States ex rel. Charles Birchall, Jr., John Miller, and Walter Bennet*, Nos. 15-cv-12877 (D. Mass. 2015), 15-cv-12908 (D. Mass. 2015). Nor does the Research Brief say anything about IME or anything about consulting related to IME or SpineFrontier. Defendants' argument, then, that Acumen, a *third-party contractor* for CMS, must have been acting at the government's behest, but declined to even mention the two relevant qui tams (even though it did mention *Katz v. SpineFrontier*), IME, or the consulting program at issue, is nonsense.[4] There is no document that suggests the prosecution team directed CMS to conduct an audit or even had any knowledge that CMS had commissioned an audit, and that is because it did not happen.

*Second*, Defendants cite the "Amended Complaint by the relator" in the civil qui tam case, *United States v. SpineFrontier, Inc., et al.*, Nos. 15-cv-12908 and 15-cv-12877, and the government's Complaint in Intervention, as bases for their position that CMS is part of the prosecution team. Dkt. No. 188 at 4-5. This trial balloon falls flat immediately upon take-off. With respect to the relator's Amended Complaint, it is obvious that relators generally have no insight as to the composition of the prosecution team. That is plainly so here. The allegations in the Amended Complaint to which Defendants point have nothing at all to do with the status of

---

[4] The Research Brief uses the words "consult," or "consulting," only twice, and neither use has anything to do with the charges here. On page 3, the Research Brief states, "Before SpineFrontier, Sears worked in consumer product, electromechanical systems and medical device industries for 20 years. He worked in design, engineering, and *consulting* with Altitude and Radius Product Development." Ex. 6 at 3. On page 4, the Research Brief states that "Surgeons can become members of the [LES Society], and membership benefits include free certification in LES techniques, invitations to events, fellowship participation and *consulting*, teaching and research opportunities." Ex. 6 at 4.

5

the prosecution team. Dkt. No. 188 at 4-5. This argument is frivolous on its face, and the Court should reject it.

Similarly, with respect to the Complaint in Intervention, Defendants cite *one paragraph* in support of their argument. And that paragraph merely describes covered manufacturers' obligations under the Sunshine Act. Dkt. No. 188 at 5. The Amended Complaint says nothing whatsoever to suggest CMS's involvement with the prosecution team. And, here again, that makes sense because CMS was not part of the prosecution team. Defendants contend that the government is using CMS as a "sword and shield here," because it had a "clear ability to access CMS materials," and yet has selectively chosen what to collect and produce from the agency. Dkt. No. 188 at 5. This argument is doubly wrong: (i) simple access to CMS materials does not alone render CMS a member of the prosecution team, *see* Dkt. No. 157 at 17-18 (citing cases concerning scope of the prosecution team), and (ii) as discussed below, the government has not selectively collected and produced documents from CMS.

For the reasons laid out in its Opposition to the Motion to Dismiss, Dkt. No. 157, and those above, the government is under no obligation to produce any materials to Defendants from CMS.

### B. The Government Produced All Responsive Information

In any event, even if the Court were to find that this information is relevant and that the government is legally obligated to produce it, the government has produced all materials from CMS that Defendants requested. In their December 22, 2023 letter, Defendants requested, "information and materials concerning Error and Warning Codes, Review and Dispute Data, Review and Correct Data, Data Displays, and communications among various stakeholders during these processes." Ex. 2 at 2. In response to that letter, the government made three

6

disclosures. First, in its January 26, 2024 Letter, the government summarized information obtained from CMS concerning Defendants' requested information. Ex. 4 at 2-6. Second, on the same date, the government produced various documents obtained from CMS. Ex. 4 at 1. Finally, on July 9, 2024, the government produced the remaining documents from CMS. Ex. 5 at 1-2. As part of its July 9 correspondence, the government informed Defendants that it was "aware of no further responsive information in the possession, custody, or control of CMS or HHS." Ex. 5 at 2. There are no remaining documents to produce. That should end Defendants' inquiry.

### C. Defendants Have The Information They Request from the Government

Lastly, the government notes, as it did previously in its Opposition to the Motion to Dismiss, Dkt. No. 157 at 18, the documents Defendants request from CMS are already in Defendants' possession, custody, or control. *See United States v. Pandozzi*, 878 F.2d 1526, 1529 (1st Cir. 1989) (ruling that "*Brady* does not require the Government to turn over information which, with any reasonable due diligence, the defendant can obtain himself"); *United States v. Carmona-Bernacet*, 645 F. Supp. 3d 6, 14 (D.P.R. 2022) (finding that the government "need not disclose 'information that already is known to the defendant and its failure to do so cannot be deemed prejudicial'"). All information that Defendants collected and submitted to CMS is information that Defendants themselves possess. *See Bender*, 304 F.3d at 164 ("*Brady* applies to material that was known to the prosecution but unknown to the defense."). Defendants

presumably have access to it from their own files because they submitted the information to CMS. Nothing more is required.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Compel CMS records.

Dated: August 9, 2024							Respectfully submitted,

										JOSHUA S. LEVY
										Acting United States Attorney

						By:		*/s/ Abraham R. George*
										ABRAHAM R. GEORGE
										CHRISTOPHER LOONEY
										MACKENZIE QUEENIN
										Assistant U.S. Attorneys


**Certificate of Service**

The undersigned hereby certifies that I caused this document to be filed through the ECF system on August 9, 2024.

										*/s/ Abraham R. George*
										ABRAHAM R. GEORGE

**Certification Pursuant to L.R. 7.1**

The undersigned hereby certifies that counsel for the government conferred in good faith with counsel for the defendants, but the parties were unable to resolve the issues presented by Defendants' Motion.

										*/s/ Abraham R. George*
										ABRAHAM R. GEORGE