# EXHIBIT E

Case 1:21-cr-10256-IT    Document 238-2    Filed 02/13/25    Page 1 of 4

**Daniel N. Marx**
TEL: 857-321-8360
FAX: 857-321-8361
DMARX@FICKMARX.COM

December 20, 2024

**<u>By Email</u>**
AUSA Abraham R. George (abraham.george@usdoj.gov)
AUSA Christopher Looney (christopher.looney@usdoj.gov)
AUSA Mackenzie Queenin (mackenzie.queenin@usdoj.gov)
U.S. Attorney's Office
One Courthouse Way, Suite 9200
Boston, MA  02210

      Re:    *United States v. Chin et al.*, **No. 21-cr-10256-IT (D. Mass.)**

Dear Abe, Chris, and Mackenzie:

    I am writing to follow up on our discovery exchange from a couple of months ago. Barry sent a letter on October 15, and Chris responded by email on October 18. The back-and-forth concerned the production on October 9, which included various communications (two letters, a presentation, and a submission) to the government from attorneys for three unindicted alleged co-conspirators, Drs. ▇▇▇▇▇▇. In those materials, the attorneys, as authorized agents of their clients, explicitly and unequivocally denied that the surgeons participated in the charged kickback scheme or any other unlawful conduct.

    In Barry's letter, we asked the government to produce all communications with counsel for the alleged co-conspirators or other cooperating witnesses as well as all agent notes or reports of such communications.  In Chris's response, the government refused and gave two reasons: (1) the requested materials are not *Brady* (or *Giglio*) materials, and (2) advocacy by attorneys are not statements of witnesses.

    We do not understand the first point. The statement by an alleged co-conspirator that the charged conspiracy did not exist – here, that no kickbacks were paid by Dr. Chin, Mr. Humad, or SpineFrontier – undoubtedly undermines the government's case; indeed, it directly refutes the AKS charges. Please explain the government's assertion that such materials are not exculpatory, and please provide whatever case law you contend supports that position.

    We also do not follow the second point. If the requested documents are *Brady* materials, as we contend, it makes no difference whether they also constitute witness statements for the purposes of Rule 16 or the Jencks Act. In any event, at least some alleged co-conspirators made their own statements to the government, and later changes in those statements have been attributed to communications from your office, making these topics particularly material to the defense. *See* USAO0004767 (noting that in "Dr. ▇▇▇▇ initial statements at the proffer session," he indicated that he had not "appreciated at the time" that he had done anything wrong and that Dr. ▇▇▇▇ only changed his mind "[a]fter you explained it to him"). Moreover, as a legal matter, statements

by an attorney, as an authorized agent, on behalf of a client are statements of the client. *See United States v. Nacchio*, No. 05-cr-00545-EWN, 2006 U.S. Dist. LEXIS 114950 (D. Colo. Aug. 28, 2006) ("An attorney's representations to the Government of *what his or her client* would testify to if called as a witness are discoverable statements.") (emphasis in original). That is why Rule 801(d)(2) defines such statements as "not hearsay" when offered against the client (as a party-opponent).

As just one example, in his April 15, 2020 letter, counsel for Dr. ▮ summarized the government's case as follows: "In short, the kickback scheme alleged by the Government involves payments to induce physicians to use SpineFrontier's products that correspond directly to the physician's use of the products." USAO_004750. He continued: "Dr. ▮ simply does not fit into this scheme." *Id.*; *see also* USAO_0004752 (attorney proffer that "Dr. ▮ used SpineFrontier devices because he liked them, and he knew, based on years of experience, that they improved the lives of patients" and that "Dr. ▮ committed substantial time and energy to actual consulting" and "made valuable contributions . . . that led to changes in the devices"). These statements – powerful denials that Dr. ▮ conspired with the defendants to take kickbacks in exchange for using SpineFrontier's products – are legally statements of Dr. ▮ himself and patently exculpatory concerning whether the charged conspiracy existed.

