## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>KINGSLEY R. CHIN and<br>ADITYA HUMAD,<br>        *Defendants*. | No. 1:21-cr-10256-IT |

### DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE TESTIMONY BASED ON IMPROPER INDUCEMENT AND INADEQUATE DISCLOSURES

The government has included on its list of anticipated witnesses four doctors with whom it has entered into civil settlement agreements that obligate them to take particular factual positions, and to cooperate with the government in this prosecution, all while refusing to provide full disclosure of documents, communications, and information regarding the deals that the government reached with those witnesses to obtain those commitments.

The government has stated its intention to call as witnesses at trial John Atwater, Paul DeGenova, Michael Murray, and Joseph Shehadi. The government has alleged that all four of these doctors are unindicted co-conspirators, and that three of them were involved in alleged violations of the Anti-Kickback Statute charged in Counts Two through Five. Each of these witnesses entered into a civil settlement with the government that contains two terms that are at issue in this motion.

First, each witness expressly agreed in the civil settlement to a specific recitation of "facts." Those supposed facts include things that the government hopes to prove in this action, and in some cases mention the defendants here by name. *See* Atwater Settlement Agreement at 2-3 (Exhibit A hereto); DeGenova Settlement Agreement at 2 (Exhibit B hereto); Murray Settlement Agreement at 2-3 (Exhibit C hereto); Shehadi Settlement Agreement at 2-3 (Exhibit D hereto). When requiring

that these witnesses agree to supposed facts, the government was plainly seeking to lock the witnesses into the government's narrative for the purposes of serving this prosecution, as revealed, for example, by the inclusion of references to the named defendants here within those factual statements. For example, one of the settlement agreements has the witness reciting that he took certain actions "in part based on guidelines SpineFrontier, through its officers Kingsley Chin and Aditya Humad, communicated to him." Exhibit B, at 2. Another has the witness agreeing that he took certain actions "in part based on guidelines SpineFrontier, through its officer, Aditya Humad, communicated to him." Exhibit D, at 2; *see also id.* at 2-3 ("Mr. Humad further communicated that, if Dr. Shehadi used more SpineFrontier products, then SpineFrontier could pay him more 'consulting' fees."). Such language would be entirely unnecessary to the settlements themselves, were they not crafted to commit the witnesses to particular stories for purposes of this prosecution. Notably, all four settlement agreements included members of the prosecution team here in their signature blocks.

Second, consistent with including in the agreements "facts" aimed in part at the defendants here, each witness expressly agreed to cooperate with the government's "investigation of individuals and entities not released in this Agreement." *See* Exhibit A at 8; Exhibit B at 7; Exhibit C, at 7; Exhibit D, at 7. That provision committed these witnesses to cooperate with the prosecution in this case, and to do so "fully."

Together, these provisions do not stop at just obligating witnesses to make themselves available to provide truthful testimony. Instead, they go further by locking the witnesses into particular supposed facts, subject to being in breach of their settlement agreements if they were to deviate from them, all in exchange for the benefits the witnesses received by settling with the government. Nor do the settlement agreements use the asserted "facts" merely to define the scope

of releases the defendants were receiving. Instead, they required the witnesses expressly to "admit[]" and "acknowledge" the "facts." In short, as part of civil settlement agreements, the government purchased testimony by making various commitments to the witnesses, including (at least) by agreeing to provide them with releases and not to bring claims against them personally despite the government's expressly asserted view that they violated federal law.

These exchanges of value for specific testimony are not typical instances of plea bargaining with cooperating witnesses in exchange for leniency. In the more traditional context of plea bargaining, a Court necessarily serves as a referee of the fairness and propriety of the exchanges, through the process for presenting pleas to the Court for acceptance pursuant to Fed. R. Crim. P. 11, and subject to prohibitions on certain forms of so-called "fact bargaining." *See, e.g.* U.S.S.G. § 6B1.4 cmt. ("[I]t is not appropriate for the parties to stipulate to misleading or non-existent facts, even when both parties are willing to assume the existence of such 'facts' for purposes of the litigation. Rather, the parties should fully disclose the actual facts and then explain to the court the reasons why the disposition of the case should differ from that which such facts ordinarily would require under the guidelines."); *United States v. Gonczy*, 357 F.3d 50, 53 (1st Cir. 2004) ("The government has a duty to bring all facts relevant to sentencing to the judge's attention."). Here, the government has expressly accused each of the settling witnesses of conduct that would constitute criminal activity if true, including participating in the same alleged crimes charged here. *See* Exhibit A, at 2; Exhibit B, at 2; Exhibit C, at 2; Exhibit D, at 2. The government has even taken the position that each of these four witnesses was a co-conspirator with the defendants for purposes of Count I here, and thus that each also committed the same crime of conspiring to violate the Anti-Kickback Statute with which it charges the defendants in this case. Three of the four witnesses are also the subject of the substantive Anti-Kickback Statute charges against the defendants.

