UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KINGSLEY R. CHIN,<br>ADITYA HUMAD<br><br>                    Defendants. | No. 1:21-cr-10256-IT |

**OPPOSITION TO MOTION IN LIMINE TO COURT-DEVELOPED EDUCATIONAL VIDEO CONCERNING UNCONSCIOUS BIAS**

The government respectfully submits this response in opposition to the Defendants' motion to play an 11-minute video concerning unconscious bias to prospective jurors. Dkt. No. 249. In two recent cases, Chief Judge Saylor rejected defense requests to play the video, noting that although "the basic concept underlying the video is important, that is, the need for jurors to attempt to be aware of their biases and prejudices and listen to all of the evidence and be as fair as they can under the circumstances," the video included "distracting things . . . that I think are not particularly useful or relevant." *See* Tr. of 4/8/22 Status Conf., *United States v. Coleman*, No. 19-cr-10113-FDS, at 7 (attached hereto as Exhibit A). He concluded: "I didn't like the video, and I don't think it was worth it, and there is a lot of stuff in there that I think is unnecessary." *Id.* at 11.

The government believes it is reasonable and appropriate to inquire generally of prospective jurors whether they hold any beliefs or biases that would impair their ability to be impartial—and to instruct empaneled jurors of the need to set aside any personal prejudices, to consider the evidence, and to follow the Court's instructions. But the video submitted by the defense improperly and incorrectly suggests that issues of race and ethnicity are central in these proceedings—they are not. It also elevates these issues over other critical legal principles on which

1

the jury is instructed and is otherwise inappropriate in several respects. For these reasons, and the reasons set forth below, the Court should not show the video.

The video the Defendants seek to have the Court play for prospective jurors focuses on three forms of unconscious bias: those involving age, race, and gender. *See* "Unconscious Bias Juror Video", *available at* https://www.wawd.uscourts.gov/jury/unconscious-bias. It encourages jurors to ask themselves whether they would "come to the same conclusion if the person on trial or witness was a different age, race, or gender," in order to "avoid mistakes based on unconscious bias." *Id.* at 8:22; *id.* at 8:58 ("Simply having good intentions does not work. Neither does ignoring things like age, race, or gender."); *id.* at 9:27 (encouraging jurors to "question [their] decisions by asking whether they would be different if the witness lawyer or person on trial was a different age, race, or gender"). It further instructs them: "At the end of the trial, during your deliberations, if you think unconscious bias has shaped your evaluation, I encourage you to think about the evidence again with this video in mind and to discuss it with your fellow jurors." *Id.* at 10:00.

Although the video was developed by a committee of attorneys and judges for use by the U.S. District Court for the Western District of Washington, and has been played in some other districts, several jurisdictions have rejected using it. *See, e.g., United States v. Jessamy*, 464 F. Supp. 3d 671, 678 (M.D. Pa. 2020) (declining to play video where race was "not likely to be a central concept" in the case, and noting, "[w]hile there is undoubtedly value in making jurors aware of unconscious bias, to do so through the proposed video seems more likely to cause jurors to focus heavily on a single aspect of their duty as jurors at the expense of others that are equally as important."); *United States v. Venning*, No. 19-cr-152-BLG-DLC, 2021 U.S. Dist. LEXIS 215724, at *2 (D. Mont. Nov. 8, 2021) (same); *United States v. Coles*, No. 1:16-CR212, 2021 U.S. Dist.

LEXIS 212863, at *11 (M.D. Pa. Nov. 3, 2021) (noting that "defendants have not identified any objective evidence that the unconscious bias video has actually succeeded in its well-meaning objectives").

