# Exhibit 2



## CONSULTING AGREEMENT

This Consulting Agreement (the "Agreement"), dated this 17 day of Oct, 2013 (the "Effective Date"), is entered into by Impartial Medical Experts, LLC. ("IME") and Dr. John Hewitter ("Consultant"). Consultant and IME may be referred to collectively as the "Parties."

In consideration of the mutual promises and covenants to be set forth, the parties agree as follows:

1. **Nature of Service.** IME manages a referral service providing product consulting and expert witness assignments to certain technology companies, law firms, insurance companies, and other interested parties ("Clients"). IME has undertaken significant effort and incurred significant expense to refer one or more consulting opportunities to the Consultant. The Consultant has been contacted by IME because a Client may be interested in retaining Consultant's services in order to provide services for certain Project(s). The Consultant is willing to provide consulting and/or expert witness services for the Client with respect to a Project on the terms and conditions provided in this Agreement. Consultant may recommend new Clients for participation in this IME referral service, subject to terms and separate agreement approved by IME.

2. **Compensation.** If requested by the Client, the Consultant agrees to participate in a brief initial telephone interview with the Client at no charge. If the Client wishes to forego an initial telephone interview, then Project materials will be sent to the Consultant directly without advance discussion. This latter alternative would only occur once the Consultant had agreed to accept the Project by signing this agreement with IME. Neither IME nor client will be responsible for payment of any pre-retention expenses and/or time. Only time and expenses disclosed and approved shall be payable in accordance with sections 2.2 and 2.3, below.

You and IME acknowledge and agree that the compensation set forth in this Agreement is intended to represent fair market value for the Services to be rendered hereunder, and that such compensation has not been determined in a manner which takes into account the volume or value of any referrals or business otherwise generated between IME and you. Further, IME shall not obligate you to purchase, use, recommend or arrange for the use of IME or Client products or those of any organization affiliated with IME or Client.

For those litigation-related Projects with a signed Letter of Protection (LOP), the retainer is waived and payment will be according to the terms outlined in the Letter. There shall be no adjustment to the compensation paid to you pursuant to this Agreement due to the presence or absence of any such recommendation or referral by you.

2.1. **Hourly Rate.** If the Client agrees to retain the Services of Consultant (which the Client may do only through IME), IME shall pay the Consultant in accordance with the terms of this Agreement, at the billing rates specified below, for the Services requested by the Client or the Client's counsel and performed by Consultant. The hourly rate(s) of Consultant (the "Consultant's Rate") is:

### 2.1.1 Medical Product and System Services ($250-500 per hour)

| |
|---|
| Medical Product/System Evaluation provide real-time evaluations of medical products or systems by electronic correspondence, telephone conversations or in-person meetings as well as in the attached Product/System Services Form (Exhibit A) |
| Cervical Spinal Product/Construct Evaluation |
| Lumbar Spinal Product/Construct Evaluation |
| Discussions with Client Regarding Industry Trends |
| Assist in Training with Respect to Client Products and/or Systems |
| Assist with Research or Papers Related to Client Products and/or Systems |

www.ImpartialMedicalExpert.com

It is expected that a cervical spinal product/construct evaluation is conducted within approximately 30 – 60 minutes, and a lumbar spinal product/construct evaluation is conducted within approximately 1 – 2 hours. This will not include surgical time spent utilizing and/or implanting spinal products.

You agree to document and submit any time related to product/construct evaluation, training, research or discussions on a monthly basis through a Product/System Services Form provided by IME ("Forms"). The attached Exhibit A is the IME recommended format of a Product/System Services Form, however a Client may change this format to match Client requirements. All Product/System Services Forms provided by IME and completed by the Consultant will be submitted directly to IME.

