UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

KINGSLEY R. CHIN,
ADITYA HUMAD

Defendants.

No. 1:21-cr-10256-IT

**OPPOSITION TO MOTION *IN LIMINE* TO PRECLUDE TESTIMONY BASED UPON IMPROPER INDUCEMENT AND INADEQUATE DISCLOSURES**

The government presently intends to call surgeon witnesses at trial, some of whom entered into civil settlement agreements with the government. As part of their civil resolutions, the surgeons admitted to factual statements. The Defendants seek to exclude their trial testimony—presenting the inclusion of factual admissions in the civil settlement agreements as a highly unusual scenario. In fact, settlement admissions are commonplace in this District; the government has settled dozens and dozens of cases with admissions in the last five years.[1] Building off their plain misunderstanding, the Defendants argue that the Court should bar the settling surgeons' testimony because of their admissions. If accepted, the Defendants' position would create new, and counterproductive, precedent in this District and beyond. It would hamstring the government's ability to recover fraudulently obtained funds from defendants like the settling surgeons. The Court should deny the Defendants' motion.

---

[1] *See, e.g.,* Nov. 15, 2024 U.S. Attorney's Office Press Release re: *United States ex rel. John Doe 1, et al., v. QOL Medical, LLC, et al.*, No. 20-cv-11243 (D. Mass.); settlement available at https://www.justice.gov/usao-ma/pr/qol-medical-and-its-ceo-agree-pay-47-million-allegedly-paying-kickbacks-induce-claims ("As part of the settlement, QOL and Mr. Cooper admitted and accepted responsibility for certain facts providing the basis of the settlement.") (last visited March 2, 2025).

1

*First*, contrary to the Defendants' contentions, the civil settlement agreements and the process by which they were reached were not a stalking horse to advance the government's interest in the criminal case. The government reached these resolutions to recover money under the False Claims Act and to provide the public information concerning the conduct so that it could make its own assessments. And, in any event, the Defendants are entitled to cross-examine the government's witnesses about the agreements if they seek to question their motives in admitting to factual statements.[2] Nothing more is required.

*Second*, in arguing that the government's failure to produce all correspondence with testifying surgeons' attorneys amounts to a Due Process violation, the Defendants revisit well-trodden ground. There is no legitimate basis, in case law or otherwise, for the Defendants' assertion that they are entitled to all communications with surgeons' counsel. Their conclusory claims, aimed to exclude testimony from government witnesses, should be rejected.

## ARGUMENT

### A. There Is Nothing Improper About Including Factual Admissions in Civil Settlements with Testifying Surgeons

The government's practice in this District of requiring *factual* admissions concerning the underlying conduct is in the public interest, which is the *sole* criteria for the United States Attorney's Office's decision to do so.[3] The government does not, however, require admissions to

---

[2] The government is not waiving objections it may have to lines of cross examination under the Federal Rules of Evidence.

[3] The Defendants posit that the admissions language is "entirely unnecessary to the settlements themselves." Dkt. No. 255 at 2. But, they are obviously in no position to arrogate to themselves the authority to determine how the government ought to resolve civil cases. The Court need not adjudicate this issue; suffice to say that requiring settling defendants to admit to the facts of their conduct provides public accountability for both the government and settling parties by providing the public with (i) a clear view of what happened, and (ii) the factual basis for the settlement and the settlement amount.

*liability*, which means that settling defendants need not (and did not here) admit that they acted with scienter under the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b). *See, e.g.*, Dkt. No. 255-01 at ¶ H (Dr. Atwater civil settlement agreement).

The Defendants nevertheless contend that the government improperly "purchased" the settling surgeons' testimony and that the settling surgeons are required to "testify consistently with what the government wants them to say at trial in this matter." Dkt. No. 255 at 4. In so arguing, however, the Defendants display a misunderstanding of the civil settlements' admissions and of the agreements themselves. The Defendants' contentions are wrong in nearly every respect.

*First*, the government did not "purchase" the settling surgeons' testimony. Instead, the government *resolved* liability that the settling surgeons faced with the United States under the False Claims Act ("FCA"), 31 U.S.C. § 3279 et seq. In exchange for payments of the amounts in the separate settlements, the settling surgeons received a release from liability for further FCA and civil liability. *See, e.g.,* Dkt. No. 255-01 at ¶ 2 ("[T]he United States releases Dr. Atwater from any civil or administrative monetary claim the United States has for the Covered Conduct under the [FCA, etc.]"). Were the Court to accept the Defendant's position, the United States would be foreclosed from recovering fraudulently obtained funds from settling parties, simply because those in the latter group could become witnesses in associated criminal cases later. This argument has no basis in the case law, and it was implicitly rejected in this very case. Mag. Judge Kelley Order, Dkt. No. 126 at 10 (citing *United States v. Stringer*, 535 F.3d 929, 933 (9th Cir. 2008) (holding there is "nothing improper about the government undertaking simultaneous criminal and civil investigations")). It is also contrary to longstanding Department of Justice policy, *see, e.g.,* U.S. Dep't of Just., Justice Manual § 1-12.000 (2020), directing prosecutors to pursue parallel proceedings simultaneously.

