UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>KINGSLEY R. CHIN,<br>    *Defendant*. | No. 1:21-cr-10256-IT |

**DEFENDANT KINGSLEY CHIN'S MOTION FOR BILL OF PARTICULARS WITH RESPECT TO COUNT ONE OF SUPERSEDING INDICTMENT**

Defendant Kingsley Chin respectfully requests that the Court direct the government to file a bill of particulars pursuant to Fed. R. Crim. P. 7(f), with respect to Count One of the Superseding Indictment, which charges Dr. Chin with conspiracy to violate the Anti-Kickback Statute (the "AKS").

From the original Indictment to the Superseding Indictment, and a concomitant change in identification of unindicted co-conspirators, the conspiracy charge underwent significant changes, with some aspects narrowed and some made more vague. On April 1, 2025, the government obtained and filed a Superseding Indictment, which continues to include a conspiracy charge as Count One. The government's theory of conspiracy has presented an ever-moving target for the defense as trial has approached. In the months leading up to the previously scheduled trial date, the government's view of the conspiracy shifted dramatically, and several times, including in temporal scope and membership. That lack of clarity as to what Dr. Chin is being charged with has continued, and even been exacerbated, following the April 1 Superseding Indictment. The new Indictment suggests on its face an alleged conspiracy focused on paying supposed bribes to three

particular surgeons: Drs. Jason Montone, Michael Murray, and John Atwater.[1] The government has, however, also attempted to use some vague language in an effort to reserve the right to prove a broader conspiracy at trial, not limited to those three surgeons. Yet in doing so, the government has also refused to provide detail as to its broader theory of conspiracy. A bill of particulars has become necessary to permit Dr. Chin to prepare adequately to defend against that charge and to avoid unfair surprise at trial.

**Relevant Background as to Government's Changing Theory of Conspiracy**

For more than three and half years, from August 2021 until last week, the operative charging instrument in this case was the original Indictment. That Indictment charged Dr. Chin and his co-defendants, Aditya Humad and SpineFrontier, Inc., with conspiracy to violate the AKS (Count One), and six counts of violating the AKS (Counts Two through Seven).[2] Each of Counts Two through Seven charged the defendants with violating the AKS by making payments to a particular surgeon, identified in the Indictment as Surgeons 1 and 3 through 7. (*See* ECF No. 1 ¶ 42.)[3]

With respect to Count One, the original Indictment included allegations making clear that the government viewed the AKS conspiracy as alleging that the defendants put in place and used a "sham consulting *program*." Nowhere in the Indictment was there an allegation that the

---

[1] The Superseding Indictment identifies these three doctors as Surgeons 1, 2, and 3, respectively. In the original Indictment, they were referred to as Surgeons 1, 3, and 5, respectively. Because the government changed the pseudonyms by renumbering them when it obtained the Superseding Indictment, this motion refers to the three doctors by name to avoid confusion. The government has informed defendants that it does not object to use of the surgeons' names in filings, and has itself mentioned surgeons by name in its filings.

[2] The original Indictment also included a charge of conspiracy to commit money-laundering (Count Eight), which the Court dismissed over the government's objection.

[3] The Indictment identified another surgeon, Surgeon 2, but did not link that surgeon to any of the counts for violation of the AKS.

defendants' supposed conspiracy was to use an otherwise-legitimate consulting program to pay kickbacks, sometimes. To the contrary, in Paragraph 29 of the Indictment, under the heading "Overview of the Conspiracy," the Indictment alleged that defendants are responsible for directing bribes to surgeons "pursuant to a sham consulting *program*." Paragraph 30 also referred to "SPINEFRONTIER's sham consulting *program*." In Paragraph 32, the Indictment alleged that Dr. Chin and Mr. Humad "designed" the consulting program for the purpose of making "bribes" to surgeons. In Paragraph 37(j), the Indictment alleged the creation of records and documents, "including purportedly legitimate contracts, designed to make the *sham consulting program* appear legitimate." The Indictment also impugned the entirety of the consulting program by alleging that Impartial Medical Experts, LLC ("IME"), the entity through which *all* consulting payments were made after a particular period, "*purported* to manage the process pursuant to which SPINEFRONTIER's surgeons submitted hours and received payments from or on behalf of SPINEFRONTIER for *purported* consulting." (Indictment ¶ 4 (emphases added).)

