UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES

v.

KINGSLEY R. CHIN,
  *Defendant*.

No. 1:21-cr-10256-IT

**DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE TESTIMONY BASED ON IMPROPER INDUCEMENT AND INADEQUATE DISCLOSURES**

The government has included on its list of anticipated witnesses two doctors with whom it has entered into civil settlement agreements that obligate them to take particular factual positions, and to cooperate fully with the government in this prosecution, all while refusing to provide full disclosure of documents, communications, and information regarding the deals that the government reached with those witnesses to obtain those commitments.

**Background on Witnesses' Civil Settlements**

The government has stated its intention to call as witnesses at trial John Atwater and Michael Murray. The government has alleged that these two doctors are unindicted co-conspirators, and that they were involved in two of the three alleged violations of the Anti-Kickback Statute, charged in Counts Three and Four of the Superseding Indictment. Both of these witnesses entered into civil settlements with the government that contain two terms that are at issue in this motion.

First, each witness expressly agreed in the civil settlement to admit and acknowledge a specific recitation of "facts." Those supposed facts include things that the government hopes to prove in this action. *See* Atwater Settlement Agreement at 2-3 (Exhibit A hereto); Murray Settlement Agreement at 2-3 (Exhibit B hereto). Such language would be entirely unnecessary to

the settlements themselves, were they not crafted for the purpose of committing the witnesses to particular stories for use in this prosecution. Notably, both settlement agreements included members of the prosecution team here in their signature blocks.

Second, consistent with including in the agreements "facts" aimed in part at locking the witnesses into particular stories for purposes of this case, each witness expressly agreed to cooperate with the government's "investigation of individuals and entities not released in this Agreement." *See* Exhibit A at 8; Exhibit B at 7. That provision committed these witnesses to cooperate with the prosecution in this case, and to do so "fully."

Together, these provisions do not stop at just obligating witnesses to make themselves available to provide truthful testimony. Instead, they go further by locking the witnesses into particular supposed facts, subject to being in breach of their settlement agreements if they were to deviate from them, all in exchange for the benefits the witnesses received by settling with the government. Nor do the settlement agreements use the asserted "facts" merely to define the scope of releases the witnesses were receiving. Instead, they required the witnesses expressly to "admit[]" and "acknowledge" the "facts." In short, as part of civil settlement agreements, the government purchased testimony by making various commitments to the witnesses, including (at least) by agreeing to provide them with releases and not to bring claims against them personally despite the government's expressly asserted view that they violated federal law.

## The Government Has Improperly Purchased Testimony From Witnesses Whom it Intends to Use at Trial Against Dr. Chin

The settlement agreements' exchanges of value for specific testimony are not typical instances of plea bargaining with cooperating witnesses in exchange for leniency. In the more traditional context of plea bargaining with a cooperating witness, a Court necessarily serves as a referee of the fairness and propriety of the exchanges, through the constitutional process for

presenting pleas and factual bases to the Court for acceptance, consistent with Fed. R. Crim. P. 11, and subject to prohibitions on certain forms of so-called "fact bargaining." *See, e.g.* U.S.S.G. § 6B1.4 cmt. ("[I]t is not appropriate for the parties to stipulate to misleading or non-existent facts, even when both parties are willing to assume the existence of such 'facts' for purposes of the litigation. Rather, the parties should fully disclose the actual facts and then explain to the court the reasons why the disposition of the case should differ from that which such facts ordinarily would require under the guidelines."); *United States v. Gonczy*, 357 F.3d 50, 53 (1st Cir. 2004) ("The government has a duty to bring all facts relevant to sentencing to the judge's attention."). Here, the government has expressly accused each of the settling witnesses of conduct that would constitute criminal activity if true, including participating in the same alleged crimes charged here. *See* Exhibit A, at 2; Exhibit B, at 2. The government has even taken the position that each of these two witnesses was a co-conspirator with the defendants here for purposes of Count I, and thus that each also committed the same crime of conspiring to violate the Anti-Kickback Statute with which it charges Dr. Chin in this case. Both witnesses are also the subject of substantive Anti-Kickback Statute charges against Dr. Chin. Despite its accusations of criminal misconduct against these witnesses, the government avoided the protections that accompany traditional plea negotiations and agreements with cooperating witnesses, by framing its deal-making with these witnesses as civil settlement agreements.

