UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>KINGSLEY R. CHIN,<br>   *Defendant*. | No. 1:21-cr-10256-IT |

**DEFENDANT CHIN'S OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE USE OF EVIDENCE OF CALL BETWEEN DEFENDANT AND GOVERNMENT WITNESS JOHN ATWATER**

Defendant Kingsley Chin respectfully opposes the government's motion titled "Motion *In Limine* Concerning Self-Serving Hearsay." The government's motion concerns a recording that a government cooperating witness, Dr. John Atwater, made of a phone call between himself and Dr. Chin, without Dr. Chin's knowledge or consent, presumably at the request of the government.[1] The government alleges that Drs. Chin and Atwater conspired together. The lengthy call addressed the matters at issue in this case and contain numerous statements by Dr. Atwater that are expected to be inconsistent with substantial aspects of his trial testimony. Hence, there can be no argument about relevance and the use of portions of the call for impeachment purposes. Instead of arguing otherwise, the government suggests that Dr. Chin cannot introduce "self-serving hearsay," as if his state of mind during the call does not fit within the usual hearsay exception. The government's motion must be denied or, at the very least, should be deferred until after Dr. Atwater provides his testimony on direct examination.

---

[1] At the time of the recording, Dr. Atwater and his counsel had been communicating with the government for months. Five days before the recording, Dr. Atwater called a member of the prosecution team to inform him that Dr. Chin had tried to contact Dr. Atwater.

As an initial matter, the government's motion is unclear as to whether it seeks to preclude the recording as a whole, or only particular portions of the recording that the government views as "self-serving hearsay." The recording is approximately an hour and 15 minutes long, and thus contains many statements by both Dr. Chin and Dr. Atwater. The government's motion is a mere two pages, and does not attempt to address every potentially relevant statement in the recording. By labeling its motion as one "concerning self-serving hearsay," the government appears to suggest initially that it is seeking to preclude use of only portions of the recording that contain what the government deems "self-serving hearsay" by Dr. Chin. At other points, however, the motion seems to go further, but without substantive argument for the breadth of its request, by asking that the Court "preclude[e] introduction of *the recording* and cross-examination concerning the same." (Motion at 2 (emphasis added).) To the extent the government seeks to preclude Dr. Chin from introducing *any* portion of the recording, its motion provides far too little information about all statements made during the call to permit the Court to preclude the call in its entirety. To the extent the government seeks preclusion of only particular statements in the recording (such as those that it deems "self-serving hearsay"), the motion fails to identify those statements sufficiently to permit assessment of the government's request at this stage. Either way, Dr. Chin has no intention to reference the recording in his opening statement, and it would be premature for the Court to rule on preclusion now, before Dr. Atwater testifies or the government has introduced other evidence that might make particular portions of the recording admissible.

The government dislikes the recording that its own cooperating witness made for obvious reasons. Despite Dr. Atwater's initiating a surreptitiously recorded call that lasted 1 hour and 15 minutes, in which he pretended to be supportive of and friendly with Dr. Chin, Dr. Chin made no incriminating statements. To the contrary, in its full context, including Dr. Chin engaging in

2

conversation with a supposed co-conspirator and a person whom he trusted, the call undermines, by what it does *not* contain, the government's allegation that Dr. Chin was knowingly and willfully violating the Anti-Kickback Statute and conspired with Dr. Atwater to do so. As an example, examination of Dr. Atwater about the call, including eliciting from him testimony about what Dr. Chin did *not* say during it, despite its length and despite Dr. Atwater's purpose in making the call, would by definition not constitute hearsay. *See, e.g.*, *Valencia v. SBM Mgmt. Servs., LP*, No. 3:24-CV-00427-IM, 2024 WL 5074535, at *4 (D. Or. Dec. 11, 2024) ("[T]he absence of a statement [is] not hearsay."); *Hoffman v. Neves*, No. 17-13263, 2018 WL 4610866, at *2 (E.D. Mich. Sept. 26, 2018) ("Testimony regarding the absence of a statement is not hearsay."); *Llamas v. Seibel*, No. 16-CV-05812-WHO, 2017 WL 3782175, at *8 (N.D. Cal. Aug. 31, 2017) (same). In its motion, the government has made no substantial argument to the contrary.

