IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>KINGSLEY R. CHIN,<br>    *Defendant*. | No. 1:21-cr-10256-IT |

**DEFENDANT CHIN'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE*
CONCERNING VARIOUS NULLIFICATION ARGUMENTS**

Defendant Kingsley Chin respectfully responds to the government's Motion *in Limine* Concerning Nullification Arguments. Dr. Chin has no intention to ask for jury nullification, but rather plans to ask the jury to follow the Court's instructions carefully. Nevertheless, the government's pretrial motion sweeps far too broadly in seeking, in the inapplicable name of "nullification," to exclude a wide range of relevant evidence and permissible argument on various subjects.

The principal cases that the government cites all involved *explicit* appeals to nullification. *See, e.g.*, *United States v. Manning,* 79 F.3d 212, 219 (1st Cir. 1996) (addressing defense counsel's requested "permission to appeal, in his closing argument, to the jury's power of nullification by informing the jury of the prison term [defendant] would face"); *United States v. Bunchan*, 626 F.3d 29, 34 (1st Cir. 2010) (addressing unpreserved claim that jury instructions "improperly instructed the jury as to its power to nullify"); *United States v. Sepulveda*, 15 F.3d 1161, 1189 (1st Cir. 1993) (addressing defense counsel having "invited the jury to 'send out a question' concerning th[e] doctrine" of jury nullification); *United States v. Luisi*, 568 F. Supp. 2d 106, 110 (D. Mass. 2008) (noting individual juror's refusal to follow the law "was a form of jury misconduct that could be classified as nullification"). The government's motion, seeking to prohibit a much broader swath

of evidence and argument, implies a false equivalency between, on the one hand, zealous argument about how jury instructions confirm the government's failure to meet its burden on the merits and, on the other hand, improper appeals to "nullification."

"There can be no doubt that closing argument for the defense is a basic element of the adversary factfinding process in a criminal trial." *Herring v. New York*, 422 U.S. 853, 858 (1975). "The Constitutional right of a defendant to be heard through counsel necessarily includes his right to have his counsel make a proper argument on the evidence and the applicable law in his favor … unless the argument is not within the issues in the case, and the trial court has no discretion to deny the accused such right." *Id*. at 860. Thus, beyond the bare "elements of the crime charged or applicable defenses," (ECF 327, at 2), a defendant also has "a right to be heard in summation of the evidence from the point of view most favorable to him" on other important issues such as the "credibility assessment" of prosecution witnesses. *Herring*, 422 U.S. at 864.

To challenge credibility, a defendant has a broad right to develop evidence in support of viable theories of defense and to elicit testimony about improper bias or motive. *See Penn. v. Ritchie*, 480 U.S. 39, 51-52 (1987) ("[T]he right to cross-examine includes the opportunity to show that a witness is biased, or that the testimony is exaggerated or unbelievable." (citing *United States v. Abel*, 469 U.S. 45, 50 (1984))); *Del. v. Van Arsdall*, 475 U.S. 673, 678-79 (1986) ("'[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." (quoting *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974))); *Greene v. McElroy*, 360 U.S. 474, 496 (1959) (stating that "[c]ertain principles have remained relatively immutable in our jurisprudence," including the right of the accused to challenge "the testimony of individuals . . . who . . . might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy").

Against that legal backdrop, the Court should reject the government's request to bar evidence and argument on the enumerated subjects.

*Civil Settlements*

The government states that while "it does not seek to preclude the defense from cross-examining witnesses as to their civil settlements with the government," it "does seek a ruling to prevent implicit or explicit reference to the notion that the government could have similarly chosen to forgo criminal charges with the defendants on trial." (ECF 327, at 1 n.1.) To be clear, the defense will not argue that the government could or should have made its civil settlement with Dr. Chin in lieu of pursuing criminal charges against him.[1] But Dr. Chin must be permitted to conduct robust cross-examination of government witnesses about their own civil settlements; how their stories changed from before to after the settlement; the terms of those settlements (including requirements to testify in a certain manner); the benefits to the recipients of those settlements (including the avoidance of criminal charges with serious potential custodial, financial, and collateral consequences), particularly where the government improperly promised or suggested the witnesses could benefit by entering into civil settlement agreements that included agreements to facts; and the give-and-take with the government in the process of negotiating those settlements. *See* Defendant's Motion *in Limine* to Preclude Testimony Based on Improper Inducement and Inadequate Disclosures (ECF 331.) The government has identified absolutely no precedent that would preclude the use of civil settlements with the government in this way.

