UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

KINGSLEY R. CHIN

Defendant.

No. 1:21-cr-10256-IT

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION *IN LIMINE* TO PRECLUDE TESTIMONY OF DR. SCOTT
LAWRENCE OR ANY OTHER REPRESENTATIVE OF CMS AND, IN THE
ALTERNATIVE TO COMPEL THE PRODUCTION OF FULL EXPERT DISCLOSURE**

The Defendant's Motion *in Limine*, Dkt. No. 332, is much ado about nothing. This is so for two reasons. The first is practical and obvious: Dr. Scott Lawrence no longer works for the U.S. Department of Health & Human Services ("HHS"), and he will not testify at the upcoming trial. The second is that the proposed testimony from a Centers for Medicare and Medicaid Services ("CMS") witness is not expert testimony under the Federal Rules of Evidence, and no amount of defense assertion to the contrary changes that reality.

*First*, notwithstanding the Defendant's attempt to insinuate otherwise (Dkt. No. 332 at 1, 7), Dr. Lawrence will not testify for the government in this case for the *sole reason* that he is no longer employed with the government. As undersigned counsel explained to defense counsel, his position was the subject of a completely unrelated reduction in force ("RIF"), carried out by HHS. Obviously, at the time the government disclosed Dr. Lawerence on the government's witness list, the undersigned Assistant U.S. Attorneys could not have foreseen (and did not

foresee) that Dr. Lawrence would be the subject of an HHS department-wide RIF.[1]  In any event, even were that not the case, the government has made it crystal clear to the defense that Dr. Lawrence will not testify for the government at Defendant Chin's trial.  Accordingly, the many pages in the Defendant's motion devoted to dissecting Dr. Lawrence's status as an expert, his prior qualifications, the statements and purported "opinions" in his interview report, etc., are wholly irrelevant.[2]

*Second*, the government intends to elicit testimony concerning how CMS's reimbursement system operates in the context of claims for spine surgeries and claims tainted by kickbacks.  This is not expert testimony.  *See* Fed. R. Evid. 701, 702.  Expert testimony is opinion testimony about complex information, including for example, scientific data, specialized or technical knowledge, or the evaluation of data.  Lay witness testimony, conversely, comes through witnesses who acquire their knowledge "through experience as opposed to training, education, or the other ways that a witness can qualify to give expert testimony." *United States v. Tanguay*, 895 F. Supp. 2d. 284, 289 (D.N.H. 2012) (internal quotations omitted) (describing that the "dividing line between lay opinion testimony under Rule 701 and expert opinion testimony under Rule 702, then, is marked by whether the opinion is based on the witness's

---

[1] The government explained to defense counsel that HHS carried out a RIF.  The defense's use of insensitive and inaccurate rhetoric ("since CMS apparently terminated him," Dkt. No. 332 at 6) regarding the employment status of a third party is inappropriate, especially in light of its total irrelevance to the case.

[2] To be clear, the government disputes the Defendant's motion concerning Dr. Lawrence in its entirety, including (i) the Defendant's characterization of Dr. Lawrence's testimony as expert testimony, (ii) the relevance of whether Dr. Lawrence testified as an expert in prior cases, and (iii) that there was any "deficienc[y] of [the government's] disclosures [or] other challenges in using [Dr.] Lawrence at trial[.]"  Dkt. No. 332 at 6.  Given that Dr. Lawrence will not be a government witness, however, the government sees no reason to belabor these points, unless the Court would like to hear more on these subjects.

*specialized* knowledge—rather than, as the prosecution suggests, whether the witness came by the knowledge 'through experience.'"). If the witness's "process of reasoning" is "familiar in everyday life," that witness's testimony is not expert testimony. *United States v. Colon Osorio*, 360 F.3d 48, 53 (1st Cir. 2004) (holding that the witness's testimony—that the gun must have moved in interstate commerce because he personally visited the Massachusetts plant at which the gun was manufactured, and the defendant was arrested with the gun in Puerto Rico—was not expert testimony).

