UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KINGSLEY R. CHIN<br><br>Defendant | No. 1:21-cr-10256-IT |

### JOINT NOTICE CONCERNING ADDITIONAL DOCUMENT RELATED ISSUES FOR PRE-TRIAL CONFERENCE

The parties hereby notify the Court that in addition to the issues raised in the various *motions in limine*, the government seeks a pre-trial ruling with respect to the admissibility of certain categories of documents. The defendant submits that these determinations cannot be made until an appropriate foundation is before the Court at trial.

**Government's Position**

First, at trial, the government will seek to admit timesheets documenting alleged consulting hours. A sampling of those timesheets are attached as Exhibit A. The timesheets were produced by SpineFrontier and Impartial Medical Experts and were signed by Drs. Murray, Atwater, and Montone. The defendant has agreed to the authenticity of the timesheets under Federal Rule of Evidence 901.

The government will argue the timesheets are not offered for the truth of the matter asserted, i.e., they are not offered to prove that the surgeons did legitimate consulting work. Moreover, even if the time sheets were offered for their truth, they contain statements of co-conspirators (Murray, Atwater, Montone, Humad), and are thus admissible under Federal Rule of Evidence 801(d)(2)(E). Further, they contain statements of agents of Kingsley Chin and are admissible under Rule 801(d)(2)(D).

1

Second, on February 9, 2018, SpineFrontier, Inc.—the company that Kingsley Chin principally owns and controls—produced documents in response to a subpoena issued to its parent company, KIC Ventures, LLC (also owned and controlled by Kingsley Chin). That production included spreadsheets containing data on the usage/sales of SpineFrontier products to ten surgeons, including the three surgeons that are the subject of the substantive counts in the Superseding Indictment in this case. A sample of these spreadsheets is attached as Exhibit B.

SpineFrontier Inc.'s counsel described the provenance of this data:

> This production includes spreadsheets pertaining to usage of/sales to the ten surgeons you have identified thus far. As you requested, we are producing the spreadsheets in native format … During our last call, you requested the name of the system/database from which these speadsheets were generated. They were generated through an ERP software system called "Expandable."

See Exhibit C (Letter from Callan G. Stein to Patrick Callahan, February 9, 2018).

The government seeks admission of these records—produced from SpineFrontier's enterprise resource planning / data management system—as (i) business records pursuant to Federal Rule of Evidence 803(6); (ii) as statements made by a person whom the party authorized to make a statement on the subject under Rule 801(d)(2)(C); and (iii) as statements of agents of Kingsley Chin made admissible under 801(d)(2)(D). If necessary to lay the testimonial foundation, the Government requests permission to issue a subpoena to Callan Stein and/or a custodian of record for SpineFrontier, Inc. and requests a pretrial evidentiary hearing regarding the admissibility of these records.

**Defendant's Position**

The relief that the government requests is unavailable absent an evidentiary record for several reasons. First, foundations for admissibility cannot be established by mere argument or vague cover letters, rather than sworn testimony by a person with knowledge. Second, the

government has provided examples, while the full array and variety of documents to which they refer differ in form and context. Third, one of the categories of documents that the government seeks involves the creation of documents, including summary spreadsheets, by an in-house counsel for a non-party who has not described how he went about his work. Fourth, some of the records, such as the various forms of time records, consist of several layers of hearsay and sporadic subjective adjustments to numbers, which the government ignores. Specifically, contemporaneous communications indicate that surgeon-consultants used assistants and others to input information and that, from time to time, SpineFrontier personnel reduced what seemed like excessive billing. In addition, the government claims that it is not introducing the number of hours on the time records for the truth of the matter asserted, but the government is actually trying to offer it for the truth of a correlation to the number of surgeries, which poses hearsay issues.

With respect to the government's theory of potential business records, a proper foundation requires "the testimony of the custodian or other qualified witness." Fed.R.Evid. 803(6). The First Circuit has explained

> This testimony is essential. *NLRB v. First Termite Control Corp.,* 646 F.2d 424, 427 (9th Cir.1981). Without such a witness the writing must be excluded. *Liner v. J.B. Talley & Co.,* 618 F.2d 327 (5th Cir.1980). "Obviously a writing is not admissible ... merely because it may appear upon its face to be a writing made by a physician in the regular course of his practice. It must first be shown that the writing was actually made by or under the direction of the physician at or near the time of his examination of the individual in question and also that it was his custom in the regular course of his professional practice to make such a record." *Masterson v. Pennsylvania R. Co.,* 182 F.2d 793, 797 (3d Cir.1950) (decided under the Federal Business Records Act). The mere custody by Conway of the medical records of another doctor does not incorporate them into Conway's business records. *See United States v. Davis,* 571 F.2d 1354 (5th Cir.1978).