In many cases, trial courts have ordered the production of comparable attorney proffers on behalf of alleged co-conspirators or other witnesses in criminal cases. *See, e.g., United States v. Saffarinia*, 424 F. Supp. 3d 46 (D.D.C. 2020) (ordering the production of "attorney proffers" as *Brady* material); *United States v. Blankenship*, No. 5:14-cr-00244, 2015 U.S. Dist. LEXIS 76287 (S.D.W.V. June 12, 2015) (same); *United States v. Nacchio*, No. 05-cr-00545-EWN, 2006 U.S. Dist. LEXIS 114950 (D. Colo. Aug. 28, 2006) (same).

Courts have further held that agents' notes of attorney proffers are similarly discoverable. *See United States v. Triumph Cap. Grp., Inc.*, 544 F.3d 149 (2d Cir. 2008) (vacating convictions due to *Brady* violations) (holding government violated its *Brady* obligations by failing to produce notes taken by an agent of a proffer meeting where an alleged co-conspirator's attorney made statements that suggested the defendant "had declined to make payments that would amount to a bribe," because "by suppressing [the agent's] notes of that proffer, the government deprived [the defendant] of exculpatory evidence going to the core of its bribery case against him"). Presumably, in this case, agents took detailed notes at all meetings with unindicted co-conspirators, cooperating witnesses, and/or their attorneys, such as the meeting with Dr. ▮ and his counsel (referenced in his counsel's May 17, 2019 letter), the "recent meetings" with Dr. ▮ counsel (referenced in his counsel's October 18, 2018 submission), and the presentation by Dr. ▮ counsel (memorialized in his counsel's November 3, 2020 slide deck).

Although the government has already produced interview reports for certain alleged unindicted co-conspirators, the limited production to date reflects the government's narrow view of *Brady* obligations and prejudices the defense. For example, the government produced a 7-page FBI 302 of an interview of Dr. ▮ on July 27, 2018. But that report does not include the material, exculpatory information in his counsel's 19-page submission on October 12, 2018. The FBI report notes Dr. ▮ "uses SF products in the majority of his procedures," but it says nothing about why Dr. ▮ uses those products. In contrast, counsel's submission states:

December 20, 2024
Page 3 of 3

> Dr. [redacted] uses the devices that in his medical judgment will result in the best outcomes for his patients. *His consulting and investment relationships do not improperly influence his selection of a device to use for a specific patient*. . . . His desire to help patients achieve the best clinical result at a lower cost with a lower risk procedure has driven his decision to use certain SpineFrontier products.

USAO_0004748 (emphasis added). The fact that Dr. [redacted] uses SpineFrontier products in the exercise of his independent medical judgement and in his patients' best interests, not in exchange for SpineFrontier's alleged kickbacks, refutes the government's case.

Meanwhile, in the production, we have not found any reports (FBI 302s, HHS ROIS, etc.) regarding the presentation that Dr. [redacted] counsel made to the government on November 3, 2020. *See* USAO_0004754-66. That presentation is replete with exculpatory statements, including that "the consulting payments received by Dr. [redacted] most definitely do not correspond to his use of SpineFrontier products." The only report regarding Dr. [redacted] appears to be an earlier HHS ROI of a telephone call after Dr. [redacted] received a subpoena for documents but before he retained counsel, and that one-page report indicates Dr. [redacted] cut short the interview when questions went in an unanticipated and accusatory direction. *See* INT-RPT_0000266. The government is mistaken in its view that it need not produce communications and notes concerning this attorney presentation, or others like it, because in the government's view, they do not constitute *Brady* material.

Thus, we reiterate our request that the government produce (1) all communications between your office and agents, on the one hand, and any unindicted alleged co-conspirators, cooperating witnesses, or their counsel, on the other hand, that constitute *Brady* materials as well as (2) all notes or reports by agents regarding such communications – or state in writing that the government does not have any such communications or notes in its possession, custody or control. While we hope the government will reconsider its position and make a prompt production of the requested materials, including all attorney proffers, we recognize that it may not, so we want to be sure that the record is clear in anticipation of a motion to compel.

Sincerely,

*/s/ Daniel N. Marx*

Daniel N. Marx

cc: Barry S. Pollack
    Joshua Solomon
    William W. Fick