Despite its accusations of criminal misconduct against these witnesses, the government avoided the protections that accompany traditional plea negotiations and agreements with cooperating witnesses by framing its deal-making with these witness as civil settlement agreements. Nor are these agreements even typical civil settlement agreements by which parties to a civil dispute exchange releases or other things of value to resolve their disputes, without making admissions of fact. As discussed above, these agreements go much further by *requiring* the witnesses to make express admissions, which thus ensured for the government that they would testify consistently with what the government wants them to say at trial in this matter.

Offering inducements to obtain testimony from witnesses in a federal proceeding is fraught with problems, particularly when done outside the traditional plea-bargaining context. Not only does such conduct raise serious Due Process concerns, given the inability of defendants to do the same – lest they run afoul of 18 U.S.C. § 201 – but it also may itself constitute illegal conduct under 18 U.S.C. § 201. When reversing *en banc* a short-lived decision that had vacated a conviction based on a finding that the government violated § 201 by offering leniency to a cooperating witness through plea negotiations, the Tenth Circuit in *United States v. Singleton*, 165 F.3d 1297 (10th Cir. 1999) (*en banc*), made clear that the shield provided to government attorneys when providing inducements of that sort was limited to government attorneys acting in the course of plea agreements to resolve criminal charges against cooperating witnesses. That limited shield that *Singleton* recognized arose, in part, from the historically-accepted practice of prosecutors promising leniency in criminal prosecutions to those willing to testify against their criminal confederates. *See id.* at 1302. In light of that basis for its holding, *Singleton* proceeded to make clear that it limited its finding of propriety to the specific context of prosecutors reaching traditional plea agreements with cooperators:

> Our conclusion in no way permits an agent of the government to step beyond the limits of his or her office to make an offer to a witness other than one traditionally exercised by the sovereign. A prosecutor who offers something other than a concession normally granted by the government in exchange for testimony is no longer the alter ego of the sovereign and is divested of the protective mantle of the government. Thus, fears our decision would permit improper use or abuse of prosecutorial authority simply have no foundation.

*Id.* The court elaborated: "Our disposition protects *only those prosecutorial acts* of the government which have been recognized in common law or authorized by statute." *Id.* at 1302 n.2 (emphasis added). The First Circuit followed the *Singleton en banc* decision in *United States v. Lara*, 181 F.3d 183, 197-98 (1st Cir. 1999), holding that § 201 does not apply to "the federal sovereign *qua prosecutor*." *Id.* at 197 (emphasis added). The First Circuit has also held that even "independent of section 201(c)(2), there are surely outer limits on what a prosecutor can do in offering benefits to a witness." *United States v. Murphy*, 193 F.3d 1, 9 (1st Cir. 1999).

In this case, the government went well beyond the traditional practice of plea bargaining with potential witnesses when it induced Drs. Atwater, DeGenova, Murray, and Shehadi to become cooperating witnesses for the government. It offered inducements outside the "traditional," historically-accepted context of resolving criminal charges against witnesses through cooperating plea agreements – indeed, every one of the agreements expressly says that the government was *not* resolving criminal consequences for these witnesses. The government also obtained from the witnesses not just an obligation to cooperate, and not even just an obligation to provide testimony truthfully, as one typically sees in a cooperating plea agreement. Instead, the government went further by obtaining from the witnesses a contractual commitment to specific supposed facts recited expressly in the settlement agreements. This was not the equivalent of the time-tested practice of plea bargaining. Through the settlement agreements, the government thus purchased these witnesses' cooperation and testimony in a manner that is unfair to the defense, which has no

ability to obtain witnesses through similar means, and without the protections afforded "traditional" plea negotiations when resolving criminal charges.