In this District, the video has been played in only a small handful of cases. *See, e.g., United States v. Yu,* 19-cr10195-WGY; *United States v. Ortiz*, 19-cr-10195-LTS. For example, *Yu* involved allegations that the defendant, a U.S. citizen of Chinese origin, smuggled export-controlled technology from the United States to Taiwan and committed visa fraud.[1] The *Ortiz* case involved allegations of drug trafficking involving the shipment of cocaine from Puerto Rico to Massachusetts.[2] In other cases where the government objected, the Court declined to play the video. *See, e.g., United States v. Coleman*, No. 19-cr-10113-FDS; *United States v. Rodriguez-Ruiz, et al.*, 21-cr-10010-FDS; *United States v. Njei*, No. 21-cr-10196-FDS; *United States v. Rosario Garcia, et al.*, No. 4:19-cr-40046-TSH.

**ARGUMENT**

The government agrees that it is important for jurors to be aware of their biases and prejudices, and to be as fair as they can be throughout the proceedings. But the Court's standard instructions effectively address these core principles of jury service. For example, the standard instruction on the jury's duty to follow the facts and the law provides: "You must not be influenced by any personal likes or dislikes, prejudices, or sympathy." Indeed, in *United States v. Diaz-Arias*, the First Circuit affirmed the district court's refusal to give the following one-sentence instruction

---

[1] *See* "Lexington Couple and their Semiconductor Company Indicted on Charges of Theft of Trade Secrets from Norwood Semiconductor Company," *available at* https://www.justice.gov/ usao-ma/pr/lexington-couple-and-their-semiconductor-companyindicted-charges-theft-trade-secrets.

[2] *See* "Revere Man and Boston Man Charged with Cocaine Trafficking," *available at* https://www.justice.gov/usao-ma/pr/revere-man-and-boston-man-charged-cocaine-trafficking.

that specifically cautioned against racial and ethnic biases: "It would be improper for you to consider, in reaching your decision as to whether the government sustained its burden of proof, any personal feelings you may have about the defendant's race or ethnicity, or national origin, or his or any witness' immigration status." 717 F.3d 1, 22–23 (1st Cir. 2013). Instead, the First Circuit approved a neutral bias instruction, which did not specifically highlight race or ethnicity. *See id.* In so doing, the court cited the Supreme Court's holding in *Rosales-Lopez v. United States*: "There is no constitutional presumption of juror bias for or against members of any particular racial or ethnic groups," 451 U.S. 182, 190 (1981), and its explanation that it is necessary to "inquire into possible racial prejudice in order to assure an impartial jury" *only* when "racial issues [a]re inextricably bound up with the conduct of the trial," *id*. at 189. Further, as Chief Justice Rehnquist wrote in *Rosales Lopez*: "the asking of such questions, or the devotion of a substantial amount of time to the inquiry, could well exacerbate whatever prejudice might exist without substantially aiding in exposing it." *Rosales-Lopez*, 451 U.S. at 195.[3]

Further, it appears that a court of appeals opinion specifically addressing the video the Defendants propose to show has affirmed a decision not to play it, and other courts of appeals in recent years have affirmed decisions to not question jurors specifically about implicit bias. *See United States v. Mercado-Gracia*, 989 F.3d 829, 840 (10th Cir. 2021), cert. denied, 142 S. Ct. 1374

---

[3] *See also* Ashok Chandran, Color in the "Black Box": Addressing Racism in Juror Deliberations, 5 Colum. J. Race & L. 28, 43 (2015) ("The effects of bringing racial bias up are unpredictable at best; often, such questioning will simply draw more attention to the defendant's race or ethnicity, increasing the effect of race on the trial."); Anna Roberts, Reclaiming the Importance of the Defendant's Testimony: Prior Conviction Impeachment and the Fight Against Implicit Stereotyping, 83 U. Chi. L. Rev. 835, 872 (2016) (collecting empirical studies and noting that "[t]hese fears may be bolstered by [ ] case law that suggest that bias should not be discussed in the courtroom, lest discussion draw attention to it in ways that are unhelpful. These fears also receive some support from research finding that, if handled inappropriately, bias-reduction efforts can backfire.").

(2022) (affirming decision not to play implicit bias video); *United States v. Young*, 6 F.4th 804, 809 (8th Cir. 2021) (affirming district court's decision not to question prospective jurors about "implicit biases"); *United States v. Diaz*, 854 F. App'x 386, 389 (2d Cir.), cert. denied sub nom. *Felton v. United States*, 142 S. Ct. 473 (2021) (same). Contrary to this precedent and this Court's typical jury selection procedures, the video submitted by the defense, while well-meaning, is problematic in a few ways.