2.1.2 Law Firm, Insurance Company, and Other Interested Party (Litigation-Related) Services:

| | |
|---|---|
| Initial Brief Telephone Consultation with Client | Complimentary |
| Preliminary Litigation-Related Project Review and Oral Opinion | $250-$2000 Flat Fee |
| Research, Reports, Pretrial Preparation | $200-$500 per hour |
| Deposition Appearance | $200-$500 per hour |
| Courtroom Appearance | $1000-$5000 Per Day Flat Fee |
| Independent Medical Evaluation | $250-500 Flat Fee |

For court appearance per day, plus additional fees for travel time and direct expenses billed at cost. A range of payment is provided to account for the specific type of Medical Expert used. The flat-fee for initial litigation-related Project review and discussion is intended to provide a minimum four (4) hour payment to Consultant even in the event that Consultant's time devoted to the litigation-related Project is brief. The flat-fee is based upon an initial litigation-related Project review and discussion taking approximately four (4) hours or less. IME is aware that most litigation-related Projects can be reviewed within this window of time and encourages Consultant to perform the initial litigation-related Project review and oral discussion with Client within the allotted four-hour window. In the event that Consultant receives extensive documents or believes that the initial litigation-related Project review and discussion will take longer than four hours, the Consultant must notify IME in advance of the review such that IME will be able to contact Client in order to secure both authorization and payment for such additional service. Such notification must take place via the invoicing process described in 2.2.(b), below. Furthermore, if Consultant finds a Plaintiff Project to be meritorious, many jurisdictions require an Affidavit of Merit (i.e. a notarized document stating that an expert has found a breach of the standard of care that was causative of harm to the plaintiff). If such an affidavit is required, it will be prepared by the Client and signed by the Consultant at no additional charge. If Consultant is required to independently prepare such an affidavit, then standard hourly rates would apply.

A list of Clients that the Consultant has been retained through IME to provide Services under this Agreement will be compiled, periodically updated, and disseminated by IME for acknowledgement by the Consultant, see the sample Consultant's IME Client List attached as Exhibit B.

2.2. Invoicing Process.

(a) IME shall manage the billing, invoicing, and collection process for Project(s). Therefore, at all other times during the term of this Agreement, Consultant agrees to conduct all discussions concerning billing, rates, and invoicing only with IME and not directly with the Client.

(b) Consultant shall submit Forms or invoices to IME within five (5) days of the end of each month in which Consultant has provided Services to the Client. The invoice must include the time expended and expenses incurred by Consultant during that month. CONSULTANT SHALL NOT SUBMIT FORMS OR INVOICES DIRECTLY TO CLIENT.


IMPARTIAL Medical EXPERTS

2

Each invoice shall include an itemization of the activities performed, the amount of time spent (rounded to the nearest 30 minute increment) on each activity, and the date on which such activity was performed. For Medical Product/System Services, each Form should be completed and signed for the month in which Services were provided with the amount of time spent on each activity. Consultant shall submit invoices or Forms directly to IME via electronic mail, or fax. Consultant shall maintain receipts for all expenses incurred in performing the Services and produce such receipts to IME upon request. Upon receipt of each invoice from Consultant, IME shall review the invoice for conformity to the requirements of this Section 2.2. If there are any issues with Consultant's invoice, IME shall provide Consultant with notice describing the issue in reasonable detail and Consultant shall promptly resubmit a corrected invoice. Once IME has received a conforming invoice from Consultant, IME will submit an invoice to the Client, which will include Consultant's fees and expenses. Consultant's fees will be paid by IME, net of a 5% processing fee for IME administrative costs as well as the time expended and expenses incurred in the presentation of consulting opportunities to Consultant.

2.3.   Responsibility for Payment; Collections.

The Client, and not IME, is solely responsible for the payment of all invoices issued by IME with respect to a Project. Upon receipt of payment from the Client, IME shall issue payment to Consultant. IME agrees to issue payment to Consultant for invoiced Services not later than fourteen (14) days after receiving payment from the Client. Consultant acknowledges that IME shall not be required to pay Consultant for rendered Services if IME does not receive payment from the Client. IME shall use commercially reasonable efforts to collect payment from Client in a timely manner. However, if IME is unable to collect payment from the Client, Consultant shall have no recourse against IME. If it becomes necessary to engage the services of a collection service or law firm to collect payment from Client, then IME shall make the arrangements. IME and Consultant shall be responsible for any collection fees on a pro rata basis (based on the amount due Consultant and IME respectively), though in no circumstance would either party be responsible for any fee in excess of the amount due and payable by the Client.