*Second*, the surgeons' civil settlements do not obligate the settling surgeons to testify consistent with the government's view of the case. Dkt. No. 255 at 5 ("[T]he government went further by obtaining from the witnesses a contractual commitment to specific supposed facts recited expressly in the settlement agreements"). Indeed, the settlement agreements say nothing about whether the settling surgeons acted with scienter, acted in conspiracy with the Defendants, or ultimately are liable under the AKS. The settling surgeons would not be in breach of their civil settlements were they to testify at trial, for example, that they did not act willfully, or that they did not conspire with the Defendants. Thus, the Defendants' claim that the settling surgeons are "lock[ed]" into particular testimony is inaccurate. Dkt. No. 255 at 2.

*Third*, because the settling surgeons did not admit to scienter or liability, the Defendants' argument that the government's settlements with the surgeons somehow leaves the Defendants in a worse position than they would have been if the government had obtained guilty pleas and cooperation agreements from the surgeons does not hold water. The government did not "go further" than a cooperation agreement when it secured resolutions with the settling surgeons to the factual admissions. To the contrary—the settling surgeons did not admit guilt or liability. For the same reason, the Defendants' claim that it is somehow problematic that the settlement agreements did not "resolv[e] criminal consequences for the [settling surgeons]" is through the looking glass. Dkt. No. 255 at 5. The government agrees, of course, that the civil settlements did not resolve any criminal liability, Dkt. No. 255-1 at ¶ 3(b), but even accepting the Defendants' lens that the settlements determine the witnesses' testimony, that provision leaves the Defendants in a more, not less, favorable position vis-à-vis the surgeons' potential testimony.[4]

---

[4] It should go without saying that the government categorically rejects the Defendants' lens. The government expects the settling surgeons to testify truthfully, nothing more.

4

## B. The Government Is Not Required to Provide All Correspondence with the Settling Surgeons' Attorneys

In an effort to exclude witness testimony, the Defendants contend that the purported problem with the government's civil settlements is compounded by the government's supposed refusal to provide "full disclosure of documents, communications, and information regarding the deals that the government reached with those witnesses to obtain those commitments." Dkt. No. 255 at 1. In painting the government's position with such a broad brush, the Defendants gloss over key points.

As a preliminary matter, this request is not a new one, but simply a repackaging of previously litigated matters. Dkt. No. 157, 181. In recent communications, counsel for the Defendants continuously have expanded their requests to include "scheduling matters" which may, in the Defendants' view, reveal "missing notes and reports." This is nothing more than a "broad and blind fishing expedition", and it is one that this Court has already rejected. *United States v. Scully*, 108 F. Supp. 3d 59, 123 (E.D.N.Y. 2015); Dkt. No. 181 at 12 (noting Defendants have "not contested the government's assertion that it has provided Defendants with the plea deals, settlement agreements, and other formal arrangements between any cooperating witnesses and the government" and finding no basis for dismissal).

The government reviewed its files for correspondence with counsel for the settling physicians. Dkt. 126. In reviewing that correspondence, the government provided the Defendants with discovery materials required under *Brady* and *Giglio*. *See* Dkt. No. 157 at 19-20. In assessing the Defendants' contention that changes to the factual statements attached to civil settlement agreements may be discoverable, and as part of meet and confer efforts in response to the Defendants' motion *in limine*, the government agreed to produce versions of the factual statements exchanged between counsel for the settling surgeons and the government.

5

The government did so in an attempt to narrow the issues before the Court and *without conceding* that the requested materials are even disclosable in the first instance. As a preliminary matter, it is unclear whether any potential edits the settling surgeons' attorneys made to the factual statements were even known to the settling surgeons *at all*. Communications between government counsel and the attorneys representing the surgeons do not constitute impeachment material for the surgeons, nor would evidence of such communications be admissible. *See United States v. Valencia*, 826 F.2d 169, 173-74 (2d Cir. 1987). The final agreements and the interview reports will enable defense counsel to cross-examine the cooperating witnesses about their credibility and motives.