Consistent with the allegation that defendants conspired to design and implement a "sham consulting program," the original Indictment included among the alleged manner and means of the conspiracy the following as to IME, which has been removed from the case (as explained in more detail below): "Holding out IME as a separate and independent entity from SPINEFRONTIER … in part to evade Sunshine Act reporting obligations." (*Id.* ¶ 37.c.) Similarly, in another filing that the government made while the original Indictment remained the operative pleading, the government referred to IME as "a sham entity," consistent with the Indictment's allegations of a broad conspiracy concerning the consulting program generally. (*See* ECF No. 248, at 7.)

In short, the sweeping conspiracy in the original Indictment that the Grand Jury returned was one by which defendants and others supposedly "designed" and used a "sham consulting

3

program," not one in which they conspired to *sometimes* use an otherwise-legitimate consulting program to make kickbacks to certain surgeons on occasion. Consistent with that theory of a sham-consulting-program conspiracy, the government provided defendants at the outset of the case with a lengthy list of alleged unindicted co-conspirators, consisting of nineteen names, including surgeons (and not just Surgeons 1-7), SpineFrontier employees, and others.

In the lead-up to the earlier-scheduled trial date, the government's depiction of the conspiracy began to shift, as the government came to realize that it could not possibly prove that the consulting program as a whole was a "sham." On January 17, 2025, the government sought dismissal of all charges against SpineFrontier, as well as Counts Six and Seven against Dr. Chin and Mr. Humad, which had charged AKS violations based on consulting payments to two particular surgeons. (ECF No. 225.) Other than dismissing all charges against SpineFrontier, that action by the government did not, at least formally, make any changes to the conspiracy charged in Count One. Nor did the government alter its list of unindicted co-conspirators at that time, even to remove the two surgeons who were the subjects of the two substantive AKS counts that it dropped. The government told the Court, however, without explanation, that dismissing Counts Six and Seven would "streamline" the trial.

Further changes to the charges similarly created uncertainty about any impact on what the government's position would be at trial as to the scope of the conspiracy charges. On February 26, 2025, the government sought dismissal of yet another of the AKS charges, Count Four, concerning consulting payments to a third surgeon. It again represented that doing so would "streamline" the case. (ECF No. 267.) As with its earlier dismissal of Counts Six and Seven, however, the government did not make any alterations to Count One. Nor did it make any alterations to its list of unindicted co-conspirators.

In the midst of these changes, the government injected further confusion as to whether the conspiracy involved only certain surgeons or something broader, when the government sought to preclude defendants, through a motion *in limine*, from introducing evidence of legitimate consulting work. In that motion *in limine*, the government wrote that "the Indictment alleges that the Defendants' consulting arrangement *in practice* was unlawful with respect to *certain* surgeons during *certain* periods of time." (ECF No. 246, at 2 (first emphasis added; other emphases in original).) That assertion was directly contrary to the Indictment's allegations, discussed above, regarding defendants supposedly having designed and implemented a "sham consulting program" and the supposed "sham" nature of IME.

That is where matters with respect to Count One stood as of a March 6, 2025 hearing in this matter. In the course of argument at that hearing concerning whether to continue the trial for Dr. Chin, the Court pressed the government to better define the scope of the conspiracy it alleged, by identifying whom it considered unindicted co-conspirators for purposes of Count One. A week later, on March 13, 2025, the government provided defendants with a new list of unindicted co-conspirators, which now consisted of only five names – down from the nineteen names in the prior list. Three of those five names were Drs. Atwater, Murray, and Montone, the three surgeons who were the subject of the remaining AKS charges after the dismissal of Counts Four, Six, and Seven. The two other names on the government's new list consisted of John Balzer, who was a close affiliate of Dr. Montone, and Scott Autrey, a former SpineFrontier employee.

On April 1, 2025, the government provided Dr. Chin with the Superseding Indictment. *Most* of the changes were for the purpose of implementing the narrowing of the case that had occurred as a result of (1) the Court's dismissal of the money-laundering charge, (2) the government's dismissal of all charges against SpineFrontier, and (3) the government's dismissal

5

of three of the six AKS charges. This narrowing left four charges: Count One, for conspiracy to violate the AKS, and renumbered Counts Two, Three, and Four, for violations of the AKS with respect to payments to Drs. Montone, Murray, and Atwater, respectively.