Nor are these agreements even typical civil settlement agreements by which parties to a civil dispute exchange releases or other things of value to resolve their disputes, without making admissions of fact. As discussed above, these agreements go much further by *requiring* the witnesses to make express factual admissions, not necessary to a civil resolution, but which ensured for the government that they would testify consistently with what the government wants

them to say at trial in this matter. In contrast to Dr. Atwater's and Dr. Murray's settlement agreements, other civil settlements that the government has entered into in SpineFrontier-related matters have *not* required admissions of facts and, to the extent they preclude public statements contradicting the government's theories, they expressly carve out from that preclusion "testimonial obligations" and settling parties' rights to take factual positions in this case. *See United States v. SpineFrontier, Inc.*, Case No. 15-cv-12877-LTS, ECF No. 174-1 (the "SpineFrontier Settlement Agreement"), at 4 ¶ G(i),(iii).

Offering inducements to obtain testimony from witnesses in a federal proceeding is fraught with problems, particularly when done outside the traditional plea-bargaining context. Not only does such conduct raise serious Due Process concerns, given the inability of defendants to secure witnesses in comparable ways – lest they run afoul of 18 U.S.C. § 201 – but it also may itself constitute illegal conduct under 18 U.S.C. § 201. When reversing *en banc* a short-lived decision that had vacated a conviction based on a finding that the government violated § 201 by offering leniency to a cooperating witness through plea negotiations, the Tenth Circuit in *United States v. Singleton*, 165 F.3d 1297 (10th Cir. 1999) (*en banc*), made clear that the shield it recognized for government attorneys who provide inducements of that sort was limited to government attorneys acting in the course of plea agreements to resolve criminal charges against cooperating witnesses. That limited shield that *Singleton* recognized arose, in part, from the historically-accepted practice of prosecutors promising leniency in criminal prosecutions to those willing to testify against their criminal confederates. *See id.* at 1302. No such historical practice blesses what the government did here: negotiating for facts with witnesses in a criminal case through the use of civil settlement agreements that contain binding obligations of the witness to make certain factual admissions. Indeed, in light of the basis for its holding, *Singleton* proceeded

4

to make clear that it limited its finding of propriety to the *specific* context of prosecutors reaching traditional plea agreements with cooperators:

> Our conclusion in no way permits an agent of the government to step beyond the limits of his or her office to make an offer to a witness other than one traditionally exercised by the sovereign. A prosecutor who offers something other than a concession normally granted by the government in exchange for testimony is no longer the alter ego of the sovereign and is divested of the protective mantle of the government. Thus, fears our decision would permit improper use or abuse of prosecutorial authority simply have no foundation.

*Id.* The court elaborated: "Our disposition protects *only those prosecutorial acts* of the government which have been recognized in common law or authorized by statute." *Id.* at 1302 n.2 (emphasis added). The First Circuit followed the *Singleton en banc* decision in *United States v. Lara*, 181 F.3d 183, 197-98 (1st Cir. 1999), holding that § 201 does not apply to "the federal sovereign *qua prosecutor*." *Id.* at 197 (emphasis added). The First Circuit has also held that even "independent of section 201(c)(2), there are surely outer limits on what a prosecutor can do in offering benefits to a witness." *United States v. Murphy*, 193 F.3d 1, 9 (1st Cir. 1999).

In this case, the government went well beyond the traditional practice of plea bargaining with potential witnesses when it induced Drs. Atwater and Murray to become cooperating witnesses for the government. It offered inducements outside the "traditional," historically-accepted context of resolving criminal charges against witnesses through cooperating plea agreements – indeed, both of the agreements expressly say that the government was *not* resolving criminal consequences for these witnesses. The government also obtained from the witnesses not just an obligation to cooperate, and not even just an obligation to provide testimony truthfully, as one typically sees in a cooperating plea agreement. Instead, the government went further by obtaining from the witnesses a contractual commitment to specific supposed facts recited expressly within the settlement agreements. This was not the equivalent of the time-tested practice of plea bargaining that is exempted from 18 U.S.C. § 201. Through the settlement agreements, the

5

government thus purchased these witnesses' cooperation and testimony in a manner that is unfair to the defense – which has no ability to obtain witnesses through similar means, lest they violate § 201 – and without the protections afforded "traditional" plea negotiations when resolving criminal charges.

When the government responded to the previous version of this motion (before the Court severed and rescheduled the trials for the two remaining defendants), it relied primarily on the self-serving assertion that including factual admissions in civil settlement agreements is "[t]he government's practice in this District." (ECF No. 280, at 2.) That a particular office in a particular District has a "practice" of doing something does not make it any more appropriate, particularly when that "practice" is applied to the specific context of this case, in which the government bargained with witnesses for "facts" with an eye toward using those witnesses in a prosecution against others, and then seeks to call those witnesses as government witnesses at trial. If the government is correct that such is its "practice" of the U.S. Attorney's Office here, all the more reason for this Court to make clear that it will not permit that practice to continue.