Not only did Dr. Chin make no incriminating statements – a meaningful fact that he can permissibly elicit at trial through use of the recording or cross-examination of Dr. Atwater – but he also revealed an exculpatory mindset through affirmative statements, which is relevant and material in light of the fact that Anti-Kickback Statute violations are specific-intent crimes requiring knowledge that one's conduct violates the law. By way of example, Dr. Chin expressed during the call that to the extent the SpineFrontier consulting program was problematic, he believed its problems involved documentation failures, a mindset inconsistent with the *mens rea* requirement for an Anti-Kickback Statute violation. Dr. Chin also articulated his intentions for the consulting program as being linked to benefits that practicing surgeons can offer to the product-development and patent processes specifically, consistent with his explanation for and understanding of the program. This evidence is inconsistent with the government's theory that Dr. Chin intended the program as an inducement for the sale of products. Statements on the call may

3

thus ultimately be admissible for non-hearsay purposes, such as Dr. Chin's state of mind, intentions, and motivations. *See* Fed. R. Evid. 803(3).

Because the government does not acknowledge, much less grapple with, every potentially exculpatory statement during the call, it does not address such mindset evidence. It instead rests on general, otherwise-uncontroversial principles under Rule 803(3), without applying them to particular statements on the call. For example, the first case the motion cites with respect to Rule 803(3) is *United States v. Sabean*, 885 F.3d 27 (1st Cir. 2018), which the government invokes for the unremarkable proposition that not all mindset evidence is automatically admissible. That case found Rule 803(3) inapplicable to supposed mindset evidence that preceded, by years, the conduct at issue, and did not involve an (unsuccessful) effort by the government to elicit incriminating statements about the defendant's conduct through a call with an alleged co-conspirator. *Id.* at 41. That holding has no relevance here. Similarly inapposite is the motion's citation to *United States v. Cianci*, 378 F.3d 71 (1st Cir. 2004), which simply holds with respect to Rule 803(3) that assessments of whether proffered evidence actually speaks to a relevant state of mind are fact-sensitive inquiries that are thus within a District Court's discretion to make. The facts at issue in *Cianci* have no bearing on the inquiry here. Nor does the motion attempt to draw any parallels between them and the facts here, as the motion merely recites general Rule 803(3) principles without applying them to any particular evidence from the recording.

In short, the call between Dr. Chin and Dr. Atwater, as a whole, and certain particular statements during it that the motion never addresses, are inconsistent with Dr. Chin having knowingly and willfully violated the law or conspired to do so. In part, what Dr. Chin did not say in the particular context of that call has evidentiary value. In some instances, what he expressly did say spoke to his state of mind. The motion does not meaningfully address either.

4

Furthermore, while it is not clear if the government seeks to exclude statements by Dr. Atwater on the call (which could not, by definition, be "self-serving" hearsay by Dr. Chin), the call could also prove relevant to responding to or impeaching testimony from Dr. Atwater, whom the government has stated an intention to call as a witness. The motion comes nowhere close to justifying a categorical bar on such potential responsive or impeachment evidence with respect to a government witness. The recording includes, for example, statements from Dr. Atwater to the effect that he empathizes with and relates to Dr. Chin in a way that suggests he did not in fact believe Dr. Chin was doing anything wrong, much less illegal, and statements to the effect that Dr. Atwater wanted to continue to do business with Dr. Chin in multiple ways. These statements are inconsistent with anticipated trial testimony by Dr. Atwater. Related statements made by Dr. Chin during the call would be necessary to put Dr. Atwater's statements in context. Dr. Chin also must be permitted to cross-examine Dr. Atwater about the fact that he secretly recorded his long-time friend and colleague in an (unsuccessful) effort to incriminate Dr. Chin, so as to benefit and ingratiate himself with the government, which goes to Dr. Atwater's bias. At the very least, assessment of the admissibility of particular statements on the call can be made only in light of what Dr. Atwater ultimately testifies to during direct examination at trial.

## Conclusion

For the reasons set forth herein, Dr. Chin respectfully requests that the Court deny the government's motion *in limine*.

Respectfully submitted,

**KINGSLEY CHIN**

By his attorneys,

/s/ *Joshua L. Solomon*
Barry S. Pollack (BBO #642064)
Joshua L. Solomon (BBO #657761)
POLLACK SOLOMON DUFFY LLP
31 St. James Avenue, Suite 940
Boston, MA 02116
(617) 439-9800
bpollack@psdfirm.com
jsolomon@psdfirm.com

## CERTIFICATE OF SERVICE

  The undersigned certifies that this document, filed on May 2, 2025, through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                   */s/ Joshua L. Solomon*