*Punishment*

Dr. Chin will not seek to introduce evidence, elicit testimony, or make arguments about the severity of punishment he faces. But, again, Dr. Chin must be permitted to conduct aggressive

---

[1] Indeed, as the Court is aware, the government *did* enter a civil settlement with Dr. Chin,

3

cross-examination of cooperating witnesses for the government about the potential punishment those witnesses faced or still face, and leniency they have received or expect to receive, as inducements and rewards for their testimony. *See United States v. Kinsella*, 622 F.3d 75, 77 (1st Cir. 2010) (noting with approval that defense counsel "aggressively confronted [the cooperating witness] on cross-examination, using the plea agreement and light sentence to attack his credibility"). The government has identified absolutely no precedent for precluding the use of potential punishments to show how desperate witnesses were when they changed their story the way the government sought.

### *Merits of the Prosecution*

The government does not explain what it means when it asks the Court to "prevent argument or testimony … concerning the merits of the prosecution." (ECF 327, at 1.) Read literally, it would seem to be a preposterous request to bar the defense from questioning the investigation, from eliciting information about the pressure that cooperating witnesses felt from their interactions with the government, or defending the case at all on the merits. Should the government mean that the defense should not refer to grand jury misconduct that has been the subject of pretrial motions, the defense has no intention to make accusations of grand jury misconduct in front of the jury at trial. Nevertheless, the defense intends to show ways in which the government has pressured witnesses by, among other things, holding criminal charges, imprisonment, and loss of medical licenses over their heads. Furthermore, the defense intends to contest the merits of the prosecution in its usual sense, meaning that the government lacks sufficient evidence to make its case.

---

as well as with Mr. Humad and SpineFrontier, and as the government has properly suggested, evidence and testimony about those settlements would not be admissible at trial in this case.

This Court can apply ordinary evidentiary rules at trial concerning the boundaries of contesting the merits of the prosecution. It is well-settled that defendants may present evidence and argument concerning deficiencies in an investigation, such as failures to conduct certain tests, pursue certain lines of inquiry, improperly pressure witnesses to change their stories, or follow standard law enforcement procedures. *See, e.g.*, *Arizona v. Youngblood*, 488 U.S. 51, 59 (1988) (explaining that while police have no constitutional duty to perform any particular test, the defense may argue to the jury that a particular test police failed to administer may have been exculpatory); *United States v. Lassend*, 545 Fed. Appx. 3, 4 (1st Cir. 2013) (finding that court's instruction adequately accommodated trial defense "premised at least in part on a purported faulty police investigation"); *see also Commonwealth v. Bowden*, 379 Mass. 472, 485-86 (1980) ("The failure of the authorities to conduct certain tests or produce certain evidence was a permissible ground on which to build a defense. . . . The fact that certain tests were not conducted or certain police procedures not followed could raise a reasonable doubt as to the defendant's guilt in the minds of the jurors.").

***Selective Prosecution***

The defense does not intend to argue the classic form of selective prosecution that can be problematic, but of course intends to show the jury how the government's use of charges, threatened charges, and civil settlements has pressured or induced witnesses into changing their stories to favor the government. The defense is entitled to elicit evidence and question witnesses about their biases, and how such biases may have influenced the behavior and testimony of witnesses, including government agents. For example, the defendants do not intend to argue that the government has chosen them for prosecution because they are persons of color. But the defense intends to show the prejudice of certain witnesses who generated this prosecution. Both Dr. Chin