The government's testimony regarding how CMS reimburses hospital and other providers for spine surgery claims will come from fact witness testimony or, at most, lay opinion testimony. *See* Fed. R. Evid. 701. Since the filing of the Defendant's motion, the government has identified Leishi Androff as a witness in the case for CMS. Ms. Androff works at a Medicare Administrative Contractor ("MAC"), WPS Health Solutions ("WPS"). Ms. Androff will describe her job functions at WPS as it relates to the issues in this case. Specifically, the government anticipates that Ms. Androff will testify as follows: (i) WPS pays for Medicare claims from the J5 jurisdiction, which includes the states of Missouri and Kansas; (ii) for spine surgery procedures, WPS reimburses hospitals on a procedure basis (i.e., WPS does not reimburse hospital-based spine surgeries on a product-by-product basis); (iii) if a claim for any procedure, including a spine procedure, is "clean" on the face of the claim, WPS will reimburse the claim; (iv) WPS does not pay for claims in which any party to the claim paid a kickback, and (v) if WPS questions whether a claim was tainted by a kickback, it refers the claim to a Unified Program Integrity Contractor to investigate the claim, and then determine whether to recoup the

improperly paid out funds or institute a payment suspension. None of this information is expert testimony—none of it requires specialized or technical knowledge.

A recent case from a trial in the Southern District of New York confirms the government's analysis here. Testimony from a government witness concerning how claims are reimbursed is not expert testimony; similarly, testimony concerning the requirements to obtain reimbursement from CMS or a MAC is not expert testimony. In *United States ex rel. Bassan v. Omnicare, Inc., et al.*, No. 15-cv-4179 (S.D.N.Y. Apr. 2, 2025), the government brought a False Claims Act suit against Omnicare and its parent company, CVS. The government's complaint-in-intervention alleges that Omnicare, a provider of pharmacy services to long-term care facilities, fraudulently billed federal healthcare programs for dispensing hundreds of thousands of drugs without valid prescriptions to elderly and disabled residents of assisted living facilities, group homes, etc. *Omnicare*, No. 15-cv-04179 at ECF No. 17. At trial, the government called Johanna Sullivan, an employee of the "Investigations MEDIC at Qlarant," which is a fraud, waste, and abuse contractor for CMS. Ex. A (Apr. 2, 2025, Omnicare Trial Tr. at 476-77). Over the defendant's objection, the Court permitted Ms. Sullivan to testify as a lay witness to similar topics the government proposes here. Ms. Sullivan testified regarding: (i) the operation of Medicare (Ex. A. at 479); (ii) Medicare Part D's rules concerning "the basis to dispense prescription drugs to a Medicare beneficiary" (Ex. A at 480); (iii) that Medicare Part D requires a valid prescription, in compliance "with all applicable state laws" (Ex. A at 481); (iv) that CMS is a "trust-based system in that we trust that the claims that will be submitted will be accurate and truthful, and we have to look retrospectively to evaluate those claims to determine after the fact if they're a problem and recoup those," (Ex. A at 481); (v) that "CMS would not pay knowingly for a prescription, a drug that did not have a valid prescription" (Ex. A at 482); that if CMS knew

prescriptions were not valid for various reasons, it would not reimburse for claims based on those prescriptions (Ex. A at 482-83); and (vi) how CMS ultimately pays for pharmacies' dispensation of drugs (Ex. A at 483-89).