*Belber v. Lipson*, 905 F.2d 549, 552 (1st Cir. 1990). Following these principles, a trial court in the First Circuit has explained the strict need for proper certifications by a qualified person:

3

> "Rule 803(6) is designed to capture records that are likely accurate and reliable in content, as demonstrated by the trustworthiness of the underlying sources of information and the process by which and purposes for which that information is recorded." *United States v. Browne*, 834 F.3d 403, 410 (3d Cir. 2016) (citing *E.C. Ernst, Inc. v. Koppers Co.*, 626 F.2d 324, 330–31 (3d Cir. 1980)). Classic examples of self-authenticating business records are bank and phone records. *See id.* at 436. The Court therefore must assess whether the certifications filed by the Government at Docket No. 454 meet the "requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person." Fed. R. Evid. 902(11).
>
> The Government cites no case law classifying iCloud records as business records for self-authentication purposes under Rule 902(11). Nor does the Government analogize to routinely recognized business records like phone or bank records to demonstrate why iCloud records ought to qualify as such.
>
> The certifications filed by the Government at Docket No. 454-1 assert that the author has authority to certify the records and recites modified language from Rule 803(6) in stating that the records were "made at or near the time by, or from information transmitted by, someone with knowledge or from a process or system that produces an accurate result, the accuracy of which is regularly verified by Apple." Docket No. 454-1, pg. 2. The certification does not, however, include any information regarding the process or system by which Apple generated the records or the author's knowledge of the same. *See id.* Absent case law and developed arguments, the Court is not yet convinced that iCloud records qualify as self-authenticating business records.
>
> In sum, the Government has not met their burden to demonstrate the records produced pursuant to the search warrant served on Apple are self-authenticating under Rule 902(11).

*United States v. Charbonier-Laureano*, No. CR 20-248 (SCC), 2023 WL 8446392, at *2–3 (D.P.R. Dec. 5, 2023) (footnotes omitted). A court in this District has explained why a company principal cannot be forced to authenticate an item as a business record over Fifth Amendment concerns, effectively distinguishing Rule 901 from Rules 803(6) and 902(11):

> Furthermore, Rule 803(6) testimony, unlike authentication testimony, is not "implicit" in the act of producing a document. A witness who produces a document and testifies that the document is responsive to the subpoena has implicitly indicated that the document is genuine; it is but a tiny step from there to authentication testimony, which essentially consists of testimony to the same effect. However, to qualify a document as a business record under Rule 803(6), at a minimum there must be testimony concerning the regular record-creation and record-maintaining practices of the corporation at the relevant time. That testimony

4

> may or may not be routine, depending on the facts and circumstances, but it is never implicit in the act of producing records.
>
> Finally, there is no logical stopping point to the principle that a corporate custodian can be required to provide an evidentiary foundation for a document. There is no special magic in the business records exception that it should be elevated over the other hearsay exceptions, or for that matter the definition of hearsay itself set forth in Rule 801. As the court noted in *In re Grand Jury,* "under the government's theory ..., a custodian could be compelled to provide foundation testimony regarding a document that would otherwise be inadmissible hearsay to bring it within the co-conspirator exception to the hearsay rule [Rule 801(d)(2)(E) ] ..., a result clearly inconsistent with *Curcio*." *In re Grand Jury,* 869 F.Supp. at 305.
>
> The Court thus concludes that testimony sufficient to qualify documents as business records under Rule 803(6) cannot be compelled from a corporate records custodian who asserts a valid Fifth Amendment privilege.

*In re Grand Jury Proc.*, 473 F. Supp. 2d 201, 210 (D. Mass. 2007).

With respect to the co-conspirator or agency theories of admissibility, an evidentiary foundation is just as critical, which must determine the existence of a conspiracy or agency, the scope, and whether the statement is in furtherance of the conspiracy or scope of agency. A court in this Circuit has explained why such determinations cannot be made pretrial:

> At this pretrial stage, it is hard for the Court to definitively predict whether the Government would lay an adequate foundation for admission of these statements pursuant to *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir.1977). *See*, *e.g.*, *United States v. Cianci*, 378 F.3d 71, 100–01 (1st Cir.2004) (finding tape recorded conversations were properly admitted because they were "uttered as part of and in furtherance of the conspiracy"). However, there is no doubt that if the statements are ultimately admissible under the co-conspirator exception to the hearsay rule, they are not "testimonial" in nature and, therefore, not subject to exclusion under *Crawford*. *See Crawford*, 541 U.S. at 56, 124 S.Ct. 1354; *see also Malpica–Garcia*, 489 F.3d at 397. In order to admit the statements pursuant to Rule 801(d)(2)(E), the Court will require the Government to lay an adequate foundation before referencing or introducing Newell's statements to Alex Nicholas to the extent that those statements involve the charges that the Government is pressing against Defendant Parisi. Defendant Parisi is free to object at trial if he believes the foundation laid for admission pursuant to Rule 801(d)(2)(E) is inadequate.

*United States v. Newell*, 578 F. Supp. 2d 209, 212 (D. Me. 2008). Other flaws in the government's invocation of Rule 801(d)(2)(D) and (E) are discussed more fully in Defendant Chin's Opposition to Motion *in Limine* Re: Admissibility of Emails (ECF No. 343).

Accordingly, the defendant submits that foundational issues must be presented and determined on an appropriate evidentiary record at trial.

Dated: May 9, 2025

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: */s/ Mackenzie A. Queenin*
ABRAHAM R. GEORGE
CHRISTOPHER LOONEY
MACKENZIE QUEENIN
Assistant U.S. Attorneys


KINGSLEY CHIN

By: */s/ Barry S. Pollack*
Barry S. Pollack (BBO #642064)
Joshua L. Solomon (BBO #657761)
POLLACK SOLOMON DUFFY LLP
31 St. James Avenue, Suite 940
Boston, MA 02116
(617) 439-9800
bpollack@psdfirm.com
jsolomon@psdfirm.com

## Certificate of Service

The undersigned hereby certifies that I caused this document to be filed through the ECF system on May 9, 2025.

*/s/ Chris Looney*
CHRIS LOONEY