Finally, exacerbating the problematic nature of the government's proposed use of these witnesses is its refusal to produce to defendants communications with the witnesses and/or their counsel about the settlements and the underlying negotiations. In response to requests for communications, the government has explained the line that it has drawn as, "we have not produced communications dealing only with settlement negotiations with counsel for cooperating witnesses and co-conspirators – as distinct from substantive factual representations made by cooperating witnesses and co-conspirators or their counsel." The defendants have thus been deprived of access to, for example, drafts of the settlement agreements that would reveal how the "facts" to which these cooperating witnesses admitted were edited in the process of negotiating the agreements. In addition, the full extent of compromises that the government made, and thus the full extent of the benefits the witnesses received from the government in exchange for their testimony, remain improperly hidden from defendants. For example, to the extent the government initially demanded from the witnesses certain amounts of refunds to the United States in exchange for releases, and then compromised on the amounts it ultimately accepted to secure their agreements to the recited "facts," all such compromises would constitute inducements that are being concealed from defendants, preventing them from fully impeaching any testimony they might give. As one court has explained in requiring not just final agreements with cooperators, but also the production of documents and information concerning negotiations, "[t]hough *Giglio* concerned the suppression of the very existence of a leniency agreement, information that illuminates the process leading up to the agreement may 'cast a shadow' on an accomplice witness's credibility in a manner that disclosure of only the agreement itself would not

accomplish." *United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1203 (C.D. Cal. 1999); *see also Mataya v. Kingston*, 371 F.3d 353, 359 (7th Cir. 2004) ("Paying for testimony, as well as concealing evidence of inducements given to a government witness, are breaches of prosecutorial ethics…."); *United States v. McDavid*, No. CR S06-35 MCE, 2007 WL 926664, at \*10 (E.D. Cal. Mar. 27, 2007) (ordering production of "communications reflecting the nature of the negotiations, whether prepared by co-defendants or their attorneys," on the ground that it was required by *Brady* and *Giglio*); *United States v. Vazquez-Botet*, 453 F. Supp. 2d 362, 370 (D.P.R. 2006) ("We agree with Defendant that the government has a responsibility to produce material evidence relevant to its *negotiations* and final agreement with [the anticipated witness]…." (emphasis added) (citing *Sudikoff*, 36 F.Supp.2d at 1198)); *see also* Local Rule 116.2(b)(1)(C) (requiring disclosure of any "promise, reward, or inducement … given to any witness").

Even in the context of testimony obtained through traditional plea bargaining, without the particularly suspect agreement to "facts" that occurred here, the *Sudikoff* court held that "information that reveals the process by which an accomplice witness and the government reach a leniency agreement is relevant to the witness's credibility because it reveals the witness's motive to testify against the defendant. Therefore, such information is discoverable under *Brady* and *Giglio*." *Sudikoff*, 36 F. Supp. 2d at 1203.

The government's refusal to provide such information combines with the impropriety of the underlying exchanges that the government made with these particular witnesses, in a manner that would make their use as witnesses at trial inconsistent with the defendants' Due Process rights.[1]

---

[1] In meet-and-confer efforts, the government has suggested that it is considering whether to change its position with respect to production of such materials. As of the filing of this motion, however, the government has not made, or agreed to make, such productions.

## Conclusion

For the reasons set forth herein, defendants respectfully request that the Court preclude the government from presenting testimony at trial from John Atwater, Paul DeGenova, Michael Murray, or Joseph Shehadi.

Respectfully submitted,

**KINGSLEY CHIN**

By their attorneys,

/s/ *Joshua L. Solomon*
Barry S. Pollack (BBO #642064)
Joshua L. Solomon (BBO #657761)
POLLACK SOLOMON DUFFY LLP
31 St. James Avenue, Suite 940
Boston, MA 02116
(617) 439-9800
bpollack@psdfirm.com
jsolomon@psdfirm.com

**ADITYA HUMAD**

By his attorneys,

/s/ *William W. Fick*
Daniel N. Marx (BBO #674523)
William W. Fick (BBO #650562)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA  02110
(857) 321-8360
dmarx@fickmarx.com
wfick@fickmarx.com

## CERTIFICATE OF SERVICE

The undersigned certifies that this document, filed on February 18, 2025, through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Joshua L. Solomon*

## Local Rule 7.1(a)(2) Certification

Defense counsel conferred in good faith with counsel for the government in an effort to resolve or narrow the issues described herein. No agreement was reached.

*/s/ Joshua L. Solomon*