First, playing the glossy, highly-produced video elevates the issue of unconscious bias above all others in the case. By selectively playing the video, while otherwise providing standard instructions to the jury on all other issues, the Court would signal that unconscious bias merits the jury's special attention, including potentially over the elements of the charged crimes, which are typically read to the jury without any particular emphases.

Second, the video focuses on only three forms of unconscious bias: those involving age, race, and gender. Moreover, it improperly directs jurors to consider those traits before reaching a judgment: "would they come to the same conclusion if the person on trial or witness was a different age, race, or gender?" *See* Video at 8:20–8:30.

By playing the video, the Court would potentially signal to the jury that there are racial or ethnic considerations at issue in this case. There are not. It would be improper for either party, in its jury addresses or otherwise, to highlight the Defendants' (or the witnesses') race or ethnicity, to suggest that there are racial or ethnic considerations at issue, or to otherwise suggest that the jury should take race and ethnicity into account in its deliberations. The Court should not do so either.

Third, the video asks jurors to second-guess their judgments by considering whether those judgments "fit" with the information the jury is being presented, and what "we really know to be fair." *Id.* at 2:50–3:05. The video instructs jurors to engage in a "conscious evaluation" of their decision-making based on their consideration of the Defendants' and the witnesses' age, race, and gender. *Id.* at 8:20 to 8:35. And it concludes by specifically directing jurors to reconsider their verdict at the conclusion of their deliberations through the lens of age, race, and gender, to "think about the evidence again" with these issues in mind, and to discuss them: "At the end of the trial during your deliberations, if you think unconscious bias has shaped your evaluation, I encourage you to think about the evidence again with this video in mind and to discuss it with your fellow jurors." *Id.* at 9:59–10:14. Such an instruction is improper, and potentially prejudicial to the government.

Fourth, its effectiveness in remedying unconscious bias is unclear. *See Coles*, 2021 U.S. Dist. LEXIS 212863, at *3 (noting that "defendants have not identified any objective evidence that the unconscious bias video has actually succeeded in its well-meaning objectives," and that "[t]he lack of objective measures of success is particularly troubling, because too strong an emphasis on the issue of bias during the jury selection process could well exacerbate whatever prejudice might exist without substantially aiding in exposing it.") (further citations and internal quotation marks omitted). On the same website on which the video is posted, the District Court for the Western District of Washington links to a document acknowledging that research on the "efficacy of jury instructions" regarding unconscious bias "has raised questions whether highlighting the notion of unconscious bias would do more harm than good."[4]

---

[4] *See* "Criminal Jury Instructions – Unconscious Bias," *available at* https://www.wawd.uscourts.gov/sites/wawd/files/CriminalJuryInstructions-ImplicitBias.pdf.

The government does not oppose the Court instructing the jury, in the same format as the rest of its instructions, about the need for jurors to disregard inappropriate biases. But that instruction should not be featured in a lengthy, highly-produced, and inappropriately suggestive video.

          Respectfully submitted,

          LEAH B. FOLEY
          United States Attorney

          */s/ Mackenzie A. Queenin*
          ABRAHAM GEORGE
          CHRISTOPHER R. LOONEY
          MACKENZIE A. QUEENIN
          Assistant United States Attorneys

Date: March 3, 2025

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

I, Mackenzie Queenin, hereby certify that the parties have conferred and in good faith have attempted to narrow the issue before the Court. However, the parties were unable to arrive at a resolution.

Date: March 3, 2025                    */s/ Mackenzie A. Queenin*
                                              MACKENZIE A. QUEENIN

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) (with paper copies to be sent to those indicated as non-registered participants).

                                                                        */s/ Mackenzie A. Queenin*
                                                                        MACKENZIE A. QUEENIN
                                                                        Assistant United States Attorney