2.4.   Rate Disclosure.

In the event that Consultant is asked to disclose his/her billing rate or the fees he/she is receiving for Services at deposition, in an expert report, or in any other context, he/she may disclose the Consultant's Rate.

2.5.   Estimates.

Since it is extremely difficult to estimate with any degree of accuracy the total cost of any engagement, Consultant agrees not to provide an estimate to the Client for any engagement. In the event the Client requests an estimate, Consultant shall discuss the scope of work and proposed estimate with IME, and IME shall then present an estimate to the Client.

2.6.   Payment Terms.

IME's payment terms with Client provides for timely payment within thirty (30) days of receipt of invoice. However, Consultant acknowledges that payment processing by Client for engagements such as this Project can sometimes involve multiple layers of review by various parties and that it is not uncommon for payment to be received by IME from a client within 45-60 days of the invoice date. Regardless of when payment is received by IME, payment to Consultant shall be made in accordance with the terms of Section 2.3.

3.   Confidentiality.

The Consultant and IME agree that the matters set forth in this Agreement are strictly confidential. The Consultant and IME agree to make all reasonable efforts to ensure that information herein and related hereto is not disclosed to any third persons or entities without the prior written consent of by Consultant and IME provided, however, that the information herein and related hereto may be disclosed by Consultant and IME to their respective accountants, auditors, consultants and/or attorneys, the Client and may also be disclosed in connection with any arbitration or litigation or to governmental agencies as required by law. This Section shall survive any expiration or termination of this Agreement.



3

4. Term and Termination.

This Agreement shall become effective on the Effective Date and shall remain in effect until such time as IME or Client notifies Consultant that Consultant's Services are no longer required by the Client. Consultant acknowledges that there is no minimum number of hours guaranteed to Consultant with respect to a Project, and that the Client's retention of Consultant could terminate at any time. Consultant may not withdraw from the provision of Services hereunder prior to the termination of this Agreement, unless Consultant provides IME and the Client with sixty (60) days' prior written notice of its intent to withdraw and such withdrawal does not adversely affect the Client's Project. Upon termination or expiration of this Agreement, Consultant shall cease any work it is then performing on the Project and, within five (5) days after the effective date of such termination or expiration, submit a final bill to IME, if necessary, in accordance with the terms of Section 2.3.

5. Work Products.

(a) You agree that all inventions, discoveries, designs, developments, prototypes, techniques, processes, improvements, modifications, ideas, trade secrets, know-how, work product, drawings, data, software, source code, object code, marketing plans, financial information, business plans, documentation, confidential information, trademarks, copyrights, materials, and all other proprietary rights and intellectual property rights ("**Intellectual Property**") evaluated by you in connection with your performance of the Services under this Agreement, whether or not protectable under patent, trademark or copyright (collectively, "**Work Products**") are the sole and exclusive property of Client. You hereby acknowledge Client's rights, title and interest in the Work Products and related intellectual property rights in the United States and elsewhere.

(b) You will promptly evaluate all Work Products and will maintain adequate and current written records with respect thereto. Based on your product/system evaluation of the Client's materials, you agree no Intellectual Property will be generated by you in completing Services under this Agreement.

(c) You agree that any copyrightable works prepared by you in connection with your performance of the Services are "works made for hire" under Federal copyright law and that Client will be considered the author and owner of such copyrightable works.

(d) You will include the following copyright notice on all Work Products as applicable:
© _Dr. T Plunkett_ [Client name and year of first publication]

6. Communication with Clients.

6.1. Pre-Retention Communications.

Unless and until Consultant has been formally retained by the Client through IME, Consultant may not contact the Client directly.

6.2. Agreements between the Client and Consultant.

In the event the Client enters into its own agreement directly with Consultant, IME shall have the right to review and approve the terms of such agreement and any such agreement may address any topic that pertains to the Project except those related to billing and payment as set forth in Section 2 hereof. In the event of a conflict between this Agreement and any agreement between the Client and Consultant, Consultant acknowledges and agrees that the terms of this Agreement shall govern.