Consistent with the weight of the case-law, the government does not view other correspondence pertaining to the civil settlement agreements, such as exchange of drafts or other correspondence as disclosable under Fed. R. Crim. P. 16 or the Local Rules. *See, e.g.*, *United States v. Weaver*, 992 F. Supp. 2d 152, 158 (E.D.N.Y. 2014) (rejecting defendant's motion to compel all communications with cooperating witnesses and counsel and noting that "requiring production of the substance of such communications with counsel, and/or draft agreements, could have a chilling effect on plea negotiations"); *United States v. Singhal,* 876 F. Supp. 2d 82, 104 (D.D.C. 2012) (denying motion to compel the government to "produce all documents reflecting the government's communications with [the cooperating witness's] attorneys, as this information is not material to the defense's preparation of its case under Rule 16"); *S.E.C. v. Gupta*, No. 11-cv-7566, 2012 WL 1592525, at *1 (S.D.N.Y. 2012) (denying motion to compel settlement negotiations with cooperating witnesses: "Defendants have not demonstrated that the settlement negotiations are relevant to proving bias . . . what is relevant are the actual cooperation agreements themselves"); *United States v. AU Optronics Corp.*, No. 09-cr-0110, 2011 WL 6778520, at *2

(N.D. Cal. Dec. 23, 2011) (disclosure of final plea agreements sufficient and discovery of plea negotiations is not relevant to credibility of government witnesses);[5] *United States v. Buske*, No. 09-cr-65, 2011 WL 2912707, at *4-5 (E.D. Wis. 2011) ("[D]isclosure of communications regarding 'the negotiation process' by which any immunity or leniency agreements were reached would be unnecessary so long as the final agreements between [the cooperating witnesses] and the government were fully and accurately reflected in the plea agreements and proffer letters defendant already had. Preliminary versions of such agreements may confuse more than enlighten."); *United States v. Miller*, 250 F.R.D. 588, 593 (D. Kan. 2008) (holding that defendants were entitled to the final, operative plea agreement, proffer letter and immunity agreement, but not drafts of those materials); *see also United States v. Stein*, 488 F. Supp. 2d 350, 359, 369 (S.D.N.Y. 2007) (requiring government to produce only one section of a whitepaper sent to the prosecution by a cooperating company explaining why the company should not be indicted, noting that the whitepaper and appendices are not "material to the preparation of the defense").

The scarcity of cases in this District reflects the fact that requests for such inadmissible materials are rarely made. The Defendants' reliance upon *United States v. Sudikoff*, is misplaced and the court's ruling is readily distinguishable. 36 F. Supp. 2d 1196 (C.D. Cal. 1999). In that case, the defense sought the release of communications between a testifying accomplice and the government, including materials relating to proffer sessions. *Sudikoff,* 36 F.Supp.2d at 1197. In support of his request, the defendant alleged that the accomplice had "proffered various versions of his testimony during the period leading up to his immunity agreement" and argued that the

---

[5] In reaching its decision, the court noted that "if there is a separate basis for disclosure--for example, if the documents contain a material inconsistent statement of a witness--the Government may have a separate obligation to disclose the materials." *AU Optronics Corp.*, 2011 WL 6778520, at *2. As the government has consistently stated, it recognizes and will comply with its discovery obligations.

7

different versions were relevant to the witness's credibility and motive to implicate him. *Id.* at 1198. The Court merely held that that witness proffers—that is, factual assertions of a witness—made with the hope of obtaining a cooperation plea deal are discoverable. And the government has produced discovery consistent with this principle. Contrary to the Defendants' contention here, however, the court in *Sudikoff* did not specifically hold that draft plea agreements or factual statements are also discoverable. *Sudikoff*, 36 F. Supp. 2d at 1203. In any event, courts have made clear that *Sudikoff* articulated the wrong standard for discoverability. *See United States v. Acosta*, 357 F.Supp.2d 1228, 1243 (D. Nev. 2005) ("[the court's] decision in *Sudikoff* is a significant departure from the Supreme Court's articulation of the prosecutor's constitutional Brady obligations."); *United States v. Inzunza*, No. 03-cr-2434 JM, 2004 U.S. Dist. LEXIS 34593, at *6 (S.D. Cal. July 8, 2004) (stating that "no court has followed [*Sudikoff's*] reasoning to permit discovery in a criminal case based upon a showing that the requested discovery would likely lead to the discovery of admissible evidence").[6] The government need not produce correspondence with the settling surgeons' counsel, and there is no basis to exclude their testimony.

## CONCLUSION

The Court should decline the Defendants' invitation to exclude the settling surgeons' testimony. To the extent Defendants seek to expand the government's discovery obligations, their theory would create a general and impermissible right to conduct unfettered fishing expeditions and impose an oppressively heavy burden on prosecutors, as well as chill the advocacy of counsel acting on behalf of their clients. The Defendants' motion should be denied.

---

[6] The defendants also cite to *United States v. Vazquez-Botet*, but that case simply endorsed *Sudikoff*'s reasoning without any analysis at all. 453 F. Supp. 2d 362, 370 (D.P.R. 2006).

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

*/s/ Mackenzie A. Queenin*
ABRAHAM R. GEORGE
CHRISTOPHER R. LOONEY
MACKENZIE A. QUEENIN
Assistant United States Attorneys

Date: March 3, 2025

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system on March 3, 2025, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) (with paper copies to be sent to those indicated as non-registered participants).

*/s/ Mackenzie A. Queenin*
Assistant United States Attorney