The effect of the changes to the Indictment also seemed to resolve the earlier inconsistency between the original Indictment's broad alleged conspiracy to design and implement a "sham" consulting *program*, and the government's more recent suggestions of a far narrower conspiracy focused on payments to "certain" surgeons. The Superseding Indictment's conspiracy allegations read as a charge of the latter type of conspiracy, with Drs. Atwater, Murray, and Montone the "certain" surgeons at issue. For example, the Superseding Indictment removed entirely the previous allegation, which appeared in the section of the original Indictment addressing means and manner of the conspiracy, quoted above, to the effect that IME operated to evade Sunshine Act reporting obligations. (Original Indictment ¶ 37.c.) Other changes that the Superseding Indictment made to the conspiracy allegations tied the conspiracy specifically to Drs. Atwater, Montone, and Murray. For example, the Superseding Indictment's "Overview of the Conspiracy" and "Manner and Means of the Conspiracy" sections refer throughout to, and focus almost entirely on, "Surgeons 1-3" (i.e. Drs. Montone, Murray, and Atwater). (*See* Superseding Indictment ¶¶ 23, 24, 25, 28, 29, 30, 31.) Similarly, in the Superseding Indictment's "Overt Acts in Furtherance of the Conspiracy" section, all but one alleged overt act refers expressly to Dr. Montone, Dr. Murray, or Dr. Atwater specifically (using their pseudonyms, Surgeons 1-3). (*Id.* ¶¶ 32.a, 32.b, 32.c, 32.f, 32.g, 32.k [presumably as a result of a typographical error, there is no 32.h, 32.i, or 32.j].) The Superseding Indictment also shortened the conspiracy period, as compared to the original Indictment, now alleging that the conspiracy ended in March 2017, to align with the last of the payments it alleges to these three specific surgeons. (*See id.* ¶¶ 23, 36.) Whereas the original

6

Indictment had alleged "millions of dollars" in payments pursuant to the conspiracy, the Superseding Indictment reduces those amounts to "hundreds of thousands of dollars," again to align with the payments alleged to Drs. Atwater, Montone, and Murray specifically. (*See, e.g.*, *id.* ¶ 23.) The Superseding Indictment also dropped all allegations concerning a federal healthcare program known as TRICARE, as none of Dr. Atwater, Dr. Montone, or Dr. Murray is alleged to have used any SpineFrontier products through the TRICARE program.

From these changes, particularly when combined with the government's dramatically shortened list of unindicted co-conspirators – four of five of whom are Dr. Montone, his affiliate, Dr. Atwater, and Dr. Murray – and the government's earlier motion describing a far narrower conspiracy than alleged in the original Indictment, the government's theory of conspiracy in the Superseding Indictment *appeared* to charge a conspiracy consisting of agreements to make illicit payments to those three doctors specifically. At the same time, however, Dr. Chin recognized some ambiguity on this point, as the Superseding Indictment occasionally uses "including" before its references to Drs. Atwater, Montone, and Murray when discussing the alleged conspiracy. (*See, e.g.* Superseding Indictment ¶ 23.)

Dr. Chin thus sought clarification from the government that its theory of conspiracy was as a conspiracy to violate the AKS with respect to those three doctors. Dr. Chin further requested that if the government intended to pursue a broader conspiracy, that it agree to provide a bill of particulars. Specifically, Dr. Chin's counsel wrote the following to counsel for the government:

> Second, as you know, the Superseding Indictment now focuses on Surgeons 1-3, in both the conspiracy allegations and the allegations of AKS violations. While there are some uses of "including" before Surgeons 1-3, we read the Superseding Indictment (particularly in light of your narrowed list of alleged unindicted co-conspirators) as charging a conspiracy to violate the AKS with respect to those three doctors. Can you please confirm that the government's theory of conspiracy does not include other doctors? If that is not correct, and the government intends to pursue a theory of conspiracy broader than one directed at making unlawful

7

payments to those three doctors, please let us know if the government is willing to provide a bill of particulars with respect to the conspiracy charge. As with the first issue above, this issue could impact evidentiary matters that we may want to address with the Court in advance of trial.