Furthermore, other than a conclusory statement that the defendants' position "would hamstring the government's ability to recover fraudulently obtained funds from defendants like the settling surgeons," (*id.* at 1), the government's opposition never explained why a settling party's commitment to the government's dictation of facts would be necessary to recover civilly through the settlement. Far more common than the government's purported "practice in this District" are settlements in which neither side admits or denies any allegations, or there are carve-outs from content-based obligations for any testimonial obligations. The government's prior opposition also contradicts itself in this regard, on the one hand claiming that disallowing such a practice would "hamstring the government's ability to recover fraudulently obtained funds," while

6

on the other hand also claiming that the settlement agreements are somehow more proper because they did not require the surgeons to "admit that they acted with scienter under the Anti-Kickback Statute." (*Id.* at 2-3.) In any event, it is simply untrue that admitting facts is necessary to a civil resolution. Indeed, in the SpineFrontier Agreement, in this District, the government settled with multiple civil defendants without requiring admissions to facts. There is no logical explanation for the government having required settling surgeons to admit to facts, knowing that the government would use those surgeons as fact witnesses against defendants in this action, other than as an effort to lock witnesses into particular stories.

The government's position falls apart in other respects as well. The government wrote, "[i]n exchange for payments of the amounts in the separate settlements, the settling surgeons received a release from liability for further FCA and civil liability." (*Id.* at 3.) But the government did not demand in exchange for releases that it gave *only* payments from the settling witnesses. It also required the settling witnesses, as a way to lock them into stories for purposes of this prosecution, to admit facts in their settlement agreements.

The government's use of releases, other value, and contractual undertakings to induce its trial witnesses to provide certain factual testimony, outside the traditional plea-bargaining context, is unlawful and, in any event, fundamentally unfair to defendants who are precluded from obtaining witnesses or balanced testimony in similar ways.

### The Government Has Refused to Make Full Disclosure Concerning Its Improper Inducements

Exacerbating the problematic nature of the government's proposed use of Drs. Atwater and Murray is its refusal to produce to defendants all communications with those witnesses and/or their counsel about the settlements and the underlying negotiations of them. Dr. Chin has thus been deprived of access to, for example, the full extent and nature of compromises that the government

made, and thus the full extent of the benefits the witnesses received from the government in exchange for their testimony. For example, to the extent the government initially demanded from the witnesses certain amounts of refunds to the United States in exchange for releases, and then compromised on the amounts it ultimately accepted to secure their agreements to the recited "facts," such compromises would constitute inducements that are being concealed from Dr. Chin, preventing him from fully impeaching any testimony they might give.

As one court has explained in requiring not just final agreements with cooperators, but also the production of documents and information concerning negotiations, "[t]hough *Giglio* concerned the suppression of the very existence of a leniency agreement, information that illuminates the process leading up to the agreement may 'cast a shadow' on an accomplice witness's credibility in a manner that disclosure of only the agreement itself would not accomplish." *United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1203 (C.D. Cal. 1999); *see also Mataya v. Kingston*, 371 F.3d 353, 359 (7th Cir. 2004) ("Paying for testimony, as well as concealing evidence of inducements given to a government witness, are breaches of prosecutorial ethics…."); *United States v. McDavid*, No. CR S06-35 MCE, 2007 WL 926664, at *10 (E.D. Cal. Mar. 27, 2007) (ordering production of "communications reflecting the nature of the negotiations, whether prepared by co-defendants or their attorneys," on the ground that it was required by *Brady* and *Giglio*); *United States v. Vazquez-Botet*, 453 F. Supp. 2d 362, 370 (D.P.R. 2006) ("We agree with Defendant that the government has a responsibility to produce material evidence relevant to its *negotiations* and final agreement with [the anticipated witness]…." (emphasis added) (citing *Sudikoff*, 36 F.Supp.2d at 1198)); *see also* Local Rule 116.2(b)(1)(C) (requiring disclosure of any "promise, reward, or inducement … given to any witness").

Even in the context of testimony obtained through traditional plea bargaining, without the particularly suspect agreement to "facts" through civil settlements that occurred here, the *Sudikoff* court held that "information that reveals the process by which an accomplice witness and the government reach a leniency agreement is relevant to the witness's credibility because it reveals the witness's motive to testify against the defendant. Therefore, such information is discoverable under *Brady* and *Giglio*." *Sudikoff*, 36 F. Supp. 2d at 1203.