and Mr. Humad are persons of color and immigrants to the United States. Dr. Chin, specifically, was born and raised in Jamaica. Mr. Humad was born and raised in Kuwait to parents originally from India. In a recorded conversation, two government witnesses discussed their belief that Dr. Chin and Mr. Humad were more willing to pay kickbacks because they are "immigrants":

```
2019.02.08 Jason Montone and John Balzer                    Page 60

1   MONTONE:  How stupid were they?  I feel like, you know, they
2             should've known better.
3   BALZER:   I feel like -- uh, and I -- and I've seen this --
4             I've seen this with immigrants: if shit works differently
5             in other countries, and it's like they come from these
6             corrupt or, uh, broken down, you know, you know, in-- uh,
7             structures or whatever, (coughs) and they -- and they
8             [01:38:00] see that as bein', like, just the way things
9             are done.  I mean, in most of the world, kickbacks are
10            how things get done, from the top to the -- from the
11            bottom to the top.
```

This kind of bias – based on national origin and, implicitly, race or ethnicity – is plainly a proper subject of cross-examination and argument. *See Brinson v. Walker*, 547 F.3d 387, 393 (2d Cir. 2008) ("It is hard to conceive of a more 'prototypical form of bias' than racial bias. We view these cases as specific examples of the 'relatively immutable' principle … that under the Confrontation Clause the accused must be given a full and fair opportunity to cross-examine adverse witnesses for bias that may affect the veracity of their testimony.").

In addition, government witnesses who were not charged with any crimes are alleged to be co-conspirators with Dr. Chin. Depending on what testimony the government elicits from those witnesses, Dr. Chin may need to elicit comparison and contrasting facts as between them and him. For example, were a government witness who has not been charged with a crime, yet is alleged by

the government to be a co-conspirator, to testify that he *knew* he engaged in unlawful activity (which, in the context of the particular crimes at issue here would be a requirement for him to be a co-conspirator), Dr. Chin may contrast such a witness's knowledge with evidence of Dr. Chin's own knowledge to undermine the government's suggestion that the two were conspirators. Such evidence and argument would be the epitome of a proper theory of defense.

### *Custom and Practice*

Dr. Chin will not argue that the jury should find him not guilty of conspiring to pay and paying illegal kickbacks because "everybody is doing it." (ECF 327, at 3.) Yet because the crimes charged here require a defendant to know that his conduct violated the law, Dr. Chin is entitled to develop evidence that consulting surgeons, who have decided to become cooperating witnesses and whom the government has alleged to have been co-conspirators, also had consulting agreements with other medical device companies, that such agreements are routine in the industry, that they are not inherently unlawful, and that many of the consultants had their own lawyers reviewing the agreements. Moreover, "evidence about the Defendant's compliance with industry custom and practice is relevant to the subjective portion of the good faith defense." *Morse v. MER Corp.*, No. 1:08-CV-1389-WTL-TAB, 2010 WL 4812792, at *1 (S.D. Ind. Nov. 22, 2010).

### *Lack of Patient Harm*

Evidence and arguments concerning lack of patient harm are addressed in Dr. Chin's separate response to the government's separate motion *in limine* on that subject. Simply put, Dr. Chin does not intend to attempt a mini-trial over the quality of patient care, but does intend to show that feedback he received showed that the consulting program worked properly, generated innovation, and served patient-focused purposes. Dr. Chin incorporates by reference his legal arguments concerning the broad scope of relevant evidence on which he can rely to rebut the

government's efforts to prove *mens rea*, including willfulness and conspiratorial intent, beyond a reasonable doubt.

## Conclusion

For the foregoing reasons, Dr. Chin respectfully requests that the Court deny the government's request to bar the five enumerated categories of "argument or testimony," which the government erroneously equates to suggestions of jury nullification.

Respectfully submitted,

**KINGSLEY CHIN**

By his attorneys,

/s/ *Joshua L. Solomon*
Barry S. Pollack (BBO #642064)
Joshua L. Solomon (BBO #657761)
POLLACK SOLOMON DUFFY LLP
31 St. James Avenue, Suite 940
Boston, MA 02116
(617) 439-9800
bpollack@psdfirm.com
jsolomon@psdfirm.com

**Certificate of Service**

    The undersigned certifies that this document, filed through the ECF system on May 2, 2025, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                                *Joshua L. Solomon*
                                                Joshua L. Solomon