Both prior to Ms. Sullivan's anticipated testimony on April 2, 2025, and in between her two days of testimony on April 3, 2025, counsel for CVS-Omnicare objected to Ms. Sullivan's testimony on the basis that it constituted expert testimony. Ex. B at 3; Ex. C (Apr. 3, 2025 Omnicare Trial Tr.) at 505-06. On April 3, 2025, in court before Ms. Sullivan retook the stand, the court briskly disposed of the defense's argument that Ms. Sullivan is an expert witness.

```
10        MS. MAINIGI:  The first issue relates to Jody
11   Sullivan.  We are concerned, and we want to re-raise the issue
12   that she is an undisclosed materiality expert.  She was asked
13   multiple times yesterday what she would do at CMS or what CMS
14   would do when faced with certain hypothetical situations.
15        THE COURT:  She is not an undisclosed expert.  She is
16   a fact witness who is telling us how the government would
17   behave in certain circumstances, which is her job.  So I have
18   your argument.  You have your exception.
19        Next.
```

```
2            MS. MAINIGI:  But speculating --
3            THE COURT:  I'm sorry.  She is not speculating.  It's
4   her job.  She tells you what the government would do.  You're
5   going to prove or you're going to establish or you're going to
6   draw the inference that she is wrong; that she doesn't know
7   what she's talking about.  But that's it.  It's over.  Done.
8   She is not an undisclosed expert.
9            Next.
```

Ex. C. at 505-06. So too here. Ms. Androff will testify to analogous information along the lines of Ms. Sullivan's testimony. Like Ms. Sullivan, Ms. Androff works at a Medicare contractor, charged with administering and facilitating Medicare payments, and detecting Medicare fraud, waste, and abuse. Her testimony is not expert testimony—it is not opinion testimony based on complex fields of knowledge, and it does not relate to specialized or technical knowledge.

Nor will Ms. Androff's testimony be legal in nature or opine on the ultimate issue. *Contra* Dkt. No. 332 at 10 (defense claiming that the government intends to admit legal opinion testimony). To be clear, Ms. Androff will not testify concerning the legal elements of a criminal charge under the Anti-Kickback Statute, whether the Defendant acted with intent, or whether the Defendant violated the AKS. In this area, her only testimony will be that on behalf of CMS, WPS does not reimburse for kickback-tainted claims—she will not offer any opinion as to whether the Defendant actually paid kickbacks. The government has properly disclosed her as a witness in the case, and the jury should be allowed to hear how she and her employer, WPS, handle Medicare claims for spine surgeries and kickback-tainted surgeries.

Lastly, at the conclusion of his Motion *in Limine*, the Defendant claims that the government's proposed use of Dr. Lawrence and/or some other CMS employee at trial means that CMS is now part of the prosecution team and, therefore, the Court should revisit its ruling

on the scope of the prosecution team. Dkt. No. 332 at 13 (citing Dkt. No. 232 at 5-6 ("The court finds that CMS is not part of the prosecution team, that the government has no *Brady* obligation to seek out potentially exculpatory material in CMS's possession, and that Defendants have made no showing that the government has failed to turn over material in the prosecution teams' possession, custody, or control.")). The Defendant's assertion that CMS is part of the prosecution team is groundless and incorrect, and nothing about a CMS witness testifying as a fact witness for the government at trial should change the Court's earlier analysis. Further, not only is CMS independent of the prosecution team, but as the government pointed out in its Opposition on this issue (Dkt. No. 205), the government already produced all information it has in its possession, custody, or control from CMS, and all the "information that Defendants collected and submitted to CMS is information that Defendants themselves possess." Dkt. No. 205 at 7 (*United States v. Bender*, 304 F.3d 161, 164 (1st Cir. 2002) ("*Brady* applies to material that was known to the prosecution but unknown to the defense.")). The defense does not even bother in its motion to argue otherwise, even as it requests the Court reconsider its earlier decision.

## CONCLUSION

For the foregoing reasons the government requests that the Court deny the Defendant's Motion *In Limine* concerning CMS witness testimony. Dkt. No. 332.

Dated: May 2, 2025

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

*/s/ Abraham R. George*
Abraham R. George
Christopher Looney
Mackenzie A. Queenin
Assistant U.S. Attorney
1 Courthouse Way
John Joseph Moakley U.S. Courthouse
Boston, MA 02210
(617) 748-3100

## CERTIFICATE OF SERVICE

I, Abraham R. George, certify that on this 2nd day of May 2025, I caused this document to be filed via the ECF system.

*/s/ Abraham R. George*
Abraham R. George
Assistant U.S. Attorney

Dated: May 2, 2025