6.3 Restricted Period.

If, during the term of this Agreement or the 36-month period following the expiration or termination hereof (the "Restricted Period"), the Client wishes to retain Consultant's services for a Project other than the Project (using either the same attorneys as this Project or using attorneys who became aware of Consultant because they were referred by the same attorneys in this Project), such new Project shall be governed by the terms of this Agreement. Thus, if Consultant is approached by the Client to perform services with respect to a new Project, Consultant shall refer the matter to IME, which will make arrangements with the Client. Furthermore, if, during the Restricted Period, Consultant wishes to refer another consultant to the Client, Consultant shall refer the matter to IME, which will make arrangements with the Client.

7. Qualification.

IME has conducted a preliminary review of Consultant's credentials based on materials provided by Consultant. Notwithstanding the foregoing, it is the joint responsibility of Consultant and the Client, not IME, to



4

ensure that Consultant is qualified, credible in all respects, available for all of the Client's needs, and execution of this Agreement and performance of Services hereunder will not conflict with, or result in a default under, or in violation of any agreement or obligation to which Consultant is a party or by which Consultant is bound. If any conflict exists, list below as Exclusion to Services to be provided by Consultant:

| Exclusion to Services | Consultant Acknowledgement |
|---|---|
| Lateral Access or remote intraoperative monitoring for spine surgery; does not exclude use of related products by surgeon | Signature: [signature] 10/17/13<br>Signature & Date |
|  |  |

IME will not control or be responsible for the Consultant's Services, have access to any work-product produced for the Client by Consultant, or exert influence over the exercise of professional judgment by Consultant. Therefore, Consultant agrees to indemnify and hold IME harmless from and against any and all liabilities, losses, costs, damages, penalties, and expenses (including reasonable attorneys' fees and court costs) associated with or arising from Consultant's acts, omissions, or statements in performing the Services, including Consultant's conclusions, representations, opinions, and testimony, withdrawal, and/or the payment or non-payment of Consultant's income taxes.

8.  **Limitation of Liability.**
EXCEPT WITH RESPECT TO CONSULTANT'S OBLIGATIONS UNDER SECTION 5, IN NO EVENT SHALL EITHER OF THE PARTIES BE LIABLE TO THE OTHER FOR THE PAYMENT OF ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE, OR EXEMPLARY DAMAGES IN RESPECT OF ANY CLAIM ARISING UNDER THIS AGREEMENT, REGARDLESS OF THE FORM OF ACTION, WHETHER IN CONTRACT, TORT, OR OTHERWISE, AND EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN ADDITION, EXCEPT WITH RESPECT TO CONSULTANT'S OBLIGATIONS UNDER SECTION 5, EACH PARTY'S AGGREGATE LIABILITY TO THE OTHER FOR ANY DAMAGES ARISING IN CONNECTION WITH ITS PERFORMANCE, NONPERFORMANCE, OR DELAY IN PERFORMING ITS OBLIGATIONS UNDER THIS AGREEMENT, OR IF ANY REMEDY IS FOUND TO FAIL OF ITS ESSENTIAL PURPOSE, SHALL NOT EXCEED THE AMOUNT OF FEES RECEIVED BY CONSULTANT HEREUNDER.

9.  **Representations and Warranties.**
Consultant represents, warrants, agrees, and certifies that:
(a) the information shown on the Consultant's statement of expertise or CV is true and accurate to the best of Consultant's knowledge and there are no misrepresentations or material inaccuracies in any information contained therein or otherwise provided to IME;
(b) Consultant further represents that s/he has not had a license suspended or revoked, been reprimanded or censured by a licensing authority, or been convicted of a felony that has not been disclosed to IME. Disclosure will not necessarily disqualify Consultant from providing Services to Client;
(c) Consultant does not currently, and during the Term will not, engage, as an owner, director, employee, consultant or otherwise, in any business or other activity that could reasonably be expected to bias, conflict, or otherwise adversely affect or impact your ability to perform Services in an accurate, unbiased, impartial and complete manner and in accordance with generally accepted professional standards;
(d) your execution of this Agreement and performance of Services hereunder will not conflict with, or result in a default under, or violation of any agreement or obligation to which you are a party or by which you are bound including, without limitation any regulation or code of conduct of your employer; and
(e) you shall not include information that violates privacy rules contained within the Health Insurance Portability and Accountability Act (HIPAA).