The government responded by telling Dr. Chin that it did not anticipate introducing evidence that any other surgeons joined a conspiracy, but that it also reserved the right to pursue a conspiracy theory broader than one directed toward payments to those three physicians. The government's response was thus that it would *not* confirm Dr. Chin's understanding that the charged conspiracy is limited to Drs. Atwater, Murray, and Montone. But the government also would not define the scope of the conspiracy it alleges, going so far instead as to use such vague language as "includes, but is not limited to" when reserving its right to introduce evidence of a broader conspiracy. Specifically, the government's response was the following (emphases added):

> As to your second question, we do not anticipate introducing evidence that other surgeons agreed to accept consulting payments in exchange for use of SpineFrontier's products. This does not preclude us from introducing evidence that Chin's intent in the *design and implementation* of the SpineFrontier consulting *program* was as a means to pay surgeons to use SpineFrontier's products. This includes, *but is not limited to*, evidence such as anticipated testimony from Scott Autrey that Chin instructed Autrey as to *how to sell the consulting program*.

Thus, contrary to the suggestion in the language of the Superseding Indictment, albeit with some degree of ambiguity, the government's position following the Superseding Indictment appears to be that the conspiracy charged in Count One is *not* limited to an agreement to make illicit payments to three particular doctors. As was the case in the original Indictment, the government instead appears to reserve a vague right to argue that the conspiracy charge includes design and implementation of the consulting program with surgeons beyond the three specifically identified in the Superseding Indictment, even if those three are the only surgeons the government views as having joined the conspiracy. While responding in this way, the government did not agree to provide a bill of particulars as Dr. Chin had requested.

**A Bill of Particulars Is Necessary to Permit Dr. Chin
to Prepare Adequately to Defend Against the Conspiracy
Charge and to Avoid Unfair Surprise at Trial**

Even before the government obtained a Superseding Indictment, in part to focus on three specific surgeons, and despite far broader language in the original Indictment, the government had taken the position that the conspiracy it alleged was the use of the consulting program *sometimes* with respect to *certain* surgeons: "that the Defendants' consulting arrangement *in practice* was unlawful with respect to *certain* surgeons during *certain* periods of time." (ECF No. 246, at 2 (first emphasis added; other emphases in original).) Despite amending the Indictment so as to more closely track *that* theory rather than the one set forth in the original Indictment, the government now seeks to reserve the right to pursue a broader, undefined theory of conspiracy.

Dr. Chin is entitled to further clarity about what he is being accused of having agreed to do. Because "[t]he agreement is the *sine qua non* of a conspiracy," it is "essential to determine what kind of agreement or understanding existed." *United States v. Dellosantos*, 649 F.3d 109, 115 (1st Cir. 2011) (internal quotation marks omitted). The government's shifting, and now overly vague, description of the conspiracy that it claims and intends to pursue at trial deprives Dr. Chin and the Court of the ability to know "what kind of agreement" the government alleges.

A bill of particulars can provide the clarity that is currently lacking. "The function of a bill of particulars is to provide the defendant with necessary details of the charges against him to enable him to prepare his defense, to avoid surprise against trial, and to protect against double jeopardy." *United States v. Abreu*, 952 F.2d 1458, 1469 (1st Cir. 1992). When assessing whether to require a bill of particulars, "[t]he key inquiry [is] whether a lack of a more detailed specification would disable a defendant in their trial preparation." *United States v. Hall*, No. 121CR000623JJMPAS, 2021 WL 5144607, at *1 (D.R.I. Nov. 4, 2021) (internal quotation marks omitted). The Court need not conclude that an indictment is so impermissibly vague as to be invalid as a charging instrument

9

to find that a bill of particulars is warranted. To the contrary, as this Court has held after granting a bill of particulars yet denying a motion to dismiss, an "indictment may be sufficient to withstand a motion to dismiss and yet pose a challenge for preparing a fulsome defense." *United States v. Costa*, 481 F. Supp. 3d 37, 41 (D. Mass. 2020). Accordingly, whether to require a bill of particulars "is determined on the basis of the facts and circumstances presented in each case." *United States v. Perry*, No. 12-cr-10293-DJC, 2013 WL 3158078, at *4 (D. Mass. June 19, 2013).