The taint caused by the civil settlement agreements cannot be cured by a clause that purports to require Drs. Murray and Atwater to tell the truth. *See United States v. Blaszak*, 349 F.3d 881, 886-87 (6th Cir. 2003) (finding it unlawful for a litigant or counsel to give value "in exchange for non-expert truthful testimony"); *see also In re Telcar Group, Inc.*, 363 B.R. 345 (Bankr. E.D.N.Y. 2007) (rejecting settlement agreement, explaining that, despite "nothing in the record to suggest that [the witness] would testify anything but honestly," that "person's own financial condition could be affected by the testimony" because of the terms of the "special relationship" arising from the improper agreement); *New York v. Solvent Chem. Co.*, 166 F.R.D. 284, 289 (W.D.N.Y. 1996) (finding a litigant "purchased" cooperation from a witness through a settlement agreement, including by "undertaking not to sue him," and surveying cases for the proposition that giving value "to a witness to 'tell the truth' is as clearly subversive of the proper administration of justice as to pay him to testify to what is not true"); *In re Complaint of PMD Enters. Inc.*, 215 F. Supp. 2d 519, 529-30 (D.N.J. 2002) (referring to 18 U.S.C. § 201 as a codification of common law ethical principles that did not turn on actual perjury); *Shuttlesworth v. Hous. Opportunities Made Equal*, 873 F. Supp. 1069, 1078 (S.D. Ohio 1994) (finding that a person can "commit an offense even if they offered rental assistance only to secure *truthful* testimony against Plaintiff").

9

Whether due to the particular questions before the courts or the arguments made to them, the caselaw that the government has relied on in resisting production does not meaningfully analyze the value of such information to the defense in the specific circumstances presented here. More importantly, despite the government's suggestion that the manner in which it purchased facts from Drs. Atwater and Murray through civil settlements should be seen as routine, none of the government's cited cases involved information about negotiations for factual testimony from witnesses, using civil settlement agreements, and thus unburdened by the safeguards that Fed. R. Crim. P. 11 provide for plea negotiations. For example, in *United States v. Weaver*, 992 F. Supp. 2d 152, 158 (E.D.N.Y. 2014), which the government has cited, the court ruled based on only the potential "chilling effect on plea negotiations," without assessing the arguments that Dr. Chin makes here, much less a scenario in which the government purchased facts from a witness through a civil settlement. That case did not involve civil settlements at all, and there was thus no issue before the court, for example, as to how amounts paid in settlement compared to the government's claimed losses, which would inform a full picture of the inducement the government gave for the facts it obtained from the witnesses. Similarly, in *United States v. Singhal*, 876 F. Supp. 2d 82, 105 (D.D.C. 2012), there was no issue presented as to negotiations or purchase of certain factual testimony by a witness, and thus the court's finding that the government's communications with a witness's lawyer were not material says nothing helpful to this case. The government's prior citation to *S.E.C. v. Gupta*, No. 11 CIV. 7566 JSR, 2012 WL 1592525 (S.D.N.Y. May 1, 2012), is similarly unhelpful, as it involved discovery in a civil case, and thus raised no due process, *Brady*, or *Giglio* issues, and did not involve negotiations of the content of facts in testimony by witnesses. Other caselaw on which the government has relied similarly provides no substantive analysis of situations comparable to the facts here. *See United States v. AU Optronics Corp.*, No. C 09-0110

SI, 2011 WL 6778520, at *2 (N.D. Cal. Dec. 23, 2011) (finding lack of relevance without meaningful explanation of basis for request or reason for its denial); *United States v. Buske*, No. 09-CR-65, 2011 WL 2912707, at *3 (E.D. Wis. July 18, 2011) (addressing plea negotiations and no analysis of potential value in communications as are at issue here); *United States v. Miller*, 250 F.R.D. 588, 593 (D. Kan. 2008) (same).

The government's refusal to provide such information combines with the impropriety of the underlying exchanges that the government made with these particular witnesses, in a manner that would make their use as witnesses at trial inconsistent with Dr. Chin's Due Process rights.

## Conclusion

For the reasons set forth herein, Dr. Chin respectfully requests that the Court preclude the government from presenting testimony at trial from John Atwater and Michael Murray.

Respectfully submitted,

**KINGSLEY CHIN**

By his attorneys,

/s/ *Joshua L. Solomon*
Barry S. Pollack (BBO #642064)
Joshua L. Solomon (BBO #657761)
POLLACK SOLOMON DUFFY LLP
31 St. James Avenue, Suite 940
Boston, MA 02116
(617) 439-9800
bpollack@psdfirm.com
jsolomon@psdfirm.com

11

## CERTIFICATE OF SERVICE

The undersigned certifies that this document, filed on April 11, 2025, through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                                                                         */s/ Joshua L. Solomon*

## Local Rule 7.1(a)(2) Certification

Defense counsel conferred in good faith with counsel for the government in an effort to resolve or narrow the issues described herein. No agreement was reached.

                                                                                         */s/ Joshua L. Solomon*

Case 1:21-cr-10256-IT   Document 331   Filed 04/11/25   Page 12 of 12