10. **Assignment.**


IMPARTIAL Medical EXPERTS

5

This Agreement shall inure to the benefit of and be binding upon each of the parties hereto, and their successors and permitted assigns. The Consultant will personally perform all of the Services and will not hire or subcontract any other person or entity to perform any of the Services. Consultant may not assign, delegate, or otherwise transfer all or any part of its rights or obligations under this Agreement. Any attempted assignment, delegation or transfer in violation of this Section will be null and void and of no effect.

11. **Independent Contractors.**

The parties are and intend to be independent contractors with respect to the Services contemplated hereunder. Consultant shall not act as an agent of IME and shall not be entitled to enter into any agreements or incur any obligations on behalf of IME. No form of joint employer, joint venture, partnership, or similar relationship between the parties is intended or hereby created.

12. **Governing Law.**

This Agreement shall be interpreted, construed, and governed by Florida law. Consultant agrees to the exclusive jurisdiction and venue of any state or federal court located in the State of Florida.

13. **Entire Understanding; Amendments.**

This Agreement constitutes the entire understanding of the parties with respect to its subject matter, and supersedes all prior or contemporaneous written and oral agreements with respect to its subject matter. Except as provided expressly herein, this Agreement shall not be modified, amended, or in any way altered unless a written addendum has been signed by both of the parties.

14. **Enforceability.**

If any part of this Agreement shall be adjudged by a court of competent jurisdiction to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not be affected and shall be enforced to the maximum extent permitted by applicable law.

IN WITNESS WHEREOF, on the date signified above:

CONSULTANT:
Sign Name: _____
Print Name: ATWATER, John    10/17/13
Mobile Phone: _____
Email: hothotspoue@gmail.com

IMPARTIAL MEDICAL EXPERTs, LLC:
Sign Name: Vanessa Dudley
Print Name: Vanessa J. Dudley    10/21/13

Impartial Medical Experts, LLC.
Email: info@call-IME.com


IMPARTIAL Medical EXPERTS

6

JGA 000839

2/24/2019                  AOL Mail - Message View

< 39 Results for **vanessa dudley**

### Revised IME Consulting Agreement

**From:** vanessadudley <vanessadudley@call-ime.com>
**To:** imhotspine <imhotspine@aol.com>
**Cc:** Kyle Black <kyle.black@yehss.com>; marcpelletier <marcpelletier@spinefrontier.com>; Aditya Humad <adityahumad@spinefrontier.com>
**Date:** Thu, Mar 20, 2014 4:24 pm



IME Surgeon Payout E...pdf (62 KB)     IME_10steps_rerv6.pdf (184 KB)    IME - Consultant Pay...pdf (51 KB)

Dr. Atwater/Kyle,

Hope you are both doing well!

There have been some new revisions to the IME consulting agreement and online tracker that we are excited about and hope you will be too. Attached to this email you will find updated documents that better illustrate our consulting model and explain why working with IME **and** Spinefrontier, can be mutually beneficial, supportive, and valid.

IME now also addresses the issue of receiving payment via an LLC on a surgeon's behalf; all that is necessary is the completion of the electronic form granting authorization to do so.

Please feel free to contact me with any questions.

Thank you,

**Vanessa J. Dudley**
Client Relations/Business Administrator

**Impartial Medical Experts**
3296 N. Federal Hwy #11631
Fort Lauderdale, FL 33339 USA

Work: 855-411-6463
Mobile: [redacted]
Fax: 855-411-6463
Email: vanessadudley@call-ime.com
http://www.linkedin.com/in/vanessadudley1

See who we know in common         Want a signature like this?