The unusual and ambiguous changes in the conspiracy charge in this case warrant a requirement that the government provide Dr. Chin with further information as to the scope of the charged conspiracy to avoid unfair surprises at trial and to permit Dr. Chin to prepare his defense to the conspiracy charge. In summary version, the features of this case that, in combination, leave undue ambiguity as to what Dr. Chin is accused of, include (1) the government having told the Court and defendants that the conspiracy was based on the claim that "the Defendants' consulting arrangement *in practice* was unlawful with respect to *certain* surgeons during *certain* periods of time" when the government was seeking to limit the scope of defendants' evidence, (2) despite the Indictment at the time charging a far broader conspiracy to "design" and implement a "sham consulting *program*," in part through use of IME, a "sham" entity; (3) the government then filing a Superseding Indictment more than three and half years into the case and weeks before trial; (4) the Superseding Indictment, on its face, appearing to align the charges with the government's representation that the conspiracy it would pursue concerned only certain uses of the consulting program (i.e. with "certain surgeons"), by alleging a conspiracy focused on payments to three particular surgeons; and (5) notwithstanding that apparent narrowing, the government since declining to confirm that its theory of conspiracy is limited to payments to those three surgeons, but rather (6) purporting to reserve a right to introduce evidence consistent with the pre-

10

amendment version of the Indictment, including evidence of Dr. Chin's "intent in the *design*" of the consulting program, "as a means to pay surgeons to use SpineFrontier's products," including, but "not limited to," evidence that he instructed a sales person to sell "the consulting program" more broadly in an illicit fashion.[4] Put even more succinctly, the government's own recent descriptions of the charged conspiracy place its theory of conspiracy somewhere between a conspiracy to create a consulting program that was, by design, established for the purpose of violating the AKS, and a conspiracy to make payments to three particular surgeons. The recent history of this matter has left Dr. Chin unable to understand what, between the breadth of the former and the narrowness of the latter, he is being accused of when the government charges him with conspiracy. Further explanation form the government that Rule 7(f) allows the Court to require is thus warranted here.

To be clear, Dr. Chin does not seek to require the government to reveal its trial strategy or any further detail with regard to the conspiracy allegations to the extent they concern payments to Drs. Atwater, Montone, and Murray. To the extent the government intends to pursue a theory of conspiracy that goes beyond an agreement to make payments to those three surgeons, however, Dr. Chin respectfully requests that the Court direct the government to file a bill of particulars providing at least the following information:

1. A precise description of the agreement or agreements that the government alleges Dr. Chin entered into that constituted an unlawful conspiracy;

2. A description of when and how Dr. Chin entered into such agreement or agreements

---

[4] To be clear, this motion does not seek to preclude evidence of Dr. Chin's purported instructions to Autrey about how to sell the consulting program, but does seek to ensure there are not surprise attacks concerning other statements and surgeons (of the well over 100 surgeons who used the products), for which Dr. Chin cannot reasonably prepare his defense because of the government's vague and ambiguous approach.

11

3. Either (a) confirmation that the government will not refer to or introduce evidence concerning surgeon-consultants other than the 3 whom it has identified as unindicted co-conspirators and instructions to alleged co-conspirator Scott Autrey, or (b) a list of other surgeon-consultants and other recipients of statements to whom the government intends to refer at trial as part of any assertion that Dr. Chin conspired to make unlawful payments in violation of the AKS; and,

4. The overt acts in which Dr. Chin or any surgeon, other than the 3 identified in as unindicted co-conspirators, engaged concerning marketing or payments to such surgeons, or such surgeons' use of SpineFrontier products, related to the charged conspiracy.

## Conclusion

For the reasons set forth herein, Dr. Chin respectfully requests that the Court require the government to file a bill of particulars, no later than 14 days before the start of trial, setting forth the information described above.

Respectfully submitted,

**KINGSLEY CHIN**

By their attorneys,

/s/ *Joshua L. Solomon*
Barry S. Pollack (BBO #642064)
Joshua L. Solomon (BBO #657761)
POLLACK SOLOMON DUFFY LLP
31 St. James Avenue, Suite 940
Boston, MA 02116
(617) 439-9800
bpollack@psdfirm.com
jsolomon@psdfirm.com

## CERTIFICATE OF SERVICE

The undersigned certifies that this document, filed on April 11, 2025, through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Joshua L. Solomon*

## Local Rule 7.1(a)(2) Certification

Defense counsel conferred in good faith with counsel for the government in an effort to resolve or narrow the issues described herein. As described in the body of this motion, the parties did not resolve their dispute.

*/s/ Joshua L. Solomon*