DISCLAIMER: this email and any attachments may be confidential or legally privileged. If you received this message in error or are not the intended recipient, you should destroy the email message and any attachments or copies, and you are prohibited from retaining, distributing, disclosing or using any information contained herein. Please inform us of the erroneous delivery by return email. Thank you for your cooperation.

JGA 000840



## Illustrative Example for Surgeon Compensation with Impartial Medical Experts (IME)*:

### Medical Spine Product Evaluation Services: $500/hour

| Hypothetical Example of a week: | # Evaluations | Estimated Hours / Evaluation | Total Hours | |
|---|---|---|---|---|
| Cervical Product Evaluations/Feedback | 3 | 1 hours | 3 hours | $1,500 |
| Lumbar Product Evaluations/Feedback | 3 | 2 hours | 6 hours | $3,000 |
| **Weekly Total** | | | | **$4,500** |
| Monthly Total (assuming same weeks) | | | | $18,000 |
| Training efforts in month | | | 3 hours | $1,500 |
| Strategic Discussions in month | | | 1 hours | $500 |
| **Estimated Monthly Product Evaluation Services** | | | | **$20,000** |

### Litigation-Related Services:

| Hypothetical Example of a Month: | | |
|---|---|---|
| Patient Chart Reviews | 8 hours | $4,000 |
| Deposition Appearances | 4 hours | $2,000 |
| Pre-trial preparation and opinion letters | 8 hours | $4,000 |
| **Estimated Monthly Litigation-Related Services** | | **$10,000** |

*The text above is for illustrative purposes only. Your decision to provide services is voluntary, to be renumerated consistent with fair market value for actual services rendered. Compensation agreed upon or actually paid will not be determined in a manner that takes into account the volume or value of any referrals or business. We recommend that you seek independent legal counsel from your attorney or financial advice from your tax advisor prior to deciding whether to execute this agreement or provide services.

# 10 Steps to Working with a Spine Company:



**IMPARTIAL Medical EXPERTS**
www.ImpartialMedicalExperts.com

1-855-411-6IME

3296 N. Federal Highway
#11631 Fort Lauderdale
FL 33339

1-855-411-6463
info@call-ime.com

**STEP 01** — Evaluate different opportunities within spine

**STEP 02** — Review agreement to be a legally contracted IME consultant

**STEP 03** — Review illustrative compensation example for medical product services and litigation-related services

**STEP 04** — Help with hospital requests/approval to begin product evaluations

**STEP 05** — Establish track record and build relationship with the company

**STEP 06** — Seek other opportunities with the company in product development of a novel idea

**STEP 07** — Potential investment opportunities with the company

**STEP 08** — Leverage the company surgeons to be part of the LESS Institute Network

**STEP 09** — Look for other benefits to market and brand your practice

**STEP 10** — Participate in research opportunities or leadership positions on committees for educational societies



JGA 000842

## CONSULTANT PAYMENT AUTHORIZATION AGREEMENT

I, _____, ("Consultant") authorize Impartial Medical Experts, LLC ("IME") to make all payments related to consulting fees or expenses payable to me or my agents, to the entity listed below:

Please complete detail for the **Entity Receiving Payments** on Behalf of Consultant:

_____
[Complete Legal Name]

_____
[Mailing Address]

_____
[Phone or Fax or Email]

_____
[EIN/Tax ID Number]

*Consultant must provide IME with thirty (30) day written notice of any desired change to the authorized payee listed above via a separately completed Authorization Agreement that will supersede any prior Authorization Agreements. This authorization agreement remains in full force and effect until IME has received written notification from Consultant of its termination and has had reasonable opportunity to act upon it. However, IME may terminate this agreement upon 30 days written notice to Consultant.*

*Consultant also authorizes adjustment payments or debits in the event of erroneous transactions. Consultant agrees to hold IME harmless for any expenses, including payments or fees, whether or not incurred as a result of its inability to process a scheduled preauthorized payment due to: Consultant having supplied incorrect information, or IME having acted on a stop payment order instruction made by Consultant. Consultant represents and warrants that: (i) it has all necessary right and authority to enter into and perform its obligations under this agreement; and (ii) the person signing on its behalf is duly authorized and empowered to enter into this authorization agreement.*

Signature: _____

Print Name: _____

Date: _____

JGA 000843

2/24/2019 AOL Mail - Message View

< 39 Results for **vanessa dudley**

### This Weekend

**From:** vanessadudley <vanessadudley@call-ime.com>
   **To:** imhotspine <imhotspine@aol.com>
   **Cc:** Seth Jacknowitz <sethjacknowitz@spinefrontier.com>; Dr. Chin <kingsleychin@spinefrontier.com>
**Date:** Fri, May 9, 2014 10:04 am

Dear Dr. Atwater,

Kingsley will be in Raleigh, NC this weekend and wanted to know if you knew any surgeons out in that area he should meet or get introduced to.

Kind Regards,



Vanessa J. Dudley
Client Relations/Business Administrator

Impartial Medical Experts
3296 N. Federal Hwy #11631
Fort Lauderdale, FL 33339 USA

Work: 855-411-6463
Mobile:
Fax: 855-411-6463
Email: vanessadudley@call-ime.com
http://www.linkedin.com/in/vanessadudley1

See who we know in common     Want a signature like this?

DISCLAIMER: this email and any attachments may be confidential or legally privileged. If you received this message in error or are not the intended recipient, you should destroy the email message and any attachments or copies, and you are prohibited from retaining, distributing, disclosing or using any information contained herein. Please inform us of the erroneous delivery by return email. Thank you for your cooperation.

2/24/2019                                                                    AOL Mail - Message View

< 39 Results for **vanessa dudley**

### May/June IME Consulting Hours

**From:** vanessadudley <vanessadudley@call-ime.com>
  **To:** imhotspine <imhotspine@aol.com>
  **Cc:** Kyle Black <kyle.black@yehss.com>
**Date:** Fri, Jun 20, 2014 9:09 am

Good Morning,

This is a friendly reminder to please submit any and all consulting hours to date through the online tracking website-

www.spinefrontier.com/ime

If you have any questions, please feel free to contact me.

Best Regards,

**Vanessa J. Dudley**
Client Relations/Business Administrator

**Impartial Medical Experts**
3296 N. Federal Hwy #11631
Fort Lauderdale, FL 33339 USA

Work: 855-411-6463
Mobile:
Fax: 855-411-6463
Email: vanessadudley@call-ime.com
http://www.linkedin.com/in/vanessadudley1

See who we know in common                                                Want a signature like this?

DISCLAIMER: this email and any attachments may be confidential or legally privileged. If you received this message in error or are not the intended recipient, you should destroy the email message and any attachments or copies, and you are prohibited from retaining, distributing, disclosing or using any information contained herein. Please inform us of the erroneous delivery by return email. Thank you for your cooperation.

2/24/2019                                    AOL Mail - Message View

< 39 Results for **vanessa dudley**

**IME Feb Consulting Hours**

From: vanessadudley <vanessadudley@call-ime.com>
   To: imhotspine <imhotspine@aol.com>
Date: Tue, Apr 14, 2015 10:00 pm

Good Evening Dr. Atwater,

I am touching base with you to assist in clearing up any issues with some of your latest submitted hours.
I believe there is a discrepancy between submitted hours via the online tracker (21.5 hrs) and documented case reviews (5 cases) submitted.
This resulted in only 9 of those 21.5 hours being approved.

Can you please verify how many cases were actually reviewed and turned in so I can check that against what we have?

Thank you for your assistance in this matter.



Vanessa J. Dudley
Client Relations/Business Administrator

Impartial Medical Experts
3296 N. Federal Hwy #11631
Fort Lauderdale, FL 33339 USA

Work: 855-411-6463
Mobile:
Fax: 855-411-6463
Email: vanessadudley@call-ime.com
http://www.linkedin.com/in/vanessadudley1

See who we know in common                             Want a signature like this?

DISCLAIMER: this email and any attachments may be confidential or legally privileged. If you received this message in error or are not the intended recipient, you should destroy the email message and any attachments or copies, and you are prohibited from retaining, distributing, disclosing or using any information contained herein. Please inform us of the erroneous delivery by return email. Thank you for your cooperation.